# Exhibit 11, Part 1 of 2

# Consolidation Act 2015-04-28 No. 610
# on Public and Private Limited Companies

*(the Companies Act)*

Future amendments: L 2015-06-01 No. 738 and L 2015-06-01 No. 739

*This is a translation and the Danish-language version will there-fore prevail.*
*Translated by: Karin Winge Bang.*
*Legal advisor: Lars Lindencrone Petersen.*

## Part 1. Scope of the Act etc.

### Scope

**1.** This Act applies to all public and private limited companies (limited liability companies).

*(2)* The holders of shares in public and private limited companies (the shareholders) are not personally liable for the obligations of the limited liability company, but are liable only to the extent of their contributions. The shareholders are entitled to a share of the profit of the limited liability company in proportion to their ownership interests, unless otherwise provided in the company's articles of association.

*(3)* A private limited company must not offer its shares to the public.

### Name of the limited liability company

**2.** Only public limited companies and private limited companies have the right and duty to use the designation "aktieselskab" or "anpartsselskab" or the abbreviation "A/S" or "ApS" in their names.

*(2)* The name of a limited liability company must be clearly distinguishable from the names of other enterprises registered in the IT system of the Danish Business Authority. The name must not include any family name, business name, distinctive name of real estate, trademark, distinctive mark or the like not belonging to the limited liability company or anything likely to cause confusion with such name or mark.

*(3)* The name of a limited liability company must not be likely to mislead. Where the name of a limited liability company indicates a specific activity, the company must not continue using that name if its principal activity has changed significantly.

*(4)* A limited liability company must state its name, registered office and central business register (CVR) number in its letters and other business papers, including electronic messages, and on its website.

**3.** Section 2(1)-(3) applies correspondingly to the secondary names of limited liability companies.

*(2)* Where a limited liability company registers more than five secondary names, an amount of DKK 1,000 will be payable for each secondary name. However, this does not apply to secondary names pre-dating any reorganisation, merger or demerger.

### Share capital

**4.** The share capital of limited liability companies falling within the scope of this Act must be denominated in Danish kroner or euro, but see subsection (3).

*(2)* Public limited companies must have a minimum share capital equal to DKK 500,000, and private limited companies must have a minimum share capital equal to DKK 50,000.

*(3)* The Danish Business Authority may lay down detailed rules on the conditions to be met in order to denominate the share capital in a currency other than Danish kroner or euro.

### Definitions

**5.** In this Act, the following terms have the following meanings:

(i)  *Public limited company:*
A limited liability company, including a limited partnership company, in which the capital paid in by the shareholders is divided into shares. The shares may be offered to the public. Shareholders are liable only to the extent of their contributions to the company.

(ii)  *Private limited company:*
A limited liability company in which the capital paid in by the shareholders is divided into shares. Private limited companies must not offer their shares to the public, see section 1(3). Shareholders are liable only to the extent of their contributions to the company.

(iii)  *Subsidiary:*
An enterprise on which a parent exerts a decisive influence, see sections 6 and 7.

(iv)  *Central management body:*
  (a)  the board of directors of companies having an executive board and a board of directors, see section 111(1)(i);
  (b)  the executive board of companies having only an executive board, see section 111(1)(ii); and
  (c)  the executive board of companies having both an executive board and a supervisory board, see section 111(1)(ii).

(v)  *Supreme management body:*
  (a)  the board of directors of companies having an executive board and a board of directors, see section 111(1)(i);
  (b)  the executive board of companies having only an executive board, see section 111(1)(ii); and
  (c)  the supervisory board of companies having both an executive board and a supervisory board, see section 111(1)(ii).

(vi)  *Shareholders' agreement:*
An agreement between the shareholders governing the ownership and management of the company.

(vii)  *Share certificates:*
Evidence of ownership of a share, see sections 59 and 60.

(viii)  *Register of shareholders:*
The register of all shareholders that must be kept by the limited liability company, see section 50.

(ix)  *Public register of shareholders:*
The register of the shareholdings of certain shareholders kept by the Danish Business Authority, see section 58.

(x)  *Bonus shares:*
Shares issued in connection with a bonus share issue, see section 165.

(xi)  *Cross-border relocation of registered office:*

A limited liability company's relocation of its registered of-fice from one EU/EEA country to another EU/EEA country.

(xii) *Cross-border merger or demerger:*
A merger or demerger involving limited liability companies that are governed by the legislation of at least two different EU/EEA countries.

(xiii) *Registered office:*
The company's contact address in this country.

(xiv) *Entrepreneur company:*
A private limited company, see para (ii), which does not have a minimum registered share capital of DKK 50,000 and which complies with the conditions set out in section 357a.

(xv) *Share:*
A share, see sections 45-49.

(xvi) *Shareholder:*
An owner of one or more shares.

(xvii) *Share class:*
A group of shares carrying the same rights or obligations.

(xvi-ii) *Limited liability company:*
A private limited company, including an entrepreneur com-pany, or a public limited company, including a limited part-nership company.

(xix) *Group:*
A parent and its subsidiaries, see section 7.

(xx) *Management:*
All the bodies mentioned in paras (iv) and (v). A member of management may be a member of the company's supervisory board, board of directors or executive board.

(xxi) *Parent:*
A limited liability company exerting a decisive influence on one or more subsidiaries, see sections 6 and 7.

(xxii) *Multilateral trading facility:*
The definition of a multilateral trading facility in section 40(1) of the Securities Trading Act (*værdipapirhandelsloven*) applies.

(xxi-ii) *Limited partnership company:*
A limited partnership, see section 2(2) of the Act on Certain Commercial Enterprises (*erhvervsvirksomhedsloven*), in which the limited partners have contributed a certain capital which is divided into shares, see Part 21 of this Act.

(xxiv) *Restoration:*
Temporary registration of the estate of a limited liability company after the company has been deleted from the IT system of the Danish Business Authority, see section 235.

(xxv) *Public limited shipping company:*
A public limited company carrying on shipping activities, see section 112(2).

(xxvi) *Date of registration:*
The date from which a shareholder is entitled to attend and vote in respect of his shares at a general meeting.

(xxvii) *Regulated market:*
The definition of regulated market in section 16(1) of the Securities Trading Act (*værdipapirhandelsloven*) applies.

(xxvi-ii) *Capital represented:*
Shares represented at the general meeting which are either voting shares or non-voting shares carrying a right of repre-sentation as provided in the articles of association.

(xxix) *Right of representation:*
The right that may be attached to non-voting shares allowing the holders of such shares to attend general meetings and the shares to be included in the calculation of capital represented at the general meeting. Voting shares always carry a right of representation, see section 46.

(xxx) *Share capital:*
The contribution to which the shareholders' liability is limited under this Act, see section 4.

(xxxi) *State-owned public limited companies:*
A public limited company to which the Danish state is related in the same manner as a parent to a subsidiary, see sections 6 and 7.

## Groups

**6.** A group consists of a parent and one or more subsidiaries. No enterprise may have more than one direct parent. If more than one company meets one or more of the criteria set out in section 7, only the company exerting the de facto decisive influence on the finan-cial and operational decisions of the enterprise will be deemed to be the parent.

**7.** Decisive influence means the power to control a subsidiary's fi-nancial and operational decisions.

*(2)* Decisive influence on a subsidiary is exerted if the parent owns, directly or indirectly through a subsidiary, more than half of the voting rights in an enterprise, unless in special cases such ownership can be clearly demonstrated not to constitute a decisive influence.

*(3)* Where a parent holds half or less than half of the voting rights in an enterprise, decisive influence is exerted if the parent has

(i) the power to exercise more than half of the voting rights ac-cording to an agreement with other investors;

(ii) the power to control the financial and operational decisions of an enterprise under the articles of association or an agreement;

(iii) the power to appoint or remove a majority of the members of the supreme management body, and this body exerts a decisive influence on the enterprise; or

(iv) the power to exercise the *de facto* majority of votes at general meetings or at the meetings of an equivalent body, thus exerting the *de facto* decisive influence on the enterprise.

*(4)* The existence and effect of potential voting rights, including rights to subscribe for and purchase shares that are currently exercisable or convertible, must be taken into account in the assess-ment of whether a company exerts a decisive influence.

*(5)* Any voting rights attaching to the shares owned by the subsidi-ary itself or its subsidiaries must be disregarded in the calculation of voting rights in the subsidiary.

## Powers of the bankruptcy court and the Maritime and Commercial Court

**8.** Any powers granted to the bankruptcy court under this Act will be exercised by the bankruptcy court for the district in which the company's registered office is situated. However, such powers will be exercised by the Maritime and Commercial Court in the areas falling under the jurisdiction of the Copenhagen City Court and the courts of Frederiksberg, Glostrup and Lyngby, see section 4 of the Bankruptcy Act (*konkursloven*).

## Part 1a. Communication

**8 a.** The Danish Business Authority may lay down rules providing that written communication to and from the Authority concerning matters falling within the scope of this Act or any rules laid down under this Act must take place by electronic means.

*(2)* The Danish Business Authority may lay down detailed rules on electronic communication, including the use of particular IT systems, special electronic formats and electronic signatures or the like.

*(3)* An electronic message is deemed to have reached the recipient when it is available to the recipient of the message.

**8 b.** The Danish Business Authority may lay down rules providing that the Authority may issue decisions and other documents under this Act or under rules laid down under this Act without a signature, with a mechanically or similarly reproduced signature or using a technique which secures unambiguous identification of the person having issued the decision or document. Such decisions and documents are treated as decisions and documents provided with a personal signature.

*(2)* The Danish Business Authority may lay down rules providing that decisions and other documents that are made or issued exclusively on the basis of electronic data processing may indicate merely the Authority as the sender.

**8 c.** Where this Act or any rules laid down under this Act provide that a document not issued by the Danish Business Authority must be signed, such requirement may be met by use of a technique which secures unambiguous identification of the person having issued the document, but see subsection (2). Such documents are treated as documents provided with a personal signature.

*(2)* The Danish Business Authority may lay down detailed rules for departure from the signature requirement. This means, for example, that the Authority may decide that the personal signature requirement cannot be departed from in respect of particular types of documents.

## Part 2. Registration and time-limits

### Registration

**9.** All information to be registered under this Act must be recorded in the IT system of the Danish Business Authority no later than two weeks after the date of the relevant resolution, unless otherwise provided in or under this Act. Where the information is not registered in the IT system of the Danish Business Authority by the applicant himself, see section 12(1), an application for registration must be received by the Authority no later than two weeks after the date of the relevant resolution.

*(2)* The company's central management body is responsible for ensuring that the information is registered or that an application for registration is submitted to the Danish Business Authority.

*(3)* Subsections (1) and (2) apply correspondingly to the publication of documents and other notices in the IT system of the Danish Business Authority. Where the document or notice is not published in the IT system of the Danish Business Authority by the applicant himself, see section 12(2), the document or notice must be received by the Authority no later than two weeks after the date of the relevant event.

**10.** The members of the executive board, the board of directors and the supervisory board of a limited liability company as well as the company's auditor, if applicable, must be registered in the IT system of the Danish Business Authority.

*(2)* Where an auditor, see section 144(1), resigns or is removed before the end of his term, the registration of the information or the application for registration must be accompanied by an adequate account by the central management body of the reason for such termination of office.

**11.** Any amendment to the articles of association of a limited liability company or any change to other information previously registered with the Danish Business Authority must be registered in the IT system of the Danish Business Authority, or an application for registration must be submitted to the Authority, see section 9.

**12.** The Danish Business Authority lays down rules on registration or application for registration of information to be registered under this Act.

*(2)* The Danish Business Authority lays down rules on the publication of registrations, documents and other notices in the Authority's IT system under this Act.

*(3)* The Danish Business Authority may lay down rules on fees for registration and transcripts etc., publication, use of the Authority's IT system and letters requesting payment etc. in case of late payment.

*(4)* The Danish Business Authority may lay down rules on payment of an annual fee for administration of the company law rules and for services for which no particular price has been set.

**13.** The Danish Business Authority may lay down rules on the language to be used in the documentation submitted in connection with registrations or applications for registration by limited liability companies.

*(2)* The Danish Business Authority lays down rules providing that voluntary registration and publication of company information may also be made in any other official language of the European Union in addition to the statutory publication in one of the languages allowed under subsection (1).

*(3)* In case of a discrepancy between the documents and information that have been subject to compulsory registration and publication under subsection (1) and any translations of such documents and information that have been voluntarily published under subsection (2), the company cannot rely on the translation against any third party. However, any third party may rely on the text that has been voluntarily published against the company, unless the company is able to prove that the third party had knowledge of the statutory version published in the IT system of the Danish Business Authority. Section 9(1) does not apply to documents published voluntarily.

**14.** The Danish Business Authority keeps a register of companies registered under this Act. Registrations and publications under this Act must be made in the Authority's IT system.

*(2)* All information published in the IT system is deemed to have been communicated to third parties. However, the first sentence does not apply to transactions carried out on or before the 16th day after the date of publication if it can be proved that the third party could not have known the published information.

*(3)* Information to be registered and published cannot be relied on against any third party until it has been published in the IT system, unless it can be proved that the third party had knowledge of the information. A third party is not prevented from relying on information that has not yet been published.

**15.** Information cannot be registered if it does not comply with the provisions of this Act, provisions laid down under this Act or the company's articles of association. Nor can information be registered if the underlying resolution has not been passed in accordance with the provisions of this Act, provisions laid down under this Act or the company's articles of association.

*(2)* Any applicant registering information or submitting an application for registration of such information in the IT system of the Danish Business Authority warrants that the registration or application has been lawfully made, including that the applicant is duly authorised, and that the documentation required for the registration or application is valid.

*(3)* Subsections (1) and (2) apply correspondingly to documents etc. published in the IT system of the Danish Business Authority or submitted to the Authority for publication etc. under this Act.

**16.** Where the Danish Business Authority believes that an error or defect in any information submitted to the Authority for registration

may be rectified by a resolution of the general meeting or the central management body of the limited liability company, the Authority may set a time-limit for such rectification. If such rectification has not been made by the expiry of the time-limit, registration cannot be made.

*(2)* Where registration is refused under subsection (1), the applicant must be notified in writing that no registration will be made and given the reason for non-registration.

*(3)* Where the Danish Business Authority discovers that the lawfulness of any registration, whether pending or completed, is uncertain, the Authority may decide that registrations under section 9(1) cannot be made until the matter has been clarified. The applicant must be notified in writing that no registration will be made and given the reason for non-registration. The Authority may also publish a notice in its IT system explaining the reason for the decision.

*(4)* In the situations falling within subsection (3), the Danish Business Authority may also register any resignation or removal of management.

**17.** The Danish Business Authority may demand any information necessary to determine whether a limited liability company complies with this Act, any rules laid down under this Act and the company's articles of association, including whether the company's capital base exists.

*(2)* As regards registration or application for registration under rules laid down under this Part of the Act, the Danish Business Authority may demand evidence of the lawfulness of such registration or application for registration up to three years after the time of registration. In special situations, the Authority may also demand that the company submits a declaration by an auditor of the lawfulness of the financial transactions relating to the registration or the application for registration. If the requirements set out in the first and second sentences are not met, the Authority will set a time-limit for rectification. If such rectification has not been carried out by the expiry of the time-limit, the Authority may, if necessary, take steps to have the limited liability company dissolved under the provisions of section 226.

**18.** Information on the name and address of each of the promoters and the name, job title and address of each of the members of management must be available at any time in the IT system of the Danish Business Authority. This applies to both active and dissolved companies. The Authority may lay down rules providing that certain information is not to be disclosed.

*(2)* The personal information set out in subsection (1) will cease to be updated 10 years after the person in question has ceased to be registered in an enterprise registered in the IT system of the Danish Business Authority.

**19.** (Repealed)

**20.** Where a person believes that the registration of a resolution passed by the promoters, the general meeting or the company's management is detrimental to him, any deregistration must be decided by the courts. This does not apply to the situations falling within section 109.

*(2)* Such legal proceedings must be commenced against the company no later than six months from the date of publication of the registration in the IT system of the Danish Business Authority. The court will send a transcript of the judgment to the Authority for publication of the outcome of the case in the Authority's IT system.

**Time-limits**

**21.** Where this Act or any rules or regulations laid down under this Act provide that an action may or must be taken a certain number of days, weeks, months or years before a specified event has occur-

red, the time-limit for such action will be calculated from the day preceding the event.

*(2)* Where the time-limit for taking such action expires on a weekend, a public holiday, 5 June (Constitution Day), 24 December or 31 December, action must be taken on or before the last preceding working day.

**22.** Where this Act or any rules or regulations laid down under this Act provide that an action or decision cannot be taken or made until a certain number of days, weeks, months or years after a specified event has occurred, the time-limit for such action or decision will be calculated from the day after the event. Such action or decision cannot be taken or made until the day after the expiry of the time-limit.

**23.** Where this Act or any rules or regulations laid down under this Act provide that an action must be taken within a certain number of days, weeks, months or years after a specified event has occurred, the time-limit for such action will be calculated from the day after the event, see subsections (2)-(4).

*(2)* Where the time-limit set out under subsection (1) is stated in weeks, the time-limit for action will expire on the same day of the week as the event occurred.

*(3)* Where the time-limit set out under subsection (1) is stated in months, the time-limit for action will expire on the same day of the month as the event occurred. If the event occurred on the last day of a month or if the time-limit expires on a date that does not exist in that month, the time-limit will always expire on the last day of the month, regardless of the number of days in that month.

*(4)* Where the time-limit set out under subsection (1) is stated in years, the time-limit for action will expire on the anniversary of the event.

*(5)* Where the time-limit expires on a weekend, a public holiday, 5 June (Constitution Day), 24 December or 31 December, action must be taken on or before the next working day.

**Part 3. Formation**

**Promoters**

**24.** A limited liability company may be formed by one or more promoters.

*(2)* A promoter must not be the subject of any pending restructuring or bankruptcy proceedings.

*(3)* Where the promoter is a natural person, such person must have full legal capacity and must not be under guardianship under sections 5 and 7 of the Guardianship Act (*værgemålsloven*).

*(4)* Where the promoter is a legal person, such person must be authorised to acquire rights, undertake obligations and be a party to legal proceedings.

**Memorandum of association**

**25.** The promoters must sign a memorandum of association that must include the articles of association of the limited liability company.

**26.** The memorandum of association must include information on

(i)     the name, address and central business register (CVR) number, if applicable, of each of the promoters of the limited liability company;

(ii)    the subscription price for the shares;

(iii)   the time-limits for subscription and payment of the shares;

(iv)    the date from which the formation will take legal effect, see section 40(3)-(5);

(v)     the date from which the formation will take effect for accounting purposes, see section 40(6); and

(vi)  whether the limited liability company must pay the formation expenses and, if so, the estimated amount of such expenses.

**27.** The memorandum of association must also include provisions on the following matters if so resolved:

(i)  special rights or benefits accruing to the promoters or others;

(ii)  any agreement made with the promoters or others that may impose a material financial obligation on the limited liability company;

(iii)  that shares may be subscribed for against contribution of assets other than cash, see section 35;

(iv)  that the financial statements etc. of the limited liability company are not to be audited if the company qualifies for audit exemption under the Financial Statements Act (*årsregnskabsloven*) or any other legislation; and

(v)  the amount of the subscribed share capital paid up at the date of formation.

*(2)* In the memorandum of association the promoters must give an account of the factors affecting the assessment of the provisions laid down under subsection (1). The account must include the name and address of each of the persons affected by the provisions.

*(3)* Where the memorandum of association refers to documents whose main contents are not reproduced in the memorandum of association, such documents must be annexed to the memorandum of association.

*(4)* Agreements on matters dealt with but not approved in the memorandum of association are not valid against the limited liability company.

### Articles of association

**28.** The articles of association of a limited liability company must include information on

(i)  the name and any secondary name(s) of the limited liability company;

(ii)  the object(s) of the limited liability company;

(iii)  the amount of the share capital and the number or nominal value of the shares;

(iv)  the rights attaching to the shares;

(v)  the management bodies of the limited liability company, including information on the management structure chosen, see section 111, and for public limited companies information on the number or the lowest or highest number of members of the various management bodies and any alternate members as well as the term of office of the members of the supreme management body;

(vi)  the notice of general meetings; and

(vii)  the financial year of the limited liability company.

**29.** The articles of association of a limited liability company must also specify the resolutions to be included in the articles of association under this Act and the latest date for dissolution of the limited liability company if its duration is limited to a fixed period of time.

### Subscriptions for shares

**30.** Any subscription for shares must be made in the memorandum of association with appendices, if any.

**31.** Shares cannot be subscribed for subject to reservations or at a discount.

**32.** The promoters decide whether to accept subscriptions for shares, but see section 31.

*(2)* In case of oversubscription, the promoters must decide, before registration or application for registration, on the number of shares to be allotted to each individual subscriber, see sections 9 and 40.

No promoter may be allotted a smaller number of shares than the number which represents the amount subscribed for by that promoter in the memorandum of association.

*(3)* The promoters must notify any subscriber for shares in a limited liability company as soon as possible if

(i)  the subscription is not accepted;

(ii)  the promoters consider the subscription as invalid; or

(iii)  the amount subscribed for has been reduced due to oversubscription.

*(4)* Any resolution to form a limited liability company with a larger or smaller share capital than that specified in the articles of association is subject to the consent of all promoters and subscribers for capital.

*(5)* Where the share capital or any prescribed minimum capital has not been fully subscribed for and accepted by the promoters, the formation of the limited liability company will cease and consequently the subscribers' obligations will no longer exist. Any amount paid in respect of the shares must be refunded. However, all formation expenses may be deducted from the refunded amount where so provided in connection with the subscription.

### Payment of share capital

**33.** An amount equal to 25% of the share capital, but at least DKK 50,000, must be paid up at any time. Payment must be made in respect of each individual share. Where a premium is fixed in public limited companies, such premium must be fully paid up, even if part of the share capital is not paid up. In private limited companies, such premium is not required to be fully paid up, but may be paid up in part in the same proportion as the share capital. However, where all or part of the share capital is contributed by way of assets other than cash, see section 35, the entire share capital and any premium must be fully paid up.

*(2)* The central management body of the limited liability company may call up any share capital that has not been paid up. The time-limit for payment must be at least two weeks. The articles of association may provide for a longer time-limit, but not to exceed four weeks.

*(3)* The limited liability company's claims for payment in respect of shares cannot be disposed of or provided as security.

*(4)* Where the amount of the share capital is stated in the limited liability company's letters and other business papers, including electronic messages, and on the company's website, both the subscribed and the paid-up share capital must be stated.

**34.** The rights of a shareholder under this Act will subsist, regardless of whether his shares have been fully paid up, but see subsection (3).

*(2)* A shareholder must make payment in respect of a share at the request of the central management body, see section 33(2). However, the shareholder is entitled to pay the amount outstanding in respect of a share at any time even if the central management body has not made a request to that effect. In that case, the shareholder must pay the full amount outstanding in respect of the share, unless otherwise provided in the articles of association.

*(3)* Where a shareholder has failed to duly comply with the central management body's request for payment of the amount outstanding in respect of a share, the shareholder cannot exercise the voting rights attaching to any part of his shareholding in the limited liability company at general meetings, and his shares will be deemed to be unrepresented at general meetings until the amount has been paid to and registered by the company. However, this does not apply to the right to receive dividends and other payments, nor to the right to subscribe for new shares in connection with a capital increa-

se. The central management body may set off the limited liability company's claim for payment of the share capital against distributions from the company to which the shareholder is entitled as a shareholder.

*(4)* A shareholder cannot set off any claim against the limited liability company against his obligation to pay outstanding amounts without the consent of the company's central management body. Such consent must not be given if the setting-off may be detrimental to the limited liability company or its creditors.

*(5)* A shareholder cannot contribute assets other than cash to the limited liability company in discharge of his obligations to pay outstanding amounts without the consent of the company's central management body. Such consent must not be given if the contribution may be detrimental to the limited liability company or its creditors. A valuation report must also be prepared under the provisions of sections 36 and 37, unless the contribution falls within section 38.

*(6)* Where a shareholder transfers a share that has not been fully paid up, he will be jointly and severally liable with the transferee and any subsequent transferees for payment of the amount outstanding in respect of the share.

## Special provisions on contributions of assets other than cash

**35.** Any contribution of assets other than cash, ie any non-cash contribution, must have an economic value and must not consist of an obligation to perform work or services.

*(2)* Claims against promoters or shareholders cannot be contributed or acquired, regardless of whether such claims are secured by a legal charge.

**36.** Where the limited liability company is to acquire assets other than cash, a valuation report must be attached to the memorandum of association. The report must include

(i)   a description of each contribution;

(ii)  information on the valuation method applied;

(iii) a statement of the consideration offered for each acquisition; and

(iv)  a declaration that the assessed economic value is not lower than the agreed consideration, including any nominal value of the shares to be issued plus any premium.

*(2)* The valuation must not be made more than four weeks before the signing of the memorandum of association. If the time-limit is exceeded, a new valuation must be made.

*(3)* Where, in connection with its formation, the limited liability company acquires an existing enterprise, the valuation report must also include an opening balance sheet for the limited liability company. The opening balance sheet must be prepared in accordance with the set of rules under which the company prepares its annual report. The opening balance sheet must not be qualified. If the limited liability company is subject to audit obligations under the Financial Statements Act (*årsregnskabsloven*) or any other legislation, the opening balance sheet must also contain an unqualified audit report.

**37.** The valuation report must be prepared by one or more impartial valuation experts. The promoters may appoint only approved auditors as valuation experts. Otherwise, valuation experts may be appointed by the bankruptcy court for the district in which the registered office of the limited liability company is to be situated.

*(2)* Sections 133 and 149 of this Act and section 24 of the Act on Approved Auditors and Auditing Firms (*revisorloven*) apply correspondingly to valuation experts.

*(3)* The valuation experts must be allowed to make any investigation deemed necessary by them, and they may demand any information and assistance from the promoters or the limited liability company deemed necessary by them for the performance of their duties.

**38.** The requirement for a valuation report to be prepared under section 36(1) does not apply to the contribution of:

(i)   Assets and liabilities (net assets) measured at fair value and presented individually in financial statements or consolidated financial statements for the previous financial year. The financial statements or consolidated financial statements must be prepared in accordance with the provisions of the Financial Statements Act (*årsregnskabsloven*) or the international accounting standards (as specified in the Regulation of the European Parliament and of the Council on the application of international accounting standards), in accordance with accounting rules laid down in or under the legislation governing financial enterprises or in the financial statements of a foreign business prepared under the provisions of the Fourth Council Directive of 25 July 1978 (78/660/EEC), as amended, or the Seventh Council Directive of 13 June 1983 (83/349/EEC), as amended, and containing an audit report.

(ii)  Securities or money-market instruments recorded at the average price at which they have been traded on one or more regulated markets during the four weeks preceding the signing of the memorandum of association. However, a valuation report must be prepared in accordance with section 36(1) if the central management body of the limited liability company believes that the average price is affected by extraordinary circumstances or otherwise cannot be assumed to reflect the current value.

*(2)* The central management body of the limited liability company is responsible for ensuring that a contribution made under subsection (1) is not detrimental to the limited liability company or its shareholders or creditors, and must prepare a declaration containing

(i)   a description of assets and liabilities (net assets) and their values;

(ii)  information on the valuation method applied;

(iii) a statement that the values stated are not lower than the value of and, if applicable, the premium on the shares to be issued as consideration for the contribution; and

(iv)  a statement that no new circumstances affecting the original valuation have arisen.

*(3)* The central management body must publish its declaration under subsection (2) in the IT system of the Danish Business Authority on or before the date of registration or application for registration of the company's formation.

## Election of management and, if applicable, auditor etc.

**39.** Where the management and the auditor, if applicable, of the limited liability company have not been elected in connection with the company's formation, the promoters must hold a meeting of the limited liability company for the election of its management and any auditor no later than two weeks after signing the memorandum of association. The company's formation and the elected management and any auditor must be registered, or an application for registration must be submitted, see section 9.

## Registration

**40.** The limited liability company must be registered in the IT system of the Danish Business Authority or an application for registration must be submitted, see section 9, no later than two weeks after the signing of the memorandum of association. If no registra-

Copyright © 2015 Karnov Group Denmark A/S

tion has been made or no application for registration has been received by the Danish Business Authority before the expiry of the time-limit, the company cannot be registered.

*(2)* The limited liability company cannot be registered, unless an amount equal to 25% of the total share capital, but at least DKK 80,000, see section 4(2), has been paid up, see the first sentence of section 33(1). Where a premium has been fixed, such premium must be paid up in full, see the second sentence of section 33(1). In case of registration or an application for registration under subsection (1), evidence must be submitted that the share capital has been fully paid on or before the date of registration or application for registration.

*(3)* The formation of the limited liability company takes legal effect from the date of signing of the memorandum of association or from any later date specified in the memorandum of association, but see subsections (4) and (5).

*(4)* Where the share capital is paid up by way of cash contributions, the formation will take legal effect no later than 12 months after the memorandum of association was signed.

*(5)* Where the limited liability company is to acquire assets other than cash in connection with its formation, the formation will take legal effect at or before the time of registration or application for registration of the limited liability company, see subsection (1).

*(6)* Where the limited liability company acquires an existing enterprise or a controlling interest in another enterprise in connection with its formation, the formation may take effect for accounting purposes from the first day of the current financial year of the enterprise which is acquired or in which an ownership interest is acquired.

**41.** An unregistered limited liability company cannot acquire rights, undertake obligations or be a party to legal proceedings other than legal proceedings to recover subscribed share capital and other legal proceedings relating to the subscription for shares. The company must add the words "under stiftelse" ("in the process of formation") to its name.

*(2)* Where a limited liability company is formed and the date from which the formation takes legal effect, see section 40(3)-(5), is after the date of signing of the memorandum of association, no rights may be acquired and no obligations may be undertaken on behalf of the company in the period until the company's formation takes legal effect.

*(3)* Persons who have undertaken an obligation on behalf of the limited liability company after the date of signing of the memorandum of association, but before the registration, or who have a joint responsibility in that respect will be jointly and severally liable for the obligation. Upon registration, the limited liability company assumes the rights and obligations set out in the memorandum of association or imposed on the company after the signing of the memorandum of association.

*(4)* Where an agreement is entered into before the registration of the limited liability company, and the other party to the agreement knows that the company has not been registered, such other party may terminate the agreement if the company has not been registered in the IT system of the Danish Business Authority by the expiry of the time-limit set out in section 40(1) or if registration is refused. However, this applies only in the absence of agreement to the contrary. If the other party to the agreement does not know that the limited liability company has not been registered, such other party may terminate the agreement as long as the company remains unregistered.

## Subsequent acquisitions

**42.** The central management body of the limited liability company is responsible for ensuring that no acquisition of shares from the promoters, shareholders or creditors is detrimental to the company, its shareholders or creditors.

**42 a.** A public limited company's acquisition of assets from a promoter is subject to approval by the general meeting if

(i)    the acquisition takes place in the period between the date of signing of the memorandum of association and 24 months after the limited liability company was registered; and

(ii)   the consideration amounts to at least one-tenth of the share capital.

*(2)* The central management body of the public limited company must prepare a statement on the circumstances of the acquisition for the purpose of allowing the general meeting to resolve on the approval of the acquisition.

**43.** Where a public limited company acquires assets from a promoter, and the acquisition falls within section 42a(1), a valuation report must also be prepared as set out in sections 36 and 37, unless the acquisition falls within section 38.

*(2)* However, if the asset mentioned in subsection (1) is an existing enterprise, the balance sheet to be prepared under section 36(3) must be prepared as a pre-acquisition balance sheet for the acquired enterprise.

**44.** The central management body must publish the statement under section 42a(2) and the valuation report or declaration under section 43 in the IT system of the Danish Business Authority no later than two weeks after the general meeting approved the acquisition.

*(2)* Sections 42a and 43 do not apply to the usual business transactions of the public limited company.

## Part 4. Shares, registers of shareholders etc.

### Shares

**45.** In limited liability companies, all shares carry equal rights. However, the articles of association may provide for different share classes. In that case, the articles of association must specify the differences between the different share classes and the size of each share class.

**46.** All shares carry voting rights. However, the articles of association of a limited liability company may provide that certain shares carry no voting rights, and that the voting power of certain shares differs from that of the other shares.

*(2)* Non-voting shares carry a right of representation only if so provided in the articles of association.

**47.** Limited liability companies may issue par value shares or non-par value shares or any combination of such shares.

*(2)* Non-par value shares have no nominal value. Each non-par value share represents an equal share of the share capital.

*(3)* The share of the share capital represented by par value shares is based on the proportion between the par value and the share capital, and the share of the share capital represented by non-par value shares is based on the number of shares issued.

**48.** Shares are freely transferable and non-redeemable, unless otherwise provided by statute.

*(2)* Shares may be registered in the name of the holder. In that case, the articles of association may include restrictions on the transferability of registered shares or provisions on their redemption. Shares may also be issued to bearer.

**49.** No purchaser of a registered share may exercise the rights conferred on him as a shareholder, unless the purchaser has been

registered in the register of shareholders or the purchaser has applied for registration and proved his acquisition. However, this does not apply to the right to receive dividends and other distributions and the right to subscribe for new shares in connection with a capital increase.

### Register of shareholders

**50.** As soon as possible after the formation of the company, the central management body must set up a register of all shareholders.

*(2)* The company may keep the register of shareholders by registering the information set out in sections 52 and 56(2) in the IT system of the Danish Business Authority, see section 58.

*(3)* The articles of association may provide that the register of shareholders must be kept by a person appointed by the company to keep the register on its behalf. The articles of association must set out the name and address of the person appointed to keep the register of shareholders. If such person is a legal person, only the central business register (CVR) number needs to be stated. The Danish Business Authority may lay down detailed rules allowing persons to keep registers of shareholders, including the requirements that must be met by such persons.

**51.** The register of shareholders must be available to the public authorities. The articles of association must specify the place where the register of shareholders is to be kept if it is not kept at the company's registered office. The register of shareholders must be kept within the EU/EEA.

*(2)* In companies whose employees are entitled to elect representatives to the company's supreme management body under section 140, but in which such right has not been exercised, the register of shareholders must also be available to an employee representative. In groups whose employees have not elected members to the company's supreme management body under section 141, the parent's register of shareholders must be available to an employee representative of the other Danish group companies.

*(3)* Subsection (2), which applies to companies with no employee representatives on the board of directors, applies correspondingly to European Companies (SEs) in which no employee representatives have been elected to the administrative or supervisory body in accordance with the rules on employee involvement in SEs.

*(4)* The articles of association may provide that the register of shareholders must also be available to the shareholders, including in electronic form, but see subsections (5) and (6). Any resolution to that effect must be passed by the general meeting by the majority of votes required to amend the articles of association.

*(5)* Where the register of shareholders as specified in section 50(2) is available in electronic form, the company may meet its obligations under subsections (1)-(4) by giving the persons entitled to inspect the register under subsections (1)-(4) access to the electronic register. The company may meet its obligations by reporting the information, see section 52, to the IT system of the Danish Business Authority (the public register of shareholders), see section 58(1) and (2).

*(6)* In private limited companies, the register of shareholders must be available to all shareholders.

**52.** The register of shareholders of a limited liability company having issued registered shares must contain the following information, but see subsection (3):

(i)    The shareholder's aggregate shareholding.

(ii)   The name and address of each of the shareholders and chargees or the name, central business register (CVR) number and registered office of each of the enterprises, see subsection (2).

(iii)  The date of acquisition, disposal or creation of the legal charge, including the denomination of the shares.

(iv)   The voting rights attaching to the shares.

*(2)* Where the shareholder or chargee is a foreign national or a foreign legal person, the notice to be given under section 53(1) must be accompanied by other documentation securing unambiguous identification of the shareholder or chargee.

*(3)* Subsections (1) and (2) do not apply to public limited companies having issued share certificates or whose shares have been issued through a securities centre.

**53.** The shareholder or chargee must notify the limited liability company of any change of share ownership or legal charge. The notice from the shareholder or chargee must be received by the company no later than two weeks after the date of the change of share ownership or legal charge. The notice must contain the information on the new shareholder or chargee mentioned in section 52. Where shares are transferred, the name of the new holder need not be registered, but see subsection (4). Where shares are transferred, the name of the new holder need not be registered, but see section 54(3).

*(2)* Any notice of change of share ownership or legal charge must be entered into the register of shareholders together with information on the new shareholder or chargee, provided that the articles of association do not prevent the acquisition. The company or the keeper of the register of shareholders is entitled to make such entry subject to the new shareholder or chargee proving his right. Entries in the register of shareholders must be dated.

*(3)* At the request of a shareholder or chargee, the company or the keeper of the register of shareholders must provide evidence of registration in the register of shareholders.

*(4)* The limited liability company or the keeper of the register of shareholders must endorse the registered share to the effect that registration has been made or, if so provided in the articles of association, provide evidence of registration subject to the share certificate being deposited.

**54.** The register of shareholders of a public limited company having issued bearer shares must contain information on serial numbers.

### Notice of significant shareholdings

**55.** Any holder of shares in a limited liability company must notify the company if

(i)    the voting rights attaching to the shares represent at least 5% of the voting rights of the share capital or represent at least 5% of the share capital; or

(ii)   any change occurs in a previously notified shareholding to the effect that the 5%, 10%, 15%, 20%, 25%, 50%, 90% or 100% thresholds and the thresholds of one-third or two-thirds of the voting rights or the share capital are reached or no longer reached.

*(2)* Shareholdings under subsection (1) include

(i)    shares whose voting rights are held by an enterprise controlled by the shareholder as mentioned in section 7; and

(ii)   shares provided by the shareholder as security, unless the chargee controls the voting rights and declares an intention to exercise such rights.

*(3)* The Danish Business Authority may lay down detailed rules on the holding of shares and notice of shareholdings under subsections (1) and (2). The Authority may also lay down rules departing from subsection (1) in respect of shares in public limited companies whose shares are admitted to trading on a regulated market or a multilateral trading facility, including rules on a shorter notice period.

**56.** The company must be notified under section 55 no later than two weeks after any one of the thresholds specified in section 55(1) is reached or no longer reached. The company must enter the information into the register of shareholders.

*(2)* The notice must include information on the date of acquisition or disposal of the shares, the number and, if applicable, the share class, the full name, address and civil registration (CPR) number of the shareholder or the name, central business register (CVR) number and registered office of the enterprise. If the shareholder has no civil registration (CPR) number or central business (CVR) number, such notice must be accompanied by other documentation securing unambiguous identification of the shareholder. The Danish Business Authority may lay down detailed rules in that respect.

*(3)* The notice must also include information on the denomination or nominal value of the shares and the voting rights attaching to the shares. The notice to the company may be given in connection with the notice to be given under section 53(1).

**57.** The Danish Business Authority lays down rules on the notice to be given under section 55 concerning shareholdings in state-owned public limited companies, including rules

(i)     on the definition of a shareholding; and

(ii)    that notice must be given to the company as soon as possible.

### Registration of minor holdings of bearer shares

**57 a.** A transferee of one or more bearer shares, see the third sentence of section 48(2), holding less than 5% of the voting rights of the share capital or less than 5% of the share capital must register the transfer in the IT system of the Danish Business Authority no later than two weeks after the transfer, but see subsection (4).

*(2)* The registration under subsection (1) must include information on the date of transfer, the number of bearer shares and the full name, address and civil registration (CPR) number of the transferee or the name, central business register (CVR) number and registered office of the enterprise. If the transferee has no civil registration (CPR) number or central business (CVR) number, other information securing unambiguous identification of the relevant person must be registered.

*(3)* In case of transfer of one or more bearer shares registered under subsection (1), it must be registered in the IT system of the Danish Business Authority no later than two weeks after the transfer that the transferee no longer holds the shares, and the date of the transfer must be registered, but see subsection (4).

*(4)* Subsections (1) and (3) do not apply to shares in a company whose shares are admitted to trading on a regulated market.

*(5)* Information registered under subsections (1) and (3) may be disclosed only to other public authorities. Such information may be disclosed only if such disclosure is necessary to enable the public authority to carry out its supervisory and regulatory duties and complies with the provisions of the Data Protection Act (*persondataloven*).

*(6)* The Danish Business Authority lays down detailed rules on the registration of ownership information on bearer shares in the Authority's IT system, including rules on the information that may or must be registered in the IT system by the transferee or transferor.

### Public register of shareholders

**58.** As soon as possible after being notified under section 55(1), the company must register the information in the IT system of the Danish Business Authority.

*(2)* The company must also report any change in the information notified under subsection (1) as soon possible if the effect of such change is that any one of the thresholds specified in section 55(1) is reached or no longer reached.

### Share certificates

**59.** A share certificate may cover one or more shares. A share certificate covering more than one share must state the denomination of each share or its nominal value, if any. A share certificate covering one or more bearer shares must state the serial number of each bearer share.

**60.** The central management body may resolve to issue and cancel share certificates. Share certificates may be issued only if so provided in the articles of association, but see section 64(1), or if the share certificates are negotiable instruments or issued to bearer. In that case, share certificates must be issued for all shares, unless such share certificates are issued through a securities centre, see section 7(1)(iii) of the Securities Trading Act (*værdipapirhandelsloven*).

*(2)* However, if the shares are subject to restrictions on transferability or the shareholders are required to have their shares redeemed, share certificates cannot be issued to bearer, and no transfer of share certificates to bearer will be binding on the public limited company.

*(3)* Share certificates cannot be delivered until the capital subscription has been registered in the IT system of the Danish Business Authority. Registered shares may be delivered only at the request of a shareholder or chargee to the shareholders registered in the company's register of shareholders.

*(4)* Share certificates must state the name, registered office and registration number of the company, the denomination or nominal value of the shares and for bearer shares also the serial numbers. Share certificates must also state whether the certificate is to be registered in the name of the holder, or whether it may be issued to bearer, and it must indicate the date or month of issue. Share certificates must be signed by the central management body. However, the signature may be reproduced mechanically.

*(5)* Where the articles of association provide that shares may be issued in different share classes, the share certificate must state the share class of the share.

*(6)* Share certificates must also refer to any provisions of the articles of association providing

(i)     that the shares must be registered in the name of their holder in order to carry voting rights;

(ii)    that certain shares carry special rights;

(iii)   that the shareholders are required to have their shares redeemed;

(iv)    that the shares are non-negotiable instruments;

(v)     that the shares are subject to restrictions on transferability; and

(vi)    that the shares may be cancelled without a court order.

*(7)* Share certificates must contain a proviso that a resolution may have been passed to change the provisions mentioned in subsection (6)(iii)-(v) after the issuance of the certificates, which affects the shareholder's rights. Where such changes are made, the central management body must take all reasonable steps to have the share certificates endorsed to that effect or replaced by new share certificates.

### Shares issued through a securities centre

**61.** For shares issued through a securities centre, the central management body of the limited liability company must ensure that the securities centre receives the following information as well as information on any subsequent changes as soon as possible:

(i)     The company's name, registered office, postal address and registration number in the register of limited liability companies.

Selskabsloven på engelsk (LBKG 2015 610)                                    Ikraft: 2015-03-15

(ii)   The company's share capital, including the number and denomination of the shares, and, for registered shares, also the name and address of each of the shareholders. Companies with more than one share class must list the information by share class.

(iii)  Any particular rights or obligations attaching to specific shares.

(iv)   Any requirement for the shares to be registered in order to carry voting rights.

*(2)* Shares cannot be issued through a securities centre until the company has been registered in the IT system of the Danish Business Authority.

*(3)* In connection with capital increases, the central management body must ensure that pre-emption rights and rights to bonus shares are registered together with a specification of the number of rights required for new shares. For new shares, the date from which such shares confer rights in the company must be specified. If the capital increase has not been registered in the register of limited liability companies or if a share has not yet been fully paid up, the central management body must have such information registered with a securities centre.

*(4)* The central management body must ensure that the implementation of a capital reduction and the amount of such reduction are registered with a securities centre as soon as possible after the implementation.

*(5)* The Danish Business Authority may lay down detailed rules on the information to be provided under subsections (1)-(4).

**62.** Where the shares in a public limited company are to be issued through a securities centre, the company must provide the securities centre with the information mentioned in section 61 as soon as possible.

*(2)* Any shares in the public limited company must be delivered to a custodian bank in the manner prescribed in the registration notice from the securities centre. The shareholder and the company must provide the information prescribed in the registration notice.

*(3)* The public limited company must pay all expenses relating to the issuance of shares etc. through a securities centre. The public limited company must enter into an agreement with one or more custodian banks under which the shareholders may, at the company's expense,

(i)    have their shares etc. registered and held in safekeeping by such banks; and

(ii)   receive notice of dividends etc. and an annual statement of account.

*(4)* The shareholders are entitled to appoint a custodian bank of their choice to provide the services mentioned in paras (i) and (ii) at the company's expense, provided that the bank agrees to provide such services at the same expense to the public limited company as that payable by the public limited company to the bank with which the company has an arrangement.

**63.** Where, three years after a call for registration of the company's shares with a securities centre was made, not all the shares have been registered, the central management body may by an announcement in the IT system of the Danish Business Authority request the shareholders to register their shares within six months. If the shares are not registered before the expiry of the time-limit, the central management body may sell any unregistered shares, at the shareholder's expense, through a securities dealer, see section 4(1) of the Securities Trading Act (*værdipapirhandelsloven*). The public limited company is entitled to deduct the expenses incurred in connection with the announcement and sale of the shares from the

sales proceeds. Any sales proceeds not claimed within three years of the sale will accrue to the public limited company.

## Cancellation of share certificates

**64.** Where a company's shares are admitted to trading on a regulated market, the shareholders are not entitled to demand that share certificates are issued.

*(2)* Where a limited liability company has issued share certificates, the company may request the shareholders to return the certificates for cancellation by giving a notice of at least three months in accordance with the provisions of this Act and the company's articles of association concerning the notice of annual general meetings and by notifying in writing all shareholders registered in the register of shareholders. The rights conferred on a shareholder cannot then be exercised until the share certificate has been returned to the limited liability company. However, this does not apply to the right to receive dividends and other distributions and the right to subscribe for new shares in connection with a capital increase.

*(3)* Subsection (1) does not apply to shares that are negotiable instruments or bearer shares.

## Transfer of shares

**65.** Any transfer of a share that has not been issued through a securities centre or for which no share certificate has been issued in ownership or by way of security will not be effective against the transferor's creditors, unless the limited liability company or the keeper of the register of shareholders, see section 50(3), has received notice of such transfer from the transferor or the transferee.

*(2)* Where a shareholder has transferred the same share to more than one transferee and the share falls within subsection (1), any subsequent transferee will defeat the rights of the prior transferees if the limited liability company or the keeper of the register of shareholders, see section 50(3), has first received notice of the transfer to the subsequent transferee and the subsequent transferee acted in good faith when the notice reached the company or the keeper of the register of shareholders.

**66.** Where a share certificate is transferred in ownership or by way of security, the provisions of section 14(1) and (2) of the Debt Instruments Act (*gældsbrevsloven*) apply correspondingly. However, such provisions do not apply if, in accordance with the articles of association of the limited liability company, a clear and unambiguous reservation has been made in the share certificate, eg providing that the certificate is a non-negotiable instrument. Unless the owner's name is stated on the certificate, a share certificate issued to bearer remains a bearer security, even if it is endorsed by the public limited company to the effect that the share is registered in the name of the holder.

*(2)* The provisions of sections 24 and 25 of the Debt Instruments Act (*gældsbrevsloven*) apply to dividend coupons.

*(3)* Share certificates may be cancelled without a court order only where the articles of association of the limited liability company and the share certificate provide for such cancellation. Notice of cancellation must be published in the IT system of the Danish Business Authority as follows:

(i)    by at least four weeks' notice for cancellation of share certificates that are non-negotiable instruments; and

(ii)   by at least six months' notice for cancellation of other share certificates.

*(4)* The provisions of subsection (3) apply correspondingly to coupons etc. Coupon sheets and the accompanying share certificates may be cancelled without a court order, unless otherwise provided in the articles of association.

---

Copyright © 2015 Karnov Group Denmark A/S

## Part 5. Redemption and restrictions on transferability

### Right of first refusal

**67.** Where the articles of association grant a right of first refusal to shareholders or others in case of a transfer of shares, the articles of association must include detailed provisions on such right, including the time-limit for exercise of the right of first refusal. If such provisions result in a price or other terms that are obviously unfair, the provisions may be set aside in full or in part by the courts.

*(2)* For the purpose of the court proceedings, see the second sentence of subsection (1), the parties may apply the provisions of subsection (3) and have an expert appointed to assess whether the price is obviously unfair and to determine the price.

*(3)* Where the articles of association do not include any provisions concerning the calculation of the price payable on the exercise of a right of first refusal, the price must, in the absence of agreement, be set at the value of the shares as assessed by an expert appointed by the court for the district in which the registered office of the limited liability company is situated. The expert's assessment may be brought before the courts. Such legal proceedings must be commenced no later than three months from receipt of the expert's assessment. All expenses for the expert must be paid by the shareholder requesting the assessment, but may be imposed on the company if the expert's assessment differs significantly from the price and is applied in full or in part as the basis of calculation.

*(4)* Where more than one share is to be transferred, the right of first refusal cannot be exercised for only part of the shares, unless otherwise provided in the articles of association.

### Consent to sale

**68.** Where the articles of association provide that the transfer of shares is subject to consent, a decision in that respect must be made as soon as possible after receipt of a request for consent. The person having requested consent must be notified of the decision as soon as possible. If no notice has been received four weeks from receipt of the request, consent will be deemed to have been given.

*(2)* Where the articles of association provide that the transfer of shares is subject to the consent of the limited liability company, the central management body will decide whether to give such consent, unless such decision is to be made by the general meeting. If consent is withheld, the reason therefor must be stated in the notice, see subsection (1).

### Redemption

**69.** If the articles of association include provisions on redemption, such provisions must specify the terms of redemption and the persons entitled to demand redemption. Section 67 applies correspondingly. The shares held by each shareholder must be redeemed in aggregate, unless otherwise provided in the articles of association.

**70.** Where a shareholder holds more than nine-tenths of the shares in a limited liability company and a corresponding share of the votes, such shareholder may demand that the other minority shareholders have their shares redeemed by that shareholder. In that case, the other minority shareholders must be requested in accordance with the provisions on notice of general meetings to transfer their shares to the redeeming shareholder within a period of four weeks after the request. The minority shareholders must also be requested to transfer their shares to the redeeming shareholder by way of an announcement in the IT system of the Danish Business Authority.

*(2)* The terms of redemption and the valuation basis of the redemption price must be stated in the request. It must also be stated that, in the absence of agreement on the redemption price, such price

will be determined under the provisions of section 67(3) by an expert appointed by the court for the district in which the registered office of the limited liability company is situated. If the redemption is carried out in connection with a takeover bid under Part 8 of the Securities Trading Act (*værdipapirhandelsloven*), the provisions of that Act on price determination will apply to the redemption, unless a minority shareholder makes a request to the redeeming shareholder that the price is determined by an expert, but see subsection (4). The request must also include the information mentioned in the first sentence of subsection (3). The request must also include a statement by the central management body of the limited liability company on the general terms of redemption. Finally, the request must state that, after the expiry of the time-limit set out in the second sentence of subsection (1), the shares will be registered in the register of shareholders of the limited liability company in the name of the redeeming shareholder in accordance with section 72(1) and (2). The right of the former but now redeemed minority shareholders to demand an expert valuation under section 72(3) will not be lost. The same information must be stated in the announcement under the third sentence of subsection (1).

*(3)* Where the expert's valuation or a decision made under section 67(3) results in a redemption price that is higher than that offered by the redeeming shareholder, such higher price will also be valid for the minority shareholders of the same share class who have not requested any valuation. The expenses relating to the price determination must be paid by the shareholder who has requested such determination. Where a valuation or decision results in a redemption price that is higher than that offered by the redeeming shareholder, the court having appointed the expert may order the redeeming shareholder to pay the expenses in full or in part.

*(4)* Where the redemption is carried out in connection with a voluntary offer, the price will be deemed to be reasonable in any case if the offeror has acquired no less than 90% of the voting capital covered by the offer. Where the redemption is carried out in connection with a mandatory offer, the consideration offered will be deemed to be reasonable in any case.

**71.** Where an acquisition of shares in a limited liability company which has one or more shares admitted to trading on a regulated market in an EU/EEA country results in redemption under section 70(1) or in an obligation to make a general offer under section 31(1) of the Securities Trading Act (*værdipapirhandelsloven*), the provisions on price determination laid down under the Securities Trading Act will apply, unless a minority shareholder requests that the price is determined by an expert, see section 67(3).

*(2)* Where the redemption is carried out in connection with a takeover bid, see the third sentence of section 70(2), the consideration for the redemption may be in the form specified in the bidder's original takeover bid, or it may be paid in cash. Minority shareholders are always entitled to demand cash payment as consideration for redemption.

*(3)* Any request for redemption in connection with a takeover bid, see the third sentence of section 70(2), must be made no later than three months after the expiry of the bid period set out in the bidder's takeover bid.

*(4)* The Danish Business Authority lays down rules on bidders' redemption of shares held by the other shareholders, including rules on how to determine the share acquisitions in connection with a takeover bid, see the third sentence of section 70(2).

**72.** Where not all minority shareholders have transferred their shares to the redeeming shareholder within the time-limit set out in the second sentence of section 70(1), the redeeming shareholder must deposit an amount in favour of the relevant minority sharehol-

ders equal to the redemption price for the non-transferred shares as soon as possible, see the Escrow Account Act (*deponeringsloven*).

*(2)* Upon the deposit, any share certificates for the redeemed shares will be deemed to have been cancelled. The company's central management body must ensure that new share certificates are endorsed to the effect that they replace the cancelled share certificates.

*(3)* Subject to a notice of three months, the former but now redeemed shareholders must be informed by an announcement in the IT system of the Danish Business Authority that the right to demand an expert valuation under section 67(1) will be lost at the expiry of the time-limit. The date of any expert valuation or court order under section 67(3) must also be stated.

**73.** If a shareholder holds more than nine-tenths of the shares in a company and a corresponding share of the votes, each minority shareholder of the company may demand redemption by that shareholder. Section 67(3), the second sentence of section 70(2) and the second and third sentences of section 70(3) apply correspondingly.

### Reduction of share capital by redemption of shares

**74.** Provisions on the reduction of the share capital of a limited liability company by redemption of shares (reduction of share capital by redemption of shares), including provisions on the redemption process may be included in the articles of association.

*(2)* Payment of the shareholders under subsection (1) may be made by the issuance of bonds if so provided in the articles of association.

*(3)* The central management body may initiate the reduction of the share capital by redemption of shares in respect of shares subscribed for after the provisions on capital reduction have been included in the articles of association. The central management body may adopt the necessary amendments to the articles of association.

*(4)* A capital reduction by redemption of shares may be implemented without publication in the IT system of the Danish Business Authority of a request to the creditors of the limited liability company to file their claims against the company, provided that the following conditions are met:

(i)   The reduction is implemented by way of cancellation of shares that have been fully paid up.

(ii)  The shares have been acquired without payment of consideration or against payment of an amount not exceeding the amount which is distributable for dividend purposes, including by the issuance of bonds.

(iii) An amount equal to the nominal value of the cancelled shares is transferred to a special reserve.

**75.** (Repealed).

## Part 6. General meetings

### Shareholders' right to pass resolutions

**76.** The shareholders' right to pass resolutions is exercised at the general meetings of the limited liability company.

*(2)* Shareholders may pass specific resolutions at general meetings without complying with the requirements of this Act and the company's articles of association as to form and notice if so agreed by all shareholders, but see subsection (5).

*(3)* Resolutions passed by the shareholders at general meetings may, in general, be passed without complying with the provisions of this Act on form and notice, but see subsection (5). Such resolutions must be passed unanimously, and provisions to that effect must be included in the articles of association. Section 106 applies to any amendment to or repeal of such provisions. However, if so

requested by shareholders holding more than 10% of the share capital, general meetings must be held by physical attendance.

*(4)* The central management body may decide that persons other than those specified in this Act are entitled to attend general meetings, unless otherwise provided in the articles of association.

*(5)* The shareholders of state-owned limited companies and public limited companies whose shares are admitted to trading on a regulated market in an EU/EEA country cannot pass resolutions without complying with the provisions of this Act on form and notice, see subsections (2) and (3). This also applies to public limited companies whose general meetings must be open to the press as provided by statute or executive order.

*(6)* General meetings of state-owned public limited companies are open to the press.

### Electronic general meetings

**77.** Unless otherwise provided in the company's articles of association, the central management body may decide that, in addition to the right to attend the general meeting physically, shareholders may be allowed to attend the general meeting electronically and there vote electronically, without being physically present, ie the general meeting is partially electronic, see subsections (3)-(6).

*(2)* The general meeting may resolve to hold the general meeting electronically without any physical attendance, ie the general meeting is completely electronic, see subsections (3)-(6). Any resolution to that effect must explain how electronic media may be used to attend the general meeting. The resolution must be included in the company's articles of association. Section 106 applies to the resolution and to any amendments made to the resolution.

*(3)* The central management body lays down the detailed requirements to the electronic systems to be used to conduct a partially or completely electronic general meeting. The notice calling the general meeting must state the requirements and explain how shareholders may register for electronic attendance, and where they may find information on the procedure for electronic attendance at general meetings.

*(4)* A general meeting may be held as a partially or completely electronic general meeting only if the central management body of the limited liability company ensures that the general meeting is conducted in a proper manner. The system used must be set up in a manner meeting the requirements of this Act for general meetings, including the shareholders' right to attend, speak and vote at general meetings. The system used must also be able to record in a reliable manner the shareholders attending the general meeting, the capital and voting rights represented by them and the outcome of the voting.

*(5)* Where a public limited company has issued bearer shares without specifying any date of registration, see section 84, the notice calling the general meeting, see subsection (3), must also explain how the holders of such shares must prove their right to attend the general meeting electronically.

*(6)* The provisions of this Act on general meetings apply with the necessary changes to general meetings conducted as partially or completely electronic general meetings.

### Right to attend and vote etc.

**78.** All shareholders are entitled to attend and speak at general meetings, but see section 84(1).

**79.** If a share is jointly held by more than one shareholder, the rights attaching to the share may only be exercised against the limited liability company by a proxy jointly appointed by such shareholders.

**80.** Shareholders are entitled to attend general meetings by proxy.

Selskabsloven på engelsk (LBKG 2015 610)                                    Ikraft: 2015-03-15

*(2)* The proxy must show a written and dated instrument of proxy. The instrument of proxy may be revoked at any time. Notice of revocation must be given in writing and may be given to the limited liability company. Shareholders may appoint a proxy and revoke the instrument of proxy electronically.

*(3)* Where a proxy has been appointed by more than one shareholder, the proxy may vote differently on behalf of the different shareholders.

*(4)* A public limited company whose shares are admitted to trading on a regulated market must make hard copy or electronic proxy forms available to any shareholder entitled to vote at the general meeting and must offer the shareholders at least one electronic method of notifying the company of the appointment of a proxy. The appointment of a proxy, the notice of the appointment to the public limited company and the issuance of any voting instructions to the proxy may only be subject to the formal requirements that are necessary to identify the shareholder and the proxy and to verify the contents of the voting instructions, and only where such requirements are proportionate to the objectives. This also applies to the revocation of instruments of proxy.

**81.** Shareholders and proxies attending general meetings may be accompanied by an advisor.

**82.** Shareholders' agreements are not binding on the limited liability company or with regard to resolutions passed at general meetings.

**83.** If a public limited company whose shares are admitted to trading on a regulated market has designated a bank through which the company's shareholders may exercise their financial rights, the company must notify the shareholders.

**84.** In public limited companies whose shares are admitted to trading on a regulated market, a shareholder's right to attend a general meeting and to vote in respect of his shares must be determined on the basis of the shares held by the shareholder at the date of registration.

*(2)* The shareholding and voting rights of a shareholder must be determined at the date of registration on the basis of the number of shares held by the shareholder according to the register of shareholders and any notice of ownership received by the public limited company for the purpose of registration in the register of shareholders.

*(3)* The date of registration is one week before the general meeting.

*(4)* The articles of association may provide that a shareholder is required to notify the company of his attendance at least three days before the general meeting. Such notification does not prevent the shareholder from subsequently deciding to attend the general meeting by proxy.

*(5)* In public limited companies whose shares are not admitted to trading on a regulated market and in private limited companies, the articles of association may provide as follows:

(i)    Subsections (1)-(3) apply correspondingly.
(ii)   Subsection (4) applies correspondingly.

**85.** Voting rights cannot be exercised where such rights attach to treasury shares or shares in a parent held by a subsidiary. Treasury shares and shares in a parent held by a subsidiary must be disregarded in the calculation of voting rights and shareholdings. The second sentence does not apply to the calculation of voting rights and shareholdings under section 55.

**86.** A shareholder cannot vote on his own behalf, by proxy or as a proxy for others at a general meeting concerning legal proceedings against the shareholder or the shareholder's liability to the company or concerning legal proceedings against others or the liability of

others if the shareholder has a material interest in the matter that may conflict with the interests of the limited liability company.

### Time and place

**87.** General meetings must be held at the registered office of the limited liability company, unless the articles of association specify that general meetings must or may be held elsewhere. If required by special circumstances, a specific general meeting may be held elsewhere.

**88.** The annual general meeting must pass resolutions on:

(i)    approval of the annual report;
(ii)   appropriation of profit or loss as recorded in the approved annual report;
(iii)  any change to a resolution concerning the auditing of the limited liability company's future financial statements etc. if the company is not subject to audit obligations under the Financial Statements Act (*årsregnskabsloven*) or any other legislation; and
(iv)   any other business to be transacted by the general meeting under the company's articles of association.

*(2)* The annual general meeting must be held in time for the approved annual report to be received by the Danish Business Authority before the expiry of the time-limit set out in the Financial Statements Act. The annual report must be submitted to the general meeting.

### Extraordinary general meetings

**89.** Extraordinary general meetings must be held at the request of the central management body, the supervisory board or the auditor elected by the general meeting.

*(2)* In private limited companies, any shareholder may request an extraordinary general meeting. Extraordinary general meetings for the transaction of specific business must be called no later than two weeks from receipt of a request to that effect.

*(3)* In public limited companies, shareholders who hold 5% of the share capital or any smaller fraction specified in the articles of association or who are so authorised under the articles of association may request an extraordinary general meeting in writing. Extraordinary general meetings for the transaction of specific business must be called no later than two weeks from receipt of a request to that effect.

### Agenda

**90.** Any shareholder is entitled to have a specific issue included on the agenda for an annual general meeting, but see subsection (2).

*(2)* In public limited companies, shareholders must submit a written request to the central management body in order to have a specific issue included on the agenda for the annual general meeting. Shareholders are entitled to have the issue included on the agenda for the general meeting if the request is made at least six weeks before the general meeting. If the request is received less than six weeks before the general meeting, the central management body will decide whether the request has been made in time for the issue to be included on the agenda.

*(3)* At least eight weeks before the scheduled date of the annual general meeting, public limited companies whose shares are admitted to trading on a regulated market must announce the scheduled date of the meeting as well as the time-limit for any requests by shareholders to have a specific issue included on the agenda, unless both dates are specified in the articles of association.

**91.** Any business not included on the agenda may be transacted by the general meeting only if all shareholders consent. However, the

annual general meeting may at any time pass resolutions under section 88(1) and transact business to be transacted at annual general meetings under the articles of association, and it may also be resolved to call an extraordinary general meeting for the transaction of specific business.

## Electronic communication

**92.** The general meeting may pass a resolution on electronic communication, ie on the use of electronic exchange of documents and emails in the communication between the limited liability company and its shareholders instead of sending and submitting documents in hard copy under this Act, see subsections (2) and (3). Consequently, electronic communication may be used between the limited liability company and its shareholders, notwithstanding any requirements as to form contained in the provisions governing the documents and notices in question, but see subsection (5) and section 8c.

*(2)* The resolution passed under subsection (1) must specify the notices etc. covered by the resolution and how electronic communication must or may be used. The resolution must also specify where the shareholders may find information on the requirements to the systems to be used and the procedures to be followed when communicating electronically.

*(3)* The resolution passed by the general meeting under subsections (1) and (2) must be included in the articles of association, but see subsection (4). Section 106 applies to the resolution and to any amendments made to the resolution.

*(4)* Even if the general meeting has not resolved to introduce electronic communication between the limited liability company and its shareholders under subsection (1), the company and one or more shareholders may agree to communicate electronically.

*(5)* The right to use electronic communication mentioned in subsection (1) cannot replace public notices or announcements to be published in the Danish Official Gazette (*Statstidende*) or in the IT system of the Danish Business Authority where the limited liability company is required by statute to notify its shareholders by notice or announcement in the Danish Official Gazette or in the IT system of the Danish Business Authority. This does not apply to the situations mentioned in the second sentence of section 95(3).

*(6)* In the situations mentioned in subsections (1) and (4), limited liability companies must request that the shareholders recorded in the register of shareholders provide an electronic address to which notices etc. may be sent. The shareholders are responsible for ensuring that the company has the correct electronic address. The limited liability company must pay its own expenses for electronic communication.

## Notice of general meetings

**93.** General meetings must be called and organised by the central management body.

*(2)* If a limited liability company has no central management body or if the central management body fails to call a general meeting required to be held by statute, the articles of association or a resolution passed by the general meeting, such general meeting will be called by the Danish Business Authority at the request of a member of the company's supreme or central management body, any auditor elected by the general meeting, see section 144(1), or a shareholder. The Authority may set the agenda for the general meeting.

*(3)* A general meeting called by the Danish Business Authority must be presided over by a person authorised by the Authority for such purpose, and the central management body of the limited liability company must provide such person with the company's register of shareholders, minutes of general meetings and auditor's

records if the company is required to keep such records under the Act on Approved Auditors and Auditing Firms (*revisorloven*) or any other legislation or if in other cases the auditor has agreed with the company to keep such records. All expenses relating to the general meeting will be paid by the Danish Business Authority, but must be reimbursed by the limited liability company.

*(4)* Notwithstanding the provisions of section 77, the Danish Business Authority may decide that a general meeting called by the Authority under subsection (2) is to be attended physically or held as a partially or completely electronic general meeting and that, notwithstanding section 87, the general meeting must be held in the municipality in which the Authority is situated.

**94.** Notice of general meetings must not be given more than four weeks before the general meeting and, unless the articles of association provide for a longer period of notice, less than two weeks before the general meeting. If the general meeting is adjourned to a date more than four weeks later, notice of the adjourned meeting must be given.

*(2)* In public limited companies whose shares are admitted to trading on a regulated market, notice of general meetings must not be given more than five weeks before the general meeting and, unless the articles of association provide for a longer period of notice, less than three weeks before the general meeting, but see sections 339(4) and 343.

**95.** Notice of general meetings must be given in accordance with the provisions of the articles of association.

*(2)* The general meeting may resolve that notice must be given on the limited liability company's website, but see subsection (3). Such resolution must be included in the company's articles of association. Section 106 applies to the resolution and any amendments made to the resolution.

*(3)* In public limited companies, notice of general meetings must be given in writing to all shareholders registered in the register of shareholders making a request to that effect. If the shares in a public limited company may be issued to bearer, the notice calling the general meeting must be published in the IT system of the Danish Business Authority.

*(4)* Regardless of whether notice of general meetings is also given by other means, notice of a general meeting of a public limited company whose shares are admitted to trading on a regulated market must be published on the company's website. The publication expenses must be paid by the company.

**96.** The notice calling the general meeting must specify the time and place of the meeting as well as an agenda setting out the business to be transacted at the meeting. If any proposed resolution to amend the articles of association is to be considered at the general meeting, the main substance of the proposed resolution must be stated in the notice.

*(2)* Notices of general meetings at which resolutions are to be passed under section 77(2), section 92(1) or section 107(1) or (2) must include the full text of the proposed resolution to amend the articles of association.

**97.** In public limited companies whose shares are admitted to trading on a regulated market, the notice calling the general meeting must include the following information in addition to that specified in section 96:

(i)    a description of the amount of the share capital and the shareholders' voting rights;

(ii)    a clear and accurate description of the procedures to be followed by the shareholders to enable them to attend and vote at the general meeting, see subsection (2);

(iii)   the date of registration, see section 84(1), specifying that only persons being shareholders at that date are entitled to attend and vote at the general meeting;

(iv)   information on where and how the full, unabridged texts of the documents mentioned in section 99(1)(iii) and (iv) as well as the agenda for the meeting may be obtained; and

(v)   the website on which the information mentioned in section 99 will be available.

*(2)* A clear and accurate description of the procedures to be followed by the shareholders to enable them to attend and vote at the general meeting as set out in subsection (1)(ii) must include

(i)   the shareholders' right to ask questions, including any time-limit, see section 102(3);

(ii)   the procedure for voting by proxy, particularly the voting forms to be used for voting by proxy, and the means of communication that are accepted by the limited liability company in connection with electronic notice of the appointment of a proxy; and

(iii)   the procedures for voting by post or electronic means.

*(3)* In state-owned public limited companies, the notice calling the general meetings must include all proposed resolutions to be considered at the meeting and, in the case of extraordinary general meetings, also the reason for holding the meeting. The notice must be published in the IT system of the Danish Business Authority no later than when it is communicated to the shareholders.

**98.** In public limited companies, the agenda and the complete proposed resolutions and, in the case of the annual general meeting, also the audited annual report must be available for inspection by the shareholders no later than two weeks before the general meeting, but see section 99.

**99.** A public limited company whose shares are admitted to trading on a regulated market must make at least the following information available to its shareholders on the company's website for a consecutive period of three weeks beginning at least three weeks before the general meeting, including the date of the meeting:

(i)   The notice calling the general meeting.

(ii)   The total number of shares and voting rights at the date of the notice, including the total number of shares in each share class if the company's share capital is divided into two or more share classes.

(iii)   The documents to be submitted to the general meeting.

(iv)   The agenda and the complete proposed resolutions.

(v)   The forms to be used for voting by proxy and by post, if applicable, unless such forms are sent directly to the shareholders. If, for technical reasons, such forms cannot be available via the Internet, the limited liability company must specify on its website how such forms may be obtained in hard copy. In that case, the limited liability company must send the forms to any shareholder making a request to that effect. All expenses relating thereto must be paid by the public limited company.

*(2)* Where the notice calling the general meeting under section 339(4) and section 343 is sent less than three weeks before the meeting, the time-limit specified in subsection (1) will be reduced accordingly.

## General meetings

**100.** The language of general meetings must be Danish, but see subsections (2)-(4).

*(2)* The general meeting may resolve by a simple majority of votes to conduct the meeting in a language other than Danish, offering all attendees simultaneous interpretation to and from Danish. Inclu-

sion of such resolution in the articles of association is not subject to a separate resolution by the general meeting.

*(3)* The general meeting may resolve by a simple majority of votes to conduct the meeting in Swedish, Norwegian or English without offering all attendees simultaneous interpretation to and from Danish. Inclusion of such resolution in the articles of association is not subject to a separate resolution by the general meeting.

*(4)* The general meeting may resolve to conduct the meeting in a language other than Danish, Swedish, Norwegian or English without offering all attendees simultaneous interpretation to and from Danish. Any resolution to that effect must be included in the articles of association, and section 107(2)(vi) and section 110 apply to the resolution and any amendments made to the resolution.

*(5)* Where it has been resolved to conduct the general meeting in a language other than Danish, the general meeting may resolve by a simple majority of votes that all future general meetings will be conducted in Danish. Inclusion of such resolution in the articles of association is not subject to a separate resolution by the general meeting. If the resolution to conduct general meetings in a language other than Danish is already included in the articles of association, the resolution passed under the first sentence of this subsection must specify whether the new resolution is to be included in the articles of association, or whether the articles of association will no longer include any provision on the language of general meetings.

*(6)* Documents prepared for internal use by the general meeting before or after the general meeting must be in Danish, but see subsections (7) and (8).

*(7)* The general meeting may resolve by a simple majority of votes that the documents mentioned in subsection (6) are to be prepared in Swedish, Norwegian or English. Inclusion of such resolution in the articles of association is not subject to a separate resolution by the general meeting.

*(8)* The general meeting may resolve that the documents mentioned in subsection (6) are to be prepared in a language other than Danish, Swedish, Norwegian or English. Any resolution to that effect must be included in the articles of association, and section 107(2)(vii) and section 110 apply to the resolution and to any amendments made to the resolution.

**100 a.** The general meeting may resolve by a simple majority of votes that the annual report must be prepared and presented in English. The resolution passed by the general meeting must be included in the articles of association. Inclusion of such resolution in the articles of association is not subject to a separate resolution.

**101.** The general meeting elects the chairman of the meeting, who may or may not be a shareholder, unless otherwise provided in the articles of association.

*(2)* The chairman presides over the general meeting and ensures that it is conducted in a proper and appropriate manner. The chairman has all the necessary powers, including the right to arrange discussions, prepare the issues to be voted on, decide when to close discussions, cut off speakers and, if necessary, remove attendees from the general meeting.

*(3)* Minutes of the proceedings at general meetings must be taken, and such minutes must be signed by the chairman. All resolutions must be recorded in the limited liability company's minute book.

*(4)* No later than two weeks after the general meeting, the minutes of the general meeting or a certified copy of the minutes must be available to the shareholders.

*(5)* Public limited companies whose shares are admitted to trading on a regulated market must, for every resolution passed, specify at least

(i)   the number of shares for which valid votes have been cast;

(ii)  the proportion of the share capital represented by such votes;

(iii) the total number of valid votes;

(iv)  the number of votes in favour of and against each proposed resolution; and

(v)   the number of abstentions, if relevant.

*(6)* Where none of the shareholders of a public limited company whose shares are admitted to trading on a regulated market request a complete account of the voting procedure under subsection (5), only the voting results need to be established in order to ensure that each resolution has been passed by the required majority.

*(7)* A public limited company whose shares are admitted to trading on a regulated market must announce the voting results on its website no later than two weeks after the general meeting.

*(8)* State-owned public limited companies must send a certified copy of the minutes of the general meeting to the Danish Business Authority on or before the date on which the minutes will be available to the shareholders, see subsection (4).

**102.** At the request of a shareholder and if deemed by the supreme management body not to have any significant detrimental effect on the limited liability company, the company's management must disclose to the general meeting the information available on all matters of importance to the assessment of the annual report and the company's general position or to any proposed resolution to be passed by the general meeting. The duty to disclose such information also applies to the limited liability company's relationship with other companies in the same group.

*(2)* Where the answer to a request requires information that is not available at the general meeting, such information must be available to the shareholders no later than two weeks after the meeting, and it must also be sent to any shareholder making a request to that effect.

*(3)* The central management body may decide that shareholders are allowed to ask questions about the items on the agenda or documents etc. to be used by the general meeting before the expiry of a time-limit set out in the articles of association. The central management body may adopt the necessary amendments to the articles of association.

*(4)* In public limited companies whose shares are admitted to trading on a regulated market and in state-owned public limited companies, the duty of disclosure under subsections (1) and (2) also applies to questions submitted in writing by a shareholder less than three months before the general meeting. The answer may be given in writing, in which case both the question and the answer must be submitted to the shareholders at the beginning of the general meeting. No answer is required if the shareholder is not represented at the general meeting. Questions having the same contents may be answered together. Questions will be deemed to have been answered if the relevant information is available on the website of the public limited company in the form of a Q&A feature.

**103.** The auditor elected by the general meeting of the limited liability company, if applicable, see section 144(1), is entitled to attend general meetings. Any auditor elected by the general meeting of the limited liability company, see section 144(1), must attend the general meeting if so requested by a member of the supreme or central management body or by a shareholder.

*(2)* At the general meeting, any auditor elected by the general meeting of the limited liability company, see section 144(1), must answer questions about the annual report etc. to be considered at the meeting.

*(3)* Any auditor elected by the general meeting of the limited liability company, see section 144(1), is entitled to attend meetings of the supreme management body when the annual report etc. is considered. The auditor must attend such meetings if so requested by just one member of the supreme management body.

*(4)* In public limited companies whose securities are admitted to trading on a regulated market and in state-owned public limited companies, the auditor elected by the general meeting of the company must attend the annual general meeting.

## Voting

**104.** Each shareholder must vote in respect of his shares in aggregate, unless otherwise provided in the articles of association, but see subsection (3).

*(2)* Shareholders may vote by post, ie by casting their votes in writing, before the general meeting. In limited liability companies whose securities are not admitted to trading on a regulated market in an EU/EEA country, this provision may be departed from in the articles of association. Requirements and restrictions may be imposed on the casting of votes in writing only if they are necessary to ensure identification of the shareholders and are reasonable taking the objectives into account.

*(3)* In public limited companies a shareholder acting in a professional capacity on behalf of other natural or legal persons (clients) is entitled to exercise the voting rights attaching to some of the shares in a manner that is not identical with the exercise of the voting rights attaching to other shares.

**105.** Unless otherwise provided in this Act or in the articles of association of the limited liability company, all resolutions at general meetings are passed by a simple majority of votes. In case of an equality of votes, the proposed resolution has not been passed. If the shareholders are to elect a person or vote on an issue involving several options, the election will be decided or the resolution passed by a relative simple majority of votes. In case of an equality of votes, the election of a person will be decided by lot, unless otherwise provided in the articles of association.

**106.** Resolutions to amend the articles of association must be passed by at least two-thirds of the votes cast as well as at least two-thirds of the share capital represented at the general meeting, but see subsection (2). Resolutions to amend the articles of association must also meet any other requirements set out in the articles of association and comply with the special provisions of section 107.

*(2)* Resolutions to amend the articles of association under section 74(3), section 102(3), section 175(2), section 176(2), section 247(1), section 265(1), section 282(1) or section 302(1) cannot be passed by the general meeting.

**107.** Resolutions to amend the articles of association resulting in an increase of the shareholders' obligations to the limited liability company are valid only if all shareholders agree.

*(2)* The following resolutions to amend the articles of association are valid only if passed by at least nine-tenths of the votes cast as well as at least nine-tenths of the share capital represented at the general meeting:

(i)   Resolutions reducing the shareholders' right to receive dividends or distributions of the company's funds, including subscriptions for shares at a favourable price, to the benefit of persons other than the shareholders and employees of the limited liability company or its subsidiary.

(ii)  Resolutions restricting the transferability of the shares or tightening existing restrictions, including the adoption of provisions making share transfers subject to the consent of the limited liability company or preventing any shareholder from holding shares that exceed a specified part of the share capital.

(iii)  Resolutions requiring the shareholders to have their shares redeemed on equal terms, except in connection with the dissolution of the company or in the situations set out in Part 5 of this Act.

(iv)  Resolutions restricting the shareholders' right to exercise voting rights in respect of their own or other shareholders' shares to a specified part of the votes or the voting share capital.

(v)  Resolutions providing that, in connection with a demerger of the company, the shareholders will not receive any votes or shares in each of the transferee companies in the same proportion as in the transferor company.

(vi)  Resolutions providing that general meetings must be conducted in a language other than Danish, Swedish, Norwegian or English without offering all attendees simultaneous interpretation to and from Danish.

(vii)  Resolutions providing that internal documents, ie documents prepared in connection with or after the general meeting, must be in a language other than Danish, Swedish, Norwegian or English.

*(3)* Where the limited liability company has more than one share class, any proposed amendment to the articles of association which, if passed, will change the legal relationship between the share classes, either by changing existing differences or by creating new differences between the share classes, will have legal effect only if adopted by shareholders at the general meeting holding at least two-thirds of the shares of the share class whose rights will be impaired.

### Invalid resolutions by general meetings

**108.** The general meeting cannot pass resolutions which are clearly likely to provide certain shareholders or others with an undue advantage over the other shareholders or the limited liability company.

**109.** A shareholder or a member of management may commence legal proceedings concerning a resolution passed by the general meeting that has not been lawfully passed or conflicts with this Act or the articles of association of the limited liability company.

*(2)* Legal proceedings must be commenced no later than three months after the resolution was passed. Otherwise the resolution will be deemed to be valid.

*(3)* Subsection (2) does not apply where

(i)  the resolution could not be lawfully passed even with the consent of all shareholders;

(ii)  this Act or the articles of association of the limited liability company require the consent of all or certain shareholders, and such consent has not been given;

(iii)  there has been a serious failure to comply with the provisions on notice of general meetings; or

(iv)  the shareholder having commenced legal proceedings after the expiry of the time-limit set out in subsection (2), but no later than 24 months after the resolution was passed, has had reasonable grounds for the delay and the court finds, for this reason and in view of the other circumstances in general, that it would be clearly unfair to apply the provisions of subsection (2).

*(4)* Where the court finds that the resolution is subject to subsection (1), such resolution must be changed or declared invalid by the court. However, the resolution may be changed only if a claim is made to that effect and the court is able to establish the proper contents of the resolution. The decision of the court also applies to the shareholders not having commenced legal proceedings.

### Right of redemption

**110.** Shareholders having opposed the amendments to the articles of association mentioned in section 107(2)(i)-(iv), (vi) and (vii) at the general meeting may demand that the limited liability company redeems their shares, provided that such demand is made in writing no later than four weeks after the general meeting.

*(2)* However, if the shareholder has been asked to declare before the voting procedure whether he wishes to exercise his right of redemption under subsection (1), he must declare his wish at the general meeting to preserve the right.

*(3)* On redemption, the limited liability company buys the shareholder's shares at a price equal to their value, which, in the absence of agreement, must be determined by experts appointed by the court for the district in which the registered office of the limited liability company is situated. The expenses for the experts must be paid by the shareholder requesting the valuation, but may be imposed on the company if the valuation differs significantly from the price proposed by the company and if the valuation is used in full or in part as the basis of redemption. Either party may bring the expert's valuation before the courts. Legal proceedings in that respect must be commenced no later than three months from receipt of the expert's valuation.

## Part 7. Management of limited liability companies etc.

### Choice of management structure

**111.** A limited liability company may elect one of the following management structures:

(i)  A management structure where the limited liability company is managed by a board of directors in charge of the overall and strategic management. The board of directors must appoint an executive board to be in charge of the day-to-day management of the company. The executive board may either consist of one or more persons who are also members of the board of directors or of persons who are not members of the board of directors. In both cases, the persons in charge of the day-to-day management will be designated as executive officers, and together they make up the executive board of the limited liability company. The majority of the members of the board of directors of a public limited company must not be executive officers of the company. No executive officer of a public limited company may be chairman or vice-chairman of the company's board of directors.

(ii)  A management structure where the limited liability company is managed by an executive board. In a public limited company, the executive board must be appointed by a supervisory board supervising the executive board. No member of the executive board may be a member of the supervisory board.

*(2)* In a public limited company, the board of directors or the supervisory board must have at least three members.

*(3)* A private limited company in which the employees have decided to exercise their rights under section 140 to elect members to the supreme management body must have a board of directors or a supervisory board. If a private limited company has no board of directors or supervisory board, but is required to have one such board under the first sentence of this subsection, any proposed resolution to amend the articles of association to the effect that the company must have a board of directors or a supervisory board will be deemed to have been duly passed if just one shareholder voted in favour.

*(4)* The provisions of this Act governing members of the board of directors and the supervisory board apply correspondingly to alternate members.

## General provisions on management and supervisory functions

**112.** The members of the management of a limited liability company must have full legal capacity and must not be under guardianship under sections 5 or 7 of the Guardianship Act (*værgemålsloven*).
*(2)* A sole proprietorship or partnership may serve as an executive officer in a public limited shipping company, provided that the proprietors or partners meet the requirements set out in subsection (1).

**113.** The members of the board of directors or the supervisory board and the executive officers must not engage in speculative transactions concerning the shares in the limited liability company or in limited liability companies in the same group.

**114.** In limited liability companies whose shares are admitted to trading on a regulated market and in state-owned public limited companies, the chairman of the board of directors or the supervisory board must not perform any duties for the limited liability company that are unrelated to his duties as chairman. However, to satisfy a special need, the chairman of the board of directors may perform any work that he is requested to perform by and for the board of directors.

### Duties of the board of directors

**115.** In limited liability companies having a board of directors, the board of directors must, in addition to being in charge of the overall and strategic management and ensuring proper organisation of the company's activities, ensure

(i)   that the bookkeeping and financial reporting procedures are satisfactory, having regard to the circumstances of the limited liability company;

(ii)  that adequate risk management and internal control procedures have been established;

(iii) that the board of directors receives adequate reporting about the limited liability company's financial position on a continuous basis;

(iv)  that the executive board performs its duties properly and according to the directions issued by the board of directors; and

(v)   that the financial resources of the limited liability company are adequate at all times, including that the company has sufficient liquidity to meet its current and future liabilities as they fall due, and the board of directors is therefore required at all times to assess the company's financial position and ensure that the available capital resources are adequate.

### Duties of the supervisory board

**116.** In limited liability companies having a supervisory board, the supervisory board must ensure

(i)   that the bookkeeping and financial reporting procedures are satisfactory, having regard to the circumstances of the limited liability company;

(ii)  that adequate risk management and internal control procedures have been established;

(iii) that the supervisory board receives adequate reporting about the limited liability company's financial position on a continuous basis;

(iv)  that the executive board performs its duties properly; and

(v)   that the financial resources of the limited liability company are adequate at all times, and that the company has sufficient liquidity to meet its current and future liabilities as they fall due. The supervisory board is therefore required at all times to assess the company's financial position and ensure that the available capital resources are adequate.

### Duties of the executive board

**117.** In limited liability companies being managed under section 111(1)(i), the executive board is in charge of the day-to-day management. The executive board must follow the guidelines and directions issued by the board of directors. The day-to-day management does not include decisions of an unusual nature or of major importance, having regard to the circumstances of the limited liability company. The executive board may make such decisions only if specifically authorised by the board of directors to do so, unless awaiting such authorisation would have a significant negative impact on the activities of the limited liability company. In that case, the board of directors must be notified of the decision as soon as possible.
*(2)* In limited liability companies falling within section 111(1)(ii), the executive board is in charge of both the overall strategic management and the day-to-day management. The executive board must also ensure the proper organisation of the limited liability company's activities.

**118.** The executive board must ensure that the limited liability company's bookkeeping procedures comply with current legislation, and that its assets are properly managed.
*(2)* The executive board must also ensure that the financial resources of the limited liability company are adequate at all times, and that the company has sufficient liquidity to meet its current and future liabilities as they fall due. The executive board is therefore required at all times to assess the company's financial position and ensure that the available capital resources are adequate.

### Loss of share capital

**119.** The management of a limited liability company must ensure that a general meeting is held no later than six months after it has been established that the limited liability company's equity represents less than half of the subscribed share capital. At the general meeting, the central management body must report on the financial position of the limited liability company and, if necessary, propose measures that should be taken, including a proposal to dissolve the limited liability company.

### Election of members to the board of directors and the supervisory board

**120.** In public limited companies, the majority of the members of the board of directors or the supervisory board must be elected by the general meeting.
*(2)* The articles of association may grant public authorities or others a right to appoint one or more members to the board of directors or the supervisory board.
*(3)* Before the members of the board of directors or the supervisory board are elected at the general meeting, public limited companies must provide information on management level posts held by the candidates in other commercial enterprises, except for posts held in the public limited company's own wholly-owned subsidiaries. Notwithstanding the first sentence, it is sufficient to state the name of the parent and the number of subsidiaries in which the candidate is a member of management if a candidate is a member of the management of both another parent and one or more of its wholly-

Copyright © 2015 Karnov Group Denmark A/S

owned subsidiaries. This subsection may be departed from if so agreed by all shareholders.

*(4)* The members of the board of directors or supervisory board elected by the general meeting will hold their office for the term specified in the articles of association. The members' term of office expires at the close of an annual general meeting held no later than four years after their election.

## Resignation or removal of members of the board of directors and the supervisory board

**121.** A member of the board of directors or the supervisory board may resign at any time. Notice of resignation must be given to the board of directors or the supervisory board of the limited liability company and, if the member has not been elected by the general meeting, also to the person having appointed him. A member of the board of directors or the supervisory board may be removed at any time by the person having elected or appointed him.

*(2)* Where there is no alternate member to replace the member, the other members of the board of directors or the supervisory board must arrange for the election of a new member to replace the resigning or removed member for the remainder of his term of office. This also applies if a member elected by the employees under section 140 or section 141 ceases to be employed by the limited liability company or by the group. However, if a new member is to be elected by the general meeting, such election may be postponed until the next annual general meeting at which members are to be elected to the board of directors or the supervisory board, provided that the remaining members and alternate members of the board of directors or the supervisory board form a quorum.

## Election of chairman

**122.** The board of directors or the supervisory board of a public limited company elects its own chairman, unless otherwise provided in the articles of association. In case of an equality of votes, the election will be decided by lot.

## Meetings of the board of directors and the supervisory board

**123.** The chairman of the board of directors or the supervisory board of a public limited company must ensure that the supreme management body holds meetings as and when necessary and that all members are called. Any member of management or the company's auditor elected by the general meeting, see section 144, may demand a meeting of the supreme management body. An executive officer, including an executive officer who is not a member of the board of directors or the supervisory board, is entitled to attend and speak at the meetings of the board of directors or the supervisory board, unless otherwise decided in each individual case by the board of directors or the supervisory board.

## Quorum of the board of directors and the supervisory board

**124.** The board of directors or the supervisory board is quorate when more than half of its members are represented, unless a higher proportion is required by the articles of association. However, resolutions cannot be passed without all members having been allowed to participate in the transaction of business, if possible.

*(2)* Where a member is absent and an alternate member has been elected, the alternate member must be allowed to replace the member for the duration of his absence. Unless otherwise resolved by the board of directors or the supervisory board or provided in the articles of association, a member may authorise another member

in special cases to replace him instead of calling an alternate member if deemed appropriate due to the business to be transacted.

*(3)* Resolutions by the board of directors or the supervisory board must be passed by a simple majority of votes, unless a special majority is required by the articles of association. The articles of association may provide that the chairman or, in his absence, the vice-chairman, is entitled to a casting vote in case of an equality of votes.

## Electronic meetings and meetings by written procedure of the board of directors and the supervisory board

**125.** Meetings of the board of directors and the supervisory board may be held by written procedure if such procedure is compatible with the performance of the duties of the board of directors or the supervisory board. However, any member of management may demand an oral discussion. The provisions of this Act on meetings of the board of directors and the supervisory board apply correspondingly with the necessary changes to meetings by written procedure.

*(2)* Meetings of the board of directors and the supervisory board may be held electronically if such procedure is compatible with the performance of the duties of the board of directors or the supervisory board. However, any member of management may demand an oral discussion. The provisions of this Act on meetings of the board of directors and the supervisory board and electronic communication apply correspondingly with the necessary changes to meetings held electronically and to all related communication.

## Language of meetings of the board of directors and the supervisory board

**126.** Meetings of the board of directors or the supervisory board must be held in Danish, but see subsections (2) and (3).

*(2)* Meetings of the board of directors or the supervisory board may, if so decided by the majority, be held in a language other than Danish if all attendees are at the same time offered simultaneous interpretation to and from Danish. Any decision to hold meetings in a language other than Danish without simultaneous interpretation must be made unanimously by the members of the board of directors or the supervisory board.

*(3)* Notwithstanding subsection (2), the meetings of the board of directors or the supervisory board may be held in Swedish, Norwegian or English without simultaneous interpretation if such language is the corporate language of the group as provided in the company's articles of association.

*(4)* Where documents to be used by the board of directors or the supervisory board have not been prepared in Danish, any member of the board of directors or the supervisory board may demand a Danish translation of such documents. However, this does not apply to documents that have been prepared in Swedish, Norwegian or English if such language is the corporate language of the group as provided in the company's articles of association.

## Improper transactions and agreements with sole shareholders

**127.** The members of the management of a limited liability company must not make any transaction that is clearly likely to provide certain shareholders or others with an undue advantage over the other shareholders or the limited liability company. The members of the management of the limited liability company must not comply with any resolution passed by a general meeting or any other corporate body if such resolution is invalid because it conflicts with current legislation or the company's articles of association.

*(2)* Agreements between a sole shareholder and the limited liability company are valid only if drafted in a manner that may subsequently

be proved, unless such agreements have been made on usual terms in the ordinary course of business.

## Minutes of proceedings at meetings of the supreme management body

**128.** Where the supreme management body has more than one member, minutes of proceedings must be taken, and such minutes must be signed by all members present.

*(2)* A member present who dissents from a resolution is entitled to have his opinion entered into the minutes.

## Auditor's records

**129.** The members of the supreme management body must sign the auditor's records prepared by the auditor if the auditor is required to keep records under the Act on Approved Auditors and Auditing Firms (*revisorloven*) or any other legislation or if the auditor has kept such records in accordance with an agreement with the limited liability company.

## Rules of procedure for the board of directors and the supervisory board

**130.** Where the board of directors or the supervisory board of a limited liability company has more than one member, the duties of the board of directors or the supervisory board must be laid down in rules of procedure.

*(2)* The rules of procedure must be prepared on the basis of the activities and needs of the limited liability company. In that connection, the board of directors or the supervisory board should consider in particular whether the rules of procedure should include provisions on board composition and structure, allocation of responsibilities, supervision of the executive board's day-to-day management, keeping of books and records, minutes etc., electronic meetings and meetings by written procedure, duty of confidentiality, alternate members, accounting control, signing of auditor's records and procedures to ensure an adequate audit basis.

*(3)* The rules of procedure of the board of directors or the supervisory board of state-owned public limited companies must be published in the IT system of the Danish Business Authority no later than four weeks after their preparation. The same time-limit applies if a public limited company is converted into a state-owned public limited company under Part 20 of this Act or if changes are made to the rules of procedure for a state-owned public limited company.

## Disqualification

**131.** No member of management may participate in the transaction of business involving any agreement between the limited liability company and the member or any legal proceedings against the member or any agreement between the limited liability company and a third party or any legal proceedings against a third party if the member has a material interest in such business that may conflict with the interests of the limited liability company.

## Duty of confidentiality

**132.** Members of the board of directors or the supervisory board, executive officers, valuation experts and scrutinisers, including their assistants and alternate members, must not disclose any information obtained in the performance of their duties without being entitled to do so.

## Disclosure of information etc. to the auditor

**133.** The management of a limited liability company must provide any auditor or scrutiniser elected by the general meeting to make a declaration on the limited liability company's affairs with the in-

formation deemed to be important to the assessment of the limited liability company and, if the limited liability company is a parent, its group as defined by the Financial Statements Act (*årsregnskabsloven*).

*(2)* The management of a limited liability company must grant any auditor or scrutiniser elected by the general meeting to make a declaration on the limited liability company's affairs a right to make any investigations that he deems necessary and must provide the auditor or scrutiniser with any information and assistance that he deems necessary to perform his duties.

*(3)* The management of a Danish limited liability company which is a subsidiary in a group of companies has a similar duty to the auditor of the parent.

## Notice of group relations

**134.** The central management body of a Danish parent must notify the central management body of a subsidiary as soon as any group relationship has been established. The central management body of a Danish subsidiary must provide the parent with the information necessary to assess the group's position and the results of its activities.

## Right of representation and power to bind the company

**135.** The members of the board of directors and the executive board act on behalf of the limited liability company in relation to third parties.

*(2)* The limited liability company is bound by agreements made on behalf of the company by the entire central management body, by a member of the board of directors or by an executive officer. The members of the supervisory board have no power to bind the limited liability company.

*(3)* The power to bind the company conferred by subsection (2) on each member of the board of directors and the executive board may be restricted by the articles of association to the effect that it may only be exercised by members acting jointly or by one or more specific members acting jointly or alone. No other restrictions on the power to bind the company may be registered.

*(4)* Notwithstanding subsection (1), in limited liability companies having a supervisory board, the supervisory board may act on behalf of the company if legal proceedings are commenced against one or more members of the company's executive board. The supervisory board may also act on behalf of the company if legal proceedings are not commenced against the company by a member of the company's executive board. The same applies if members of the executive board are either disqualified or cannot represent the company for any other reason.

*(5)* Powers of procuration may only be granted by the central management body.

**136.** Any agreement or commitment made on behalf of the limited liability company by a person authorised to bind the company under section 135 is binding on the limited liability company, unless

(i)   the person authorised to bind the company has exceeded the limitations of his powers as provided in this Act;

(ii)  the agreement or commitment does not fall within the objects of the limited liability company and the company proves that the third party had actual or constructive knowledge thereof; or

(iii) the person authorised to bind the company has exceeded his authority or seriously failed to act in the company's interest, and the third party had actual or constructive knowledge thereof.

*(2)* Publication of the objects provision of the limited liability company in the IT system of the Danish Business Authority is not in itself sufficient evidence under subsection (1)(ii) of this provision.

**137.** Where an election or appointment of members to the management of a limited liability company has been announced in the IT system of the Danish Business Authority in accordance with section 14, no deficiency in the election or appointment may be relied on against any third party, unless the limited liability company proves that the third party had knowledge of the deficiency.

### Remuneration of members of management

**138.** The members of the management of a limited liability company may receive fixed or variable remuneration. The amount of such remuneration must not exceed an amount deemed to be usual, taking into account the nature and extent of duties, and an amount deemed to be reasonable with regard to the financial position of the limited liability company and, in the case of a parent, the consolidated financial position.

*(2)* Where a limited liability company is declared bankrupt, the members of its management must, even if they have acted in good faith, repay any variable remuneration received in the five-year period preceding the reference date, provided that the limited liability company was insolvent when the amount of the variable remuneration was fixed.

**139.** A public limited company whose shares are admitted to trading on a regulated market or a multilateral trading facility must not enter into a specific agreement on incentive-based remuneration with a member of its management until the supreme management body of the limited liability company has laid down general guidelines for incentive-based remuneration for the company's management. The guidelines must have been considered and approved by the general meeting of the limited liability company.

*(2)* Where the general meeting has approved the guidelines for incentive-based remuneration for the management of the limited liability company under subsection (1), a provision must be included in the company's articles of association stating that such guidelines have been approved. Inclusion of such provision in the articles of association is not subject to a separate resolution by the general meeting. When approved by the general meeting, the guidelines must be published on the company's website as soon as possible, with a specification of the date on with the general meeting approved the guidelines.

*(3)* Specific agreements on incentive-based remuneration under subsection (1) must not be entered into until the day after publication of the approved guidelines on the company's website, see subsection (2). When specific incentive agreements are entered into, the current approved guidelines must be followed.

*(4)* Subsections (1)-(3) apply correspondingly to agreements to renew or amend existing specific agreements on incentive-based remuneration with members of the management of the limited liability company.

**139 a.** In state-owned public limited companies, in companies whose shares, debt instruments or other securities are admitted to trading on a regulated market in an EU/EEA country and in large limited liability companies, see subsection 2,

(i)   the supreme management body must set target figures for the share of the under-represented gender in the supreme management body; and

(ii)  the central management body must draft a policy to increase the share of the under-represented gender at the other management levels of the limited liability company, but see subsections (3)-(6).

*(2)* Large limited liability companies are companies which exceed two of the following thresholds in two consecutive financial years:

(i)    A balance sheet total of DKK 143 million;

(ii)   a revenue of DKK 286 million; and

(iii)  an average number of full-time employees of 250.

*(3)* In parents preparing consolidated financial statements, it is sufficient to set target figures and draft a policy under subsection (1) for the group as a whole.

*(4)* A subsidiary being part of a group is not required to set target figures and draft a policy under subsection (1) if the parent sets target figures and draft a policy for the group as a whole.

*(5)* When setting target figures under subsection (1)(i), state-owned public limited companies are also subject to section 11(2) of the Gender Equality Act (*ligestillingsloven*).

*(6)* Limited liability companies having employed less than 50 employees in the latest financial year are not required to draft a policy to increase the share of the under-represented gender at their other management levels, see subsection (1)(ii).

## Part 8. Employee representation

### Representation at company level

**140.** In limited liability companies that have employed an average of at least 35 employees in the preceding three years, the employees are entitled to elect a number of representatives and alternate members to the company's supreme management body, equal to half the number of the other members of management. The employees of a company's foreign branch situated in another EU/EEA country are considered as the company's employees. However, the employees are always entitled to elect at least two representatives and alternate members. If the number of representatives to be elected by the employees is not a whole number, such number must be rounded up.

*(2)* The employees are entitled to elect fewer representatives and alternate members if the number specified in subsection (1) cannot be elected.

### Representation at group level

**141.** Section 140 applies correspondingly to the employees of a Danish parent, see sections 6 and 7, and its subsidiaries registered in Denmark as well as the foreign branches of such subsidiaries situated in an EU/EEA country.

*(2)* Where the parent falls within section 140, its employees are entitled to elect two representatives and alternate members. The total number of employee representatives elected to the parent's supreme management body must constitute half the number of the other members, subject to a minimum of three employee representatives. However, the employees are entitled to elect fewer representatives and alternate members if the number specified in the first sentence of this subsection cannot be elected.

*(3)* Subject to the provisions on cross-border mergers and demergers set out in Part 16 of this Act and in the Act on SEs (*SE-loven*), the general meeting of the parent may decide that the employees of one or more foreign subsidiaries are eligible for election and entitled to vote. If the group has employees in Danish subsidiaries, such employees must always be allowed to elect at least one representative. If the employees of the Danish subsidiaries constitute more than 10% of the total number of employees entitled to vote, such employees may elect at least two representatives. If the majority required for representation at group level as provided in section 142 is not reached, but the majority of the Danish subsidiaries vote in favour of group representation, employee representation will be

deemed to have been adopted by the employees of the Danish subsidiaries to the effect that elections for group representatives will only be held in the Danish subsidiaries.

### Election of employee representatives

**142.** The decision to elect members to the supreme management body under sections 140 and 141 is subject to at least half of the employees of the limited liability company or its subsidiaries voting in favour, unless the management and the employees agree not to vote. The supreme management body must be notified of the decision in a manner that may subsequently be proved.

**143.** The Danish Business Authority may lay down rules on

(i)     the persons to be considered as employees for the purpose of employee representation;

(ii)    the calculation of the average number of employees under sections 140 and 141;

(iii)   the procedure for elections under sections 140-142, including rules to ensure a secret ballot;

(iv)    the possibility of departing from any of the specific provisions laid down under this section if the management and the employees agree to do so, including rules for the establishment of voluntary employee representation schemes and the right of the central management body to amend the articles of association of the limited liability company as a result of such schemes;

(v)     how to inform the employees of limited liability companies and groups in which board members have been elected under sections 140 and 141 about the company's affairs;

(vi)    employment protection for employee representatives in management bodies, including representatives elected by voluntary arrangements, and resolution of related disagreements;

(vii)   the consequences of any non-compliance with the provisions of current legislation and any rules laid down under such provisions;

(viii)  that the register of shareholders must also be available to an employee representative in companies and parents in which the employees have not elected any members to the board of directors under sections 140 and 141; and

(ix)    any notice of general meeting to the employees of the company or the group if employees have notified the board of directors that employee representatives are to be elected.

## Part 9. Auditing and scrutiny

### Auditing

**144.** If a limited liability company is subject to audit obligations under the Financial Statements Act (*årsregnskabsloven*) or any other legislation or if in other cases the general meeting resolves that the company's financial statements must be audited, the general meeting must elect one or more approved auditors and alternate auditors, if applicable. Such resolution may be passed by a simple majority of votes under section 105. The articles of association may also grant other persons the right to appoint one or more additional auditors.

*(2)* A shareholder may demand that the Danish Business Authority appoints an additional approved auditor to participate in the audit together with the other auditor(s) until the next general meeting if

(i)     shareholders holding at least one-tenth of the capital have voted in favour of an additional auditor at a general meeting where the agenda included the election of an auditor; and

(ii)    the demand is made no later than two weeks after the general meeting.

*(3)* The Danish Business Authority may appoint an auditor if a limited liability company which is subject to audit obligations has no statutory auditor, and a member of management or a shareholder makes a request to that effect. The appointment will remain effective until a new auditor has been elected by the general meeting.

*(4)* In the situations mentioned in subsections (2) and (3), the appointment of an auditor is registered without any application for registration. The Danish Business Authority determines the remuneration payable to the appointed auditor. The expenses relating to the statutory audit of the financial statements etc. of the limited liability company are payable by the treasury, but must be reimbursed by the company.

*(5)* Where the auditor is to express an opinion on the affairs of a limited liability company, the auditor has the rights and obligations provided in this Act, unless a distinction is made between the auditors elected by the general meeting to audit the financial statements, see subsection (1), and other auditors.

**145.** If possible, a subsidiary in a group as defined by the Financial Statements Act (*årsregnskabsloven*) in which the parent is a state-owned public limited company or an enterprise whose securities are admitted to trading on a regulated market must elect the auditor elected by the general meeting of the parent. If that is not possible, the subsidiary must, if possible, instead elect an auditor who is a business partner of the auditor elected by the general meeting of the parent.

**146.** An auditor may be removed by the party having appointed him. An auditor elected to audit the company's financial statements under section 144 may be removed before the expiry of his term of office only if such removal is justified by a specific reason.

*(2)* Where an auditor elected by the general meeting, see section 144(1), resigns or his appointment otherwise ends before the expiry of his term of office, the auditor must notify the Danish Business Authority as soon as possible. Such notice must be accompanied by an adequate account of the reason for the early termination of his appointment. In companies whose securities are admitted to trading on a regulated market, an auditor elected by the general meeting must also notify the market of the termination of his appointment as soon as possible in accordance with the provisions of the Securities Trading Act (*værdipapirhandelsloven*).

*(3)* Where the auditor elected to audit the company's financial statements, see section 144(1), resigns or his appointment otherwise ends, see subsection (1), and no alternate auditor has been elected to replace him, the central management body must arrange for a new auditor to be elected as soon as possible under section 144(1). An extraordinary general meeting must be called to elect a new auditor no later than two weeks after the company was notified of the termination. However, in state-owned public limited companies and in companies whose securities are admitted to trading on a regulated market, the general meeting must be called no later than eight days after the company was notified of the termination.

**147.** The auditor elected to audit the company's financial statements, see section 144(1), must comply with any audit requirements laid down by the general meeting, provided that such requirements do not conflict with current legislation, the company's articles of association or generally accepted auditing standards.

*(2)* The auditor must also ensure that the company's management meets its obligations to prepare rules of procedure and to prepare and keep books, records and minutes, and whether the rules on submission and signing of auditor's records are complied with.

*(3)* Where the auditor finds that the requirements under subsection (2) have not been met, the auditor must prepare a separate declaration to the general meeting, unless the company's annual report is

subject to approval by the general meeting, and the matter is mentioned in the auditor's report.

**148.** Any changes with respect to an auditor elected under section 144 must be registered in the IT system of the Danish Business Authority, or an application for registration must be submitted, see section 9. If an auditor is replaced before the expiry of his term of office, the provision of section 10(2) will apply.

**149.** The auditor may demand that the members of the company's management provide the information deemed to be of importance to the assessment of the company and, if the company is a parent, its group, see section 7. This also applies to the members of the management of a Danish company which is a subsidiary in a group as defined by the Financial Statements Act (*årsregnskabsloven*).

### Scrutiny

**150.** A shareholder may, at the annual general meeting or at a general meeting where the agenda includes such business, submit a proposal for scrutiny of the company's formation, of any specific matter relating to the administration of the company or of certain financial statements. If the proposed resolution is passed by a simple majority of votes, the general meeting will elect one or more scrutinisers.

*(2)* Where the proposed resolution is not passed, but shareholders representing 25% of the share capital vote in favour, any shareholder may, no later than four weeks after the general meeting, request the bankruptcy court for the district in which the company's registered office is situated to appoint scrutinisers. The bankruptcy court must allow the company's management and any auditor elected by the general meeting to audit the company's financial statements, see section 144(1), and, if relevant, the person whose affairs are the subject-matter of the request to make a statement to the court before the court makes its decision. The request will only be allowed if the bankruptcy court finds it to be based on reasonable grounds. The bankruptcy court determines the number of scrutinisers. The court's decision may be appealed.

*(3)* The provisions on independence in section 24 of the Act on Approved Auditors and Auditing Firms (*revisorloven*) apply correspondingly to scrutinisers elected or appointed under subsections (1) and (2).

**151.** The scrutiniser may demand that the company's management provide any information deemed to be of importance to the assessment of the company and, if the company is a parent, its group as defined by the Financial Statements Act (*årsregnskabsloven*). This also applies to the management of a Danish company which is a subsidiary in a group as defined by the Financial Statements Act.

**152.** The scrutinisers must submit a written report to the general meeting and are entitled to receive remuneration from the company. If the scrutinisers have been appointed by the bankruptcy court, their remuneration will be determined by the court.

*(2)* No later than eight days before the general meeting, the report prepared by the scrutinisers must be available for inspection by the shareholders.

## Part 10. Capital increases

**153.** The share capital of a limited liability company may be increased by

(i)     subscriptions for new shares;

(ii)    a conversion of the company's reserves into share capital by the issuance of bonus shares; or

(iii)   the issuance of convertible debt instruments or warrants.

*(2)* No new share may be subscribed for subject to reservations or at a discount.

### Resolution by the general meeting to increase the share capital

**154.** The general meeting may pass a resolution to increase the share capital in accordance with the provisions of this Part of the Act.

*(2)* Any resolution under subsection (1) must be passed by the majority required to amend the articles of association.

**155.** The general meeting may authorise the central management body to increase the share capital by including a provision to that effect in the articles of association. The authorisation may be given for one or more periods of up to five years at a time.

*(2)* The general meeting may also authorise the central management body to issue convertible debt instruments or warrants, see section 169, by including a provision to that effect in the articles of association, provided that it also authorises the central management body to carry out the capital increase required for that purpose, see subsection (1). The authorisation may be given for one or more periods of up to five years at a time.

*(3)* In connection with any authorisation under subsections (1) and (2), the articles of association must specify

(i)     the method of capital increase as set out in this Part of the Act which is covered by the authorisation;

(ii)    the expiry date of the period mentioned in subsection (1) or in the second sentence of subsection (2);

(iii)   the maximum amount by which the central management body may increase the share capital; and

(iv)    provisions on the matters mentioned in section 158(ii), (vi), (vii) and (x)-(xii).

*(4)* Where the share capital is to be increased in full or in part by contribution of assets other than cash, this must be set out in the articles of association. Also, any resolution passed by the general meeting to depart from the existing shareholders' pre-emption rights, see section 162, must be specified.

### Procedural requirements for capital increases

**156.** Any proposal to increase the share capital of a public limited company must be available to the shareholders, see sections 98 and 99, and be submitted to the general meeting.

*(2)* Where the annual report of a public limited company for the latest financial year is not to be considered by the same general meeting, the following documents must be submitted:

(i)     the latest approved annual report;

(ii)    a report by the company's central management body including information on events of major importance to the company's position that have occurred after the presentation of the annual report, unless such information may be detrimental to the company due to special circumstances; and

(iii)   a declaration by the company's auditor about the report by the central management body if the company's financial statements etc. are subject to audit obligations under the Financial Statements Act (*årsregnskabsloven*) or any other legislation.

*(3)* Where the resolution to increase the share capital is to be passed by the general meeting, subsections (1) and (2) may be departed from if so agreed by all shareholders. Where the resolution to increase the share capital is to be passed by the central management body subject to prior authorisation by the general meeting, see section 155, subsection (2) will apply correspondingly to the exercise of the authorisation by the central management body.

However, the central management body may resolve to depart from subsection (2), unless, when granting the authorisation to the central management body, the general meeting resolved that the procedural requirements under subsection (2) cannot be departed from.

### Requirements for notice calling the general meeting

**157.** In connection with an increase of the share capital of a public limited company, the notice calling the general meeting must include information on the pre-emption rights of shareholders or others and instructions on how to exercise such rights.

*(2)* In case of departure from the shareholders' pre-emption rights, see section 162, the reason for the departure and for the proposed subscription price must be stated in the notice.

*(3)* Subsections (1) and (2) may be departed from if so agreed by all shareholders.

### The contents of the resolution

**158.** The resolution to increase the share capital by a subscription for new shares must specify

(i)     the minimum and maximum amount by which the share capital may be increased;

(ii)    whether partial payment is allowed;

(iii)   the subscription price and the denomination or number of shares;

(iv)    the date from which the new shares will confer on the holders a right to receive dividends and other rights in the limited liability company;

(v)     the estimated expenses relating to the capital increase that are payable by the limited liability company;

(vi)    the share class of the new shares if different share classes exist or will be introduced;

(vii)   the pre-emption rights of the shareholders or others and any restrictions on the new shareholders' pre-emption rights in connection with future increases, see section 162;

(viii)  the time-limit for subscription and a time-limit of at least two weeks from the date of notice to the shareholders within which the shareholders must exercise their pre-emption rights;

(ix)    the time-limit for payment of the shares and, where the allotment is not left to the central management body, the rules on allotment in case of oversubscription of any shares not subscribed for by the exercise of pre-emption rights;

(x)     any restrictions on the transferability of the new shares or any obligation on the new shareholders to have their shares redeemed;

(xi)    whether the new shares are negotiable instruments; and

(xii)   whether the new shares will be registered shares or bearer shares.

**159.** Where the company's central management body exercises an authorisation under section 155 to increase the share capital by a subscription for new shares, the resolution must specify

(i)     the minimum and maximum amount by which the share capital may be increased;

(ii)    the subscription price and the denomination or number of shares;

(iii)   the date from which the new shares will confer on the holders a right to receive dividends and other rights in the limited liability company;

(iv)    the estimated expenses relating to the capital increase that are payable by the limited liability company;

(v)     the time-limit for subscription and a time-limit of at least two weeks from the date of notice to the shareholders within

which the shareholders must exercise their pre-emption rights;

(vi)    the time-limit for payment of the shares and the rules on allotment in case of oversubscription of any shares not subscribed for by the exercise of pre-emption rights;

(vii)   whether the new shares may be paid for by contribution of assets other than cash, see section 160; or

(viii)  whether the new shares may be paid for by conversion of debts, see section 161.

*(2)* Sections 163 and 164 apply correspondingly to any resolution passed by the central management body under subsection (1).

*(3)* The central management body may make any amendments to the articles of association that are necessary as a result of the capital increase.

### Contribution of assets or contribution by conversion of debts

**160.** Where the new shares may be paid for by contribution of assets other than cash, this must be specified in the resolution to increase the share capital, and a valuation report must be prepared, see sections 36 and 37. If the central management body issues a declaration under section 38(2), no valuation report is required in connection with the contribution of assets as mentioned in section 38(1). The central management body must publish the declaration in the IT system of the Danish Business Authority no later than two weeks after the resolution on the contribution was passed, see section 9(3). The balance sheet to be prepared under section 36(3) must be prepared as a pre-acquisition balance sheet for the acquired activities.

**161.** Where the new shares may be paid for by conversion of debts, this must be specified in the resolution to increase the share capital.

*(2)* The central management body must give an account of why and when the debts were incurred and set out the reasons for the proposed conversion.

*(3)* In public limited companies, the central management body's account and any additional documents must be available to the shareholders, see sections 98 and 99, and submitted to the general meeting.

*(4)* Subsection (2) may be departed from if so agreed by all shareholders.

*(5)* The requirement set out in subsection (3) may be departed from if so agreed by all shareholders.

### Right to proportionate subscription

**162.** In case of a cash increase of the share capital, the shareholders are entitled to subscribe for a proportionate number of the new shares. The articles of association may provide that the pre-emption rights cannot be assigned to any third party.

*(2)* By the majority of votes required to amend the articles of association, see section 106, the general meeting may resolve to depart from the pre-emption rights, see subsection (1), for the benefit of others.

*(3)* Where there are different share classes carrying different rights to vote and different rights to receive dividends or other distributions from the company, the articles of association may provide that holders of the same share class have a priority right to subscribe for shares within their own share class. The holders of shares of other share classes may then exercise their pre-emption rights under subsection (1) only after such subscription.

*(4)* By the majority of votes required to amend the articles of association, see section 106, the general meeting may resolve to depart from the pre-emption rights, see subsections (1) and (3), for the

benefit of the employees of the company or any of its subsidiaries. With the same majority of votes, the general meeting may determine a favourable price for the shares to be offered to the employees.

*(5)* However, a more extensive departure from the shareholders' pre-emption rights than specified in the notice of the meeting may only be passed by the general meeting with the consent of the shareholders whose rights are impaired.

*(6)* Where the company has more than one share class, a resolution which, if passed, will change the legal relationship between the share classes, will have legal effect only if passed by shareholders at the general meeting holding at least two-thirds of the shares of the share class whose rights are impaired.

### Subscription for new shares

**163.** Any subscription for new shares must be in writing.

*(2)* In connection with such subscription, the articles of association and the documents mentioned in section 156 must be submitted, unless it has been resolved not to prepare such documents, see section 156(3). If the capital subscription falls within the provisions of sections 160 and 161, the documents mentioned in such provisions must be submitted on subscription, unless it has been resolved not to prepare such documents.

*(3)* The shareholders must be notified of the subscription and the time-limit for exercising their pre-emption rights in accordance with the provisions on notice of general meetings. In public limited companies where all shareholders are known to the company, the individual shareholders may be notified in writing instead.

**164.** The resolution to amend the articles of association which requires a capital increase will cease to be effective if the minimum subscription amount for the capital increase is not subscribed for within the time-limit set out in the resolution. In that case, any amount paid in must be repaid as soon as possible.

### Issuance of bonus shares

**165.** A limited liability company may issue bonus shares by transferring amounts to the share capital that are recorded in the company's latest approved annual report as

(i)    retained earnings; or
(ii)   reserves with the exception of any reserve under sections 35a and 35b of the Financial Statements Act (*årsregnskabsloven*), but see subsection (2).

*(2)* For the issuance of bonus shares, the company may also use

(i)    any profit recorded in the current financial year if the amount has not been distributed or spent or is non-distributable; or
(ii)   any distributable reserves accumulated or released in the current financial year.

*(3)* Any resolution passed under subsections (1) and (2) must specify the amount of the capital increase and the denomination and number of shares. Section 158(1)(iii), (vi) and (ix)-(xi) applies correspondingly.

*(4)* The capital increase cannot be implemented until the resolution has been registered.

*(5)* Where the bonus share issuance is not registered or an application for registration of the bonus share issuance is not submitted no later than 12 months after the resolution to increase the share capital, the resolution and any resulting amendments to the articles of association will cease to be effective.

**166.** Where, three years after a bonus share issue was registered, not all shares have been transferred to the persons entitled to such shares, the central management body of the limited liability company may request such person(s) to collect the shares within six

months by publishing an announcement in the IT system of the Danish Business Authority.

*(2)* Where the time-limit set out in subsection (1) has expired without any person having collected the shares, the central management body may dispose of the shares at the shareholder's expense through a securities dealer, see section 4(1) of the Securities Trading Act (*værdipapirhandelsloven*). The company is entitled to deduct the expenses incurred in connection with the announcement and sale of the shares from the sales proceeds. Any sales proceeds not claimed within three years after the sale will accrue to the limited liability company.

### Issuance of convertible debt instruments and warrants

**167.** By the majority of votes required to amend the articles of association, the general meeting may resolve to issue convertible debt instruments or warrants if it resolves at the same time to carry out the necessary capital increase, see section 154.

*(2)* The resolution passed by the general meeting must specify the terms of the issue, including the maximum amount of the capital increase that may be subscribed for on the basis of the security and the share class to which the new shares will belong.

*(3)* The resolution passed by the general meeting under subsection (1) must also specify the holder's rights if he has not converted the debt instrument or exercised the warrant before the general meeting passes a resolution on one or more of the following transactions:

(i)     a capital increase;
(ii)    a capital reduction;
(iii)   an issuance of new warrants;
(iv)    an issuance of new convertible debt instruments;
(v)     a dissolution;
(vi)    a merger; or
(vii)   a demerger.

*(4)* The holder of convertible debt instruments or warrants must be notified of the terms set out in any resolution passed by the general meeting under subsections (2) and (3).

**168.** The full text of any resolution passed by the general meeting under section 167 must be included in the articles of association. When the time-limit for subscription has expired, the company's central management body may delete the provision.

**169.** Where authorised under section 155(2), the central management body may resolve to issue convertible debt instruments or warrants.

*(2)* The resolution by the central management body must specify the terms of the issue, including

(i)     the maximum amount of the capital increase that may be subscribed for on the basis of the security;
(ii)    the share class of the new shares;
(iii)   the time-limit for subscription of shares and a time-limit of at least two weeks from the date of notice to the shareholders within which the shareholders must exercise their pre-emption rights;
(iv)    the date on which the rights come into existence;
(v)     the time-limit for payment; and
(vi)    the denomination or number of shares and the subscription price.

*(3)* The resolution passed by the general meeting under subsection (1) must also specify the holder's rights if he has not converted the debt instrument or exercised the warrant before one or more of the following transactions have been carried out:

(i)     a capital increase;
(ii)    a capital reduction;
(iii)   an issuance of new warrants;

(iv)   an issuance of new convertible debt instruments;

(v)    a dissolution;

(vi)   a merger; or

(vii)  a demerger.

*(4)* The holder of convertible debt instruments or warrants must be notified of the terms specified in any resolution passed by the central management body under subsections (2) and (3) and of the authorisation of the central management body under section 155(2).

*(5)* Section 159 applies correspondingly to any resolution by the central management body to increase the share capital by conversion of convertible debt instruments or by exercise of warrants.

**170.** The full text of any resolution passed by the central management body under section 169 must be included in the articles of association. The central management body may make any amendments to the articles of association that are necessary as a result of the resolution.

**171.** If the amount paid for a debt instrument is lower than the amount of the share(s) into which the debt instrument may be converted in accordance with the loan terms, the residual amount must be paid in accordance with section 33 on partial payment of the share capital or be covered by the part of the company's equity which is distributable for dividend purposes.

### Terms for registration of convertible debt instruments with a securities centre

**172.** The Danish Business Authority may lay down rules

(i)    on the registration of convertible debt instruments with a securities centre;

(ii)   on the provision of information to a securities centre;

(iii)  providing that the company must pay all expenses relating to the issuance of convertible debt instruments through a securities centre and their registration with and safekeeping etc. by a custodian bank; and

(iv)   providing that section 63 applies correspondingly to convertible debt instruments.

### Application for registration of a resolution to increase the share capital

**173.** A resolution by the general meeting or the central management body to increase the share capital under the provisions of this Part of the Act must be registered or an application for registration must be received by the Danish Business Authority no later than two weeks after payment for the shares was made or the time-limit for making such payment expired.

*(2)* A resolution by the general meeting or the central management body to issue convertible debt instruments or warrants and to amend the articles of association accordingly, see sections 168 and 170, must be registered or an application for registration must be received by the Danish Business Authority no later than two weeks after the resolution was passed.

**174.** Any registration or application for registration of a capital increase is subject to payment of the share capital and any premium required to be paid up under section 33 of this Act or the articles of association.

*(2)* The new shares will confer on the holders a right to receive dividends and other rights in the limited liability company from the time of registration of the capital increase, unless otherwise provided in the resolution to increase the share capital. However, such rights will accrue no later than 12 months after the registration.

*(3)* When registration has been completed, the share capital will be deemed to have been increased by the total amount of the capital increase.

**175.** No later than four weeks after the end of each financial year, the central management body must register or apply for registration of the amount of any capital increase carried out during the year if

(i)    shares are subscribed for on the basis of convertible debt instruments or warrants;

(ii)   the time-limit for subscription set out in the resolution is longer than 12 months; and

(iii)  the prescribed minimum amount of the capital increase has been subscribed for and paid up, see section 33.

*(2)* The central management body may make any amendments to the articles of association that are necessary as result of the capital increase.

*(3)* If the registration or application for registration under subsection (1) is not received by the Danish Business Authority no later than four weeks after the expiry of the time-limit for subscription or if registration has been refused, any amount already paid must be refunded, see section 177(3).

**176.** As soon as possible after the expiry of the time-limit for conversion of convertible debt instruments or exercise of warrants, the central management body must register with the Danish Business Authority the amount of convertible debt instruments or the number of warrants that have been converted into shares or apply for registration. If the time-limit for exercise exceeds 12 months, the central management body must make the registration or submit the application for registration under the provisions of section 175.

*(2)* The central management body may make any amendments to the articles of association that are necessary as a result of the capital increase.

### Non-effective resolution to increase the share capital

**177.** A resolution to increase the share capital will cease to be effective if registration is refused.

*(2)* The resolution will also cease to be effective if it has not been registered or no application for registration has been received no later than 12 months after the resolution was passed.

*(3)* Where the resolution to increase the share capital is not registered, any amounts already paid must be refunded as soon as possible without any deduction of expenses, and any assets other than cash must be returned as soon as possible.

### Interest-bearing debt instruments

**178.** The general meeting may resolve by a simple majority of votes, see section 105, to raise loans against the issuance of interest-bearing debt instruments whose rate depends in full or in part on the dividends distributed in respect of the shares in the limited liability company or the profit for the year.

*(2)* The general meeting may also authorise the central management body to raise loans under subsection (1). The authorisation may be given for one or more periods of up to five years at a time.

## Part 11. Capital outflow

**179.** The company's funds may only be distributed to its shareholders

(i)    as dividends on the basis of the latest approved financial statements, see section 180;

(ii)   as extraordinary dividends, see sections 182 and 183;

(iii)  in connection with capital reductions, see sections 185-193; or

(iv)   in connection with a dissolution of the company, see Part 14 of this Act.

*(2)* The company's central management body is responsible for ensuring that no distribution exceeds a reasonable amount, having

Copyright © 2015 Karnov Group Denmark A/S

regard to the company's financial position and, for parents, the consolidated financial position, and that no distribution is made to the detriment of the company or its creditors, see section 115(v) and section 116(v). The central management body is also responsible for ensuring that the share capital and the reserves that are non-distributable under a statute or the company's articles of association may be covered after such distributions.

## Distribution of ordinary dividends

**180.** The general meeting resolves how to distribute as dividends the amount available for distribution as recorded in the financial statements. The general meeting cannot resolve to distribute dividends of a higher amount than that proposed or accepted by the company's central management body.

*(2)* Dividends may only be distributed out of the company's distributable reserves, ie amounts stated as retained earnings in the company's latest approved financial statements, and reserves not being non-distributable under a statute or the company's articles of association, less retained earnings.

**181.** If assets other than cash are distributed as dividends, a valuation report must be prepared, see sections 36 and 37. The valuation report must state that the amount of such dividends is not lower than the assessed value of the assets other than cash distributed. The balance sheet to be prepared under section 36(3) must be prepared as a pre-acquisition balance sheet for the acquired activities. If the central management body prepares and submits a declaration under section 38(2), it has no obligation to obtain a valuation report in connection with the distribution of assets as set out in section 38(1). The central management body must publish the declaration in the IT system of the Danish Business Authority no later than two weeks after the resolution to distribute dividends was passed, see section 9(3).

## Distribution of extraordinary dividends

**182.** The general meeting may resolve to distribute extraordinary dividends when the company has presented its first annual report. The general meeting cannot resolve to distribute extraordinary dividends of a higher amount than that proposed or accepted by the company's central management body.

*(2)* The general meeting may authorise the central management body to resolve to distribute extraordinary dividends after presentation of its first financial statements. The authorisation may be subject to financial and time restrictions.

*(3)* Only funds falling within section 180(2) as well as earned profit and distributable reserves created or released after the latest financial year for which an annual report has been prepared may be distributed as extraordinary dividends under subsections (1) and (2), unless the amount has been distributed or spent or is non-distributable.

**183.** In public limited companies, any resolution to distribute extraordinary dividends must always be accompanied by a balance sheet. The central management body assesses whether the balance sheet of the latest annual report is adequate, or whether an interim balance sheet showing that sufficient funds are available for distribution needs to be prepared, but see subsection (2).

*(2)* Notwithstanding subsection (1), public limited companies passing a resolution to distribute extraordinary dividends more than six months after the balance sheet date as set out in the company's latest approved annual report must always prepare an interim balance sheet showing that sufficient funds are available for distribution.

*(3)* In private limited companies, the central management body must assess whether a resolution under subsection (1) must be accompanied by a balance sheet. However, private limited companies passing a resolution to distribute extraordinary dividends more than six months after the balance sheet date as set out in the company's latest approved annual report must always prepare an interim balance sheet showing that sufficient funds are available for distribution.

*(4)* Where an interim balance sheet is prepared under subsections (1)-(3), the balance sheet must be audited by an auditor if the company is subject to audit obligations. The interim balance sheet must be prepared in accordance with the rules on preparation of the annual report of the limited liability company. The date of the interim balance sheet must not be more than six months before the date of the resolution to distribute extraordinary dividends.

*(5)* Where assets other than cash are distributed as extraordinary dividends, a valuation report must be prepared, see sections 36 and 37. The valuation report must state that the amount of such dividends is not lower than the assessed value of the asset(s) distributed. If the central management body prepares and submits a declaration under section 38(2), it has no obligation to obtain a valuation report in connection with the distribution of assets as set out in section 38(1). The central management body must publish the declaration in the IT system of the Danish Business Authority no later than two weeks after the date of the resolution to distribute extraordinary dividends, see section 9(3). The balance sheet to be prepared under section 36(3) must be prepared as a pre-acquisition balance sheet for the acquired activities.

*(6)* The central management body's resolution to distribute extraordinary dividends must be recorded in the company's minute book. The interim balance sheet or the balance sheet for the latest financial year must be included in the minute book as an appendix to the resolution.

## Special disclosure requirements in connection with dividends

**184.** A public limited company which is subject to rules laid down under Part 8 of the Securities Trading Act (*værdipapirhandelsloven*) must not distribute the company's funds, see section 179, to the bidder or his related parties during the first 12 months following the acquisition of the company.

*(2)* Notwithstanding subsection (1), such funds may be distributed if the bidder has disclosed information on the distribution and the terms of such distribution in the bidding document prepared under the relevant provisions of the Securities Trading Act (*værdipapirhandelsloven*). However, it is not necessary to disclose such information if the distribution does not exceed the overall improvement in the company's financial position after the date of acquisition and if the bidder could not have foreseen the distribution when preparing the bidding document.

## Resolution to reduce the share capital

**185.** The provisions of section 156 on the procedure to be followed in connection with resolutions to increase the share capital apply correspondingly to resolutions to reduce the share capital of public limited companies.

**186.** A resolution to reduce the share capital must be passed by the general meeting by the majority of votes required to amend the articles of association.

**187.** In private limited companies, the general meeting may authorise the central management body to reduce the share capital to a specified amount by including a provision to that effect in the articles of association.

*(2)* The request to creditors, see section 192, must be published no later than two weeks after the resolution to exercise the authorisation was passed by the central management body.

**188.** The resolution to reduce the share capital must specify the amount by which the share capital will be reduced and for which of the following purposes the amount will be used:

(i)     covering of loss;

(ii)    distribution to shareholders; or

(iii)   transfer to a special reserve.

*(2)* The resolution must state if a higher amount of the limited liability company's funds is to be distributed than the amount of the reduction, and any premium must be specified.

*(3)* Only capital reductions for the purpose of distribution or transfer to a special reserve, see subsection (1)(ii) and (iii), may be made at a discount.

**189.** The general meeting of a limited liability company may pass a resolution to use the amount of the reduction for distribution to the shareholders or for transfer to a special reserve, see section 188(1)(ii) and (iii), only if the central management body proposes or approves a resolution to that effect.

*(2)* Where the share capital is reduced under subsection (1) at a price lower than the nominal value of the shares, the balance, up to the nominal value of the shares, must be transferred to the company's distributable reserves.

**190.** A valuation report, see sections 36 and 37, must be available on the date of the resolution if the capital reduction is carried out for the purpose of distributing assets other than cash to the shareholders.

*(2)* The declaration in the valuation report, see section 36(1)(iv), must state that, at the date of the resolution, the capital reduction plus any premium is not lower than the assessed value of the assets other than cash to be distributed. The balance sheet to be prepared under section 36(3) must be prepared as a pre-acquisition balance sheet for the acquired activities. If the central management body prepares and submits a declaration under the provisions of section 38(2), it has no obligation to obtain a valuation report in connection with the distribution of assets under section 38(1). The central management body must publish the declaration in the IT system of the Danish Business Authority no later than two weeks after the resolution to distribute was passed, see section 9(3).

### Registration of capital reductions

**191.** A resolution to reduce the share capital must be registered or an application for registration must be submitted, see section 9, no later than two weeks after the resolution was passed. The resolution will cease to be effective if it is not registered or no application for registration is submitted to the Danish Business Authority within the time-limit.

### Request to creditors

**192.** In connection with a capital reduction to be distributed to the shareholders or transferred to a special reserve, see section 188(1)(ii) and (iii), the creditors of the limited liability company must be requested to file their claims against the company within a time-limit of four weeks. Such request is made by way of the Danish Business Authority's registration and publication of the resolution of the central management body to reduce the share capital.

*(2)* No request to the creditors needs to be made under subsection (1) if, at the same time, the share capital is increased by subscription of at least the same nominal amount as the amount of the reduction plus a premium.

### Implementation of capital reduction

**193.** After expiry of the creditors' time-limit for the filing of claims, see section 192, the central management body may resolve to im-

plement the capital reduction to be distributed to the shareholders or transferred to a special reserve if such capital reduction is advisable, see section 115(5), section 116(5) and the second sentence of section 118(2), but see subsection (4).

*(2)* Four weeks after the expiry of the creditors' time-limit for the filing of claims, the Danish Business Authority may without prior notice register that the capital reduction to be distributed to the shareholders or transferred to a special reserve has been implemented, unless the company has already registered or applied for registration that the resolution to reduce the share capital must be cancelled, see subsection (3), or that the capital reduction will only be implemented by a subsequent registration or application for registration to the Danish Business Authority, see subsections (4) and (5). The Danish Business Authority may lay down provisions to the effect that as a result of certain changes concerning the limited liability company after the registration of the resolution to reduce the share capital, see section 191, the resolution to reduce the share capital must be cancelled or the capital reduction must be implemented by a subsequent registration or application for registration to the Danish Business Authority.

*(3)* Where a capital reduction to be distributed to the shareholders or transferred to a special reserve cannot be implemented in accordance with the information published, see section 192, or it is not advisable to implement the capital reduction, see section 115(v), section 116(v) and the second sentence of section 118(2), the central management body must register or apply for registration before the expiry of the time-limit set out in the first sentence of subsection (2) that the capital reduction has been cancelled.

*(4)* A capital reduction to be distributed to the shareholders or transferred to a special reserve cannot be implemented if any claims filed that are due have not been paid in full and adequate security has not been provided on request in respect of claims filed that are not due or disputed claims. At the request of either party, the Danish Business Authority decides whether the security offered is deemed to be adequate.

*(5)* A capital reduction to be distributed to the shareholders or transferred to a special reserve must be registered or an application for registration must be submitted, see section 9, by the expiry of the time-limit for submitting the annual report for the period in which the resolution to implement the capital reduction was passed, but no later than one year after the resolution to reduce the share capital was passed. If the time-limit is exceeded, the resolution will cease to be effective.

### Repayment

**194.** Where any distribution has been made to shareholders in conflict with the provisions of this Act, the relevant shareholders must repay the amount with interest accrued annually at the rate set out in section 5(1) and (2) of the Interest Rates Act (*renteloven*) plus 2%. However, dividends must be repaid only if the shareholder realised or ought to have realised that the distribution was unlawful.

*(2)* If the amount cannot be collected or if the shareholder has no obligation to repay the amount, the persons involved in the resolution to make the payment or in the actual payment, or in the preparation or approval of the incorrect financial report, will be liable under the general law of damages.

### Charitable gifts

**195.** The general meeting may resolve to give gifts for charitable or similar purposes out of the limited liability company's funds if this is deemed reasonable, having regard to the purpose of the gift, the company's financial position and the circumstances in general. For the purposes mentioned in the first sentence, the central mana-

gement body may spend amounts that are insignificant in relation to the company's financial position.

## Part 12. Treasury shares

### Acquisition of treasury shares in ownership or by way of security

**196.** A limited liability company may acquire treasury shares only if such shares are fully paid up. The shares may be acquired both in ownership and by way of security.

### Acquisition of treasury shares against payment of consideration

**197.** Where a limited liability company acquires treasury shares against payment of consideration, such consideration may only consist of the amounts distributable as dividends under section 180(2). The company's portfolio of treasury shares must be disregarded in the assessment of whether the company satisfies the capital requirements under section 4.

*(2)* The company's portfolio of treasury shares includes any shares acquired by a third party in its own name, but at the company's expense.

**198.** The acquisition of treasury shares against payment of consideration is subject to authorisation by the general meeting to the central management body of the limited liability company, but see section 199.

*(2)* The authorisation may only be given for a specified period, not to exceed five years.

*(3)* The authorisation must specify

(i)     the maximum value of the company's treasury shares; and

(ii)    the minimum and maximum amount that may be paid by the company as consideration for the shares.

**199.** Where necessary to avoid a considerable and imminent detrimental effect on the limited liability company, the central management body may acquire the company's treasury shares on behalf of the company against payment of consideration under sections 196-198 without the general meeting's authorisation

*(2)* Where the limited liability company has acquired treasury shares under subsection (1), the central management body must notify the next general meeting of

(i)     the reason for and the purpose of the acquisitions;

(ii)    the number and value of the shares acquired;

(iii)   the proportion of the share capital represented by the acquired shares; and

(iv)    the consideration paid for the acquired shares.

**200.** Notwithstanding sections 196-198, a limited liability company may, directly or indirectly, acquire treasury shares

(i)     as part of a reduction of the share capital under Part 11 of this Act;

(ii)    as part of a transfer of assets by merger, demerger or other universal succession;

(iii)   in satisfaction of a statutory takeover obligation to which the company is subject; or

(iv)    in connection with the purchase of fully paid-up shares in a forced sale for the satisfaction of a claim held by the company.

### Subsidiaries' acquisition of shares in parents

**201.** Sections 196-200 apply correspondingly to a subsidiary's acquisition of shares in its parent in ownership or by way of security.

### Disposal of acquired shares

**202.** Shares acquired without payment of consideration in accordance with section 196 and shares acquired in accordance with section 200(ii)-(iv) must be disposed of as soon as such disposal is possible without detriment to the limited liability company, but see subsection (2).

*(2)* The shares must be disposed of no later than three years after their acquisition, unless the value of the aggregate shareholding in the limited liability company of the limited liability company and its subsidiaries does not exceed the company's distributable reserves.

**203.** Shares acquired in ownership in conflict with sections 196-201 must be disposed of as soon as possible and no later than six months after the acquisition.

*(2)* Where shares have been acquired by way of security in conflict with sections 196-201, the security must be released as soon as possible and no later than six months after the acquisition.

**204.** If the shares have not been duly disposed of as provided in sections 202 and 203, the central management body of the limited liability company must cause the share capital to be reduced by the value of such shares, see Part 11 of this Act.

### Subscription for treasury shares

**205.** A limited liability company must not subscribe for treasury shares.

*(2)* Shares that are subscribed for by a third party in its own name, but at the company's expense, are deemed to have been subscribed for at the third party's own expense.

*(3)* Shares subscribed for in the company's name in conflict with subsection (1) will be deemed to have been subscribed for by the promoters or, in case of a capital increase, by the members of the company's management at their own expense to the effect that such members and promoters will be jointly and severally liable for payment of the purchase price. However, this does not apply to promoters or members of the company's management who are able to prove that they neither realised nor ought to have realised that the subscription for the shares was unlawful.

*(4)* Subsection (1) applies correspondingly to a company's subscription for shares in its parent. The shares in the parent are deemed to have been subscribed for by the management of the subsidiary, see subsection (3).

## Part 13. Financial assistance by the limited liability company's own funds

### Financing of purchase of treasury shares

**206.** A limited liability company must not, directly nor indirectly, advance funds, grant loans or provide security for a third party's acquisition of shares in the limited liability company or its parent, but see subsection (2) and sections 213 and 214.

*(2)* However, if the requirements set out in subsection (3) and sections 207-209 for approval by the general meeting, the advisability of the resolution, the report by the central management body and arm's length terms are met, a limited liability company may, directly or indirectly, advance funds, grant loans or provide security in connection with a third party's acquisition of shares in the company or its parent.

*(3)* The central management body of the limited liability company must ensure that the persons receiving financial assistance are credit rated, see subsection (2).

**207.** The provision of financial assistance under section 206(2) is subject to approval by the general meeting. To enable the general

meeting to pass a resolution, the company's central management body must submit a written report to the general meeting specifying

(i)     the reason for the proposed financial assistance;

(ii)    the company's interest in the transaction;

(iii)   the conditions for the transaction.

(iv)    an assessment of the consequences of the transaction for the company's liquidity and solvency; and

(v)     the price to be paid for the shares by the third party.

*(2)* If the general meeting is to pass a resolution to approve financial assistance under subsection (1), such resolution must be passed by the majority of votes required to amend the articles of association, see section 106.

*(3)* The report to be submitted under subsection (1) must be published in the IT system of the Danish Business Authority or be received by the Authority for the purpose of publication under section 9 no later than two weeks after the date of approval by the general meeting.

**208.** The total financial assistance provided by the limited liability company to third parties under section 206(2) may at no time exceed what is advisable, having regard to the company's financial position. If the company is a parent, see sections 6 and 7, the total financial assistance must not exceed what is advisable, having regard to the consolidated financial position. For this purpose, the limited liability company may only use funds that may be distributed as dividends, see section 180(2).

**209.** Where a third party acquires shares in a limited liability company with the financial assistance of the company, see section 206(2), such assistance must be provided at arm's length. The same applies if a third party subscribes for shares, see section 162, in connection with an increase of the subscribed capital.

### Financial assistance to parents, shareholders, members of management and others

**210.** A limited liability company must not, directly or indirectly, advance funds, grant loans or provide security for its shareholders or members of the management, but see sections 211-214. The same applies in relation to the shareholders or members of management of the company's parent or enterprises other than parents exerting a decisive influence on the company. The first sentence also applies to persons who, by marriage or lineal consanguinity, are related to a person falling within the first or second sentence or who otherwise have a close relationship with such person.

*(2)* Notwithstanding subsection (1), a limited liability company may provide the financial assistance mentioned in subsection (1) for the purpose of financing the purchase of treasury shares, see sections 206-209.

**211.** A limited liability company may, directly or indirectly, advance funds, grant loans or provide security for the obligations of Danish and certain foreign parents.

*(2)* The Danish Business Authority lays down more detailed rules specifying the foreign parents falling within subsection (1).

**212.** Notwithstanding section 210, a limited liability company may, directly or indirectly, advance funds, grant loans or provide security for the persons mentioned in section 210 in the course of usual business transactions.

### Exception for banks etc.

**213.** Sections 206 and 210 do not apply to banks or mortgage loans granted by mortgage credit institutions.

### Exception for employees

**214.** Sections 206 and 210 do not apply to transactions for the acquisition of shares to or from the employees of the company or any subsidiary.

*(2)* The minute book of the central management body must include a note on any transaction falling within subsection (1).

*(3)* Transactions falling within subsection (1) may only be carried out by means of funds that may be distributed as dividends under section 180.

### Repayment

**215.** Where a limited liability company has provided financial assistance in conflict with sections 206 and 210, the amount must be repaid to the company together with interest accrued annually at the rate specified in section 5(1) and (2) of the Interest Rates Act (*renteloven*) plus 2%, unless a higher interest rate has been agreed.

*(2)* Where repayment is not possible or agreements for the provision of other financial assistance cannot be terminated, the persons who have agreed to or maintained any transactions in conflict with sections 206 and 210 will be liable for any loss suffered by the limited liability company.

*(3)* Any security provided in conflict with sections 206 and 210 is binding on the company if the contracting party did not know that the security had been provided in conflict with such provisions.

## Part 14. Dissolution of limited liability companies

### Dissolution by declaration

**216.** A limited liability company having paid all its creditors may be dissolved by the shareholders making a declaration to the Danish Business Authority that all debts, whether due or not, have been paid, and that it has been resolved to dissolve the company. The name and address of each of the shareholders must be set out in the declaration.

*(2)* The Danish Business Authority may register the dissolution only if the declaration under subsection (1) is received by the Authority no later than two weeks after it was signed and if it is accompanied by a declaration from the Danish tax authorities that no claim for direct or indirect taxes is pending against the limited liability company.

*(3)* The company is dissolved when it has been deregistered from the register of active companies of the Danish Business Authority.

*(4)* The shareholders are subject to personal, joint and several, and unlimited liability for all debts, whether due or not and whether disputed or not, existing at the date of the declaration. Any residual funds must be distributed to the shareholders.

### Resolution to enter into liquidation

**217.** Unless otherwise provided by statute, any resolution to dissolve a solvent limited liability company by voluntary liquidation must be passed by the general meeting.

*(2)* The resolution must be passed by the majority of votes required to amend the articles of association, see section 106. Where such dissolution is prescribed by statute, by the articles of association of the limited liability company or by the Danish Business Authority under this Act, the resolution must be passed by a simple majority of votes, see section 105.

### Election of liquidator

**218.** The general meeting elects one or more liquidators to liquidate the company. In the period from the resolution to dissolve the company by voluntary liquidation is passed, see section 217(1),

until a liquidator is elected, section 229(1) applies correspondingly to any transactions carried out by management.

*(2)* Shareholders holding at least 25% of the share capital are entitled to elect a liquidator at the general meeting who will liquidate the company together with the other liquidators elected by the general meeting.

**219.** One or more liquidators will replace management. The provisions of this Act on company management apply with the necessary changes to one or more liquidators.

*(2)* A liquidator may be removed at any time by the person having elected such liquidator.

*(3)* The provisions of this Act and the Financial Statements Act (*årsregnskabsloven*) on financial reporting, auditing, general meetings and the submission of annual reports to the Danish Business Authority apply correspondingly to companies in liquidation, with the departure provided for in this Part of the Act.

### Application for registration of liquidation

**220.** The liquidator must ensure that an application for registration of a resolution to liquidate is received by the Danish Business Authority no later than two weeks after the resolution was passed.

*(2)* A company having entered into liquidation must keep its name with "i likvidation" ("in liquidation") added to it. Section 228(1) on registration applies.

*(3)* When a limited liability company has resolved to enter into liquidation, no resolution to change the registered information concerning the company may be passed, except as follows:

(i)     Change of liquidator.

(ii)    Change of the company's auditor if such auditor has been elected to audit the company's financial statements etc.

(iii)   Capital increases.

(iv)    Amendments to the articles of association as a result of a resolution passed by the general meeting to change a previous resolution on the auditing of the company's future financial statements etc. if the limited liability company is not subject to audit obligations under the Financial Statements Act (*årsregnskabsloven*) or any other legislation, see section 88(1)(iii).

(v)     Change of the address of the company's registered office to the liquidator's address if it is not possible to contact the company at the former address or if, as an exception, such change is warranted by the specific circumstances.

(vi)    Resumption of activities, see section 231.

(vii)   Merger, but see sections 246(1) and 247(1).

(viii)  Demerger, but see sections 264 and 265(1).

(ix)    Cross-border merger, but see sections 281 and 282(1).

(x)     Cross-border demerger, but see sections 301 and 302(1).

### Request to creditors

**221.** When a resolution has been registered and published in the IT system of the Danish Business Authority under section 220(1), the company's creditors are requested to file their claims with the liquidator within three months from the date on which the resolution was published. When sending the application for registration of the resolution to liquidate the company under section 220(1), the liquidator must also notify all the company's known creditors of the resolution.

*(2)* The liquidator must not wind up and dissolve the estate until the three-month time-limit set out in subsection (1) has expired.

*(3)* Where a claim cannot be admitted as proved by a creditor, the creditor must be notified by registered post or by any other means of communication providing the same degree of proof of receipt. The creditor must be notified that if he wishes to object to the deci-

sion not to admit his claim, the matter must be brought before the bankruptcy court no later than four weeks after the letter or other communication was sent.

*(4)* Claims filed after the estate has been wound up and dissolved must be paid out of funds not yet distributed to the shareholders.

### Distribution of dividends and liquidation proceeds

**222.** The shareholders may agree to distribute dividends in a company in liquidation on the basis of the latest approved annual report.

*(2)* Distribution of dividends under subsection (1) must be made in accordance with the general provisions on dividends and extraordinary dividends set out in sections 180-183 and 194.

**223.** Liquidation proceeds cannot be distributed to the shareholders until the time-limit set out in the request to the creditors mentioned in section 221(1) has expired and the debts to known creditors have been paid, but see subsection (2).

*(2)* Where adequate security is provided, an on account distribution may be made before the liquidation is completed if the time-limit for filing claims, see section 221(1), has expired and the creditors' claims, if any, have been paid. Shareholders may be requested to repay any liquidation proceeds distributed on account under section 194.

**224.** When the administration of the estate has been completed, the general meeting may pass a resolution to liquidate the company with final effect. The administration of the estate must not be completed until any disputes under the second sentence of section 221(3) have been resolved with final effect. The liquidation proceeds may be distributed before or after completion of the administration of the estate, but see section 223.

*(2)* The liquidators' application for registration of the final liquidation accounts must be received by the Danish Business Authority no later than two weeks after the accounts were approved by the shareholders. The liquidation accounts must be annexed to the application for registration. The liquidation accounts must be audited if the company is subject to audit obligations under the Financial Statements Act (*årsregnskabsloven*) or any other legislation. The Danish Business Authority will then deregister the company.

### Compulsory dissolution

**225.** The Danish Business Authority may request the bankruptcy court to dissolve a limited liability company, if necessary under section 226, where

(i)     the Danish Business Authority has not duly received the company's approved annual report prepared in accordance with the Financial Statements Act (*årsregnskabsloven*);

(ii)    the limited liability company does not have the management or registered office prescribed by this Act or the company's articles of association;

(iii)   the limited liability company has failed to register an auditor even though the company is subject to audit obligations under the Financial Statements Act (*årsregnskabsloven*) or any other legislation;

(iv)    the limited liability company has failed to register an auditor even though the general meeting has resolved that the company's financial statements etc. must be audited; or

(v)     the company's management has failed to respond to claims for called-up share capital that have proved impossible to satisfy.

*(2)* The Danish Business Authority may set a time-limit within which the limited liability company must remedy a defect under subsection (1). If the defect has not been remedied by the expiry

of the time-limit set by the Authority, the Authority may decide to dissolve the company.

**226.** If a limited liability company does not resolve to dissolve but is required to do so by statute or its articles of association or by the Danish Business Authority under the provisions of this Act, see the second sentence of section 217(2), or if no liquidator is elected, the Danish Business Authority may request the bankruptcy court for the district in which the company's registered office is situated to dissolve the company.

*(2)* Subsection (1) applies correspondingly if the court has decided to dissolve the company under section 230.

**227.** The decision by the Danish Business Authority to request the bankruptcy court to dissolve a limited liability company must be published in the IT system of the Danish Business Authority.

*(2)* The limited liability company must keep its name with "under tvangsopløsning" ("in compulsory dissolution") added to it.

*(3)* The bankruptcy court may appoint one or more liquidators. The bankruptcy court may also appoint an auditor. The provisions on liquidation of this Part of the Act apply to compulsory dissolution, always provided that the bankruptcy court or any person so authorised by the court will make decisions concerning the company's affairs. The dissolution expenses will be paid by the treasury, if necessary.

*(4)* When the administration of the estate has been completed, the bankruptcy court notifies the Danish Business Authority, which then registers the dissolution of the company in the Authority's IT system.

**228.** When the Danish Business Authority has decided that a limited liability company must be dissolved, no decision to change the registered information concerning the company may be made, except as follows:

(i)     Addition of a liquidator appointed by the bankruptcy court, see the first sentence of section 227(3).
(ii)    Change of a liquidator appointed by the bankruptcy court.
(iii)   Addition of an auditor appointed by the bankruptcy court, see the second sentence of section 227(3).
(iv)    Change of an auditor appointed by the bankruptcy court.
(v)     Resumption of activities, see section 232.
(vi)    Merger, see sections 236-253, but see subsection (2).
(vii)   Demerger, see sections 254-270, but see subsection (2).
(viii)  Cross-border merger, see sections 271-290 and 311-317, but see subsection (2).
(ix)    Cross-border demerger, see sections 291-311 and 318, but see subsection (2).

*(2)* A resolution to implement a merger, demerger, cross-border merger or cross-border demerger is subject to approval by the bankruptcy court or any liquidator appointed by the bankruptcy court.

*(3)* Where the surviving company in a merger or cross-border merger or the transferee company in a demerger or cross-border demerger is in compulsory dissolution, the resolution may be passed only if it is resolved to resume the company's activities at the same time, see section 232.

**229.** In the period from the request for compulsory dissolution of the limited liability company is submitted to the bankruptcy court until a liquidator is appointed or the company has been dissolved, the former management of the limited liability company may carry out any necessary transactions that may be carried out without detriment to the company and its creditors.

*(2)* To the extent necessary, the former management of the limited liability company must provide the bankruptcy court and any liquidator appointed by the bankruptcy court with information on the company's activities so far. The same applies to the company's former auditor, if any, if the bankruptcy court is unable to obtain information from the company's former management. The management and the auditor must provide the information necessary for the bankruptcy court and any appointed liquidator to assess existing and future claims.

*(3)* In groups, the managements of subsidiaries must also assist the bankruptcy court and any liquidator appointed by the bankruptcy court, see subsection (2), if a request for compulsory dissolution of the parent is submitted to the bankruptcy court.

*(4)* The bankruptcy court may summon the former members of the company's management and the company's former auditor to a court hearing for the purpose of obtaining the information mentioned in subsections (2) and (3).

**Compulsory dissolution by the courts**

**230.** Where the shareholders of a limited liability company have intentionally contributed to the passing of a resolution by the general meeting in conflict with section 108 or otherwise abused the influence that they have over the company or contributed to non-compliance with the provisions of this Act or the articles of association of the limited liability company, the court may, if so warranted by the duration of such non-compliance or for other reasons, order the dissolution of the company at the request of shareholders representing at least one-tenth of the share capital.

**Resumption no activities**

**231.** Where no distribution has been commenced under section 223, the shareholders may resolve to resume the company's activities in accordance with section 106. The activities may be resumed only if a management and an auditor, if applicable, are elected and a declaration is made by a valuation expert, see section 37, that the required capital is available. The share capital must be written down to the amount available. If the share capital is lower than the capital requirement after such write-down, see section 4(2), the share capital must be increased to at least that amount.

*(2)* An application for registration of a resolution to resume the company's activities must be submitted no later than two weeks after the date on which the resolution was passed. The application must be accompanied by a declaration from an approved auditor that no loans etc. have been advanced to the shareholders in conflict with Part 13 of this Act.

**232.** Section 231 applies correspondingly where a company in compulsory dissolution applies to the Danish Business Authority for a discontinuation of the proceedings before the bankruptcy court and a resumption of the company's activities.

*(2)* If the Danish Business Authority has not received an application under subsection (1) no later than three months after the Authority requested the bankruptcy court to dissolve the company or if the company has been in compulsory dissolution within the past five years, the company's activities cannot be resumed. The three-month time-limit will be suspended if restructuring proceedings are commenced against the company.

*(3)* Where the bankruptcy court has been requested to dissolve a limited liability company, the company may resume its activities on condition that the matters on which the request for compulsory dissolution by the court was based have been rectified. Such rectification must be made on or before the date of the resolution to resume the company's activities, see section 231(1). Documentation that the matters have been rectified must be submitted on or before the date of application, see subsection (1). If, at the date of the request for resumption of the company's activities, the limited liability company has not yet submitted its annual report for financial

years for which the time-limit for submitting the annual report is exceeded, the resumption of activities is also subject to receipt of such annual reports.

*(4)* Where the bankruptcy court has appointed a liquidator, such liquidator must consent to the resumption of activities.

*(5)* Where the court has decided to dissolve the company, see section 230, the activities cannot be resumed.

### Transition to restructuring or bankruptcy proceedings

**233.** Only the central management body or, if the company is in liquidation, the liquidator may file an application for restructuring or bankruptcy on behalf of the company.

*(2)* Where the liquidators do not believe that the liquidation will provide full satisfaction to the creditors, they must file an application for restructuring or bankruptcy.

*(3)* Where a company is in compulsory dissolution under section 226, the liquidator must file an application for restructuring or bankruptcy. If no liquidator has been appointed, the bankruptcy court may issue a restructuring or bankruptcy order on its own initiative.

*(4)* When an application for bankruptcy has been filed, no registrations may be made concerning the limited liability company other than changes concerning the election of an auditor, if applicable.

*(5)* A limited liability company in bankruptcy may participate in mergers and cross-border mergers as the non-surviving company and in demergers and cross-border demergers as the transferor company if such participation is approved by the trustee in bankruptcy.

*(6)* In a company whose management has been assumed by the restructuring administrator (rekonstruktøren), no registrations may be made concerning the company, except for changes concerning any auditor appointed by the restructuring administrator or changes for which a resolution has been passed by the general meeting with the consent of the restructuring administrator.

**234.** A company in the process of restructuring must keep its name with "in the process of restructuring" ("under rekonstruktionsbehandling") added to it.

*(2)* A company in bankruptcy must keep its name with "under konkurs" ("in bankruptcy") added to it. The completion of the bankruptcy proceedings must be registered in the IT system of the Danish Business Authority, unless otherwise set out in the bankruptcy court's notice of completion.

### Restoration to the register

**235.** The bankruptcy court may order that a limited liability company that has been deregistered from the register of active companies in the IT system of the Danish Business Authority after dissolution by a declaration under section 216 or after completion of liquidation proceedings must be restored to the register if additional funds become available for distribution. The bankruptcy court may also order restoration to the register if warranted by other circumstances.

*(2)* The former liquidators will be in charge of the administration of the estate. If this is not possible, the bankruptcy court or a liquidator appointed by the bankruptcy court will be in charge of the administration of the estate.

*(3)* An application for restoration and its completion must be received by the Danish Business Authority no later than two weeks after the date of the bankruptcy court's restoration order.

## Part 15. Merger and demerger

### Merger of limited liability companies

**236.** Under the provisions of this Part of the Act, a limited liability company may be dissolved without liquidation by transferring its assets and liabilities as a whole to another limited liability company against payment of consideration to the shareholders of the non-surviving companies, ie merger by absorption. The same applies where two or more limited liability companies merge into a new limited liability company, ie merger by formation of a new company. The transfers are not subject to the creditors' consent.

### Merger plan

**237.** The central management body of each of the existing limited liability companies participating in the merger must prepare and sign a joint merger plan, but see subsection (2).

*(2)* Where only private limited companies participate in the merger, no merger plan needs to be prepared if so agreed by all shareholders, but see section 248(2)-(4).

*(3)* Where public limited companies participate in the merger, the merger plan must include information and provisions on

(i)   the name and any secondary names of each of the limited liability companies, including whether the name or secondary name of a non-surviving company is to be adopted as a secondary name by the surviving company;

(ii)  the registered office of each of the limited liability companies;

(iii) the consideration offered for the shares in the non-surviving company;

(iv)  the date from which any shares to be paid as consideration will confer on the holders a right to receive dividends;

(v)   the rights in the surviving company accruing to any holders of shares and debt instruments carrying special rights in the non-surviving company;

(vi)  any other measures taken for the benefit of the holders of the shares and debt instruments mentioned in para (v);

(vii) registration of any shares to be paid as consideration and any delivery of share certificates, ;

(viii) the date from which the rights and obligations of the non-surviving company will be deemed to transfer for accounting purposes, see subsection (4);

(ix)  any special benefits conferred on the members of the limited liability companies' management; and

(x)   draft articles of association, see sections 28 and 29, if a new limited liability company is formed as part of the merger.

*(4)* Each of the existing limited liability companies must sign the merger plan by the end of the financial year in which the merger takes effect for accounting purposes, see subsection (3)(viii). If the time-limit is exceeded, receipt of the merger plan cannot be published and, consequently, the merger cannot be adopted.

### Merger statement

**238.** The central management body of each of the existing limited liability companies participating in the merger must prepare a written statement explaining and setting out the reasons for the contemplated merger, including any merger plan, but see subsection (2). The statement must include information on how the consideration offered for shares in the non-surviving companies has been determined, including any particular difficulties relating to such determination, and information on the preparation of a valuation report if such report is to be prepared under section 240.

*(2)* If so agreed by all shareholders, no merger statement needs to be prepared.

## Interim balance sheet

**239.** Where the merger plan is signed more than six months after the end of the financial year to which the limited liability company's latest annual report relates, an interim balance sheet must be prepared for the relevant limited liability company participating in the merger, but see subsections (4) and (5).

*(2)* If no merger plan is prepared, see section 237(2), an interim balance sheet must be prepared for the relevant limited liability company participating in the merger if the decision not to prepare any merger plan is made more than six months after the end of the financial year to which the limited liability company's latest annual report relates, but see subsections (4) and (5).

*(3)* The date of the interim balance sheet, which must be prepared in accordance with the set of rules under which the limited liability company prepares its annual report, must not be more than three months before the date on which the merger plan is signed or the decision not to prepare a merger plan is made. The interim balance sheet must be audited if the limited liability company is subject to audit obligations under the Financial Statements Act (*årsregnskabsloven*) or any other legislation.

*(4)* If so agreed by all shareholders, no such interim balance sheet needs to be prepared, notwithstanding that any merger plan is signed more than six months after the end of the financial year to which the latest annual report of the company relates.

*(5)* The provision of subsection (1) does not apply to limited liability companies whose securities are admitted to trading on a regulated market in an EU/EEA country and which have published an interim report in accordance with the Financial Statements Act (*årsregnskabsloven*) where such interim report contains audited financial statements for the company and the interim report is available to the company's shareholders.

## Valuation report on non-cash contributions

**240.** If a capital increase is implemented in the surviving public limited company in connection with the merger or if a new public limited company is formed as part of the merger, a report must be obtained from a valuation expert, but see subsection (2). The valuation expert is appointed under section 37(1). Section 37(2) and (3) applies correspondingly to the valuation experts' relationship with all the merging limited liability companies.

*(2)* No valuation report is required if the valuation expert instead prepares a statement on the contemplated merger, see section 241, or a declaration on the creditors' position, see section 242.

*(3)* Where a valuation report is to be prepared as part of a merger, it must include

(i)     a description of each contribution;

(ii)    information on the valuation method applied;

(iii)   a specification of the agreed consideration; and

(iv)    a declaration that the assessed value is not lower than the agreed consideration, including any nominal value of the shares to be issued plus any premium.

*(4)* The valuation report must not be prepared more than three months before the date of any resolution to merge, see section 245. If the time-limit is exceeded, the merger cannot be adopted with valid effect.

## Statement by valuation expert(s) on the contemplated merger, including any merger plan

**241.** For each of the limited liability companies participating in the merger, one or more independent valuation experts must prepare a written statement on the merger plan, including the consideration offered, see subsection (4). If no merger plan is prepared, see section 237(2), the valuation expert must prepare a written statement on the contemplated merger, including the consideration, but see subsection (4). However, if so agreed by all shareholders, no such statement on the contemplated merger needs to be prepared by a valuation expert, see the first and second sentences.

*(2)* The valuation experts are appointed under section 37(1). If the limited liability companies participating in the merger wish to use one or more joint valuation experts, such valuation experts must, at the companies' request, be appointed by the bankruptcy court for the district in which the registered office of the surviving limited liability company is situated.

*(3)* Section 37(2) and (3) applies correspondingly to the valuation experts' relationship with all the merging limited liability companies.

*(4)* The statement must include a declaration as to whether the consideration offered for the shares in the non-surviving company is fair and reasonable under the circumstances. The statement must specify the method(s) applied for determining the consideration and the appropriateness thereof. The statement must also specify the values resulting from each method and the relative importance to be attached to each individual method in connection with the valuation. Where the valuation has given rise to particular difficulties, such difficulties must be mentioned in the statement.

## Declaration by valuation expert(s) on the creditors' position

**242.** In addition to the statement mentioned in section 241, the valuation experts must make a declaration as to whether the creditors of each of the limited liability companies may be deemed to be adequately protected after the merger compared to the company's current situation. However, if so agreed by all shareholders, no declaration on the creditors' position needs to be made by a valuation expert.

## Creditors' right to file claims

**243.** If, in the declaration on the creditors' position, see section 242, the valuation experts conclude that the creditors of each of the limited liability companies will not be adequately protected after the merger or if no declaration on the creditors' position has been made by a valuation expert, creditors whose claims arose before the publication under section 244 by the Danish Business Authority may file their claims against the company no later than four weeks after the publication. However, claims for which adequate security has been provided cannot be filed.

*(2)* A request may be made for payment of claims filed that are due, and adequate security may be requested for claims filed that are not due.

*(3)* Unless otherwise established, security under subsection (2) is not required if payment of the claims has been secured by a statutory arrangement.

*(4)* Where the limited liability company and any creditors who have filed their claims disagree as to whether security must be provided, or whether the security offered is adequate, either party may, no later than two weeks after the claim was filed, bring the matter before the bankruptcy court for the district in which the registered office of the limited liability company is situated for a ruling on the matter.

*(5)* In the agreement on which the claim is based, creditors cannot waive with binding effect their right to request security under subsection (2).

**Submission of information on contemplated merger, including any merger plan and declaration by valuation expert(s) on creditors' position**

**244.** A copy of the merger plan must be received by the Danish Business Authority no later than four weeks after its signature, but see subsection (2). If the time-limit is exceeded, receipt of the merger plan cannot be published and, consequently, the merger cannot be adopted.

*(2)* If the participating limited liability companies have exercised their right not to prepare any merger plan, see section 237(2), this must be communicated to the Danish Business Authority stating the names and central business register (CVR) numbers of the participating limited liability companies.

*(3)* A declaration by valuation expert(s) on the creditors' position, see the first sentence of section 242, must be submitted to the Danish Business Authority, but see subsection (4).

*(4)* Where, under the second sentence of section 242, the right not to prepare any declaration by valuation expert(s) on the creditors' position has been exercised, this must be communicated to the Danish Business Authority stating the names and central business register (CVR) numbers of the limited liability companies participating in the merger.

*(5)* Receipt by the Danish Business Authority of any information and documents, see subsections (1)-(4), is published in the Authority's IT system. If the creditors are entitled to file their claims, see section 243, the publication by the Danish Business Authority must include information to that effect.

*(6)* The Danish Business Authority may lay down detailed rules on the publication by limited liability companies of any merger plan and accompanying documents.

**Resolution to implement a merger**

**245.** The resolution to implement a merger cannot be passed less than four weeks after the publication by the Danish Business Authority, see section 244(5), of its receipt of information on the contemplated merger, but see subsections (2) and (3). If the publications concerning section 244(1) or (2) and concerning section 244(3) or (4) have been made separately, the time-limit set out in the first sentence will be calculated from the later publication date.

*(2)* If only private limited companies participate in the merger and if, in the declaration on the creditors' position, see section 242, the valuation experts conclude that the creditors of each of the private limited companies will be adequately secured after the merger, the time-limit set out in subsection (1) may be departed from if so agreed by all shareholders after publication by the Danish Business Authority, see section 244(5), of its receipt of information on the contemplated merger.

*(3)* If no merger plan is prepared, see section 237(2), the Danish Business Authority is not required to make publication, see section 244(5), before the shareholders resolve to implement the merger if a declaration by valuation expert(s) on the creditors' position has been prepared, see section 242, and the valuation experts conclude that the creditors of each of the limited liability companies will be adequately protected after the merger.

*(4)* Where the financial year of the non-surviving limited liability company has ended before the date from which the rights and obligations of the non-surviving company will be deemed to transfer to the surviving company for accounting purposes, and the general meeting has not yet approved the annual report for the accounting period ended, the general meeting must approve the annual report for such accounting period on or before the date of the resolution to implement the merger.

*(5)* Creditors making a request to that effect must be informed of the date on which any resolution to implement the merger will be passed.

*(6)* The merger must be implemented in accordance with the merger plan if such plan has been prepared. If the merger is not adopted in accordance with any published merger plan, the proposed resolution will be deemed to have ceased to be effective.

*(7)* Where the following documents have been prepared, such documents must be available to the shareholders at the company's registered office or on the company's website no later than four weeks before the resolution to implement a merger is to be passed, unless all the shareholders agree that such documents are not to be available to the shareholders before or at the general meeting, but see subsection 8:

(i)     The merger plan.

(ii)    Approved annual reports of each of the existing limited liability companies participating in the merger for the past three financial years or any shorter period in which the limited liability company has existed.

(iii)   A merger statement.

(iv)    An interim balance sheet.

(v)     A valuation report on non-cash contributions.

(vi)    The valuation experts' statements on the contemplated merger, including any merger plan.

(vii)   The valuation experts' declaration on the creditors' position.

*(8)* Shareholders making a request to that effect must be granted access free of charge to the documents mentioned in subsection (7).

**246.** In a non-surviving limited liability company, the resolution to merge must be passed by the general meeting, but see subsection (2) and section 252. If the limited liability company is in liquidation, a resolution to merge may be passed only if the shareholders have not yet received any distributions and if the general meeting resolves at the same time to discontinue the liquidation process. In that case, section 231 on resumption of activities will cease to be effective.

*(2)* Where a limited liability company is dissolved without liquidation by transfer of its assets and liabilities as a whole to another limited liability company holding at least 90% of the share capital of the non-surviving limited liability company, the resolution to merge may be passed by the central management body of the non-surviving limited liability company, but see subsections (3)-(5).

*(3)* However, the resolution under subsection (2) must be passed by the general meeting if so requested in writing by shareholders holding 5% of the share capital no later than two weeks after receipt of information on the contemplated merger, including any merger plan, was published. The resolution must also be passed by the general meeting of the non-surviving limited liability company if so requested by the shareholders entitled under the articles of association to demand that a general meeting is called, see section 89.

*(4)* The central management body must call a general meeting no later than two weeks after such request was made.

*(5)* Where the resolution is to be passed by the general meeting of the non-surviving limited liability company, it must be passed by the majority required under section 106 and in accordance with any other provisions on dissolution and merger set out in the articles of association.

**247.** In the surviving limited liability company, the resolution to merge must be passed by the central management body, unless the general meeting is required to amend the articles of association for any purpose other than the adoption of a non-surviving limited liability company's name or secondary name as the surviving limited liability company's secondary name, but see subsections (2)-(4). If

Copyright © 2015 Karnov Group Denmark A/S

the limited liability company is in liquidation, a resolution to merge may be passed only if the shareholders have not yet received any distributions and if the general meeting resolves at the same time to resume activities, see section 231.

*(2)* Shareholders holding 5% of the share capital or the shareholders entitled under the articles of association to demand that a general meeting is called, see section 89, may also demand in writing that the resolution is passed by the general meeting of the surviving limited liability company if such demand is made no later than two weeks after the Danish Business Authority published its receipt of information on the contemplated merger, including any merger plan.

*(3)* The central management body must call a general meeting no later than two weeks after a request was made to that effect.

*(4)* Where the resolution is to be passed by the general meeting of the surviving limited liability company, such resolution must be passed by the majority required under section 106.

**248.** The central management body of each of the existing limited liability companies participating in the merger must inform any general meeting at which the resolution to implement the merger is to be passed of any significant events, including any significant changes in assets and liabilities which have occurred between the signing of the merger plan and the general meeting.

*(2)* If no merger plan is prepared, see section 237(2), the central management bodies must inform the general meeting of any significant events, including any significant changes in assets and liabilities which have occurred between the balance sheet date of the company's latest annual report and the general meeting.

*(3)* If only private limited companies participate in the merger, the following matters must be considered in connection with the implementation of the merger, unless such information is included in a merger plan, if available, see section 237:

(i)  the name and any secondary names of each of the private limited companies, including whether the name or secondary name of a non-surviving company is to be adopted as a secondary name of the surviving private liability company;

(ii)  the consideration offered for the shares in a non-surviving private limited company;

(iii)  the date from which the shares offered as consideration will confer on the holders a right to receive dividends;

(iv)  the date from which the rights and obligations of a non-surviving private limited company will be deemed to transfer for accounting purposes; and

(v)  articles of association, see sections 28 and 29, if a new private limited company is formed as part of the merger.

*(4)* If only private limited companies participate in the merger and all the shareholders of such companies have agreed under section 237(2) that no merger plan is to be prepared, identical resolutions must have been passed by all the existing private limited companies participating in the merger with regard to the requirements set out in subsection (3). In the absence of such identical resolutions, the resolution to implement the merger will be deemed to have ceased to be effective.

## Shareholders' right to claim compensation

**249.** The shareholders of the non-surviving limited liability company or companies may claim compensation from the limited liability company if the consideration offered for the shares in the non-surviving limited liability company or companies is not fair and reasonable under the circumstances and if the shareholders made a reservation to that effect at the general meeting at which the resolution to implement the merger was passed.

*(2)* Proceedings under subsection (1) must be commenced no later than two weeks after the resolution to merge was passed by all the merging limited liability companies.

*(3)* Where a reservation has been made under subsection (1), the resolution to merge cannot be registered until the time-limit set out in subsection (2) has expired, unless the valuation experts conclude in their statement on the contemplated merger, including the consideration offered, see section 241, that the consideration offered for the shares in the non-surviving limited liability company or companies is fair and reasonable under the circumstances.

## Legal effects of a merger

**250.** The merger will be deemed to have been completed and a non-surviving limited liability company will be deemed to have been dissolved and its rights and obligations to have been transferred as a whole to the surviving limited liability company, but see subsection (2), when:

(i)  The resolution to merge has been passed by all the existing limited liability companies participating in the merger.

(ii)  The claims filed by the creditors under section 243 have been settled.

(iii)  The claims for compensation filed by the shareholders under section 249 have been settled, or adequate security has been provided for the claims. If the valuation experts have prepared a statement on the contemplated merger, including the consideration offered, and the statement is based on the assumption that the consideration is fair and reasonable under the circumstances, the valuation experts must also have declared that their statement on the consideration is not disputed to any significant degree. The valuation experts decide whether the security is adequate.

(iv)  The requirements set out in subsection (6) concerning the election of members to the supreme management body and an auditor have been met.

(v)  An executive board has been appointed if a new limited liability company is formed as part of the merger. The limited liability company must have a management structure where the supreme management body is either a board of directors or a supervisory board, see section 111(1).

*(2)* Where the date from which the rights and obligations of the non-surviving company will be deemed to transfer to the surviving company for accounting purposes is after the date of the resolutions to implement the merger, the merger will only take legal effect, see the second and third sentences, when the merger takes effect for accounting purposes. The date on which the merger takes effect for accounting purposes cannot be later than two weeks after the resolutions to implement the merger were passed, but no later than the date on which the merger was registered or an application for registration of the merger was submitted. The date on which the merger takes effect for accounting purposes and the date of the resolution to implement the merger must also be in the same financial year for the participating limited liability companies.

*(3)* When the requirements set out in subsections (1) and (2) have been met, the shareholders of the non-surviving limited liability company receiving shares as consideration become shareholders of the surviving company.

*(4)* No consideration may be offered for shares in a non-surviving limited liability company owned by the merging limited liability companies. Sections 31 and 153(2) apply correspondingly to mergers.

*(5)* Part 3 of this Act on formation, Part 10 of this Act on capital increases and Part 14 of this Act on dissolution do not apply to

mergers, unless otherwise set out in the provisions on mergers, see sections 236-252.

*(6)* If a new limited liability company is formed as part of the merger and if members to the supreme management body and any auditor are not elected immediately after the adoption of the merger by the general meeting, a general meeting for the election of members to the supreme management body and any auditor must be held in the new limited liability company no later than two weeks after the adoption of the merger. The general meeting must also decide whether the future financial statements of the limited liability company are to be audited if the company is not subject to audit obligations under the Financial Statements Act (*årsregnskabsloven*) or any other legislation.

### Registration of implementation of merger

**251.** For each limited liability company, the resolution to implement the merger must be registered with or an application for registration must be submitted to the Danish Business Authority, see section 9, no later than two weeks after the resolution was passed by all the existing limited liability companies participating in the merger. The surviving limited liability company may register or apply for registration of the merger on behalf of the participating limited liability companies. The registration or application for registration must be accompanied by the documents mentioned in section 245(7)(iii)-(vii) if such documents have been prepared. The resolution to implement the merger cannot be registered until the merger has taken legal effect under section 250(1) and (2).

*(2)* The resolution to implement the merger must be registered or an application for registration must be submitted, see section 9, by the expiry of the time-limit for submitting the annual report for the period in which the merger takes effect for accounting purposes, but no later than one year after the Authority published its receipt of information on the contemplated merger under section 244(5). If either of the time-limits is exceeded, the resolution to implement the merger will become invalid, and any merger plan prepared under section 237 will be deemed to have ceased to be effective.

*(3)* If a limited liability company formed as part of the merger enters into an agreement before it has been registered and if the other party to the agreement knows that the company has not been registered, such other party may terminate the agreement, unless otherwise agreed, provided that no registration has been made with or no application for registration has been received by the Danish Business Authority by the expiry of the time-limit set out in subsection (2), or if registration has been refused. If the other party does not know that the limited liability company has not been registered, such other party may terminate the agreement as long as the company remains unregistered. The second sentence of section 41(1) applies correspondingly.

*(4)* Sections 42-44 apply correspondingly where, during the 24 months following registration of the company, a public limited company formed as part of a merger acquires assets from a shareholder known to the company.

### Vertical mergers between parents and wholly-owned subsidiaries

**252.** If a limited liability company is dissolved without liquidation by transfer of its assets and liabilities as a whole to another limited liability company holding all the shares in the non-surviving company, ie a vertical merger, the resolution to merge may be passed by the central management body of the non-surviving limited liability company. Section 237(1), (2), (3)(i), (ii), (v), (vi) and (viii)-(x) and (4), section 239, sections 242-245, the second and third senten-

ces of section 246(1), sections 247 and 248 as well as sections 250 and 251 apply correspondingly to vertical mergers.

### Transfer of the assets and liabilities of a limited liability company to the Danish state or a Danish municipality

**253.** If a limited liability company is dissolved without liquidation by transfer of its assets and liabilities as a whole to the Danish state or a Danish municipality, section 237(1) and (3), section 238, section 241, section 244(1), (2) and (5), section 245(1) and (3)-(6), sections 246, 248 and 249, section 250(1)(i) and section 251(1) apply correspondingly.

### Demerger of limited liability companies

**254.** The general meeting of a limited liability company may pass a resolution to demerge the limited liability company. In connection with the demerger, the assets and liabilities are transferred as a whole to two or more existing or new public or private limited companies formed as part of the demerger, against consideration to the shareholders of the transferor limited liability company. With the same majority of votes, the general meeting may resolve to carry out a demerger whereby the limited liability company transfers part of its assets and liabilities to one or more existing or new limited liability companies formed as part of the demerger. The transfers are not subject to the creditors' consent.

*(2)* Where a creditor of a limited liability company participating in the demerger is not paid, each of the other participating limited liability companies are jointly and severally liable for the obligations existing at the date of publication by the Danish Business Authority, see section 262(5) concerning section 262(1) or (2), subject, however, to a maximum amount equal to the net value contributed or remaining in each limited liability company at that date.

*(3)* Where one or more of the transferee limited liability companies participating in a demerger are formed as part of another demerger or merger that has not been implemented, this must be specified in the demerger plan, see section 255, or where no demerger plan is prepared in the resolution to demerge, see section 266. Any demerger into new transferee limited liability companies formed as part of another demerger or merger must be implemented immediately after such demerger or merger, see section 269.

### Demerger plan

**255.** The central management body of each of the existing limited liability companies participating in the demerger must prepare and sign a joint demerger plan, but see subsection (2).

*(2)* Where only private limited companies participate in the demerger, no demerger plan needs to be prepared if so agreed by all shareholders, but see section 266(2), (3) and (4).

*(3)* Where public limited companies participate in the demerger, the demerger plan must include information and provisions on

(i)    the name and any secondary names of each of the limited liability companies, including whether the name or secondary name of the transferor limited liability company is to be adopted as a secondary name for the transferee limited liability company;

(ii)    the registered office of each of the limited liability companies;

(iii)    an accurate description and distribution of the assets and liabilities to be transferred or to remain in each of the limited liability companies participating in the demerger;

(iv)    the consideration offered to the shareholders of the transferor limited liability company;

(v)    the distribution of the consideration, including the shares in the transferee limited liability companies, to the shareholders

of the transferor limited liability company and the distribution criterion;

(vi)   the date from which any shares offered as consideration will confer on the holders a right to receive dividends;

(vii)  the rights in the transferee company accruing to any holders of shares and debt instruments carrying special rights in the transferor company;

(viii) any other measures taken for the benefit of the holders of the shares and debt instruments mentioned in para (vii);

(ix)   registration of any shares offered as consideration and any delivery of share certificates;

(x)    the date from which the rights and obligations of the transferor company will be deemed to transfer for accounting purposes, see subsection (4);

(xi)   any special benefits conferred on the members of the limited liability companies' management; and

(xii)  draft articles of association, see sections 28 and 29, if one or more new limited liability companies are formed as part of the demerger.

*(4)* Each of the existing limited liability companies must sign the demerger plan by the end of the financial year in which the demerger takes effect for accounting purposes, see subsection (3)(x). If the time-limit is exceeded, the Danish Business Authority cannot publish receipt of the demerger plan and, consequently, the demerger cannot be adopted.

*(5)* Where not all assets are distributed by the demerger plan, see subsection (3)(iii) or section 266(3), and their distribution cannot be determined on the basis of an interpretation of the plan, such assets or the value they represent will be distributed among the participating limited liability companies in proportion to the net assets contributed or remaining in each limited liability company according to the demerger plan.

*(6)* Where not all liabilities are distributed by the demerger plan, see subsection (3)(iii) or section 266(3), and their distribution cannot be determined on the basis of an interpretation of the plan, each of the participating limited liability companies will be jointly and severally liable, subject, however, to a maximum amount of the net value contributed or remaining in each limited liability company. Such liabilities will be distributed among the participating limited liability companies in proportion to the net assets contributed or remaining in each limited liability company according to the demerger plan.

### Demerger statement

**256.** The central management body of each of the existing limited liability companies participating in the demerger must prepare a written statement explaining and setting out the reasons for the contemplated demerger, including any demerger plan, but see subsection (2). The statement must include information on how the consideration for the shares in the transferor limited liability company has been determined, including any particular difficulties relating to such determination, and information on the preparation of a valuation report if such report is to be prepared under section 258.

*(2)* If so agreed by all shareholders, no demerger statement needs to be prepared.

### Interim balance sheet

**257.** Where the demerger plan is signed more than six months after the end of the financial year to which the limited liability company's latest annual report relates, an interim balance sheet must be prepared for the relevant limited liability company participating in the demerger, but see subsections (4) and (5).

*(2)* If no demerger plan is prepared, see section 255(2), an interim balance sheet must be prepared for the relevant limited liability company participating in the demerger if the decision not to prepare any demerger plan is made more than six months after the end of the financial year to which the limited liability company's latest annual report relates, but see subsections (4) and (5).

*(3)* The date of the interim balance sheet, which must be prepared in accordance with the set of rules under which the company prepares its annual report, must not be more than three months before the date on which the demerger plan is signed or the decision not to prepare a demerger plan is made. The interim balance sheet must be audited if the limited liability company is subject to audit obligations under the Financial Statements Act (*årsregnskabsloven*) or any other legislation.

*(4)* If so agreed by all shareholders, no interim balance sheet needs to be prepared, notwithstanding that any demerger plan is signed more than six months after the end of the financial year to which the limited liability company's latest annual report relates.

*(5)* The provision of subsection (1) does not apply to limited liability companies whose securities are admitted to trading on a regulated market in an EU/EEA country and which have published an interim report in accordance with the Financial Statements Act (*årsregnskabsloven*) where such interim report contains audited financial statements for the company and the interim report is available to the company's shareholders.

### Valuation report on non-cash contributions

**258.** If a capital increase is implemented in one or more of the transferee public limited companies in connection with the demerger or if one or more new public limited companies are formed as part of the demerger, a report must be obtained from a valuation expert as part of the demerger procedure, but see subsection (2). The valuation expert is appointed under section 37(1). Section 37(2) and (3) applies correspondingly to the valuation experts' relationship with all the limited liability companies participating in the demerger.

*(2)* No valuation report is required if the valuation expert instead prepares a statement on the contemplated demerger, see section 259, or a declaration on the creditors' position, see section 260.

*(3)* Where a valuation report is to be prepared as part of a demerger, it must include

(i)    a description of each contribution;

(ii)   information on the valuation method applied;

(iii)  a specification of the agreed consideration; and

(iv)   a declaration that the assessed value is not lower than the agreed consideration, including any nominal value of the shares to be issued plus any premium.

*(4)* The valuation report must not be prepared more than three months before the date of any resolution to demerge, see section 263. If the time-limit is exceeded, the demerger cannot be adopted with valid effect.

### Statement by valuation expert(s) on the contemplated demerger, including any demerger plan

**259.** For each of the limited liability companies participating in the demerger, one or more independent valuation experts must prepare a written statement on the demerger plan, including the consideration offered, see subsection (4). If no demerger plan is prepared, see section 255(2), the valuation expert must prepare a written statement on the contemplated demerger, including the consideration, see subsection (4). However, if so agreed by all shareholders, no such statement on the contemplated demerger needs to be prepared by a valuation expert.

*(2)* The valuation experts are appointed under section 37(1). If the limited liability companies participating in the demerger wish to use one or more joint valuation experts, such valuation experts must, if so requested by the companies, be appointed by the bankruptcy court for the district in which the registered office of one of the transferee limited liability companies is situated.

*(3)* Section 37(2) and (3) applies correspondingly to the valuation experts' relationship with all the limited liability companies participating in the demerger.

*(4)* The statement must include a declaration as to whether the consideration offered to the shareholders of the transferor limited liability company is fair and reasonable under the circumstances. The statement must specify the method(s) applied for determining the consideration and assess the appropriateness thereof. The statement must also specify the values resulting from each method and the relative importance to be attached to the method in connection with the valuation. Where the valuation has given rise to particular difficulties, such difficulties must be mentioned in the statement.

### Declaration by valuation expert(s) on the creditors' position

**260.** In addition to the statement mentioned in section 259, the valuation experts must make a declaration as to whether the creditors of each of the limited liability companies may be deemed to be adequately protected after the demerger compared to the company's current situation. However, if so agreed by all shareholders, no declaration on the creditors' position needs to be made by a valuation expert.

### Creditors' right to file claims

**261.** If, in the declaration on the creditors' position, see section 260, the valuation experts conclude that the creditors of each of the limited liability companies will not be adequately protected after the demerger or if no declaration on the creditors' position has been made by a valuation expert, creditors whose claims arose before the publication under section 262 by the Danish Business Authority may file their claims against the company no later than four weeks after the publication. However, claims for which adequate security has been provided cannot be filed.

*(2)* A request may be made for payment of claims filed that are due, and adequate security may be requested for claims filed that are not due.

*(3)* Unless otherwise established, security under subsection (2) is not required if payment of the claims has been secured by a statutory arrangement.

*(4)* Where the limited liability company and any creditors who have filed their claims disagree as to whether security must be provided, or whether the security offered is adequate, either party may, no later than two weeks after the claim was filed, bring the matter before the bankruptcy court for the district in which the registered office of the limited liability company is situated for a ruling on the matter.

*(5)* In the agreement on which the claim is based, creditors cannot waive with binding effect their right to request security under subsection (2).

### Submission of information on contemplated demerger, including any demerger plan and declaration by valuation expert(s) on the creditors' position

**262.** A copy of the demerger plan must be received by the Danish Business Authority no later than four weeks after its signature, but see subsection (2). If the time-limit is exceeded, the Authority

cannot publish receipt of the demerger plan and, consequently, the demerger cannot be adopted.

*(2)* If the participating limited liability companies have exercised their right not to prepare any demerger plan, see section 255(2), this must be communicated to the Danish Business Authority stating the names and central business register (CVR) numbers of the participating limited liability companies.

*(3)* A declaration by valuation expert(s) on the creditors' position, see the first sentence of section 260, must be submitted to the Danish Business Authority, but see subsection (4).

*(4)* Where, under the second sentence of section 260, the right not to prepare any declaration by valuation expert(s) on the creditors' position has been exercised, this must be communicated to the Danish Business Authority stating the names and central business register (CVR) numbers of the limited liability companies participating in the demerger.

*(5)* Receipt by the Danish Business Authority of any information and documents, see subsections (1)-(4), is published in the Authority's IT system. If the creditors are entitled to file their claims, see section 261, the publication by the Danish Business Authority must include information to that effect.

*(6)* The Danish Business Authority may lay down detailed rules on the publication by limited liability companies of any demerger plan and accompanying documents.

### Resolution to implement a demerger

**263.** The resolution to implement a demerger cannot be passed less than four weeks after the publication by the Danish Business Authority, see section 262(5), of its receipt of information on the contemplated demerger, but see subsections (2) and (3). If the publications concerning section 262(1) or (2) and concerning section 262(3) or (4) have been made separately, the time-limit set out in the first sentence will be calculated from the later publication date.

*(2)* If only private limited companies participate in the demerger and if, in the declaration on the creditors' position, see section 260, the valuation experts conclude that the creditors of each of the private limited companies will be adequately secured after the demerger, the time-limit set out in subsection (1) may be departed from if so agreed by all shareholders after publication by the Danish Business Authority, see section 262(5), of its receipt of information on the contemplated demerger.

*(3)* If no demerger plan is prepared, see section 255(2), the Danish Business Authority is not required to make publication, see section 262(5), before the shareholders resolve to implement the demerger if a declaration by valuation expert(s) on the creditors' position has been prepared, see section 260, and the valuation experts conclude that the creditors of each of the limited liability companies will be adequately protected after the demerger.

*(4)* Where the transferor limited liability company is dissolved as part of the demerger and the financial year of the transferor limited liability company has ended before the date from which the rights and obligations of the transferor company will be deemed to transfer to the transferee company for accounting purposes, and the general meeting has not yet approved the annual report for the accounting period ended, the general meeting must approve the annual report for such accounting period on or before the date of the resolution to implement the demerger.

*(5)* Creditors making a request to that effect must be informed of the date on which any resolution to implement the demerger will be passed.

*(6)* The demerger must be implemented in accordance with the demerger plan if such plan has been prepared. If the demerger is

not adopted in accordance with any published demerger plan, the proposed resolution will be deemed to have ceased to be effective.

*(7)* Where the following documents have been prepared, such documents must be available to the shareholders at the company's registered office or on the company's website no later than four weeks before the resolution to implement a demerger is to be passed, unless all the shareholders agree that such documents are not to be available to the shareholders before or at the general meeting, but see subsection 8:

(i)     The demerger plan.

(ii)    Approved annual reports of each of the existing limited liability companies participating in the demerger for the past three financial years or any shorter period in which the limited liability company has existed.

(iii)   A demerger statement.

(iv)   An interim balance sheet.

(v)    A valuation report on non-cash contributions.

(vi)   The valuation experts' statements on the contemplated demerger, including any demerger plan.

(vii)  The valuation experts' declaration on the creditors' position.

*(8)* Shareholders making a request to that effect must be granted access free of charge to the documents mentioned in subsection (7).

**264.** In the transferor limited liability company, the resolution to demerge must be passed by the general meeting by the majority required under sections 106 and 107 and in accordance with any other provisions on dissolution or demerger set out in the articles of association, but see section 270. If the limited liability company is in liquidation, a resolution to demerge may be passed only if the shareholders have not yet received any distributions and if the general meeting resolves at the same time to discontinue the liquidation process. In that case, section 231 on resumption of activities does not apply.

**265.** In existing transferee limited liability companies, the resolution to demerge must be passed by the central management body, unless the general meeting is required to amend the articles of association for any purpose other than the adoption of the transferor limited liability company's name or secondary name as the transferee limited liability company's secondary name, but see subsection (2). If the limited liability company is in liquidation, a resolution to demerge may be passed only if the shareholders have not yet received any distributions and if the general meeting resolves at the same time to resume activities, see section 231.

*(2)* Shareholders holding 5% of the share capital or the shareholders entitled under the articles of association to demand that a general meeting is called, see section 89, may also demand in writing that the resolution is passed by the general meeting of each of the existing transferee limited liability companies if such demand is made no later than two weeks after the Danish Business Authority published its receipt of information on the contemplated demerger, including any demerger plan.

*(3)* The central management body must call a general meeting no later than two weeks after a request was made to that effect.

*(4)* Where the resolution is to be passed by the general meeting of an existing transferee limited liability company, such resolution must be passed by the majority required under section 106.

**266.** The central management body of each of the existing limited liability companies participating in the demerger must inform any general meeting at which the resolution to implement the demerger is to be passed of any significant events, including any significant changes in assets and liabilities which have occurred between the signing of the demerger plan and the general meeting.

*(2)* If no demerger plan is prepared, see section 255(2), the central management bodies must inform the general meeting of any significant events, including any significant changes in assets and liabilities which have occurred between the balance sheet date of the company's latest annual report and the general meeting.

*(3)* If only private limited companies participate in the demerger, the following matters must be considered in connection with the implementation of the demerger, unless such information is included in a demerger plan, if available, see section 255:

(i)     the name and any secondary names of each of the private limited companies, including whether the name or secondary name of the transferor company is to be adopted as a secondary name of the transferee company;

(ii)    distribution of the assets and liabilities to be transferred or to remain in each of the private limited companies participating in the demerger;

(iii)   the consideration offered for the shares in the transferor company, including the distribution of such consideration;

(iv)   the date from which the shares offered as consideration will confer on the holders a right to receive dividends;

(v)    the date from which the rights and obligations of the transferor private limited company will be deemed to transfer for accounting purposes; and

(vi)   articles of association, see sections 28 and 29, if a new private limited company is formed as part of the demerger.

*(4)* If only private limited companies participate in the demerger and all the shareholders of such companies have agreed under section 255(2) that no demerger plan is to be prepared, identical resolutions must have been passed by all the existing private limited companies participating in the demerger with regard to the requirements set out in subsection (3). If that is not the case, the resolution to implement the demerger will be deemed to have ceased to be effective.

## Shareholders' right to claim compensation

**267.** The shareholders of the transferor limited liability company may claim compensation from the limited liability company if the consideration offered for the shares in the transferor limited liability company is not fair and reasonable under the circumstances and if the shareholders made a reservation to that effect at the general meeting at which the resolution to implement the demerger was passed.

*(2)* Proceedings under subsection (1) must be commenced no later than two weeks after the resolution to demerge was passed by all the existing limited liability companies participating in the demerger.

*(3)* Where a reservation has been made under subsection (1), the resolution to demerge cannot be registered until the time-limit set out in subsection (2) has expired, unless the valuation experts conclude in their statement on the contemplated demerger, including the consideration offered, see section 259, that the consideration offered for the shares in the transferor limited liability company is fair and reasonable under the circumstances.

## Legal effects of a demerger

**268.** The demerger will be deemed to have been completed and the rights and obligations of the transferor limited liability company to have been transferred to the transferee limited liability companies, but see subsection (2), when:

(i)     A resolution to demerge has been passed by all the existing limited liability companies participating in the demerger.

(ii)   The claims filed by creditors under section 261 have been settled.

(iii)  The claims for compensation filed by the shareholders under section 267 have been settled, or adequate security has been provided for the claims. If the valuation experts have prepared a statement on the plan, including the consideration offered, and the statement is based on the assumption that the consideration is fair and reasonable under the circumstances, the valuation experts must also have declared that their statement on the consideration is not disputed to any significant degree. The valuation experts decide whether the security is adequate.

(iv)   The requirements set out in subsection (6) concerning the election of members to the supreme management body and an auditor have been met.

(v)    An executive board has been appointed if one or more new limited liability companies are formed as part of the demerger. The limited liability companies must have a management structure where the supreme management body is either a board of directors or a supervisory board, see section 111(1).

(2) Where the date from which the rights and obligations of the transferor limited liability company will be deemed to transfer to the transferee limited liability companies for accounting purposes is after the date of the resolutions to implement the demerger, the demerger will only take legal effect, see the second and third sentences, when the demerger takes effect for accounting purposes. The date on which the demerger takes effect for accounting purposes cannot be later than two weeks after the resolutions to implement the demerger were passed, but no later than the date on which the demerger was registered or an application for registration of the demerger was submitted. The date on which the demerger takes effect for accounting purposes and the date of the resolution to implement the demerger must also be in the same financial year for the participating limited liability companies.

(3) When the requirements set out in subsections (1) and (2) have been met, the shareholders of the transferor limited liability company receiving shares as consideration become shareholders of one or more of the transferee limited liability companies.

(4) No consideration may be offered for shares in the transferor limited liability company owned by the limited liability companies participating in the demerger. Sections 31 and 153(2) apply correspondingly to demergers.

(5) Part 3 of this Act on formation, Part 10 of this Act on capital increases, Part 11 of this Act on capital outflow and Part 14 of this Act on dissolution do not apply to demergers, unless otherwise set out in the provisions on demergers, see sections 254-270.

(6) If a new limited liability company is formed as part of the demerger and if members to the supreme management body and any auditor are not elected immediately after the adoption of the demerger by the general meeting, a general meeting for the election of members to the supreme management body and any auditor must be held in the new limited liability company no later than two weeks after the adoption of the demerger. The general meeting must also decide whether the future financial statements of the limited liability company are to be audited if the company is not subject to audit obligations under the Financial Statements Act (*årsregnskabsloven*) or any other legislation.

### Registration of implementation of a demerger

**269.** For each limited liability company, the resolution to implement the demerger must be registered with or an application for registration must be submitted to the Danish Business Authority, see section 9, no later than two weeks after the resolution was passed by all

the existing limited liability companies participating in the demerger. Each transferee limited liability company may register or apply for registration of the demerger on behalf of the participating limited liability companies. The registration or application for registration must be accompanied by the documents mentioned in section 263(7)(iii)-(vii). The resolution to implement the demerger cannot be registered until the demerger has taken legal effect under section 268(1) and (2).

(2) The resolution to implement the demerger must be registered or an application for registration must be submitted, see section 9, by the expiry of the time-limit for submitting the annual report for the period in which the demerger takes effect for accounting purposes, but no later than one year after the Authority published its receipt of information on the contemplated demerger under section 262(5). If either of the time-limits is exceeded, the resolution to implement the demerger will become invalid, and any demerger plan prepared under section 255 will be deemed to have ceased to be effective.

(3) If a limited liability company formed as part of a demerger enters into an agreement before it has been registered and if the other party to the agreement knows that the company has not been registered, such other party may terminate the agreement, unless otherwise agreed, provided that no registration or application for registration has been received by the Danish Business Authority by the expiry of the time-limit set out in subsection (2), or if registration has been refused. If the other party does not know that the limited liability company has not been registered, such other party may terminate the agreement as long as the company remains unregistered. The second sentence of section 41(1) applies correspondingly.

(4) Sections 42-44 apply correspondingly where, during the 24 months following registration of the company, a public limited company formed as part of a demerger acquires assets from a shareholder known to the company.

### Simplified procedures for vertical demergers etc.

**270.** Where all the shares in the transferor limited liability company are held by the transferee limited liability companies, ie a vertical demerger, the resolution to demerge may be passed by the central management body of the transferor company. Section 255(1), (2) and (3)(i)-(iii), (vii), (viii) and (x)-(xii) and (4), sections 256, 257 and 260-263, the second and third sentences of section 264 and sections 265, 266, 268 and 269 apply correspondingly to vertical demergers.

(2) Where one or more new limited liability companies are formed as part of the demerger, and the shares in these companies are allocated to the shareholders of the transferor company in proportion to their shareholdings or voting rights in the transferor company, the provisions of sections 256, 257 and 259 as well as section 266(1) do not apply.

## Part 16. Cross-border mergers and demergers

### Cross-border mergers

**271.** Limited liability companies falling within the scope of this Act may participate in cross-border mergers in which the other participating companies are also limited liability companies governed by the legislation of EU/EEA countries. The cross-border merger may be implemented without the creditors' consent.

### Merger plan

**272.** The central management body of each of the existing limited liability companies participating in the merger must prepare and

sign a joint merger plan that must include information and provisions on

(i) the corporate form, name and any secondary names of each of the limited liability companies, including whether the name or secondary name of the non-surviving limited liability company is to be adopted as a secondary name for the surviving limited liability company

(ii) the registered office of each of the limited liability companies;

(iii) the consideration offered for the shares in the non-surviving limited liability company;

(iv) the distribution of the consideration, including the shares in the surviving limited liability company, to the shareholders of the non-surviving limited liability companies and the distribution criterion;

(v) the likely impact of the cross-border merger on the number of employees in the participating limited liability companies;

(vi) the date from which the shares offered as consideration will confer on the holders a right to receive dividends and a specification of any special conditions attaching to such right;

(vii) registration of any shares offered as consideration and delivery of share certificates, if any;

(viii) the date from which the rights and obligations of the non-surviving limited liability companies will be deemed to transfer for accounting purposes;

(ix) the rights in the surviving limited liability company accruing to any holders of shares carrying special rights and any holders of other securities than shares or the measures proposed to be taken for the benefit of such persons;

(x) the special benefits accruing to the valuation experts making a statement on the merger plan, see section 276, and to the members of the limited liability companies' management;

(xi) the articles of association of the surviving limited liability company in the wording that they will have after implementation of the merger;

(xii) information on the procedures under sections 311-317 for involving employees in the determination of their rights of participation in the surviving limited liability company, if advisable;

(xiii) the valuation of the assets and liabilities transferred to the surviving limited liability company; and

(xiv) the dates of the merging limited liability companies' financial statements that have been used to establish the conditions of the cross-border merger.

*(2)* Each of the existing limited liability companies must sign the merger plan by the end of the financial year in which the merger takes effect for accounting purposes, see subsection (1)(vi). If the time-limit is exceeded, the Danish Business Authority cannot publish receipt of the merger plan and, consequently, the merger cannot be adopted.

## Merger statement

**273.** The central management body of each of the existing limited liability companies participating in the merger must prepare a written statement explaining and setting out the reasons for the merger plan. The statement must include information on how the consideration offered for the shares in the non-surviving limited liability companies has been determined, including any particular difficulties relating to such determination, and information on the preparation of a valuation report if such report is to be prepared under section 275. The statement must also include an account of

the consequences of the cross-border merger for the shareholders, the creditors and the employees.

## Interim balance sheet

**274.** Where the merger plan is signed more than six months after the end of the financial year to which the limited liability company's latest annual report relates, an interim balance sheet must be prepared for the limited liability company participating in the merger, but see subsections (3) and (4).

*(2)* The date of the interim balance sheet, which must be prepared in accordance with the set of rules under which the company prepares its annual report, must not be more than three months before the date on which the merger plan is signed. The interim balance sheet must be audited if the limited liability company is subject to audit obligations under the Financial Statements Act (*årsregnskabsloven*) or any other legislation.

*(3)* If so agreed by all shareholders, no interim balance sheet needs to be prepared, notwithstanding that a merger plan is signed more than six months after the end of the financial year to which the company's latest annual report relates.

*(4)* The provision of subsection (1) does not apply to limited liability companies whose securities are admitted to trading on a regulated market in an EU/EEA country and which have published an interim report in accordance with the Financial Statements Act (*årsregnskabsloven*) where such interim report contains audited financial statements for the company and the interim report is available to the company's shareholders.

## Valuation report on non-cash contributions

**275.** If a capital increase is implemented in the surviving public limited company in connection with the merger or if a new public limited company is formed as part of the merger, a report must be obtained from a valuation expert, but see subsection (2). The valuation expert is appointed under section 37(1). Section 37(2) and (3) applies correspondingly to the valuation experts' relationship with all the merging limited liability companies.

*(2)* No valuation report is required if the valuation expert instead prepares a statement on the merger plan, see section 276, or a declaration on the creditors' position, see section 277.

*(3)* Where a valuation report is to be prepared as part of a merger, it must include

(i) a description of each contribution;

(ii) information on the valuation method applied;

(iii) a specification of the agreed consideration; and

(iv) a declaration that the assessed value is not lower than the agreed consideration, including any nominal value of the shares to be issued plus any premium.

*(4)* The valuation report must not be prepared more than three months before the date of any resolution to merge, see section 280. If the time-limit is exceeded, the merger cannot be adopted with valid effect.

## Statement by valuation expert(s) on the merger plan

**276.** For each of the limited liability companies participating in the merger, one or more independent valuation experts must prepare a written statement on the merger plan, including the consideration offered, see subsection (4). If so agreed by all shareholders, no statement on the merger plan needs to be prepared by a valuation expert.

*(2)* The valuation experts are appointed under section 37(1). If the limited liability companies participating in the merger wish to use one or more joint valuation experts, such valuation experts must, at the companies' request, be appointed by the bankruptcy court

for the district in which the registered office of the surviving limited liability company is situated.

*(3)* Section 37(2) and (3) applies correspondingly to the valuation experts' relationship with all the merging limited liability companies.

*(4)* The statement must include a declaration as to whether the consideration offered for the shares in a non-surviving company is fair and reasonable under the circumstances. The statement must specify the method(s) applied for determining the consideration and assess the appropriateness thereof. The statement must also specify the values resulting from each method and the relative importance to be attached to each individual method in connection with the valuation. Where the valuation has given rise to particular difficulties, such difficulties must be mentioned in the statement.

### Declaration by valuation expert(s) on the creditors' position

**277.** In addition to the statement mentioned in section 276, the valuation experts must make a declaration as to whether the creditors of each of the limited liability companies may be deemed to be adequately protected after the merger compared to the company's current situation. However, if so agreed by all shareholders, no declaration on the creditors' position needs to be made by a valuation expert.

### Creditors' right to file claims

**278.** Where, in the declaration on the creditors' position, see section 277, the valuation experts conclude that the creditors of each of the limited liability companies will not be adequately protected after the merger or if no declaration on the creditors' position has been made by a valuation expert, creditors whose claims arose before the publication under section 279 by the Danish Business Authority may file their claims against the company no later than four weeks after the publication. However, claims for which adequate security has been provided cannot be filed.

*(2)* A request may be made for payment of claims filed that are due, and adequate security may be requested for claims filed that are not due.

*(3)* Unless otherwise established, security under subsection (2) is not required if payment of the claims has been secured by a statutory arrangement.

*(4)* Where the limited liability company and any creditors who have filed their claims disagree as to whether security must be provided, or whether the security offered is adequate, either party may, no later than two weeks after the claim was filed, bring the matter before the bankruptcy court for the district in which the registered office of the limited liability company is situated for a ruling on the matter.

*(5)* In the agreement on which the claim is based, creditors cannot waive with binding effect their right to request security under subsection (2).

### Submission of information on contemplated cross-border merger, including merger plan and any declaration by valuation expert(s) on the creditors' position

**279.** A copy of the merger plan must be received by the Danish Business Authority no later than four weeks after its signature.

*(2)* A declaration by valuation expert(s) on the creditors' position, see the first sentence of section 277, must be submitted to the Danish Business Authority, but see subsection (3).

*(3)* Where, under the second sentence of section 277, the right not to prepare any declaration by valuation expert(s) on the creditors' position has been exercised, this must be communicated to the

Danish Business Authority stating the names and central business register (CVR) numbers of the participating limited liability companies.

*(4)* Receipt by the Danish Business Authority of the merger plan as well as information and any declaration by valuation expert(s) on the creditors' position, see subsections (1)-(3), is published in the Authority's IT system. If the creditors are entitled to file their claims, see section 278, the publication by the Danish Business Authority must include information to that effect.

*(5)* The Danish Business Authority may lay down detailed rules on the publication by limited liability companies of any merger plan and accompanying documents.

### Resolution to implement a cross-border merger

**280.** The resolution to implement a merger cannot be passed less than four weeks after the publication by the Danish Business Authority, see section 279(4), of its receipt of the merger plan and a declaration by valuation expert(s) on the creditors' position. If the publications concerning section 279(1) and concerning section 279(2) or (3) have been made separately, the time-limit set out in the first sentence will be calculated from the later publication date.

*(2)* Where the financial year of the non-surviving company ends before the date from which the rights and obligations of the non-surviving company will be deemed to transfer to the surviving company for accounting purposes, and the general meeting has not yet approved the annual report for the accounting period ended, the general meeting must approve the annual report for such accounting period on or before the date of the resolution to implement the merger.

*(3)* Creditors making a request to that effect must be informed of the date on which any resolution to implement the merger will be passed.

*(4)* The merger must be implemented in accordance with the merger plan. If the merger is not adopted in accordance with the published merger plan, the proposed resolution will be deemed to have ceased to be effective.

*(5)* Where the following documents have been prepared, such documents must be available to the shareholders no later than four weeks before the resolution to implement a merger is to be passed, unless the shareholders agree that such documents are not to be available to the shareholders before or at the general meeting, but see subsection (6):

(i)     The merger plan.

(ii)    Approved annual reports of each of the existing limited liability companies participating in the merger, for the past three financial years or any shorter period in which the company has existed.

(iii)   A merger statement.

(iv)    An interim balance sheet.

(v)     A valuation report on non-cash contributions.

(vi)    The valuation experts' statements on the merger plan, including the consideration offered.

(vii)   The valuation experts' declaration on the creditors' position.

*(6)* Shareholders making a request to that effect must be granted access free of charge to the documents mentioned in subsection (5).

*(7)* In connection with a cross-border merger, the merger statement, see section 273, must also be available at the limited liability company's office for inspection by the employee representatives or, in the absence of such employee representatives in the relevant limited liability company, by the employees no later than four weeks before the resolution to merge is to be passed.

**281.** In a non-surviving limited liability company, the resolution to merge must be passed by the general meeting by the majority required under section 106 and in accordance with any other provisions on dissolution and merger set out in the articles of association, but see section 290. If the limited liability company is in liquidation, a resolution to merge may be passed only if the shareholders have not yet received any distributions and if the general meeting resolves at the same time to discontinue the liquidation process. In that case, section 231 on resumption of activities will cease to be effective.

**282.** In the surviving limited liability company, the resolution to merge must be passed by the central management body, unless the general meeting is required to amend the articles of association for any purpose other than the adoption of a non-surviving limited liability company's name or secondary name as the surviving limited liability company's secondary name, but see subsections (2)-(4). If the limited liability company is in liquidation, a resolution to merge may be passed only if the shareholders have not yet received any distributions and if the general meeting resolves at the same time to resume activities, see section 231.

*(2)* Shareholders holding 5% of the share capital or the shareholders entitled under the articles of association to demand that a general meeting is called, see section 89, may also demand in writing that the resolution is passed by the general meeting of the surviving limited liability company if such demand is made no later than two weeks after the Danish Business Authority published its receipt of the merger plan.

*(3)* The central management body must call a general meeting no later than two weeks after a request was made to that effect.

*(4)* Where the resolution is to be passed by the general meeting of the surviving limited liability company, such resolution must be passed by the majority required under section 106.

**283.** The central management body of each of the existing limited liability companies participating in the merger must inform any general meeting at which the resolution to implement a merger is to be passed of any significant events, including any significant changes in assets and liabilities which have occurred between the signing of the merger plan and the general meeting.

**284.** If the resolution to implement a cross-border merger is to be passed by the general meeting, the general meeting may decide to make the resolution subject to its subsequent approval of the guidelines on employee participation.

### Shareholders' right to claim compensation

**285.** The shareholders of the non-surviving limited liability company or companies may claim compensation from the limited liability company if the consideration offered for the shares in the non-surviving limited liability company or companies is not fair and reasonable under the circumstances and if the shareholders made a reservation to that effect at the general meeting at which the resolution to implement the merger was passed.

*(2)* Proceedings under subsection (1) must be commenced no later than two weeks after the resolution to merge was passed by all the merging limited liability companies.

*(3)* Where a reservation has been made under subsection (1), the resolution to merge cannot be registered until the time-limit set out in subsection (2) has expired, unless the valuation experts conclude in their statement on the merger plan, including the consideration offered, see section 276, that the consideration offered for the shares in the non-surviving limited liability company or companies is fair and reasonable under the circumstances.

### Shareholders' right to demand redemption

**286.** In connection with a cross-border merger, the shareholders of the non-surviving limited liability companies having opposed the merger at the general meeting may also demand that the company redeems their shares by making a written request to that effect no later than four weeks after the general meeting. Section 110 applies correspondingly.

*(2)* The certificate to be issued under section 289 must not be issued until adequate security has been provided for the value of the shares. Experts appointed by the court for the district in which the registered office of the limited liability company is situated decide whether such security is adequate. If the experts' decision is brought before the courts, this will not have a suspensive effect on the Danish Business Authority's issuance of the certificate, unless otherwise decided by the court.

### Formation, capital increases and dissolution in connection with a cross-border merger

**287.** No consideration may be offered for shares in a non-surviving limited liability company owned by the merging limited liability companies. Sections 31 and 153(2) apply correspondingly to cross-border mergers.

*(2)* Part 3 of this Act on formation, Part 10 of this Act on capital increases and Part 14 of this Act on dissolution do not apply to cross-border mergers, unless otherwise set out in the provisions on cross-border mergers, see sections 271-290.

*(3)* If a new limited liability company is formed as part of the merger and such company is to be governed by Danish law, and if members to the supreme management body and any auditor are not elected immediately after the adoption of the merger by the general meeting, a general meeting for the election of members to the supreme management body and any auditor must be held in the new limited liability company no later than two weeks after the adoption of the merger. The general meeting must also decide whether the future financial statements of the limited liability company are to be audited if the company is not subject to audit obligations under the Financial Statements Act (*årsregnskabsloven*) or any other legislation.

### Application for registration of a cross-border merger

**288.** For each limited liability company, the resolution to implement the merger must be registered with or an application for registration must be submitted to the Danish Business Authority, see section 9, no later than two weeks after the resolution was passed by all the existing limited liability companies participating in the merger. The surviving limited liability company may register or apply for registration of the merger on behalf of the participating limited liability companies. The registration or application for registration must be accompanied by the documents mentioned in section 280(5)(iii)-(vii) if such documents have been prepared.

*(2)* The application for registration of the merger must be received by the Danish Business Authority by the expiry of the time-limit for submitting the annual report for the period in which the merger takes effect for accounting purposes, see section 272(1)(vi), but no later than one year after the Authority published its receipt of the merger plan under section 279. If either of the time-limits is exceeded, the resolution to implement the merger will become invalid, and the merger plan prepared under section 272 will be deemed to have ceased to be effective.

*(3)* If a limited liability company formed as part of a merger enters into an agreement before it has been registered and if the other party to the agreement knows that the company has not been registered, such other party may terminate the agreement, unless

otherwise agreed, provided that no application for registration has been received by the Danish Business Authority by the expiry of the time-limit set out in subsection (2), or if registration has been refused. If the other party does not know that the limited liability company has not been registered, such other party may terminate the agreement as long as the company remains unregistered. The second sentence of section 41(1) applies correspondingly.

*(4)* Sections 42-44 apply correspondingly where, during the 24 months following registration of the company, a public limited company formed as part of a merger acquires assets from a shareholder known to the company.

### Issuance of certificate

**289.** When the Danish Business Authority has received an application for registration of a cross-border merger, the Authority will ensure that all actions and formalities necessary to implement the merger have been completed. As soon as possible, the Authority will issue a certificate to that effect to the participating limited liability companies governed by Danish law, provided that the following conditions have been met, but see subsection (2):

(i)   A resolution to merge has been passed by all the existing limited liability companies that participate in the merger and are governed by Danish law.

(ii)  The claims filed by the creditors under section 278 have been settled.

(iii) The claims for compensation filed by the shareholders under section 285 have been settled, or adequate security has been provided for the claims. If the valuation experts have prepared a statement on the plan, including the consideration offered, and the statement is based on the assumption that the consideration is fair and reasonable under the circumstances, the valuation experts must also have declared that their statement on the consideration is not disputed to any significant degree. The valuation experts decide whether the security is adequate.

(iv)  The shareholders' demand for redemption under section 286 has been settled.

(v)   The requirements set out in section 287(3) concerning the election of members to the supreme management body and an auditor have been met.

(vi)  The requirement set out in section 316 concerning employee participation has been met.

(vii) An executive board has been appointed if a new limited liability company is formed as part of the merger and such company is to be governed by Danish law. The limited liability company must have a management structure where the supreme management body is either a board of directors or a supervisory board, see section 111(1).

*(2)* Where the date from which the rights and obligations of the non-surviving company will be deemed to transfer to the surviving company for accounting purposes is after the date of the resolutions to implement the merger, the certificate cannot be issued until the date on which the merger takes effect for accounting purposes. The date on which the merger takes effect for accounting purposes cannot be later than two weeks after the resolutions to implement the merger were passed, but no later than the date on which an application for registration of the merger was submitted, see section 288(1). The date on which the merger takes effect for accounting purposes and the date of the resolution to implement the merger must also be in the same financial year for the participating limited liability companies.

*(3)* Where the surviving limited liability company participating in a cross-border merger is to be governed by Danish law, the registration authorities of the participating foreign limited liability companies must, for each company, submit a certificate to the Danish Business Authority for the purpose of registering the merger. The certificate must serve as conclusive evidence that all actions and formalities necessary to implement the merger in the relevant country have been completed, and that the foreign registration authorities will register the merger in respect of the non-surviving company when they have been notified by the Danish Business Authority. The certificate must be received by the Authority no later than six months after it was issued. Otherwise the certificate will become invalid. When the Danish Business Authority has received certificates for all the companies participating in the merger, the Authority will register the cross-border merger in respect of the surviving company and will notify the registers in which the other participating companies are registered as soon as possible.

*(4)* A cross-border merger in which the surviving limited liability company is to be governed by Danish law will take effect from the date on which the Danish Business Authority registers the merger.

*(5)* Where the surviving limited liability company participating in a cross-border merger is not to be governed by Danish law, the Danish Business Authority will register the merger in respect of the non-surviving limited liability companies governed by Danish law when the Authority has been notified in the manner provided for in subsection (3) by the competent registration authorities of the surviving limited liability company.

### Vertical cross-border mergers between parents and wholly-owned subsidiaries

**290.** Where a limited liability company is dissolved without liquidation by transfer of its assets and liabilities as a whole to another limited liability company holding all the shares in the non-surviving limited liability company, ie a vertical cross-border merger, the resolution to merge may be passed by the central management body of the non-surviving limited liability company. Section 272(1)(i), (ii), (v) and (viii)-(xiv) and (2), sections 273, 274 and 277-280, the second and third sentences of section 281(1), sections 282-284 and sections 287-289 apply correspondingly to vertical cross-border mergers.

### Cross-border demergers

**291.** Limited liability companies falling within the scope of this Act may participate in cross-border demergers in which the other participating companies are also limited liability companies governed by the legislation of one or more other EU/EEA countries. The cross-border demerger may be implemented without the creditors' consent.

*(2)* A cross-border demerger may be implemented only if the legislation governing the other participating limited liability companies allows cross-border demergers. It is also a condition that any right of participation enjoyed by the employees of the Danish transferor company is protected under the legislation applicable to the transferee limited liability company or companies after the demerger. If these conditions are not met, a Danish limited liability company cannot participate in any cross-border demerger.

*(3)* Where a creditor of a limited liability company participating in the demerger is not paid, each of the other participating limited liability companies are jointly and severally liable for the obligations existing at the date of publication of the demerger plan, subject, however, to a maximum amount equal to the net value contributed or remaining in each limited liability company at that date.

*(4)* Where one or more of the transferee limited liability companies participating in a demerger are the result of another demerger or merger that has not been implemented, this must be specified in the demerger plan, see section 292. Any demerger into new transferee limited liability companies resulting from another demerger or merger must be implemented immediately after the demerger or merger that results in the new limited liability companies, see section 308.

## Demerger plan

**292.** The central management body of each of the existing limited liability companies participating in the demerger must prepare and sign a joint demerger plan that must include information and provisions on

(i)    the corporate form, name and any secondary names of each of the limited liability companies, including whether the name or secondary name of the transferor limited liability company is to be adopted as a secondary name for the transferee limited liability company;

(ii)   the registered office of each of the limited liability companies;

(iii)  an accurate description and distribution of the assets and liabilities to be transferred or to remain in each of the limited liability companies participating in the demerger;

(iv)   the consideration offered to the shareholders of the transferor limited liability company;

(v)    the distribution of the consideration, including the shares in the transferee limited liability companies, to the shareholders of the transferor limited liability company and the distribution criterion;

(vi)   the likely impact of the cross-border demerger on the number of employees in the participating limited liability companies;

(vii)  registration of any shares offered as consideration and any delivery of share certificates;

(viii) the date from which the shares offered as consideration will confer on the holders a right to receive dividends and a specification of any special conditions attaching to such right;

(ix)   the date from which the rights and obligations of the transferor limited liability company will be deemed to transfer for accounting purposes;

(x)    the rights in the transferee limited liability company accruing to any holders of shares carrying special rights and any holders of other securities than shares or the measures proposed to be taken for the benefit of such persons;

(xi)   the special benefits accruing to the valuation experts making a statement on the demerger plan, see section 296, and to the members of the companies' management;

(xii)  the articles of association of the surviving limited liability company in the wording they will have after implementation of the demerger;

(xiii) information on the procedures under section 318 for involving employees in the determination of their right to participation in the surviving limited liability company, if advisable;

(xiv)  the valuation of the assets and liabilities transferred to the transferee limited liability companies; and

(xv)   dates of the participating companies' financial statements that have been used to establish the conditions of the cross-border demerger.

*(2)* Each of the existing limited liability companies must sign the demerger plan by the end of the financial year in which the demerger takes effect for accounting purposes, see subsection (1)(vii). If the time-limit is exceeded, the Danish Business Authority cannot publish receipt of the demerger plan and, consequently, the demerger cannot be adopted.

*(3)* Where not all assets are distributed by the demerger plan, see subsection (1)(ii), and their distribution cannot be determined on the basis of an interpretation of the plan, such assets or the value they represent will be distributed among the participating limited liability companies in proportion to the net assets contributed or remaining in each limited liability company according to the demerger plan.

*(4)* Where not all liabilities are distributed by the demerger plan, see subsection (1)(ii), and their distribution cannot be determined on the basis of an interpretation of the plan, each of the participating limited liability companies will be jointly and severally liable, subject, however, to a maximum amount of the net value contributed or remaining in each limited liability company. Such liabilities will be distributed among the participating limited liability companies in proportion to the net assets contributed or remaining in each company according to the demerger plan.

## Demerger statement

**293.** The central management body of each of the existing limited liability companies participating in the demerger must prepare a written statement explaining and setting out the reasons for the demerger plan. The statement must include information on how the consideration offered for the shares in the transferor limited liability company has been determined, including any particular difficulties relating to such determination, and information on the preparation of a valuation report if such report is to be prepared under section 295. The statement must also include an account of the consequences of the cross-border demerger for the shareholders, the creditors and the employees.

## Interim balance sheet

**294.** Where the demerger plan is signed more than six months after the end of the financial year to which the limited liability company's latest annual report relates, an interim balance sheet must be prepared for the relevant limited liability company participating in the demerger, but see subsections (3) and (4).

*(2)* The date of the interim balance sheet, which must be prepared in accordance with the set of rules under which the company prepares its annual report, must not be more than three months before the date on which the demerger plan is signed. The interim balance sheet must be audited if the limited liability company is subject to audit obligations under the Financial Statements Act (*årsregnskabsloven*) or any other legislation.

*(3)* If so agreed by all shareholders, no interim balance sheet needs to be prepared, notwithstanding that a demerger plan is signed more than six months after the end of the financial year to which the limited liability company's latest annual report relates.

*(4)* The provision of subsection (1) does not apply to limited liability companies whose securities are admitted to trading on a regulated market in an EU/EEA country and which have published an interim report in accordance with the Financial Statements Act (*årsregnskabsloven*) where such interim report contains audited financial statements for the company and the interim report is available to the company's shareholders.

## Valuation report on non-cash contributions

**295.** If a capital increase is implemented in one or more of the transferee public limited companies in connection with the demerger or if one or more new public limited companies are formed as part of the demerger, a report must be obtained from a valuation expert, but see subsection (2). The valuation expert is appointed under

section 37(1). Section 37(2) and (3) applies correspondingly to the valuation experts' relationship with all the limited liability companies participating in the demerger.

*(2)* No valuation report is required if the valuation expert instead prepares a statement on the demerger plan, see section 296, or a declaration on the creditors' position, see section 297.

*(3)* Where a valuation report is to be prepared as part of a demerger, it must include

(i)   a description of each contribution;

(ii)  information on the valuation method applied;

(iii) a specification of the agreed consideration; and

(iv)  a declaration that the assessed value is not lower than the agreed consideration, including any nominal value of the shares to be issued plus any premium.

*(4)* The valuation report must not be prepared more than three months before the date of any resolution to demerge, see section 300. If the time-limit is exceeded, the demerger cannot be adopted with valid effect.

### Statement by valuation expert(s) on the demerger plan

**296.** For each of the limited liability companies participating in the demerger, one or more independent valuation experts must prepare a written statement on the demerger plan, including the consideration offered, see subsection (4). However, if so agreed by all shareholders, no such statement on the demerger plan needs to be prepared by a valuation expert.

*(2)* The valuation experts are appointed under section 37(1). If the limited liability companies participating in the demerger wish to use one or more joint valuation experts, such valuation experts must, at the companies' request, be appointed by the bankruptcy court for the district in which the registered office of the surviving limited liability company is situated.

*(3)* Section 37(2) and (3) applies correspondingly to the valuation experts' relationship with all the limited liability companies participating in the demerger.

*(4)* The statement must include a declaration as to whether the consideration offered for the shares in the transferor limited liability company is fair and reasonable under the circumstances. The statement must specify the method(s) applied for determining the consideration and assess the appropriateness thereof. The statement must also specify the values resulting from each method and the relative importance that should be attached to each individual method in connection with the valuation. Where the valuation has given rise to particular difficulties, such difficulties must be mentioned in the statement.

### Declaration by valuation expert(s) on the creditors' position

**297.** In addition to the statement mentioned in section 296, the valuation experts must make a declaration as to whether the creditors of each of the limited liability companies may be deemed to be adequately protected after the demerger compared to the company's current situation. However, if so agreed by all shareholders, no such declaration on the creditors' position needs to be made by a valuation expert.

### Creditors' right to file claims

**298.** If, in the declaration on the creditors' position, see section 297, the valuation experts conclude that the creditors of each of the limited liability companies will not be adequately protected after the demerger or if no declaration on the creditors' position has been made by a valuation expert, creditors whose claims arose before the publication under section 299 by the Danish Business Authority

may file their claims against the company no later than four weeks after the publication. However, claims for which adequate security has been provided cannot be filed.

*(2)* A request may be made for payment of claims filed that are due, and adequate security may be requested for claims filed that are not due.

*(3)* Unless otherwise established, security under subsection (2) is not required if payment of the claims has been secured by a statutory arrangement.

*(4)* Where the limited liability company and any creditors who have filed their claims disagree as to whether security must be provided, or whether the security offered is adequate, either party may, no later than two weeks after the claim was filed, bring the matter before the bankruptcy court for the district in which the registered office of the limited liability company is situated for a ruling on the matter.

*(5)* In the agreement on which the claim is based, creditors cannot waive with binding effect their right to request security under subsection (3).

### Submission of information on contemplated cross-border demerger, including demerger plan and any declaration by valuation expert(s) on the creditors' position

**299.** A copy of the demerger plan must be received by the Danish Business Authority no later than four weeks after its signature.

*(2)* A declaration by valuation expert(s) on the creditors' position, see the first sentence of section 297, must be submitted to the Danish Business Authority, but see subsection (3).

*(3)* Where, under the second sentence of section 297, the right not to prepare any declaration by valuation expert(s) has been exercised, this must be communicated to the Danish Business Authority stating the names and central business register (CVR) numbers of the limited liability companies participating in the demerger.

*(4)* Receipt by the Danish Business Authority of the demerger plan as well as information and any declaration by valuation expert(s) on the creditors' position, see subsections (1)-(3), is published in the Authority's IT system. If the creditors are entitled to file their claims, see section 298, the publication by the Danish Business Authority must include information to that effect.

*(5)* The Danish Business Authority may lay down detailed rules on the publication by limited liability companies of any demerger plan and accompanying documents.

### Resolution to implement a cross-border demerger

**300.** The resolution to implement a demerger cannot be passed less than four weeks after the publication by the Danish Business Authority, see section 299(4), of its receipt of the demerger plan and the declaration by the valuation expert(s) on the creditors' position. If the publications concerning section 299(1) and concerning section 299(2) or (3) have been made separately, the time-limit set out in the first sentence will be calculated from the later publication date.

*(2)* Where the transferor limited liability company is dissolved as part of the demerger and the financial year of the transferor limited liability company has ended before the date from which the rights and obligations of the transferor company will be deemed to transfer to the transferee companies for accounting purposes, and the general meeting has not yet approved the annual report for the accounting period ended, the general meeting must approve the annual report for such accounting period on or before the date of the resolution to implement the demerger.

*(3)* Creditors making a request to that effect must be informed of the date on which any resolution to implement the demerger will be passed.

Copyright © 2015 Karnov Group Denmark A/S

*(4)* The demerger must be implemented in accordance with the demerger plan. If the demerger is not adopted in accordance with the demerger plan, the proposed resolution will be deemed to have ceased to be effective.

*(5)* Where the following documents have been prepared, such documents must be available to the shareholders at the company's registered office or on the company's website no later than four weeks before the resolution to implement a demerger is to be passed, unless the shareholders agree that the documents are not to be available to the shareholders before or at the general meeting, but see subsection (7):

(i)     The demerger plan.

(ii)    Approved annual reports of each of the existing limited liability companies participating in the demerger for the past three financial years or any shorter period in which the company has existed.

(iii)   A demerger statement.

(iv)    An interim balance sheet.

(v)     A valuation report on non-cash contributions.

(vi)    The valuation experts' statements on the demerger plan, including the consideration offered.

(vii)   The valuation experts' declaration on the creditors' position.

*(6)* Shareholders making a request to that effect must be granted access free of charge to the documents mentioned in subsection (5).

*(7)* In connection with a cross-border demerger, the demerger statement, see section 293, must also be available at the limited liability company's office for inspection by the employee representatives or, in the absence of such employee representatives in the relevant limited liability company, by the employees no later than four weeks before the resolution to demerge is to be passed.

**301.** In the transferor limited liability company, the resolution to demerge must be passed by the general meeting by the majority required under sections 106 and 107 and in accordance with any other provisions on dissolution or demerger set out in the articles of association, but see section 310. If the limited liability company is in liquidation, a resolution to demerge may be passed only if the shareholders have not yet received any distributions and if the general meeting resolves at the same time to discontinue the liquidation process. In that case, section 231 on resumption of activities will cease to be effective.

**302.** In existing transferee limited liability companies, the resolution to demerge must be passed by the central management body, unless the general meeting is required to amend the articles of association for any purpose other than the adoption of the transferor limited liability company's name or secondary name as the transferee limited liability company's secondary name, but see subsections (2)-(4). If the limited liability company is in liquidation, a resolution to demerge may be passed only if the shareholders have not received any distributions and if the general meeting resolves at the same time to resume activities, see section 231.

*(2)* Shareholders holding 5% of the share capital or the shareholders entitled under the articles of association to demand that a general meeting is called, see section 89, may also demand in writing that the resolution is passed by the general meeting of the existing transferee limited liability companies if such demand is made no later than two weeks after the Danish Business Authority published its receipt of the demerger plan.

*(3)* The central management body must call a general meeting no later than two weeks after a request was made to that effect.

*(4)* Where the resolution is to be passed by the general meeting of an existing transferee limited liability company, such resolution must be passed by the majority required under section 106.

**303.** The central management body of each of the existing limited liability companies participating in the demerger must inform any general meeting at which the resolution to implement a demerger is to be passed of any significant events, including any significant changes in assets and liabilities which have occurred between the signing of the demerger plan and the general meeting.

**304.** If the resolution to implement a cross-border demerger is to be passed by the general meeting, the general meeting may decide to make the resolution subject to its subsequent approval of the guidelines on employee participation.

## Shareholders' right to claim compensation

**305.** The shareholders of the transferor limited liability company may claim compensation from the limited liability company if the consideration offered for the shares in the transferor limited liability company is not fair and reasonable under the circumstances and if the shareholders made a reservation to that effect at the general meeting at which the resolution to demerge was passed.

*(2)* Proceedings under subsection (1) must be commenced no later than two weeks after the resolution to demerge was passed by all the existing limited liability companies participating in the demerger.

*(3)* Where a reservation has been made under subsection (1), the resolution to demerge cannot be registered until the two-week time-limit set out in subsection (2) has expired, unless the valuation experts conclude in their statement on the plan, including the consideration offered, see section 296, that the consideration offered for the shares in the transferor limited liability company is fair and reasonable under the circumstances.

## Shareholders' right to demand redemption

**306.** In connection with a cross-border demerger, the shareholders of the transferor limited liability company having opposed the demerger at the general meeting may also demand that the company redeems their shares by making a written request to that effect no later than four weeks after the general meeting. Section 110 applies correspondingly.

*(2)* The certificate to be issued under section 309 must not be issued until adequate security has been provided for the value of the shares. Experts appointed by the court for the district in which the registered office of the limited liability company is situated decide whether such security is adequate. If the experts' decision is brought before the courts, this will not have a suspensive effect on the Danish Business Authority's issuance of the certificate, unless otherwise decided by the court.

## Formation, capital increases and capital reduction in connection with a cross-border demerger

**307.** No consideration may be offered for shares in the transferor limited liability company owned by the limited liability companies participating in the demerger. Sections 31 and 153(2) apply correspondingly to cross-border demergers.

*(2)* Part 3 of this Act on formation, Part 10 of this Act on capital increases, Part 11 of this Act on capital outflow and Part 14 of this Act on dissolution do not apply to cross-border demergers, unless otherwise set out in the provisions on cross-border demergers, see sections 291-310.

*(3)* If a new limited liability company is formed as part of the demerger and such company is to be governed by Danish law, and if members to the supreme management body and any auditor are not

elected immediately after the adoption of the demerger by the general meeting, a general meeting for the election of members to the supreme management body and any auditor must be held in the new limited liability company no later than two weeks after the adoption of the demerger. The general meeting must also decide whether the future financial statements of the limited liability company are to be audited if the company is not subject to audit obligations under the Financial Statements Act (*årsregnskabsloven*) or any other legislation.

### Application for registration of a cross-border demerger

**308.** For each limited liability company, the resolution to implement the demerger must be registered with or an application for registration must be submitted to the Danish Business Authority, see section 9, no later than two weeks after the resolution was passed by all the existing limited liability companies participating in the demerger. Each transferee limited liability company may register or apply for registration of the demerger on behalf of the participating limited liability companies. The registration or application for registration must be accompanied by the documents mentioned in section 300(5)(iii)-(vii) if such documents have been prepared.

*(2)* The application for registration of the demerger must be received by the Danish Business Authority by the expiry of the time-limit for submitting the annual report for the period in which the demerger takes effect for accounting purposes, see section 292(1)(vii), but no later than one year after the Authority published its receipt of the demerger plan under section 299. If either of the time-limits is exceeded, the resolution to implement the demerger will become invalid, and the demerger plan prepared under section 292 will be deemed to have ceased to be effective.

*(3)* If a limited liability company formed as part of a demerger enters into an agreement before it has been registered and if the other party to the agreement knows that the company has not been registered, such other party may terminate the agreement, unless otherwise agreed, provided that no application for registration has been received by the Danish Business Authority by the expiry of the time-limit set out in subsection (2), or if registration has been refused. If the other party does not know that the limited liability company has not been registered, such other party may terminate the agreement as long as the company remains unregistered. The second sentence of section 41(1) applies correspondingly to demergers.

*(4)* Sections 42-44 apply correspondingly where, during the 24 months following registration of the company, a public limited company formed as part of a demerger acquires assets from a shareholder known to the company.

### Issuance of certificate

**309.** When the Danish Business Authority has received an application for registration of a cross-border demerger, the Authority will ensure that all actions and formalities necessary to implement the demerger have been completed. As soon as possible, the Authority will issue a certificate to that effect to the participating limited liability company or companies governed by Danish law, provided that the following conditions have been met, but see subsection (2):

(i)   A resolution to demerge has been passed by all the existing limited liability companies that participate in the demerger and are governed by Danish law.

(ii)  The claims filed by the creditors under section 298 have been settled.

(iii) The claims for compensation filed by the shareholders under section 305 have been settled, or adequate security has been provided for the claims. If the valuation experts have prepared a statement on the plan, including the consideration offered, and the statement is based on the assumption that the consideration is fair and reasonable under the circumstances, the valuation experts must also have declared that their statement on the consideration is not disputed to any significant degree. The valuation experts decide whether the security is adequate.

(iv)  The shareholders' demand for redemption under section 306 has been settled.

(v)   The requirements set out in section 307(3) concerning the election of members to the supreme management body and an auditor have been met.

(vi)  The requirement set out in section 316(1), see section 318, concerning employee participation has been met.

(vii) An executive board has been appointed if a new limited liability company is formed as part of the demerger and such company is to be governed by Danish law. The limited liability company must have a management structure where the supreme management body is either a board of directors or a supervisory board, see section 111(1).

*(2)* Where the date from which the rights and obligations of the transferor limited liability company will be deemed to transfer to the transferee limited liability companies for accounting purposes is after the date of the resolutions to implement the demerger, the certificate cannot be issued until the date on which the demerger takes effect for accounting purposes. The date on which the demerger takes effect for accounting purposes cannot be later than two weeks after the resolutions to implement the demerger were passed, but no later than the date on which an application for registration of the demerger was submitted, see section 308(1). The date on which the demerger takes effect for accounting purposes and the date of the resolution to implement the demerger must also be in the same financial year for the participating limited liability companies.

*(3)* Where one or more of the transferee limited liability companies participating in a cross-border demerger are to be governed by Danish law, the registration authorities of the participating foreign limited liability companies must, for each of the other companies, submit a certificate to the Danish Business Authority for the purpose of registering the demerger. The certificate must serve as conclusive evidence that all actions and formalities necessary to implement the demerger in the relevant country have been completed, and that the foreign registration authorities will register the demerger in respect of the other participating limited liability companies when they have been notified by the Danish Business Authority. The certificate must be received by the Authority no later than six months after it was issued. Otherwise the certificate will become invalid. When the Danish Business Authority has received certificates for all the other limited liability companies participating in the demerger, the Authority will register the cross-border demerger in respect of the transferee limited liability companies to be governed by Danish law and will notify the registers in which the other participating companies are registered as soon as possible.

*(4)* A cross-border demerger in which one or more of the transferee limited liability companies are to be governed by Danish law will take effect in respect of such limited liability companies from the date on which the Danish Business Authority registers the demerger.

*(5)* Where the transferee limited liability companies participating in a cross-border demerger are not to be governed by Danish law, the Danish Business Authority will register the demerger in respect of the transferor limited liability company if the company is governed by Danish law, when the Authority has been notified in

the manner provided for in subsection (3) by the competent registration authorities of the transferee limited liability companies.

### Vertical cross-border demergers

**310.** Where all the shares in the transferor limited liability company are held by the transferee limited liability companies, ie a vertical cross-border demerger, the resolution to merge may be passed by the central management body of the transferor company. Section 292(1)(i)-(iii), (vi) and (ix)-(xv) and subsections (2)-(4), sections 293, 294 and 297-300, the second and third sentences of section 301 and sections 302-304 and 307-309 apply correspondingly to vertical cross-border demergers.

### Employee participation in cross-border mergers

**311.** For cross-border mergers, see section 271, in which the surviving limited liability company is to be governed by Danish law, section 140 applies, unless

(i)     such application does not result in at least the same level of employee participation as in the relevant merging limited liability companies, as measured by the proportion of employee representatives among the members of the administrative or supervisory bodies, committees or management groups, including the company's profit units, that have rules on employee participation;

(ii)    such application does not grant the employees of the businesses of the limited liability company resulting from the cross-border demerger that are situated in the other member states the same participation rights as the employees in Denmark; or

(iii)   in the six months preceding publication of the cross-border merger plan, see section 137(1), the average number of employees covered by an employee participation scheme is more than 500 in at least one of the merging limited liability companies.

*(2)* Where section 140 applies, sections 312-316 do not apply.

**312.** Where section 140 does not apply as set out in section 311, section 2(4)-(6) and (11), sections 3-14, section 15(1), (2)(i) and (3), section 17(i), (vii) and (viii) and sections 41-43 of the Act on Involvement of Employees in SEs (*lov om medarbejderindflydelse i SE-selskaber*) and sections 313-316 of this Act will apply.

*(2)* Under section 313(1) of this Act, section 15(4) and (5), section 33(2), section 34 and sections 36-40 of the Act on Involvement of Employees in SEs (*lov om medarbejderindflydelse i SE-selskaber*) may also apply.

*(3)* Where the provisions of the Act on Involvement of Employees in SEs (*lov om medarbejderindflydelse i SE-selskaber*) apply, section 120(1) and sections 140-143 of this Act do not apply.

*(4)* If the surviving limited liability company in a cross-border merger is to be governed by the legislation of another EU/EEA country and if provisions originating from the Council Directive supplementing the Statute for a European company (SE) with regard to the involvement of employees are applied to the cross-border merger, section 2(4)-(6) and (11) and sections 3, 9, 36-39 and 41-43 of the Act on Involvement of Employees in SEs (*lov om medarbejderindflydelse i SE-selskaber*) and section 368 of this Act apply to the participating limited liability companies and the affected subsidiaries which are governed by Danish law and to the businesses of the surviving limited liability company, the participating limited liability companies or the affected subsidiaries if such businesses are situated in Denmark.

**313.** Section 15(4) and (5), section 33(2) and sections 34 and 36-40 of the Act on Involvement of Employees in SEs (*lov om medar-*

*bejderindflydelse i SE-selskaber*) apply only if one or more of the participating limited liability companies had an employee participation scheme before the merger and if

(i)     the competent bodies of the participating limited liability companies and the special negotiating body (the special body representing the employees for negotiation purposes) agree to apply such provisions;

(ii)    no agreement has been made within the time-limit set out in section 12 of the Act on Involvement of Employees in SEs (*lov om medarbejderindflydelse i SE-selskaber*), and the competent bodies of the participating limited liability companies decide to apply such provisions and consequently continue the registration, but see subsection (2); or

(iii)   the competent bodies of the participating limited liability companies decide to apply such provisions without prior negotiations with the special negotiating body.

*(2)* In the situation mentioned in subsection (1)(ii), the application of section 15(4) and (5), section 33(2) and sections 34 and 36-40 of the Act on Involvement of Employees in SEs (*lov om medarbejderindflydelse i SE-selskaber*) is also subject to the special negotiating body passing a resolution to that effect if, before the merger, less than one-third of the total number of employees in all the participating limited liability companies were covered by one or more employee participation schemes.

*(3)* In the situations mentioned in subsection (1)(i) and (ii), the proportion of employee representatives serving on management bodies must not exceed the number set out in section 140 of this Act.

**314.** Where section 15(4) and (5), section 33(2) and sections 34 and 36-40 of the Act on Involvement of Employees in SEs (*lov om medarbejderindflydelse i SE-selskaber*), see section 313(1) of this Act, apply, the special negotiating body will decide

(i)     how to distribute the seats on the board of directors or the supervisory board between the members representing the employees in the states where the Council Directive supplementing the Statute for a European company with regard to the involvement of employees applies; or

(ii)    how the employees of the surviving limited liability company may recommend or oppose the appointment of the members to the board of directors or the supervisory board, having regard to the number of the employees employed in each state.

**315.** By at least two-thirds of the votes of members representing at least two-thirds of the employees employed in at least two countries, the special negotiating body may decide not to start negotiations or to break off negotiations and instead apply the provisions of section 140 on the employees' election of the members of management.

**316.** If section 140 does not apply, see section 311(1), a cross-border merger cannot be registered, unless an employee participation scheme has been agreed under section 17(i), (vii) and (viii) of the Act on Involvement of Employees in SEs (*lov om medarbejderindflydelse i SE-selskaber*), see section 312(1) or section 313(1)(i) of this Act, or a resolution has been passed under section 313(1)(iii) or section 315 of this Act, or the time-limit set out in section 12 of the Act on Involvement of Employees in SEs, see section 313(1)(ii) of this Act, has expired without any such scheme having been agreed.

### Subsequent national mergers and demergers

**317.** Sections 311-316 on employee participation in connection with cross-border mergers apply correspondingly if the surviving

limited liability company in a cross-border merger participates in a national merger or demerger within a period of three years after the merger.

### Employee participation in cross-border demergers

**318.** Sections 311-317 on employee participation in connection with cross-border mergers apply correspondingly with the necessary changes to cross-border demergers.

## Part 16a. Cross-border relocation of registered office

**318 a.** In connection with a cross-border relocation of registered office, a limited liability company falling within the scope of this Act may relocate its registered office to another EU/EEA country, and similarly a limited liability company having its registered office in another EU/EEA country may relocate its registered office to Denmark, but see subsections (2) and (3). The cross-border relocation may be implemented without the creditors' consent.

*(2)* A resolution to implement a cross-border relocation may be passed only if the legislation of the country to or from which the limited liability company wishes to relocate allows cross-border relocation of registered office.

*(3)* A Danish limited liability company may relocate its registered office to another EU/EEA country only if any right of participation enjoyed by the employees of the Danish company is protected under the legislation applicable to the limited liability company after the relocation.

### Relocation from Denmark of the registered office of a limited liability company

#### Relocation plan

**318 b.** The central management body of a limited liability company relocating its registered office must prepare and sign a relocation plan that must include information and provisions on

(i) the corporate form, name and registered office of the limited liability company;

(ii) the draft articles of association of the limited liability company after the relocation;

(iii) the proposed timetable for the relocation, including the accounting effect of the relocation;

(iv) the likely impact of the relocation on the number of employees in the limited liability company;

(v) the rights in the limited liability company after the relocation accruing to any holders of shares carrying special rights and any holders of other securities than shares or the measures proposed to be taken for the benefit of such persons;

(vi) the special benefits accruing to the valuation experts making a declaration on the creditors' position, see section 318d, and to the members of the limited liability company's management; and

(vii) information on the procedures under section 318o for involving employees in the determination of their rights of participation in the limited liability company after the relocation, if advisable.

*(2)* The relocation plan must be signed by the end of the financial year in which the relocation takes effect for accounting purposes, see subsection (1)(iii). If the time-limit is exceeded, receipt by the Danish Business Authority of the relocation plan cannot be published and, consequently, the relocation cannot be adopted.

#### Relocation statement

**318 c.** The central management body of a limited liability company relocating its registered office to another EU/EEA country

must prepare a written statement explaining and setting out the reasons for the relocation plan. The statement must include an account of the consequences of the cross-border relocation for the shareholders, the creditors and the employees.

### Declaration by valuation expert(s) on the creditors' position

**318 d.** For the limited liability company relocating its registered office to another EU/EEA country, one or more independent valuation experts must prepare a declaration as to whether the creditors of the limited liability company may be deemed to be adequately protected after the relocation compared to the company's current situation. However, if so agreed by all shareholders, no declaration on the creditors' position needs to be made by a valuation expert, but see section 318e.

*(2)* Section 37 on valuation experts applies correspondingly to cross-border relocation of registered office.

### Creditors' right to file claims

**318 e.** If, in the declaration on the creditors' position, see section 318d, the valuation experts conclude that the creditors of the limited liability company will not be adequately protected after the relocation or if no declaration on the creditors' position has been made by a valuation expert, creditors whose claims arose before the publication under section 318f(4) by the Danish Business Authority may file their claims no later than four weeks after the publication. However, claims for which adequate security has been provided cannot be filed.

*(2)* A request may be made for payment of claims filed that are due, and adequate security may be requested for claims filed that are not due.

*(3)* Unless otherwise established, security under subsection (2) is not required if payment of the claims is secured by a statutory arrangement.

*(4)* Where the limited liability company and any creditors who have filed their claims disagree as to whether security must be provided, or whether the security offered is adequate, either party may, no later than two weeks after the claim was filed, bring the matter before the bankruptcy court for the district in which the registered office of the limited liability company is situated for a ruling on the matter.

*(5)* In the agreement on which the claim is based, creditors cannot waive with binding effect their right to demand security under subsection (2).

### Submission of relocation plan and declaration by valuation expert(s) on the creditors' position

**318 f.** A copy of the relocation plan must be received by the Danish Business Authority no later than four weeks after its signature. If the time-limit is exceeded, receipt of the relocation plan cannot be published and, consequently, the relocation cannot be adopted.

*(2)* A declaration by valuation expert(s) on the creditors' position, see the first sentence of section 318d(1), must be submitted to the Danish Business Authority, but see subsection (3).

*(3)* Where, under the second sentence of section 318d(1), the right not to prepare any declaration by valuation expert(s) on the creditors' position has been exercised, this must be communicated to the Danish Business Authority stating the name and central business register (CVR) number of the limited liability company wishing to relocate its registered office.

*(4)* Receipt by the Danish Business Authority of the relocation plan as well as information and any declaration by valuation expert(s) on the creditors' position, see subsections (1)-(3), is published in

Selskabsloven på engelsk (LBKG 2015 610)                                    Ikraft: 2015-03-15

the Authority's IT system. If the creditors are entitled to file their claims, see section 318e, the publication by the Danish Business Authority must include information to that effect.

*(5)* The Danish Business Authority may lay down detailed rules on the publication by limited liability companies of any relocation plan and accompanying documents.

**Resolution to implement the relocation**

**318 g.** The resolution to implement a relocation of the registered office of a limited liability company to another EU/EEA country cannot be passed less than four weeks after the publication by the Danish Business Authority, see section 318f(4), of its receipt of the relocation plan and any valuation experts' declaration on the creditors' position. If the publications concerning section 318f(1) and concerning section 318f(2) or (3) have been made separately, the time-limit set out in the first sentence will be calculated from the later publication date.

*(2)* Where the financial year of the company to be relocated ends before the relocation takes effect for accounting purposes and the general meeting has not yet approved the annual report for the accounting period ended, the general meeting must approve the annual report for such accounting period on or before the date of the resolution to implement the relocation.

*(3)* Creditors making a request to that effect must be informed of the date on which any resolution to implement the relocation will be passed.

*(4)* The relocation must be implemented in accordance with the relocation plan. If the relocation is not adopted in accordance with the published relocation plan, the proposed resolution will be deemed to have ceased to be effective.

*(5)* Where the following documents have been prepared, such documents must be available to the shareholders no later than four weeks before the resolution to implement a relocation is to be passed, unless all the shareholders agree that such documents are not to be available to the shareholders before or at the general meeting, but see subsection (6):

(i)     The relocation plan.
(ii)    Approved annual reports of the limited liability company for the past three financial years or any shorter period in which the company has existed.
(iii)   A relocation statement.
(iv)    The valuation experts' declaration on the creditors' position.

*(6)* Creditors making a request to that effect must be granted access free of charge to the documents mentioned in subsection (5).

*(7)* Where a limited liability company relocates its registered office to another EU/EEA country, a relocation statement, see section 318c, must be available at the limited liability company's office for inspection by the employee representatives or, in the absence of such employee representatives in the relevant limited liability company, by the employees no later than four weeks before the resolution to relocate is to be passed.

**318 h.** The resolution to relocate to another EU/EEA country must be passed by the general meeting of the relocating limited liability company by the majority required under section 106 and in accordance with any other provisions on dissolution or cross-border relocation of registered office set out in the articles of association. If the limited liability company is in liquidation, a resolution to relocate may be passed only if the shareholders have not yet received any distributions and if the general meeting resolves at the same time to discontinue the liquidation process. In that case, section 231 on resumption of activities does not apply.

**318 i.** The central management body must inform the general meeting at which the resolution to implement the relocation is to be passed of any significant events, including any significant changes in assets and liabilities which have occurred between the signing of the relocation plan and the general meeting.

**318 j.** The general meeting may decide to make the adoption of a cross-border relocation subject to its subsequent approval of the guidelines on employee participation.

**Shareholders' right to demand redemption**

**318 k.** The shareholders of the limited liability company relocating to another EU/EEA country who have opposed the relocation at the general meeting may demand that the limited liability company redeems their shares, provided that such demand is made in writing no later than four weeks after the general meeting. Section 110 applies correspondingly.

*(2)* The certificate to be issued under section 318m must not be issued until adequate security has been provided for the value of the shares. Experts appointed by the court for the district in which the registered office of the limited liability company is situated decide whether such security is adequate. If the experts' decision is brought before the courts, this will not have a suspensive effect on the Danish Business Authority's issuance of the certificate, unless otherwise decided by the court.

**Application for registration of cross-border relocation of registered office**

**318 l.** The resolution to relocate must be registered with or an application for registration must be submitted to the Danish Business Authority, see section 9, no later than two weeks after the resolution was passed, but see subsection (2). Such registration or application must be accompanied by the documents mentioned in section 318g(5)(iii) and (iv) if such documents have been prepared.

*(2)* The application for registration of the relocation must be received by the Danish Business Authority by the expiry of the time-limit for submitting the annual report for the period in which the relocation takes effect for accounting purposes, see section 318b(1)(iii), but no later than one year after the Authority published its receipt of the relocation plan under section 318f. If either of the time-limits is exceeded, the resolution to implement the relocation will become invalid, and the relocation plan prepared under section 318b will be deemed to have ceased to be effective.

**Issuance of certificate**

**318 m.** When the Danish Business Authority has received an application for registration of a relocation of a registered office to another EU/EEA country, the Authority will ensure that all actions and formalities necessary to implement the relocation have been completed. As soon as possible, the Danish Business Authority will issue a certificate to that effect to the limited liability company, provided that the following conditions have been met, but see subsection (2):

(i)     The resolution to relocate has been passed by the Danish limited liability company.
(ii)    The claims filed by the creditors under section 318e have been settled.
(iii)   The shareholders' demand for redemption under section 318k has been settled.

*(2)* Where the relocation takes effect for accounting purposes after the date of the resolution to implement the relocation, the certificate cannot be issued until the date on which the relocation takes effect for accounting purposes. The date on which the relocation takes

Copyright © 2015 Karnov Group Denmark A/S

effect for accounting purposes cannot be later than two weeks after the resolution to implement the relocation was passed, but no later than the date on which an application for registration of the relocation was submitted, see section 318l(1). The date on which the relocation takes effect for accounting purposes and the date of the resolution to implement the relocation must also be in the same financial year for the limited liability company.

*(3)* The Danish Business Authority completes the final registration of the company's relocation of registered office to another EU/EEA country when the Authority has been notified by the competent authorities of the country in which the registered office of the limited liability company is to be situated after the relocation that the relocation of the registered office of the limited liability company has been registered with final effect in that country.

## Relocation to Denmark of the registered office of a limited liability company

**318 n.** A limited liability company having its registered office in another EU/EEA country may relocate its registered office to Denmark when the competent authorities of the country in which the company has had its registered office so far have issued a certificate evidencing that all actions and formalities to be completed before the relocation have been completed and that the foreign registration authorities will register the relocation of registered office.

*(2)* When the Danish Business Authority has received the certificate, see subsection (1), the Authority will register the cross-border relocation to Denmark of the registered office and will notify the competent authorities of the country in which the company has had its registered office so far that the relocation has now been registered. The relocation cannot be registered until the company complies with the requirements of this Act applicable to the relevant corporate form.

*(3)* A cross-border relocation to Denmark of registered office will take effect from the date on which the Danish Business Authority registers the relocation.

*(4)* Part 3 of this Act on formation does not apply if, in connection with a cross-border relocation, a limited liability company relocates its registered office to Denmark from another EU/EEA country.

## Employee participation in cross-border relocation of the registered office of a limited liability company

**318 o.** Sections 311-317 apply correspondingly with the necessary changes to cross-border relocation of a registered office.

## Part 17. Conversion

## Conversion of a private limited company into a public limited company

**319.** The shareholders may resolve to convert a private limited company into a public limited company by the majority required to amend the articles of association. Before passing the resolution to convert the company, the shareholders must become acquainted with a valuation report prepared in accordance with sections 36 and 37 or a declaration prepared in accordance with the provisions of section 38. Sections 42-44 apply correspondingly to acquisitions after the resolution to convert the company was passed. The conversion may be implemented without the creditors' consent. Section 31 applies correspondingly to the conversion of a private limited company into a public limited company.

*(2)* Notice of the resolution must be sent to all shareholders who did not participate in the passing of the resolution no later than two weeks after the resolution was passed.

**320.** A conversion of a private limited company into a public limited company will be deemed to have been implemented when the company's articles of association have been amended to comply with the requirements for public limited companies, and when the conversion has been registered in the IT system of the Danish Business Authority.

## Conversion of a public limited company into a private limited company

**321.** The general meeting may resolve to convert a public limited company into a private limited company by the majority required to amend the articles of association. The conversion may be implemented without the creditors' consent.

*(2)* Notice of the resolution must be sent to all shareholders who did not participate in the passing of the resolution no later than two weeks after the resolution was passed.

**322.** A conversion of a public limited company into a private limited company will be deemed to have been implemented when the company's articles of association have been amended to comply with the requirements for private limited companies, and when the conversion has been registered in the IT system of the Danish Business Authority.

## Conversion of a public limited company into a limited partnership company

**323.** The general meeting may resolve to convert a public limited company into a limited partnership company by the majority required to amend the articles of association. The conversion may be implemented without the creditors' consent.

*(2)* Notice of the resolution must be sent to all registered shareholders and to the new fully liable partners no later than two weeks after the resolution was passed.

*(3)* A conversion of a public limited company into a limited partnership company will be deemed to have been implemented when the company's articles of association have been amended to comply with the requirements for limited partnership companies, and when the conversion has been registered in the IT system of the Danish Business Authority.

## Conversion of a limited partnership company into a public limited company

**324.** The general meeting may resolve to convert a limited partnership company into a public limited company by the majority required to amend the articles of association and with the consent of the fully liable partners. The conversion may be implemented without the creditors' consent. Before passing the resolution to convert the company, the general meeting must receive a valuation report prepared in accordance with sections 36 and 37 or a declaration prepared in accordance with the provisions of section 38. Sections 42-44 apply correspondingly to acquisitions after the resolution to convert the company was passed. Section 31 applies correspondingly to the conversion of a partnership company into a public limited company.

*(2)* Notice of the resolution must be sent to all partners who did not participate in the passing of the resolution no later than two weeks after the resolution was passed.

*(3)* A conversion of a limited partnership company into a public limited company will be deemed to have been implemented when the company's articles of association have been amended to comply with the requirements for public limited companies, and when the conversion has been registered in the IT system of the Danish Business Authority.

Selskabsloven på engelsk (LBKG 2015 610)                                                                    Ikraft: 2015-03-15

*(4)* When a limited partnership company has been converted into a public limited company, the fully liable partner remains liable for obligations accepted by the company before the conversion.

### Conversion of a cooperative society into a public limited company

**325.** In a limited liability cooperative society, the body authorised to amend the articles of association may resolve to convert the society into a public limited company, see sections 326-337. The conversion may be implemented without the creditors' consent.

### Conversion plan

**326.** The central management body of the cooperative society must prepare and sign a joint conversion plan, but see subsection (2).
*(2)* If so agreed by all members, no such conversion plan needs to be prepared, but see section 335(2) and (3).
*(3)* The conversion plan must include the following information and provisions:

(i)     the name and any secondary names of the cooperative society before and after the conversion;
(ii)    the registered office of the cooperative society;
(iii)   the consideration offered to the members;
(iv)    the date from which the shares in the public limited company will confer a right to receive dividends;
(v)     the rights in the public limited company accruing to any holders of ownership interests and debt instruments carrying special rights in the cooperative society before the conversion;
(vi)    any other measures taken for the benefit of the holders of ownership interests and debt instruments mentioned in para (v);
(vii)   registration of the shares offered as consideration and any delivery of share certificates;
(viii)  any special benefits accruing to the members of the company's management as part of the conversion; and
(ix)    the draft articles of association, see sections 28 and 29, of the public limited company after the conversion.

### Conversion statement

**327.** The central management body of the cooperative society must prepare a written statement explaining and setting out the reasons for the contemplated conversion, including any conversion plan, but see subsection (2). The statement must include information on how the consideration offered to the members has been determined, including any particular difficulties relating to such determination.
*(2)* If so agreed by all members, no such conversion statement needs to be prepared.

### Interim balance sheet

**328.** Where the conversion plan is signed more than six months after the end of the financial year to which the latest annual report or exemption statement of the cooperative society relates, an interim balance sheet must be prepared, but see subsection (4).
*(2)* If no conversion plan is prepared, see section 326(2), an interim balance sheet must be prepared for the relevant cooperative society if the decision to not prepare any conversion plan is made more than six months after the end of the financial year to which the cooperative society's annual report or exemption statement relates, but see subsection (4).
*(3)* The date of the interim balance sheet, which must be prepared in accordance with the set of rules under which the cooperative society prepares its annual report, must not be more than three months before the date on which the conversion plan is signed. The

interim balance sheet must be audited if the cooperative society is subject to audit obligations under the Financial Statements Act (*årsregnskabsloven*) or any other legislation.
*(4)* If so agreed by all members, no such interim balance sheet needs to be prepared, notwithstanding that the conversion plan is signed more than six months after the end of the financial year to which the latest annual report or exemption statement of the cooperative society relates.

### Valuation report on non-cash contributions

**329.** In connection with the conversion, a report must be obtained from a valuation expert. The valuation expert is appointed under section 37(1). Section 37(2) and (3) applies correspondingly to the valuation experts' relationship with the cooperative society to be converted.
*(2)* The valuation report must include

(i)     a description of each contribution;
(ii)    information on the valuation method applied;
(iii)   a specification of the agreed consideration; and
(iv)    a declaration that the assessed value is not lower than the agreed consideration, including any nominal value of the shares to be issued plus any premium.

*(3)* The valuation report must not be prepared more than three months before the date of any resolution to convert the society, see section 334. If the time-limit is exceeded, the conversion cannot be adopted with valid effect.

### Statement by valuation expert(s) on the contemplated conversion, including any conversion plan

**330.** One or more independent valuation experts must prepare a written statement on the conversion plan, including the consideration offered, see subsection (4). If no conversion plan is prepared, see section 326(2), the valuation expert must prepare a written statement on the contemplated conversion, including the consideration, but see subsection (4). However, if so agreed by all members of the cooperative society, no such statement on the contemplated conversion needs to be prepared by a valuation expert.
*(2)* The valuation experts are appointed under section 37(1).
*(3)* Section 37(2) and (3) applies correspondingly to the valuation experts' relationship with the cooperative society to be converted.
*(4)* The statement must include a declaration as to whether the consideration offered to the members of the cooperative society is fair and reasonable under the circumstances. The statement must specify the method(s) applied for determining the consideration and assess the appropriateness thereof. The statement must also specify the values resulting from each method and the relative importance to be attached to each individual method in connection with the valuation. Where the valuation has given rise to particular difficulties, such difficulties must be mentioned in the statement.

### Declaration by valuation expert(s) on the creditors' position

**331.** In addition to the statement mentioned in section 330, the valuation experts must make a declaration as to whether the creditors of the cooperative society may be deemed to be adequately protected after the conversion compared to the society's current situation. However, if so agreed by all members, no declaration on the creditors' position needs to be made by a valuation expert.

### Creditors' right to file claims

**332.** If, in the declaration on the creditors' position, see section 331, the valuation experts conclude that the creditors of the cooperative society will not be adequately protected after the conversion, or if

Copyright © 2015 Karnov Group Denmark A/S

no declaration on the creditors' position has been made by a valuation expert, creditors whose claims arose before the publication under section 333 by the Danish Business Authority may file their claims against the society no later than four weeks after the publication. However, claims for which adequate security has been provided cannot be filed.

*(2)* A request may be made for payment of claims filed that are due, and adequate security may be requested for claims filed that are not due.

*(3)* Unless otherwise established, security under subsection (2) is not required if payment of the claims is secured by a statutory arrangement.

*(4)* Where the cooperative society and any creditors having filed their claims disagree as to whether security must be provided, or whether the security offered is adequate, either party may, no later than two weeks after the claim was filed, bring the matter before the bankruptcy court for the district in which the registered office of the cooperative society is situated for a ruling on the matter.

*(5)* In the agreement on which the claim is based, creditors cannot waive with binding effect their right to demand security under subsection (2).

### Submission of information on contemplated conversion, including any conversion plan and declaration by valuation expert(s) on the creditors' position

**333.** A copy of the conversion plan, if any, must be received by the Danish Business Authority no later than four weeks after its signature, see subsection (2). If the time-limit is exceeded, receipt of the conversion plan cannot be published and, consequently, the conversion cannot be adopted.

*(2)* If the cooperative society has exercised its right not to prepare any conversion plan, see section 326(2), this must be communicated to the Danish Business Authority stating the name and central business register (CVR) number of the cooperative society.

*(3)* A declaration by valuation expert(s) on the creditors' position, see the first sentence of section 331, must be submitted to the Danish Business Authority, but see subsection (4).

*(4)* Where, under the second sentence of section 331, the right not to prepare any declaration by valuation expert(s) on the creditors' position has been exercised, this must be communicated to the Danish Business Authority stating the name and central business register (CVR) number of the cooperative society.

*(5)* Receipt by the Danish Business Authority of any information and documents, see subsections (1)-(4), is published in the Authority's IT system. If the creditors are entitled to file their claims, see section 332, the publication by the Danish Business Authority must include information to that effect.

*(6)* The Danish Business Authority may lay down detailed rules on the publication by cooperative societies of any conversion plan and accompanying documents.

### Resolution to implement a conversion

**334.** The resolution to implement a conversion cannot be passed less than four weeks after the publication by the Danish Business Authority, see section 333(5), of its receipt of information on the contemplated conversion, but see subsections (2) and (3). If the publications concerning section 333(1) or (2) and concerning section 333(3) or (4) have been made separately, the time-limit set out in the first sentence will be calculated from the later publication date.

*(2)* If, in the declaration on the creditors' position, see section 331, the valuation experts conclude that the creditors of the cooperative society will be adequately protected after the conversion, the time-limit set out in subsection (1) may be departed from if so agreed

by all members of the cooperative society after publication by the Danish Business Authority, see section 333(5), of its receipt of information on the contemplated conversion.

*(3)* If no conversion plan is prepared, see section 326(2), the Danish Business Authority is not required to make publication, see section 333(5), before the members resolve to implement the conversion if a declaration by valuation expert(s) on the creditors' position has been prepared, see section 331, and the valuation experts conclude that the creditors of the cooperative society will be adequately protected after the conversion.

*(4)* Creditors making a request to that effect must be informed of the date on which any resolution to implement the conversion will be passed.

*(5)* The conversion must be implemented in accordance with the conversion plan if such plan has been prepared. If the conversion is not adopted in accordance with any published conversion plan, the proposed resolution will be deemed to have ceased to be effective.

*(6)* Where the following documents have been prepared, such documents must be available to the members at the registered office or on the website of the cooperative society no later than four weeks before the resolution to implement the conversion is to be passed, unless the members agree that such documents are not to be available to the members before or at the general meeting, but see subsection (7):

(i)     The conversion plan.

(ii)    Approved annual reports of the cooperative society for the past three financial years or any shorter period in which the society has existed.

(iii)   A conversion statement.

(iv)    An interim balance sheet.

(v)     A valuation report on non-cash contributions.

(vi)    The valuation experts' statements on the contemplated conversion, including any conversion plan.

(vii)   The valuation experts' declaration on the creditors' position.

*(7)* Members of the cooperative society making a request to that effect must be granted access free of charge to the documents mentioned in subsection (6).

**335.** The resolution to convert the cooperative society must be passed by the body authorised to amend the articles of association. The resolution must be passed by the majority required for resolutions to dissolve the cooperative society, but by a majority of at least four-fifths of the members of the cooperative society or their votes where voting is based on revenue or the like. If the cooperative society is in liquidation, a resolution to convert the society may be passed only if the members have not yet received any distributions and if the members resolve at the same time to discontinue the liquidation process. Section 31 applies correspondingly to the conversion of a cooperative society into a public limited company.

*(2)* If no conversion plan is prepared, see section 326(2), the central management body must inform the general meeting of any significant events, including any significant changes in assets and liabilities which have occurred between the balance sheet date of the society's latest annual report or exemption statement and the general meeting.

*(3)* The following matters must be considered in connection with the adoption of the conversion if no conversion plan is prepared, see section 326:

(i)     the name and any secondary names of the cooperative society.

(ii)    the consideration offered for the shares in the converted cooperative society.

(iii)  the date from which the shares offered as consideration will confer on the holders a right to receive dividends.

(iv)  articles of association, see sections 28 and 29.

*(4)* The central management body of the cooperative society must inform the meeting at which the resolution to implement the conversion is to be passed of any significant events, including any significant changes in assets and liabilities which have occurred after the conversion plan was signed.

*(5)* Notice of the resolution must be sent to all members of the cooperative society no later than two weeks after the resolution was passed.

*(6)* Where the supreme management and any auditor are not elected immediately after it has been resolved to implement the conversion, a general meeting to elect the supreme management and any auditor must be held no later than two weeks after the resolution was passed. In connection with the conversion or at the subsequent general meeting, the members of the cooperative society must decide whether the company's future financial statements are to be audited if the company is not subject to audit obligations under the Financial Statements Act (*årsregnskabsloven*) or any other legislation.

### Members' right to claim compensation

**336.** The members of the cooperative society may claim compensation from the company if the consideration offered to the members is not fair and reasonable under the circumstances and if the members made a reservation to that effect at the meeting at which the resolution to convert the society was passed.

*(2)* Legal proceedings under subsection (1) must be commenced no later than two weeks after the resolution to convert the society was passed.

*(3)* Where a reservation has been made under subsection (1), the resolution to convert the society cannot be registered until the two-week time-limit set out in subsection (2) has expired, unless the valuation experts conclude in their statement on the plan, including the consideration offered, see section 330, that the consideration offered to the members of the cooperative society is fair and reasonable under the circumstances.

### Registration of implementation of a conversion

**337.** The resolution to convert the cooperative society must be registered with or an application for registration must be submitted to the Danish Business Authority, see section 9, no later than two weeks after the resolution was passed. The registration or application for registration must be accompanied by the documents mentioned in section 334(6)(iii)-(vii) if such documents have been prepared.

*(2)* The resolution to convert the cooperative society must be registered or an application for registration must be submitted, see section 9, no later than one year after the Danish Business Authority published its receipt of information on the contemplated conversion. If the time-limit is exceeded, the resolution to implement the conversion will become invalid, and any conversion plan prepared under section 326 will be deemed to have ceased to be effective.

*(3)* The conversion of a cooperative society into a public limited company may be registered when:

(i)  The resolution to convert the society has been passed by its members, see section 335(1).

(ii)  The claims filed by creditors under section 332 have been settled.

(iii)  The requirements set out in section 335(4) concerning the election of members to the supreme management body and an auditor have been met.

(iv)  The claims for compensation filed by the members under section 336 have been settled, unless adequate security has been provided for the claims. If the valuation experts have prepared a statement on the contemplated conversion, including the consideration offered, and the statement is based on the assumption that the consideration is fair and reasonable under the circumstances, the valuation experts must also have declared that their statement on the consideration is not disputed to any significant degree. The valuation experts decide whether the security is adequate.

(v)  An executive board has been appointed.

*(4)* A conversion of a cooperative society into a public limited company will be deemed to have been implemented when the society's articles of association have been amended to comply with the requirements for public limited companies, and when the conversion has been registered in the IT system of the Danish Business Authority.

*(5)* No registration may be made in the register of shareholders and no share certificates, if applicable, may be delivered until the conversion has been registered.

*(6)* Where, three years after the conversion, not all the shareholders entitled to do so have made an application for registration in the company's register of shareholders, the central management body may by an announcement in the IT system of the Danish Business Authority request the relevant shareholder(s) to contact the company within six months. If no contact has been made before the expiry of the time-limit, the board of directors may sell the shares at the relevant shareholder's expense. The company is entitled to deduct the expenses incurred in connection with the announcement and sale of the shares from the sales proceeds. Any sales proceeds not claimed within three years of the sale will accrue to the company.

*(7)* Sections 42-44 apply correspondingly where, during the 24 months following registration of the conversion, the converted limited liability company acquires assets from a shareholder known to the public limited company.

## Part 18. Takeover bids in public limited companies whose shares are admitted to trading on a regulated market or a multilateral trading facility

**338.** The provisions of this Part of the Act apply to public limited companies that have one or more share classes with voting rights admitted to trading on a regulated market or a multilateral trading facility in an EU/EEA country, but see section 340(4).

### Special involvement of the general meeting

**339.** The general meeting may resolve to introduce a procedure whereby the central management body of a public limited company whose shares are the subject of a takeover bid, see Part 8 of the Securities Trading Act (*værdipapirhandelsloven*), must obtain the approval of the general meeting before taking any measures that may frustrate a takeover bid, except for a decision to seek alternative bids.

*(2)* Any resolution under subsection (1) must be passed by the general meeting in accordance with the majority requirements set out in section 106(1). The resolution must also comply with the other provisions of the articles of association of the public limited company under section 106(1). This also applies if the resolution is subsequently changed.

*(3)* The approval of the general meeting under subsection (1) is required from the date on which the bidder announces his intention to make a bid until the result of the bid is available and has been made public under the provisions of Part 8 of the Securities Trading

Selskabsloven på engelsk (LBKG 2015 610)                                    Ikraft: 2015-03-15

Act (*værdipapirhandelsloven*) or the bid has lapsed. Accordingly, the approval of the general meeting must be obtained, regardless of whether a resolution to take the relevant measures had been passed before the central management body received notice of the takeover bid.

*(4)* Notwithstanding section 94(2) and even if a longer period of notice is prescribed by the articles of association, the central management body of the public limited company may call the general meeting by a notice of at least two weeks for the purpose of obtaining the general meeting's approval of the measures as set out in subsection (1).

*(5)* Where the general meeting of a public limited company has introduced a procedure whereby the approval of the general meeting must be obtained as set out in subsection (1), the general meeting may resolve that the procedure applies only if the company's shares become the subject of a bid from a company in an EU/EEA country which has introduced a similar procedure or which is controlled, directly or indirectly, by a parent, see sections 6 and 7, having introduced a similar procedure.

*(6)* As soon as possible, the public limited company must inform the Danish Business Authority and the supervisory authorities of an EU/EEA country in which the company's shares are admitted to trading on a regulated market or a multilateral trading facility, or in which an application for admission to trading has been submitted, of the resolution passed by the general meeting to introduce a procedure as specified in subsection (1). Information on the resolution passed by the general meeting must be published in the IT system of the Danish Business Authority.

## Suspension of special rights

**340.** The general meeting may resolve to introduce a procedure whereby special rights or restrictions attaching to shareholdings in the public limited company or to the individual share will be suspended if the company's shares become the subject of a takeover bid, see Part 8 of the Securities Trading Act (*værdipapirhandelsloven*).

*(2)* A resolution under subsection (1) must be passed by the general meeting in accordance with the majority requirements set out in section 106(1). The resolution must also comply with the other provisions of the articles of association of the public limited company under section 106(1). If the public limited company has more than one share class, the resolution must also meet the majority requirements set out in section 107(3). This also applies if the resolution is subsequently changed.

*(3)* As soon as possible, the public limited company must inform the Danish Business Authority and the supervisory authorities of an EU/EEA country in which the company's shares are admitted to trading on a regulated market or a multilateral trading facility, or in which an application for admission to trading has been submitted, of the resolution passed by the general meeting to introduce such procedure. Information on the resolution passed by the general meeting must be published in the IT system of the Danish Business Authority.

*(4)* Subsections (1)-(3) do not apply to public limited companies in which the Danish state holds voting shares to which special rights which are compatible with the EC Treaty are attached.

## Legal effects of suspension

**341.** As a result of the general meeting's resolution to suspend under section 340(1), any restrictions on the right to transfer or acquire shares prescribed by the articles of association of the public limited company or by agreement cannot be enforced against the bidder during the bidding period, but see section 342(1). If the bidder has

set up special conditions in the bidding document, the restrictions will be suspended until the bidder has decided in accordance with the bid document whether the bid may be completed.

*(2)* At the general meeting falling within section 339, a resolution to suspend under section 340(1) means

(i)  that any restrictions on voting rights prescribed by the articles of association of the public limited company or by agreement cannot be enforced, but see section 342(2); and

(ii) that shares given greater voting weight by the articles of association of the public limited company, see section 46(1), or by agreement only carry voting rights in proportion to their share of the aggregate voting share capital, but see section 342(2).

*(3)* At the general meeting falling within section 343, a resolution to suspend under section 340(1) means

(i)   that any restrictions on voting rights prescribed by the articles of association of the public limited company or by agreement cannot be enforced, but see section 342(2);

(ii)  that shares given greater voting weight by the articles of association of the public limited company, see section 46(1), or by agreement only carry voting rights in proportion to their share of the aggregate voting share capital, but see section 342(2); and

(iii) that special rights conferred on certain shareholders to appoint members of management under the articles of association of the public limited company cannot be exercised.

*(4)* The general meeting may resolve that subsections (1)-(3) apply only if the shares of the public limited company become the subject of a bid by a public limited company in an EU/EEA country having passed a similar resolution to suspend special rights or restrictions attaching to shareholdings or the individual share or which is controlled, directly or indirectly, by a parent having passed a similar resolution to suspend such rights and restrictions.

**342.** Notwithstanding section 340(1), agreements restricting the right to transfer or acquire shares made before 31 March 2004 may be enforced against a bidder.

*(2)* Notwithstanding section 340(1), agreements on the exercise of voting rights made before 31 March 2004 may be enforced at the general meetings falling within sections 339 and 343.

## Amendments to the articles of association following a successful takeover bid

**343.** Where a bidder has acquired 75% or more of the voting capital in a public limited company, and the company has passed a resolution to suspend under section 340(1), the bidder may demand that the central management body calls a general meeting after the expiry of the bid for the purpose of amending the articles of association and appointing or replacing members of management. Notwithstanding section 94(2), this first general meeting may be called by at least two weeks' notice even if a longer notice period is prescribed by the articles of association.

## Compensation to certain shareholders

**344.** Where companies have passed a resolution to suspend under section 340(1) and the bidder's bid is successful, the bidder must pay compensation to the shareholders suffering an economic loss because special rights or restrictions attaching to their shareholdings or to the individual share under the articles of association of the public limited company cannot be exercised or enforced, see section 341(1)-(3).

*(2)* The bid document must contain details on the compensation offered by the bidder to the shareholders, and the basis for calculat-

ing such compensation. The calculation must be based on the market value of the relevant shares.

*(3)* In the absence of agreement on the amount of compensation, the compensation will be determined by valuation experts appointed by the court for the district in which the registered office of the public limited company is situated. The expert's decision may be brought before the courts. Such legal proceedings must be commenced no later than three months from receipt of the expert's decision.

*(4)* Shareholders are also entitled to compensation under subsections (1)-(3) if, in the period between 31 March 2004 and 26 June 2005, they made an agreement on special rights or restrictions that cannot be exercised or enforced due to a takeover bid, see section 341(1)-(3).

## Part 19. Branches of foreign limited liability companies

**345.** Foreign public limited companies, limited partnership companies, private limited companies and companies with a similar corporate form that are based in an EU/EEA country may operate in this country via a branch.

*(2)* Other foreign public limited companies, limited partnership companies, private limited companies and companies with a similar corporate form may operate in this country via a branch if so authorised by an international agreement or if the Danish Business Authority believes that Danish limited liability companies enjoy a similar right in the relevant country, or the Authority otherwise grants a permission.

**346.** The branch must be managed by one or more branch managers.

*(2)* Branch managers must have full legal capacity and must not be under guardianship under sections 5 and 7 of the Guardianship Act (*værgemålsloven*).The provisions of this Act on members of management apply correspondingly with the necessary changes to branch managers.

*(3)* The branch is bound by the signature of a sole branch manager or the joint signatures of two or more branch managers. The branch managers may grant powers of procuration.

**347.** A branch must have a name and may have secondary names. A branch name and any secondary names must include the name of the foreign parent with the word "filial" ("branch") added to it, and it must clearly indicate the nationality of the foreign company. Section 2(1)-(3) and section 3 apply correspondingly to the names and any secondary names of branches.

*(2)* In letters and other business papers, including electronic messages, and on any website a branch must state its name, registered office, central business register (CVR) number and the name of any register and the registration number of the limited liability company in its home country. If the amount of the share capital is stated in these documents, both the subscribed and the paid-up capital must be stated.

**348.** The limited liability company is governed by Danish law with regard to all matters arising out of the company's activities in this country, and the Danish courts have jurisdiction over all such matters.

**349.** The establishment of a branch must be registered in the IT system of the Danish Business Authority, or an application for registration must be submitted to the Authority. Part 2 of this Act applies correspondingly.

*(2)* The branch cannot commence its activities until registration has been completed or an application for registration has been submitted. If registration is refused, or if an existing branch is de-

registered, see section 350, the branch cannot continue its activities in this country.

*(3)* Where bankruptcy proceedings, restructuring proceedings or similar proceedings have been commenced against the foreign company, such proceedings must be registered in the IT system of the Danish Business Authority or an application for registration must be submitted to the Authority no later than two weeks after the commencement of proceedings. Information on the status of the foreign company must be added to the company's name, see section 347(1).

**350.** A branch is deregistered from the IT system of the Danish Business Authority if

(i)     the company deregisters the branch or applies for deregistration of the branch;

(ii)    the branch has no branch manager, and this defect has not been remedied before the expiry of a time-limit set by the Danish Business Authority;

(iii)   the branch manager has failed to submit the foreign company's audited financial statements etc., if applicable, to the Danish Business Authority in accordance with sections 143 and 144 of the Financial Statements Act (*årsregnskabsloven*), and this defect has not been remedied by the expiry of a time-limit set by the Authority; or

(iv)    a creditor of a branch of a company which is not based in an EU/EEA country proves that his claim cannot be satisfied out of the company's assets in this country.

*(2)* Where it turns out after deregistration that the circumstances giving rise to deregistration no longer exist after the deregistration, the Danish Business Authority may re-register the branch at the request of the foreign company. The Danish Business Authority may lay down detailed rules on re-registration of branches.

*(3)* In the situations mentioned in subsection (1)(iv), the foreign company cannot establish a new branch, and the branch cannot be re-registered until the creditor has either been paid in full or consented to the establishment of a new branch.

## Part 20. State-owned public limited companies

### Definition etc.

**351.** The provisions of this Act governing public limited companies and the special provisions of this Act governing state-owned public limited companies, but see sections 352 and 353, apply to state-owned public limited companies.

**352.** The special provisions of this Act governing state-owned public limited companies do not apply to public limited companies that are subsidiaries of state-owned public limited companies.

*(2)* State-owned public limited companies whose shares are admitted to trading on a regulated market in an EU/EEA country are exempted from the special provisions of this Act governing state-owned public limited companies.

**353.** The Danish Business Authority may lay down provisions to exempt state-owned public limited companies from the special provisions of this Act if necessary to ensure consistency between the latter provisions and the corresponding provisions for limited liability companies whose securities are admitted to trading on a regulated market in an EU/EEA country.

### Special duties of disclosure etc.

**354.** State-owned public limited companies must notify the Danish Business Authority as soon as possible of any significant matters relating to the company that may be assumed to affect the company's future or its employees, shareholders or creditors. Parents, see

sections 6 and 7, must notify the Authority of any significant matters relating to the group that may be assumed to affect the group's future or its employees, shareholders or creditors.

**355.** The Danish Business Authority lays down rules on publication of notices under section 354 and other documents etc. that state-owned public limited companies are required to publish in the IT system of the Danish Business Authority under this Act.

**356.** A state-owned public limited company must publish its articles of association and annual report on its website.

**357.** The board of directors or the supervisory board of a state-owned public limited company must oversee the laying down of guidelines to ensure compliance with the special provisions on state-owned public limited companies of this Act and the Financial Statements Act (*årsregnskabsloven*).

*(2)* The Danish Business Authority may demand that the guidelines laid down under subsection (1) are sent to the Authority.

## Part 20a. Entrepreneur companies

**357 a.** The provisions of this Act on cooperative societies apply to entrepreneur companies, unless otherwise provided in this Part of the Act.

*(2)* An entrepreneur company must have a minimum share capital of DKK 1. The share capital must be contributed in cash.

*(3)* Only entrepreneur companies have the right and duty to use the designation "iværksætterselskab" or the abbreviation "IVS" in their names.

**357 b.** An entrepreneur company must transfer at least 25% of the company's profit every year to a non-distributable reserve for the purpose of building up the company's capital base until such reserve and the company's share capital total at least DKK 50,000.

*(2)* An entrepreneur company cannot resolve to distribute dividends, including extraordinary dividends, until the reserve for the building up of the company's capital base and the company's share capital total at least DKK 50,000.

**357 c.** Subject to the majority required to amend the articles of association, the general meeting may pass a resolution to convert an entrepreneur company into a private limited company if the company's share capital and the reserve for the building up of the company's capital base total at least DKK 50,000 at the date on which the resolution is passed, see the first sentence of section 33(1).

*(2)* The conversion is subject to a declaration by a valuation expert, see section 37, that the required capital is available.

**357 d.** A conversion of an entrepreneur company into a private limited company will be deemed to have been implemented when the company's articles of association, as regards the share capital and designation of the company, have been amended to comply with the normal requirements for private limited companies, and when the conversion has been registered in the IT system of the Danish Business Authority. As part of the conversion, the reserve for the building up of the company's capital base will be transferred to the share capital.

## Part 21. Limited partnership companies

**358.** The provisions of this Act governing public limited companies apply with the necessary changes to limited partnership companies.

**359.** Limited partnership companies have an obligation and an exclusive right to include the words "kommanditaktieselskab" or "partnerselskab" ("limited partnership company") or the abbreviation "P/S" in their name.

**360.** In addition to the information required to be included for public limited companies, the memorandum of association of a limited partnership company must include the following information:

(i)    The full name(s), address(es) and central business register (CVR) number(s), if applicable, of the fully liable partner(s).

(ii)   Whether the fully liable partner(s) is or are liable to make contributions and if so, the amount of each individual contribution. If the contribution has not been paid in full, the rules on payment must be stated. If assets other than cash are contributed, the valuation basis must be explained.

(iii)  The provisions of the articles of association on the influence exercised by the fully liable partner(s) over the company's affairs and their share(s) in the profit or loss.

*(2)* In addition to the provisions of sections 28 and 29, the articles of association of a limited partnership company must contain provisions on the legal relationship between the shareholders and the fully liable partners.

## Part 22. Damages, forced transfer etc.

**361.** Promoters and members of management who, in the performance of their duties, have intentionally or negligently caused damage to the limited liability company are liable to pay damages. The same applies where the damage has been caused to the shareholders or any third party.

*(2)* Subsection (1) applies correspondingly to liability in damages of auditors, valuation experts, keepers of the register of shareholders and scrutinisers.

*(3)* Where an auditing firm has been elected as auditor, both the auditing firm and the auditor performing the audit are liable in damages.

**362.** A shareholder is liable for any loss inflicted intentionally or with gross negligence on the company, the other shareholders or any third party.

*(2)* Where a shareholder has intentionally or with gross negligence inflicted a loss on the company, the other shareholders, the company's creditors or any other third party and there is a risk of continued abuse, the court may order the shareholder to redeem the shares belonging to the shareholder having suffered a loss at a price that will be determined with due consideration of the company's financial position and what is reasonable under the circumstances.

*(3)* Where a shareholder has intentionally or with gross negligence inflicted a loss on the company, the other shareholders or any third party and there is a risk of continued abuse, the court may order the shareholder to sell his shares to the other shareholders or the company at a price that will be determined with due consideration of the company's financial position and what is reasonable under the circumstances.

**363.** Damages under sections 361 and 362 may be reduced if deemed reasonable, having regard to the degree of fault, the amount of the damage inflicted and the circumstances in general.

*(2)* Where more than one person is liable at the same time, such persons will be jointly and severally liable to pay damages. However, any person whose liability has been reduced under subsection (1) is only liable for the reduced amount. If one of the liable persons has paid the damages, he will be entitled to demand that each of the other liable persons pays his share, having regard to the degree of fault attributable to each person and the circumstances in general.

**364.** Any resolution providing that the limited liability company must commence legal proceedings against its promoters, members of management, valuation experts, auditors, scrutinisers, keepers

of the register of shareholders or shareholders under sections 361 and 362 must be passed by the general meeting.

*(2)* Legal proceedings may be commenced even if the general meeting has previously granted an exemption from liability or waived the right to commence legal proceedings if the information concerning the resolution or the cause of action which had been provided to the general meeting before the passing of the resolution was not correct or complete in all essentials.

*(3)* Where shareholders representing at least one-tenth of the share capital oppose a resolution to grant an exemption from liability or waive the right to commence legal proceedings, any shareholder may commence legal proceedings for the purpose of making the person(s) liable for the loss suffered pay damages to the company. Shareholders commencing legal proceedings must pay legal costs, but may have such costs reimbursed by the company to the extent that the costs do not exceed the damages recovered by the company as a result of the proceedings.

*(4)* However, where the company is declared bankrupt and the reference date is no later than 24 months after the general meeting that resolved to grant an exemption from liability or waive the right to commence legal proceedings, the bankruptcy estate may commence legal proceedings without regard to the resolution passed by the general meeting.

**365.** Legal proceedings under section 364(3) must be commenced no later than six months after the resolution by the general meeting to grant an exemption from liability or waive the right to commence legal proceedings was passed. If a scrutiny procedure has been initiated under the provisions of section 150, legal proceedings must be commenced six months after the scrutiny was completed.

*(2)* Legal proceedings under section 364(4) must be commenced no later than three months after the limited liability company was declared bankrupt.

## Part 23. Penalty provisions etc.

**366.** In the absence of a more severe penalty under any other legislation, any non-compliance with the provisions of this Act concerning registration in the IT system of the Danish Business Authority or the submission for registration of applications for registration, valuation reports under section 43 or notices to the Authority is punishable by a fine.

*(2)* Where the members of the management of a limited liability company or the liquidator or the manager of a branch of a foreign limited liability company fails to meet in a timely manner their obligations to the Danish Business Authority under this Act or any provisions laid down under this Act, the Authority may, by way of sanction, impose fines that accrue on a daily or weekly basis.

**367.** Any non-compliance with section 1(3), sections 2, 10 and 15, section 24(2), section 30, section 32(2) and (3), section 33(4), section 38(2), section 42(1), section 44(1), section 50(1), section 51(1), (2) and (6), section 52, section 53(1) and (2), sections 54-56, section 57a(1)-(3), sections 58-61, 89, 98 and 99, section 101(3), (4), (7) and (8), sections 108 and 113-119, section 120(3), sections 123, 125, 127-134, 138 and 139, the third sentence of section 160, section 179(2), section 180, the third sentence of section 181, section 182(3), the third sentence of section 190(2), section 192(1), section 193(2), sections 196, 198 and 202-204, section 205(1), section 206, section 207(3), section 210, section 214(2) and (3), section 215(1), section 218(2), section 227(2), sections 228 and 234, section 339(6), section 340(3), section 347, section 349(2) and (3) and sections 354, 356, 357 and 359 is punishable by a fine. If a company maintains transactions which conflict with section 206 or section 210, it is punishable by a fine.

*(2)* In the absence of a more severe penalty under any other legislation, any person who without being authorised to do so discloses or uses a password or other means of access to attend or participate electronically, including vote electronically, in an electronic meeting of the board of directors, see section 125(2), or an electronic general meeting, see section 77(1) or (2), is punishable by a fine.

*(3)* In the absence of a more severe penalty under any other legislation, any person who without being authorised to do so discloses or uses a password or other means of access to read, modify or send electronic messages etc. falling within the provisions of section 92 on electronic communication is punishable by a fine.

*(4)* Regulations laid down under section 4(3), section 12(1) and (2), section 55(3), section 57, section 71(4), section 143, section 172, section 244(3), section 262(3), section 279(3), section 299(3), section 333(3) and section 372(1) may provide for punishment by a fine for non-compliance with the regulations.

**368.** Any non-compliance with section 312, section 313 and section 318, see section 3, section 36(4), section 37, the second sentence of section 38 and section 39 of the Act on Involvement of Employees in SEs (*lov om medarbejderindflydelse i SE-selskaber*) is punishable by a fine.

*(2)* In the absence of a more severe penalty under any other legislation, any person disclosing information which is confidential under section 312 and section 318, see section 41(1) of the Act on Involvement of Employees in SEs (*lov om medarbejderindflydelse i SE-selskaber*), is punishable by a fine.

*(3)* Any person who, before or after a cross-border merger or demerger, see Part 16 of this Act, intentionally or with gross negligence provides the employees or their representatives with incorrect information of significant importance to the employees' participation in the surviving company is punishable by a fine.

**369.** Companies etc. (legal persons) may incur criminal liability under the provisions of Part 5 of the Criminal Code (*straffeloven*).

*(2)* Any non-compliance with the provisions of this Act or any rules laid down under this Act will be time-barred after five years.

## Part 24. Complaints procedure

**370.** The Minister for Economic and Business Affairs may lay down rules on complaints about decisions made under this Act, including rules providing that complaints cannot be brought before any other administrative authority.

**371.** Decisions made by the Danish Business Authority under this Act or regulations laid down under this Act may be brought before the Company Appeals Board no later than four weeks after the decision was communicated to the relevant party, but see subsection (2).

*(2)* The decisions of the Danish Business Authority concerning non-compliance with the time-limits set out in section 40(1), section 165(5), section 177(2), section 191, section 225(2) and section 231(2), the setting of time-limits under section 16(1) and section 17(2) and decisions under section 93(2)-(4), section 225(1), section 226, section 232(2) and section 350(1)(ii)-(iv) and decisions made under regulations laid down under section 8a cannot be brought before any higher administrative authority.

## Part 25. Commencement

**372.** The Minister for Economic and Business Affairs sets the date of commencement of this Act. The Minister may also determine that different parts of this Act will enter into force on different dates. The Minister may also lay down rules departing from the provisions of this Act which require adjustments to the IT system of the Danish

Business Authority in respect of registration and publication until all necessary adjustments to the IT system have been completed. The Minister is also authorised to repeal the Public Companies Act (*aktieselskabsloven*), see Consolidated Act No. 649 of 15 June 2006, as amended, and the Private Companies Act (*anpartsselskabsloven*), see Consolidated Act No. 650 of 15 June 2006, as amended. *(2)* The Minister for Economic and Business Affairs may lay down rules on special transitional arrangements for the companies, including the affected employees, falling within the scope of this Act and for management bodies and their duties.

**373.** Any application for registration under the Public Companies Act (*aktieselskabsloven*) or the Private Companies Act (*anpartsselskabsloven*) received by the Danish Business Authority before commencement of this Act will be processed under the then applicable provisions.

*(2)* The executive orders, rules and regulations laid down under this Act as well as any registered information, including articles of association and authorisations to the company's management, any granted permits, approvals etc. will remain valid until amended, revoked, repealed or terminated under the provisions of this Act.

**374.** The Minister for Economic and Business Affairs will evaluate the Companies Act in full or in part two years after commencement of the provisions of section 4.

**375.** This Act does not apply to Greenland and the Faroe Islands, but may be brought into force for Greenland by royal decree, subject to any variations necessitated by the specific conditions prevailing in Greenland.

# Lovbekendtgørelse 2015-04-28 nr. 610
# om aktie- og anpartsselskaber

*(selskabsloven)*[1)]

Herved bekendtgøres lov om aktie- og anpartsselskaber (selskabsloven), jf. lovbekendtgørelse nr. 322 af 11. april 2011, med de ændringer, der følger af § 1 i lov nr. 477 af 30. maj 2012, § 1 i lov nr. 1231 af 18. december 2012, § 1 i lov nr. 1383 af 23. december 2012, § 1 i lov nr. 616 af 12. juni 2013, § 5 i lov nr. 634 af 12. juni 2013, § 2 i lov nr. 1367 af 10. december 2013 og § 47 i lov nr. 1284 af 9. december 2014.

## Kapitel 1. Lovens anvendelsesområde m.v.

### Anvendelsesområde

**§ 1.** Denne lov finder anvendelse på alle aktieselskaber og anpartsselskaber (kapitalselskaber).

*Stk. 2.* I et aktie- eller anpartsselskab hæfter aktionærerne og anpartshaverne (kapitalejerne) ikke personligt for kapitalselskabets forpligtelser, men alene med deres indskud. Kapitalejerne har ret til andel i kapitalselskabets overskud i forhold til deres ejerandel, medmindre andet er fastsat i selskabets vedtægter.

*Stk. 3.* Et anpartsselskab kan ikke udbyde selskabets kapitalandele til offentligheden.

### Kapitalselskabets navn

**§ 2.** Kun aktieselskaber og anpartsselskaber kan og skal i deres navn benytte betegnelserne »aktieselskab« henholdsvis »anpartsselskab« eller forkortelserne »A/S« henholdsvis »ApS«.

*Stk. 2.* Et kapitalselskabs navn skal tydeligt adskille sig fra navnet på andre virksomheder, der er registreret i Erhvervsstyrelsens it-system. I navnet må ikke optages slægtsnavn, firmanavn, særegent navn på fast ejendom, varemærke, forretningskendetegn og lign., der ikke tilkommer kapitalselskabet, eller noget, som kan forveksles hermed.

*Stk. 3.* Et kapitalselskabs navn må ikke være egnet til at vildlede. Hvis navnet betegner en bestemt virksomhed, må det ikke videreføres uforandret, når kapitalselskabets hovedaktivitet væsentligt forandres.

*Stk. 4.* Kapitalselskaber skal i breve og på andre forretningspapirer, herunder elektroniske meddelelser, og på kapitalselskabets hjemmeside angive navn, hjemsted og cvr-nummer.

**§ 3.** § 2, stk. 1-3, finder tilsvarende anvendelse på kapitalselskabers binavne.

*Stk. 2.* For registrering af mere end fem binavne pr. kapitalselskab betales 1.000 kr. pr. binavn. Dette gælder dog ikke binavne, som videreføres i forbindelse med omdannelse, fusion eller spaltning.

### Selskabskapital

**§ 4.** Kapitalselskaber omfattet af denne lov skal have en selskabskapital, der skal opgøres i danske kroner eller euro, jf. dog stk. 3.

*Stk. 2.* Aktieselskaber skal have en selskabskapital svarende til mindst 500.000 kr., og anpartsselskaber skal have en selskabskapital svarende til mindst 50.000 kr.

*Stk. 3.* Erhvervsstyrelsen kan fastsætte nærmere regler om betingelserne for at angive selskabskapitalen i en anden valuta end danske kroner eller euro.

## Definitioner

**§ 5.** I denne lov forstås ved:

1) *Aktieselskab:*
   Et kapitalselskab, herunder et partnerselskab, hvor kapitalejernes indskudskapital er fordelt på aktier. Aktier kan udbydes til offentligheden. Kapitalejerne hæfter alene med deres indskud i selskabet.

2) *Anpartsselskab:*
   Et kapitalselskab, hvor kapitalejernes indskudskapital er fordelt på anparter. Anpartsselskaber kan ikke udbyde deres kapitalandele til offentligheden, jf. § 1, stk. 3. Kapitalejerne hæfter alene med deres indskud i selskabet.

3) *Dattervirksomhed:*
   En virksomhed, der er underlagt bestemmende indflydelse af et modersleskab, jf. §§ 6 og 7.

4) *Det centrale ledelsesorgan:*
   a) Bestyrelsen i selskaber, der har en direktion og en bestyrelse, jf. § 111, stk. 1, nr. 1,
   b) direktionen i selskaber, der alene har en direktion, jf. § 111, stk. 1, nr. 2, og
   c) direktionen i selskaber, der både har en direktion og et tilsynsråd, jf. § 111, stk. 1, nr. 2.

5) *Det øverste ledelsesorgan:*
   a) Bestyrelsen i selskaber, der har en direktion og en bestyrelse, jf. § 111, stk. 1, nr. 1,
   b) direktionen i selskaber, der alene har en direktion, jf. § 111, stk. 1, nr. 2, og
   c) tilsynsrådet i selskaber, der både har en direktion og et tilsynsråd, jf. § 111, stk. 1, nr. 2.

6) *Ejeraftale:*
   Aftale, der regulerer ejer- og ledelsesforhold i selskabet, og som er indgået mellem kapitalejere.

7) *Ejerbeviser:*
   Bevis på ejerskab til en kapitalandel, jf. §§ 59 og 60.

8) *Ejerbog:*
   Den fortegnelse, som kapitalselskabet skal føre over alle aktionærer eller anpartshavere, jf. § 50.

9) *Ejerregister:*
   Det register, som Erhvervsstyrelsen fører over visse kapitalejeres kapitalposter, jf. § 58.

10) *Fondsandele:*
    Aktier eller anparter, der udstedes i forbindelse med fondsudstedelse, jf. § 165.

11) *Grænseoverskridende flytning af hjemsted:*
    Et kapitalselskabs flytning af et kapitalselskabs registrerede hjemsted fra et EU- eller EØS-land til et andet EU- eller EØS-land.

12) *Grænseoverskridende fusion eller spaltning:*
    En fusion eller spaltning, hvori der indgår kapitalselskaber, som hører under mindst to forskellige EU- eller EØS-landes lovgivning.

13) *Hjemsted:*
    Den adresse her i landet, som selskabet kan kontaktes på.

14) *Iværksætterselskab:*

Et anpartsselskab, jf. nr. 2, der ikke har en registreret selskabskapital på mindst 50.000 kr., og som opfylder betingelserne i § 357 a.

15) *Kapitalandel:*
En aktie eller anpart, jf. §§ 45-49.

16) *Kapitalejer:*
Enhver ejer af en eller flere kapitalandele.

17) *Kapitalklasse:*
En gruppe kapitalandele, hvortil er knyttet de samme rettigheder eller pligter.

18) *Kapitalselskab:*
Et anpartsselskab, herunder et iværksætterselskab, eller et aktieselskab, herunder et partnerselskab.

19) *Koncern:*
Et moderselskab og dets dattervirksomheder, jf. § 7.

20) *Ledelsen:*
Alle de organer, som er nævnt i nr. 4 og 5. Et medlem af ledelsen kan være et medlem af et selskabs tilsynsråd, bestyrelse eller direktion.

21) *Moderselskab:*
Et kapitalselskab, som har en bestemmende indflydelse over en eller flere dattervirksomheder, jf. §§ 6 og 7.

22) *Multilateral handelsfacilitet:*
Definitionen af en multilateral handelsfacilitet i § 40, stk. 1, i lov om værdipapirhandel m.v. finder anvendelse.

23) *Partnerselskab:*
Et kommanditselskab, jf. § 2, stk. 2, i lov om visse erhvervsdrivende virksomheder, hvor kommanditisterne i selskabet har indskudt en bestemt kapital, som er fordelt på aktier, jf. kapitel 21.

24) *Reassumption:*
Midlertidig genoptagelse af boet efter et kapitalselskab, efter at selskabet er slettet i Erhvervsstyrelsens it-system, jf. § 235.

25) *Rederiaktieselskab:*
Et aktieselskab, der driver rederivirksomhed, jf. § 112, stk. 2.

26) *Registreringsdato:*
Den dato, hvor en kapitalejers ret til at deltage i en generalforsamling og afgive stemme i tilknytning til sine kapitalandele fastsættes.

27) *Reguleret marked:*
Definitionen af et reguleret marked i § 16, stk. 1, i lov om værdipapirhandel m.v. finder anvendelse.

28) *Repræsenteret kapital:*
Kapitalandele, der er repræsenteret på generalforsamlingen og enten har stemmeret eller stemmeløse og tillagt repræsentationsret i vedtægterne.

29) *Repræsentationsret:*
Den ret, som kan tillægges stemmeløse kapitalandele til at møde på generalforsamlingen og til at indgå i opgørelsen af den på generalforsamlingen repræsenterede del af selskabskapitalen. Kapitalandele med stemmeret har altid repræsentationsret, jf. § 46.

30) *Selskabskapital:*
Det indskud, som kapitalejernes hæftelse er begrænset til i medfør af denne lov, jf. § 4.

31) *Statslige aktieselskaber:*
Et aktieselskab, hvortil den danske stat har samme forbindelse, som et moderselskab har til en dattervirksomhed, jf. §§ 6 og 7.

## Koncerner

**§ 6.** Et moderselskab udgør sammen med en eller flere dattervirksomheder en koncern. En virksomhed kan kun have ét direkte moderselskab. Hvis flere selskaber opfylder et eller flere af kriterierne i § 7, er det alene det selskab, som faktisk udøver den bestemmende indflydelse over virksomhedens økonomiske og driftsmæssige beslutninger, der anses for at være moderselskab.

**§ 7.** Bestemmende indflydelse er beføjelsen til at styre en dattervirksomheds økonomiske og driftsmæssige beslutninger.

*Stk. 2.* Bestemmende indflydelse i forhold til en dattervirksomhed foreligger, når moderselskabet direkte eller indirekte gennem en dattervirksomhed ejer mere end halvdelen af stemmerettighederne i en virksomhed, medmindre det i særlige tilfælde klart kan påvises, at et sådant ejerforhold ikke udgør bestemmende indflydelse.

*Stk. 3.* Ejer et moderselskab ikke mere end halvdelen af stemmerettighederne i en virksomhed, foreligger der bestemmende indflydelse, hvis moderselskabet har

1) råderet over mere end halvdelen af stemmerettighederne i kraft af en aftale med andre investorer,

2) beføjelse til at styre de finansielle og driftsmæssige forhold i en virksomhed i henhold til en vedtægt eller aftale,

3) beføjelse til at udpege eller afsætte flertallet af medlemmerne i det øverste ledelsesorgan og dette organ besidder den bestemmende indflydelse på virksomheden eller

4) råderet over det faktiske flertal af stemmerne på generalforsamlingen eller i et tilsvarende organ og derved besidder den faktiske bestemmende indflydelse over virksomheden.

*Stk. 4.* Eksistensen og virkningen af potentielle stemmerettigheder, herunder tegningsretter og købsoptioner på kapitalandele, som aktuelt kan udnyttes eller konverteres, skal tages i betragtning ved vurderingen af, om et selskab har bestemmende indflydelse.

*Stk. 5.* Ved opgørelsen af stemmerettigheder i en dattervirksomhed ses der bort fra stemmerettigheder, som knytter sig til kapitalandele, der besiddes af dattervirksomheden selv eller dens dattervirksomheder.

## *Skifterettens og Sø- og Handelsrettens beføjelser*

**§ 8.** Hvor beføjelser i henhold til denne lov er henlagt til skifteretten, udøves de af skifteretten på selskabets hjemsted. Dog udøves beføjelserne af Sø- og Handelsretten i de områder, der er henlagt under Københavns Byret, retten på Frederiksberg og retterne i Glostrup og Lyngby, jf. konkurslovens § 4.

## Kapitel 1 a. *Kommunikation*

**§ 8 a.** Erhvervsstyrelsen kan fastsætte regler om, at skriftlig kommunikation til og fra styrelsen om forhold, som er omfattet af denne lov eller af regler udstedt i medfør af denne lov, skal foregå digitalt.

*Stk. 2.* Erhvervsstyrelsen kan fastsætte nærmere regler om digital kommunikation, herunder om anvendelse af bestemte it-systemer, særlige digitale formater og digital signatur el.lign.

*Stk. 3.* En digital meddelelse anses for at være kommet frem, når den er tilgængelig for adressaten for meddelelsen.

**§ 8 b.** Erhvervsstyrelsen kan fastsætte regler om, at styrelsen kan udstede afgørelser og andre dokumenter efter denne lov eller efter regler udstedt i medfør af denne lov uden underskrift, med maskinelt eller på tilsvarende måde gengivet underskrift eller under anvendelse af en teknik, der sikrer entydig identifikation af den, som har udstedt afgørelsen eller dokumentet. Sådanne afgørelser og dokumenter sidestilles med afgørelser og dokumenter med personlig underskrift.

*Stk. 2.* Erhvervsstyrelsen kan fastsætte regler om, at afgørelser og andre dokumenter, der udelukkende er truffet eller udstedt på grundlag af elektronisk databehandling, kan udstedes alene med angivelse af Erhvervsstyrelsen som afsender.

**§ 8 c.** Hvor det efter denne lov eller regler udstedt i medfør af denne lov er krævet, at et dokument, som er udstedt af andre end Erhvervsstyrelsen, skal være underskrevet, kan dette krav opfyldes ved anvendelse af en teknik, der sikrer entydig identifikation af den, som har udstedt dokumentet, jf. dog stk. 2. Sådanne dokumenter sidestilles med dokumenter med personlig underskrift.

*Stk. 2.* Erhvervsstyrelsen kan fastsætte nærmere regler om fravigelse af underskriftskrav. Det kan herunder bestemmes, at krav om personlig underskrift ikke kan fraviges for visse typer af dokumenter.

## Kapitel 2. *Registrering og frister*

### Registrering

**§ 9.** Registreringspligtige oplysninger efter denne lov skal være optaget i Erhvervsstyrelsens it-system senest 2 uger efter den retsstiftende beslutning, medmindre andet er bestemt i eller i medfør af denne lov. Hvor anmelder ikke selv forestår registreringen i Erhvervsstyrelsens it-system, jf. § 12, stk. 1, skal anmeldelse være modtaget i Erhvervsstyrelsen, senest 2 uger efter at den retsstiftende beslutning er truffet.

*Stk. 2.* Pligten til at sikre, at registrering finder sted, eller at anmeldelse med henblik på registrering meddeles Erhvervsstyrelsen, påhviler selskabets centrale ledelsesorgan.

*Stk. 3.* Stk. 1 og 2 finder tilsvarende anvendelse på offentliggørelse af dokumenter og meddelelser m.v., som skal offentliggøres i Erhvervsstyrelsens it-system. Hvor anmelder ikke selv forestår offentliggørelsen i Erhvervsstyrelsens it-system, jf. § 12, stk. 2, skal dokumentet eller meddelelsen være modtaget i Erhvervsstyrelsen, senest 2 uger efter at den pågældende begivenhed har fundet sted.

**§ 10.** Medlemmerne af et kapitalselskabs direktion, bestyrelse og tilsynsråd og en eventuel revisor skal registreres i Erhvervsstyrelsens it-system.

*Stk. 2.* Fratræder revisor, jf. § 144, stk. 1, inden hvervets udløb, skal der med registreringen eller anmeldelsen vedlægges en fyldestgørende forklaring fra det centrale ledelsesorgan på årsagen til hvervets ophør.

**§ 11.** Sker der ændring i et kapitalselskabs vedtægter eller i noget andet forhold, der tidligere er registreret i Erhvervsstyrelsen, skal ændringen registreres i Erhvervsstyrelsens it-system eller anmeldes til styrelsen, jf. § 9.

**§ 12.** Erhvervsstyrelsen fastsætter regler om anmeldelse og registrering af forhold, som er registreringspligtige efter denne lov.

*Stk. 2.* Erhvervsstyrelsen fastsætter regler om offentliggørelse af registreringer, dokumenter og meddelelser m.v. i styrelsens it-system efter denne lov.

*Stk. 3.* Erhvervsstyrelsen kan fastsætte regler om gebyrer for registrering og udskrifter m.v., offentliggørelse, brug af styrelsens it-system og rykkerskrivelser m.v. ved for sen betaling.

*Stk. 4.* Erhvervsstyrelsen kan fastsætte regler om betaling af et årligt gebyr for administration af de selskabsretlige regler og for ydelser, der ikke er særligt prissatte.

**§ 13.** Erhvervsstyrelsen kan fastsætte regler om sprogkrav til den dokumentation, der indsendes i forbindelse med registreringer eller anmeldelser i kapitalselskaber.

*Stk. 2.* Erhvervsstyrelsen fastsætter regler om, at frivillig registrering og offentliggørelse af selskabsoplysninger også kan ske på ethvert andet af Den Europæiske Unions officielle sprog ud over den

pligtmæssige offentliggørelse på et af de sprog, der er tilladt efter stk. 1.

*Stk. 3.* I tilfælde af uoverensstemmelse mellem de dokumenter og oplysninger, som har været genstand for obligatorisk registrering og offentliggørelse, jf. stk. 1, og frivilligt offentliggjorte oversættelser heraf, jf. stk. 2, kan selskabet ikke gøre oversættelsen gældende mod tredjemand. Tredjemand kan derimod gøre den frivillige offentliggjorte tekst gældende mod selskabet, medmindre det bevises, at den pågældende kendte den registreringspligtige version, som var offentliggjort i Erhvervsstyrelsens it-system. § 9, stk. 1, finder ikke anvendelse på frivilligt offentliggjorte dokumenter.

**§ 14.** I Erhvervsstyrelsen føres et register over selskaber, der er registreret i medfør af denne lov. Registrering og offentliggørelse i henhold til denne lov sker i styrelsens it-system.

*Stk. 2.* Oplysninger, der er offentliggjort i it-systemet, anses for at være kommet til tredjemands kendskab. 1. pkt. finder dog ikke anvendelse på dispositioner, der er foretaget senest den 16. dag efter offentliggørelsen, såfremt det bevises, at tredjemand ikke kunne have haft kendskab til det offentliggjorte forhold.

*Stk. 3.* Så længe offentliggørelse i it-systemet ikke har fundet sted, kan forhold, der skal registreres og offentliggøres, ikke gøres gældende mod tredjemand, medmindre det bevises, at denne har haft kendskab hertil. Den omstændighed, at et sådant forhold endnu ikke er offentliggjort, hindrer ikke tredjemand i at gøre forholdet gældende.

**§ 15.** Registrering må ikke finde sted, hvis det forhold, der ønskes registreret, ikke opfylder bestemmelser i denne lov, bestemmelser fastsat i henhold til denne lov eller selskabets vedtægter. Registrering må heller ikke finde sted, hvis den beslutning, der lægges til grund for registreringen, ikke er blevet til i overensstemmelse med de forskrifter, som er fastsat i loven, bestemmelser, der er fastsat i henhold til denne lov, eller som selskabets vedtægter fastlægger.

*Stk. 2.* En anmelder, der registrerer et forhold i Erhvervsstyrelsens it-system eller indsender anmeldelse herom til registrering i Erhvervsstyrelsens it-system, indestår for, at registreringen eller anmeldelsen er lovligt foretaget, herunder at der foreligger behørig fuldmagt, og at dokumentationen i forbindelse med registreringen eller anmeldelsen er gyldig.

*Stk. 3.* Stk. 1 og 2 finder tilsvarende anvendelse på dokumenter m.v., som offentliggøres i Erhvervsstyrelsens it-system, eller som indsendes til styrelsen til offentliggørelse m.v. efter denne lov.

**§ 16.** Finder Erhvervsstyrelsen, at en fejl eller mangel ved et anmeldt forhold kan afhjælpes ved en generalforsamlingsbeslutning eller ved vedtagelse af kapitalselskabets centrale ledelsesorgan, kan styrelsen fastsætte en frist til forholdets berigtigelse. Sker berigtigelse ikke senest ved udløbet af den fastsatte frist, kan registrering ikke finde sted.

*Stk. 2.* Hvis registrering afvises efter stk. 1, skal anmelderen have skriftlig meddelelse om, at registrering ikke vil finde sted, og om begrundelsen herfor.

*Stk. 3.* Bliver Erhvervsstyrelsen bekendt med, at der er tvivl om lovligheden af foretagne eller anmeldte registreringer, kan styrelsen træffe beslutning om, at registreringer efter § 9, stk. 1, ikke kan finde sted, før der er skabt klarhed om forholdet. Anmelderen skal have skriftlig meddelelse om, at registrering ikke kan finde sted, og om begrundelsen herfor. Erhvervsstyrelsen kan endvidere i styrelsens it-system offentliggøre en meddelelse om grundlaget for styrelsens beslutning.

*Stk. 4.* Erhvervsstyrelsen kan i de tilfælde, som er omfattet af stk. 3, tillige registrere ledelsens fratræden.

**§ 17.** Erhvervsstyrelsen kan forlange de oplysninger, som er nødvendige, for at der kan tages stilling til, om loven, regler fastsat i

Copyright © 2015 Karnov Group Denmark A/S

medfør af loven og kapitalselskabets vedtægter er overholdt, herunder at kapitalgrundlaget er til stede.

*Stk. 2.* Ved registrering og anmeldelse efter regler fastsat i medfør af dette kapitel kan Erhvervsstyrelsen i indtil 3 år fra registreringstidspunktet stille krav om, at der indsendes bevis for, at registreringen eller anmeldelsen er lovligt foretaget. Erhvervsstyrelsen kan i forbindelse hermed i særlige tilfælde stille krav om, at der indsendes en erklæring afgivet af en revisor om, at de økonomiske dispositioner i forbindelse med registreringen eller anmeldelsen er lovligt foretaget. Opfyldes kravene i henhold til 1. og 2. pkt. ikke, fastsætter styrelsen en frist til forholdets berigtigelse. Sker berigtigelse ikke senest ved udløbet af den fastsatte frist, kan styrelsen om nødvendigt foranledige kapitalselskabet opløst efter reglerne i § 226.

**§ 18.** Oplysninger om navn og adresse på stiftere samt om navn, stilling og adresse på medlemmerne af ledelsen skal til enhver tid fremgå af Erhvervsstyrelsens it-system. Dette gælder i både aktive og opløste selskaber. Erhvervsstyrelsen kan fastsætte regler om, at visse oplysninger ikke skal fremgå.

*Stk. 2.* Opdatering af personoplysninger efter stk. 1 ophører, 10 år efter at den pågældende person ophører med at være registreret i en virksomhed, som er registreret i Erhvervsstyrelsens it-system.

**§ 19.** (Ophævet)

**§ 20.** Mener nogen bortset fra i tilfælde, der omfattes af § 109, at en registrering vedrørende en beslutning, som er truffet af stiftere, generalforsamlingen eller selskabets ledelse, er den pågældende til skade, hører spørgsmålet om sletning af registreringen under domstolene.

*Stk. 2.* Sag herom skal være anlagt mod selskabet senest 6 måneder efter registreringens offentliggørelse i Erhvervsstyrelsens it-system. Retten sender Erhvervsstyrelsen udskrift af dommen, hvorefter Erhvervsstyrelsen offentliggør oplysning om sagens udfald i styrelsens it-system.

### Frister

**§ 21.** Hvor det i loven eller i forskrifter, der udstedes i medfør af loven, er fastsat, at en handling kan eller skal foretages, et bestemt antal dage, uger, måneder eller år før en nærmere angiven begivenhed finder sted, beregnes fristen for at foretage handlingen fra dagen før denne begivenhed.

*Stk. 2.* Udløber fristen for at foretage handlingen i en weekend, på en helligdag, grundlovsdag, juleaftensdag eller nytårsaftensdag, vil handlingen skulle foretages senest den sidste hverdag forinden.

**§ 22.** Hvor det i loven eller i forskrifter, der udstedes i medfør af loven, er fastsat, at en handling eller beslutning tidligst kan foretages, et bestemt antal dage, uger, måneder eller år efter at en nærmere angiven begivenhed har fundet sted, beregnes fristen for at foretage handlingen eller beslutningen fra dagen efter denne begivenhed. Handlingen eller beslutningen kan tidligst foretages, dagen efter at fristen er udløbet.

**§ 23.** Hvor det i loven eller i forskrifter, der udstedes i medfør af loven, er fastsat, at en handling senest skal foretages, et bestemt antal dage, uger, måneder eller år efter at en nærmere angiven begivenhed har fundet sted, beregnes fristen for at foretage handlingen fra dagen efter denne begivenhed, jf. stk. 2-4.

*Stk. 2.* Er fristen, jf. stk. 1, angivet i uger, udløber fristen for at foretage handlingen på ugedagen for den dag, hvor begivenheden fandt sted.

*Stk. 3.* Er fristen, jf. stk. 1, angivet i måneder, udløber fristen for at foretage handlingen på månedsdagen for den dag, hvor begivenheden fandt sted. Hvis begivenheden fandt sted på den sidste dag i en måned, eller hvis fristen udløber på en månedsdato, som ikke findes, udløber fristen altid på den sidste dag i måneden uanset månedens længde.

*Stk. 4.* Er fristen, jf. stk. 1, angivet i år, udløber fristen for at foretage handlingen på årsdagen for begivenheden.

*Stk. 5.* Udløber fristen i en weekend, på en helligdag, grundlovsdag, juleaftensdag eller nytårsaftensdag, skal handlingen senest foretages den førstkommende hverdag derefter.

## Kapitel 3. *Stiftelse*

### Stiftere

**§ 24.** Et kapitalselskab kan stiftes af en eller flere stiftere.

*Stk. 2.* En stifter må ikke være under rekonstruktionsbehandling eller konkurs.

*Stk. 3.* Hvis stifter er en fysisk person, skal personen være myndig og må ikke være under værgemål efter § 5 i værgemålsloven eller under samværgemål efter § 7 i værgemålsloven.

*Stk. 4.* Hvis stifter er en juridisk person, skal denne være beføjet til at erhverve rettigheder, indgå forpligtelser og være part i retssager.

### Stiftelsesdokument

**§ 25.** Stifterne skal underskrive et stiftelsesdokument, der skal indeholde kapitalselskabets vedtægter.

**§ 26.** Stiftelsesdokumentet skal indeholde oplysning om

1) navn, bopæl og eventuelt cvr-nummer for kapitalselskabets stiftere,
2) tegningskursen for kapitalandelene,
3) fristerne for tegningen og indbetalingen af kapitalandelene,
4) fra hvilken bestemt dato stiftelsen skal have retsvirkning, jf. § 40, stk. 3-5,
5) fra hvilken bestemt dato stiftelsen skal have virkning i regnskabsmæssig henseende, jf. § 40, stk. 6, og
6) hvorvidt kapitalselskabet skal afholde omkostningerne ved stiftelsen og i bekræftende fald de anslåede omkostninger.

**§ 27.** Stiftelsesdokumentet skal endvidere indeholde bestemmelser om følgende forhold, hvis der er truffet beslutning herom:

1) Særlige rettigheder eller fordele, der skal tilkomme stiftere eller andre,
2) indgåelse af aftale med stiftere eller andre, hvorved der kan påføres kapitalselskabet en væsentlig økonomisk forpligtelse,
3) at kapitalandele kan tegnes mod indskud af andre værdier end kontanter, jf. § 35,
4) at kapitalselskabets årsregnskab m.v. ikke skal revideres, hvis kapitalselskabet kan fravælge revision efter årsregnskabsloven eller anden lovgivning, og
5) størrelsen af den del af den tegnede selskabskapital, der er indbetalt på tidspunktet for stiftelse.

*Stk. 2.* I stiftelsesdokumentet skal stifterne redegøre for de omstændigheder, som er af betydning for bedømmelsen af de bestemmelser, der er truffet i henhold til stk. 1. I redegørelsen angives navn og bopæl for de personer, der er omfattet af bestemmelserne.

*Stk. 3.* Dokumenter, hvis hovedindhold ikke er gengivet i stiftelsesdokumentet, men hvortil der henvises i stiftelsesdokumentet, skal vedhæftes dette.

*Stk. 4.* Aftaler om forhold, der er omhandlet i stiftelsesdokumentet, men som ikke godkendes deri, har ikke gyldighed over for kapitalselskabet.

### Vedtægter

**§ 28.** Vedtægterne for et kapitalselskab skal indeholde oplysning om:

Copyright © 2015 Karnov Group Denmark A/S

1) Kapitalselskabets navn og eventuelle binavne,
2) kapitalselskabets formål,
3) selskabskapitalens størrelse og antallet af kapitalandele eller kapitalandelenes pålydende værdi,
4) kapitalandelenes rettigheder,
5) kapitalselskabets ledelsesorganer, herunder oplysning om den valgte ledelsesstruktur, jf. § 111, og i aktieselskaber oplysning om antallet eller mindste og højeste antal medlemmer af de forskellige ledelsesorganer og eventuelle suppleanter samt valgperioden for medlemmerne af det øverste ledelsesorgan,
6) indkaldelse til generalforsamling og
7) kapitalselskabets regnskabsår.

§ 29. Vedtægterne for et kapitalselskab skal endvidere indeholde oplysning om de beslutninger, der efter denne lov skal optages i vedtægterne, og om det seneste ophørstidspunkt for kapitalselskabet, hvis kapitalselskabets levetid er begrænset.

## Tegning af selskabskapital

§ 30. Tegning af kapitalandele skal ske på stiftelsesdokumentet med eventuelle bilag.

§ 31. Kapitalandele kan ikke tegnes under forbehold eller til underkurs.

§ 32. Stifterne bestemmer, om tegningen af kapitalandele kan accepteres, jf. dog § 31.
Stk. 2. I tilfælde af overtegning skal stifterne inden registrering eller anmeldelse til registrering, jf. §§ 9 og 40, træffe beslutning om, hvor mange kapitalandele der tilkommer hver enkelt tegner. Der kan ikke tildeles en stifter kapitalandele for et mindre beløb, end stifteren ifølge stiftelsesdokumentet vil tegne.
Stk. 3. Stifterne skal hurtigst muligt underrette de personer, der har tegnet kapitalandele i et kapitalselskab, hvis

1) tegningen ikke er accepteret,
2) stifterne finder tegningen ugyldig eller
3) der er foretaget nedsættelse af det tegnede beløb som følge af overtegning.

Stk. 4. Forslag om at stifte kapitalselskabet med en højere eller lavere selskabskapital end angivet i vedtægterne kan alene vedtages med samtykke fra samtlige stiftere og kapitaltegnere.
Stk. 5. Er selskabskapitalen eller det eventuelt fastsatte mindstebeløb ikke blevet fuldt tegnet og accepteret af stifterne, er kapitalselskabets stiftelse og dermed kapitaltegnernes forpligtelser bortfaldet. Indbetalte beløb tilbagebetales. Omkostningerne ved stiftelsen kan dog fradrages, hvis dette er betinget ved tegningen.

## Indbetaling af selskabskapital

§ 33. Der skal til enhver tid være indbetalt 25 pct. af selskabskapitalen, dog mindst 50.000 kr. Indbetalingen skal ske i forhold til hver enkelt kapitalandel. Fastsættes en overkurs, skal overkursen i aktieselskaber indbetales fuldt ud, uanset at en del af selskabskapitalen ikke indbetales. I anpartsselskaber skal en eventuel overkurs ikke indbetales fuldt ud, men kan være delvis indbetalt med samme andel som selskabskapitalen. Hvis hele eller en del af selskabskapitalen indbetales ved indskud af andre værdier end kontanter, jf. § 35, skal hele selskabskapitalen og en eventuel overkurs dog indbetales fuldt ud.
Stk. 2. Ikke indbetalt selskabskapital kan af kapitalselskabets centrale ledelsesorgan kræves indbetalt på anfordring. Fristen for betaling er mindst 2 uger. Der kan i vedtægterne fastsættes et længere varsel, der dog ikke kan overstige 4 uger.
Stk. 3. Kapitalselskabets fordringer på indbetalinger på kapitalandele kan ikke afhændes eller pantsættes.

Stk. 4. Anføres selskabskapitalens størrelse på breve og andre forretningspapirer, herunder elektroniske meddelelser, og på kapitalselskabets hjemmeside, skal såvel den tegnede som den indbetalte kapital anføres.

§ 34. En kapitalejers rettigheder efter denne lov består, uanset om kapitalandelen er fuldt indbetalt, jf. dog stk. 3.
Stk. 2. En kapitalejer har pligt til at foretage indbetaling på en kapitalandel, når det centrale ledelsesorgan anmoder herom, jf. § 33, stk. 2. En kapitalejer har dog til enhver tid ret til at betale det udestående beløb på en kapitalandel, uanset at det centrale ledelsesorgan ikke har fremsat anmodning herom. Kapitalejeren skal da indbetale det fulde udestående beløb på den pågældende kapitalandel, medmindre vedtægterne bestemmer andet.
Stk. 3. Har en kapitalejer undladt rettidigt at efterkomme det centrale ledelsesorgans krav om indbetaling af udestående beløb på en kapitalandel, kan kapitalejeren ikke udøve sin stemmeret på generalforsamlingen for nogen del af sin kapitalpost i selskabet, og den pågældendes kapitalpost anses ikke for repræsenteret på generalforsamlingen, før beløbet er indbetalt og registreret i kapitalejerlisten. Dette gælder dog ikke retten til udbytte og andre udbetalinger samt retten til nye kapitalandele ved kapitalforhøjelse. Det centrale ledelsesorgan kan modregne kapitalselskabets krav på indbetaling af kapitalen i udlodninger fra selskabet, som den pågældende kapitalejer er berettiget til som kapitalejer.
Stk. 4. En kapitalejer kan ikke uden samtykke fra kapitalselskabets centrale ledelsesorgan bringe fordringer på kapitalselskabet i modregning mod sin forpligtelse til at indbetale udestående beløb. Samtykke må ikke gives, hvis modregningen kan skade kapitalselskabet eller dets kreditorer.
Stk. 5. En kapitalejer kan ikke uden samtykke fra kapitalselskabets centrale ledelsesorgan indskyde andre værdier end kontanter til opfyldelse af sin forpligtelse til at indbetale udestående beløb. Samtykke må ikke gives, hvis indskuddet kan skade kapitalselskabet eller dets kreditorer. Der skal desuden udarbejdes en vurderingsberetning efter bestemmelserne i §§ 36 og 37, medmindre erhvervelsen er omfattet af § 38.
Stk. 6. Overdrager en kapitalejer en ikke fuldt indbetalt kapitalandel, hæfter vedkommende solidarisk med erhververen og senere erhververe for den resterende indbetaling af kapitalandelen.

## Særligt om indskud af selskabskapital i andre værdier end kontanter

§ 35. Indskud i andre værdier end kontanter, dvs. apportindskud, skal have en økonomisk værdi og kan ikke bestå i pligt til at udføre et arbejde eller levere en tjenesteydelse.
Stk. 2. Fordringer på stiftere eller kapitalejere kan ikke anskydes eller overtages, uanset om fordringerne er sikret ved pant.

§ 36. Skal kapitalselskabet overtage andre værdier end kontanter, skal stiftelsesdokumentet vedhæftes en vurderingsberetning. Beretningen skal indeholde

1) en beskrivelse af hvert indskud,
2) oplysning om den anvendte fremgangsmåde ved vurderingen,
3) angivelse af det vederlag, som er fastsat for overtagelsen, og
4) erklæring om, at den ansatte økonomiske værdi mindst svarer til det aftalte vederlag, herunder den eventuelle pålydende værdi af de kapitalandele, der skal udstedes, med tillæg af en eventuel overkurs.

Stk. 2. Vurderingen må ikke være foretaget mere end 4 uger før stiftelsesdokumentets underskrivelse. Overskrides fristen, må vurderingen foretages på ny.
Stk. 3. Overtager kapitalselskabet i forbindelse med stiftelsen en bestående virksomhed, skal vurderingsberetningen endvidere inde-

Copyright © 2015 Karnov Group Denmark A/S

holde en åbningsbalance for kapitalselskabet. Åbningsbalancen skal udarbejdes i overensstemmelse med det regelsæt, som selskabet udarbejder årsrapport efter. Åbningsbalancen skal være uden forbehold. Hvis kapitalselskabet er underlagt revisionspligt efter årsregnskabsloven eller anden lovgivning, skal åbningsbalancen tillige være forsynet med en erklæring om revision uden forbehold.

**§ 37.** Vurderingsberetningen skal udarbejdes af en eller flere uvildige, sagkyndige vurderingsmænd. Som vurderingsmænd kan stifterne alene udpege godkendte revisorer. Skifteretten på det sted, hvor kapitalselskabet skal have hjemsted, kan i andre tilfælde udpege vurderingsmænd.

*Stk. 2.* §§ 133 og 149 i denne lov og § 24 i revisorloven finder tilsvarende anvendelse på vurderingsmænd.

*Stk. 3.* Vurderingsmændene skal have adgang til at foretage de undersøgelser, de finder nødvendige, og kan fra stifterne eller kapitalselskabet forlange de oplysninger og den bistand, som de anser for nødvendige for udførelsen af deres hverv.

**§ 38.** Kravet om udarbejdelse af en vurderingsberetning efter § 36, stk. 1, gælder ikke ved indskud af:

1) Aktiver og forpligtelser (nettoaktiver), som er målt til dagsværdi og præsenteret individuelt i et års- eller koncernregnskab for det forudgående regnskabsår. Kapitalselskabet skal være udarbejdet i overensstemmelse med bestemmelserne i årsregnskabsloven eller de internationale regnskabsstandarder, jf. Europa-Parlamentets og Rådets forordning om anvendelse af internationale regnskabsstandarder, i overensstemmelse med regnskabsregler fastsat ved eller i henhold til lovgivningen for finansielle virksomheder, eller i et regnskab for en udenlandsk virksomhed, der er udarbejdet efter reglerne i Rådets fjerde direktiv af 25. juli 1978 (78/660/EØF) med senere ændringer eller i Rådets syvende direktiv af 13. juni 1983 (83/349/EØF) med senere ændringer og forsynet med en revisionspåtegning.

2) Værdipapirer eller pengemarkedsinstrumenter, der optages til den gennemsnitskurs, hvortil de er blevet handlet på et eller flere regulerede markeder i de 4 uger, der går forud for stiftelsesdokumentets underskrivelse. Vurderingsberetning efter § 36, stk. 1, skal dog udarbejdes, hvis kapitalselskabets centrale ledelsesorgan vurderer, at denne gennemsnitskurs er påvirket af ekstraordinære omstændigheder eller i øvrigt ikke kan antages at afspejle den aktuelle værdi.

*Stk. 2.* Kapitalselskabets centrale ledelsesorgan er ansvarlig for, at et indskud i henhold til stk. 1 ikke er til skade for kapitalselskabet eller dets kapitalejere eller kreditorer, og skal udarbejde en erklæring, der indeholder

1) en beskrivelse af aktiver og forpligtelser (nettoaktiver) og disses værdier,

2) oplysning om den anvendte fremgangsmåde ved vurderingen,

3) en udtalelse om, at de angivne værdier mindst svarer til værdien af og i givet fald overkursen for de kapitalandele, der skal udstedes som vederlag, og

4) en udtalelse om, at der ikke er opstået nye omstændigheder, der har betydning for den oprindelige vurdering.

*Stk. 3.* Det centrale ledelsesorgan skal offentliggøre erklæringen efter stk. 2 i Erhvervsstyrelsens it-system, senest samtidig med at stiftelsen registreres eller anmeldes til registrering.

### Valg af ledelse og eventuel revisor m.v.

**§ 39.** Hvis der ikke i forbindelse med stiftelsen af kapitalselskabet er foretaget valg af kapitalselskabets ledelse og eventuel revisor, skal stifterne senest 2 uger fra underskrivelsen af stiftelsesdokumenterne afholde generalforsamling i kapitalselskabet til valg af kapitalselskabets ledelse og eventuel revisor. Stiftelsen og den valgte ledelse samt en eventuel revisor skal registreres eller anmeldes, jf. § 9.

### Registrering

**§ 40.** Kapitalselskabet skal registreres i Erhvervsstyrelsens it-system eller anmeldes til registrering, jf. § 9, senest 2 uger efter underskrivelsen af stiftelsesdokumentet. Er registrering ikke sket eller anmeldelse ikke modtaget i Erhvervsstyrelsen inden udløbet af denne frist, kan registrering ikke finde sted.

*Stk. 2.* Kapitalselskabet kan ikke registreres, medmindre mindst 25 pct. af den samlede kapital, dog mindst 50.000 kr., jf. § 4, stk. 2, er indbetalt, jf. § 33, stk. 1, 1. pkt. Er der fastsat overkurs, skal denne være indbetalt i henhold til § 33, stk. 1. Ved registrering eller anmeldelse efter stk. 1 skal der indsendes bevis for, at kapitalen er indbetalt til selskabet senest på registrerings- eller anmeldelsestidspunktet.

*Stk. 3.* Stiftelsen af kapitalselskabet har retsvirkning fra datoen for stiftelsesdokumentets underskrift eller fra den senere dato, som er anført i stiftelsesdokumentet, jf. dog stk. 4 og 5.

*Stk. 4.* Hvis selskabskapitalen betales ved indskud af kontanter, kan stiftelsen ikke tillægges retsvirkning senere end 12 måneder efter stiftelsesdokumentets underskrift.

*Stk. 5.* Hvis selskabet i forbindelse med stiftelsen skal overtage andre værdier end kontanter, kan stiftelsen ikke tillægges retsvirkning senere end tidspunktet for kapitalselskabets registrering eller anmeldelse til registrering, jf. stk. 1.

*Stk. 6.* Hvis kapitalselskabet i forbindelse med stiftelsen overtager en allerede bestående virksomhed eller overtager en bestemmende post ejerandele i en anden virksomhed, kan stiftelsen tillægges virkning i regnskabsmæssig henseende fra første dag i indeværende regnskabsår i den virksomhed, der indskydes, eller som kapitalposten vedrører.

**§ 41.** Et kapitalselskab, der ikke er registreret, kan ikke erhverve rettigheder, indgå forpligtelser eller være part i retssager bortset fra søgsmål til indkrævning af tegnet selskabskapital og andre søgsmål vedrørende tegningen. Selskabet skal til sit navn føje ordene »under stiftelse«.

*Stk. 2.* Stiftes et kapitalselskab med en dato for retsvirkning, jf. § 40, stk. 3-5, der ligger efter datoen for underskrivelse af stiftelsesdokumentet, kan der ikke i tidsperioden frem til retsvirkningen for kapitalselskabets stiftelse erhverves rettigheder eller indgås forpligtelser på kapitalselskabets vegne.

*Stk. 3.* For en forpligtelse indgået på kapitalselskabets vegne efter datoen for underskrivelse af stiftelsesdokumentet, men før registreringen, hæfter de, som har indgået forpligtelsen eller har medansvar herfor, solidarisk. Ved registreringen overtager kapitalselskabet de rettigheder og forpligtelser, som følger af stiftelsesdokumentet eller er pådraget kapitalselskabet efter underskrivelsen af stiftelsesdokumentet.

*Stk. 4.* Er der før kapitalselskabets registrering truffet en aftale, og vidste den anden aftalepart, at kapitalselskabet ikke var registreret, kan denne hæve aftalen, hvis registrering ikke er sket i Erhvervsstyrelsens it-system senest ved udløbet af fristen efter § 40, stk. 1, eller hvis registrering nægtes. Dette gælder dog ikke, hvis andet er aftalt. Var aftaleparten uvidende om, at kapitalselskabet ikke var registreret, kan denne hæve aftalen, så længe kapitalselskabet ikke er registreret.

### Efterfølgende erhvervelser

**§ 42.** Kapitalselskabets centrale ledelsesorgan er ansvarlig for, at erhvervelse af aktiver fra stiftere, kapitalejere og medlemmer af

Copyright © 2015 Karnov Group Denmark A/S

kapitalselskabets ledelse ikke er til skade for selskabet, dets kapitalejere eller kreditorer.

**§ 42 a.** Et aktieselskabs erhvervelse af aktiver fra en stifter skal godkendes af generalforsamlingen, hvis

1) erhvervelsen sker i tiden fra datoen for stiftelsesdokumentets underskrift, og indtil 24 måneder efter at aktieselskabet er registreret, og

2) vederlaget svarer til mindst 1/10 af selskabskapitalen.

*Stk. 2.* Det centrale ledelsesorgan i aktieselskabet skal til brug for generalforsamlingens beslutning om godkendelse af erhvervelsen udarbejde en redegørelse om de nærmere omstændigheder ved erhvervelsen.

**§ 43.** Hvis et aktieselskab erhverver aktiver fra en stifter og erhvervelsen er omfattet af § 42 a, stk. 1, skal der desuden udarbejdes en vurderingsberetning efter bestemmelserne i §§ 36 og 37, medmindre erhvervelsen er omfattet af § 38.

*Stk. 2.* Hvis det erhvervede efter stk. 1 er en bestående virksomhed, skal balancen efter § 36, stk. 3, dog udarbejdes som en overtagelsesbalance for den overtagne virksomhed.

**§ 44.** Det centrale ledelsesorgan skal offentliggøre redegørelsen, jf. § 42 a, stk. 2, og vurderingsberetningen eller ledelseserklæringen, jf. § 43, i Erhvervsstyrelsens it-system senest 2 uger efter generalforsamlingens godkendelse af erhvervelsen.

*Stk. 2.* §§ 42 a og 43 finder ikke anvendelse på aktieselskabets sædvanlige forretningsmæssige dispositioner.

## Kapitel 4. *Kapitalandele, ejerfortegnelser m.v.*

### *Kapitalandele*

**§ 45.** I kapitalselskaber har alle kapitalandele lige ret i selskabet. Vedtægterne kan dog bestemme, at der skal være forskellige kapitalklasser. I så fald skal vedtægterne angive de forskelle, der knytter sig til den enkelte klasse af kapitalandele, og størrelsen af den enkelte klasse.

**§ 46.** Alle kapitalandele har stemmeret. Det kan dog i kapitalselskabets vedtægter bestemmes, at visse kapitalandele er uden stemmeret, og at visse kapitalandeles stemmeværdi afviger i forhold til øvrige kapitalandele.

*Stk. 2.* Stemmeløse kapitalandele har kun repræsentationsret, hvis det fremgår af vedtægterne.

**§ 47.** Et kapitalselskab kan udstede kapitalandele med nominel værdi eller som stykkapitalandele eller en kombination heraf.

*Stk. 2.* Stykkapitalandele har ingen pålydende værdi. Hver stykkapitalandel udgør en lige stor andel i selskabskapitalen.

*Stk. 3.* Andelen i selskabskapitalen bestemmes for kapitalandele med nominel værdi efter forholdet mellem den pålydende værdi og selskabskapitalen og for stykkapitalandele efter antallet af udstedte andele.

**§ 48.** Kapitalandele er frit omsættelige og ikke indløselige, medmindre andet følger af lovgivningen.

*Stk. 2.* Kapitalandele kan udstedes på navn. Vedtægterne kan i så fald fastsætte begrænsninger i omsætteligheden eller bestemmelser vedrørende indløsning. Aktier kan endvidere udstedes til ihændehaver.

**§ 49.** Erhververen af en navnekapitalandel kan ikke udøve de rettigheder, som tilkommer en kapitalejer, medmindre erhververen er noteret i ejerbogen eller erhververen har anmeldt og dokumenteret sin erhvervelse. Dette gælder dog ikke retten til udbytte og andre udbetalinger og retten til nye andele ved kapitalforhøjelse.

### *Ejerbog*

**§ 50.** Det centrale ledelsesorgan skal hurtigst muligt efter selskabets stiftelse oprette en fortegnelse over samtlige kapitalejere.

*Stk. 2.* Ejerbogen kan føres, ved at selskabet registrerer oplysningerne efter § 52 og § 56, stk. 2, i Erhvervsstyrelsens it-system, jf. § 58.

*Stk. 3.* Vedtægterne kan bestemme, at ejerbogen føres af en person, som er valgt af selskabet, på selskabets vegne. Vedtægterne skal indeholde oplysning om navn og adresse på den person, der fører ejerbogen. Hvis det er en juridisk person, er det tilstrækkeligt, at cvr-nummeret fremgår. Erhvervsstyrelsen kan fastsætte nærmere regler om, at personer kan føre ejerbøger, herunder hvilke betingelser den pågældende skal opfylde.

**§ 51.** Ejerbogen skal være tilgængelig for offentlige myndigheder. Vedtægterne skal oplyse, hvor ejerbogen føres, hvis dette ikke sker på selskabets registrerede hjemsted. Ejerbogen skal føres inden for EU/EØS-området.

*Stk. 2.* I selskaber, hvor medarbejderne er berettigede til at vælge medlemmer til selskabets øverste ledelsesorgan i henhold til § 140, men hvor denne ret ikke er udnyttet, skal ejerbogen tillige være tilgængelig for en repræsentant for medarbejderne. I en koncern, hvor koncernens medarbejdere ikke har valgt medlemmer til selskabets øverste ledelsesorgan i henhold til § 141, skal moderselskabets ejerbog være tilgængelig for en repræsentant for medarbejderne i de øvrige danske koncernselskaber.

*Stk. 3.* Stk. 2 om selskaber, hvor der ikke er medarbejdervalgte bestyrelsesmedlemmer, finder tilsvarende anvendelse i SE-selskaber, hvor der ikke er valgt medlemmer til at repræsentere medarbejderne i administrationsorganet eller tilsynsorganet efter de regler, som gælder for SE-selskaber, for så vidt angår medarbejderindflydelse.

*Stk. 4.* [2] I vedtægterne kan det bestemmes, at ejerbogen tillige skal være tilgængelig for kapitalejerne, herunder elektronisk, jf. dog stk. 5 og 6. Beslutning herom træffes af generalforsamlingen med den stemmeflerhed, der kræves til vedtægtsændring.

*Stk. 5.* [3] Er ejerbogen efter § 50, stk. 2, tilgængelig i elektronisk form, kan selskabet opfylde sine forpligtelser efter stk. 1-4 ved at give de berettigede efter stk. 1-4 adgang til den elektroniske ejerbog. Selskabets forpligtelser er opfyldt, hvis selskabet indberetter oplysningerne, jf. § 52, til Erhvervsstyrelsens it-system (ejerregisteret), jf. § 58, stk. 1 og 2.

*Stk. 6.* I anpartsselskaber skal ejerbogen være tilgængelig for enhver anpartshaver.

**§ 52.** Ejerbogen for et kapitalselskab, som har udstedt navnekapitalandele, skal indeholde følgende oplysninger, jf. dog stk. 3:

1) Kapitalejers samlede beholdning af kapitalandele.

2) Kapitalejers og panthavers navn og bopæl og for virksomheder navn, cvr-nummer og hjemsted, jf. stk. 2.

3) Dato for erhvervelse, afhændelse eller pantsætning, herunder kapitalandelenes størrelse.

4) De stemmerettigheder, der er knyttet til kapitalandelene.

*Stk. 2.* Er kapitalejeren eller panthaveren en udenlandsk statsborger eller en udenlandsk juridisk person, skal meddelelsen, jf. § 53, stk. 1, vedlægges anden dokumentation, der sikrer en entydig identifikation af kapitalejeren eller panthaveren.

*Stk. 3.* For aktieselskaber, som har udstedt ejerbeviser eller har aktier udstedt gennem en værdipapircentral, finder stk. 1 og 2 ikke anvendelse.

**§ 53.** Kapitalejeren eller panthaveren skal underrette kapitalselskabet om ejerskifte eller pantsætning. Meddelelse fra kapitalejeren eller panthaveren skal være modtaget i selskabet, senest 2 uger efter

at ejerskifte eller pantsætning er sket. Meddelelsen skal indeholde de oplysninger om den nye kapitalejer eller panthaver, som er nævnt i § 52. Ved overdragelse af kapitalandele gælder der ingen noteringspligt, jf. dog stk. 4.

*Stk. 2.* Underretning om ejerskifte eller pantsætning indføres i ejerbogen med angivne oplysninger om den nye kapitalejer eller panthaver, hvis der ikke efter vedtægterne er noget til hinder for erhvervelsen. Selskabet, henholdsvis føreren af ejerbogen, kan betinge indførelsen af, at erhververen eller panthaveren dokumenterer sin ret. Indførelsen i ejerbogen skal dateres.

*Stk. 3.* Selskabet henholdsvis føreren af ejerbogen skal på forlangende af en kapitalejer eller en panthaver udstede bevis for indførelse i ejerbogen.

*Stk. 4.* Kapitalselskabet henholdsvis føreren af ejerbogen skal give ejerbeviset påtegning om, at notering er sket, eller, når vedtægterne bestemmer dette, mod deponering af ejerbeviset udstede bevis for, at notering er sket.

**§ 54.** Ejerbogen for et aktieselskab, der har udstedt ihændehaveraktier, skal indeholde oplysning om løbenummer.

### Meddelelse om betydelige kapitalposter

**§ 55.** Enhver, der besidder kapitalandele i et kapitalselskab, skal give meddelelse herom til selskabet, når

1) kapitalandelenes stemmeret udgør mindst 5 pct. af selskabskapitalens stemmerettigheder eller udgør mindst 5 pct. af selskabskapitalen eller

2) ændring i et allerede meddelt besiddelsesforhold bevirker, at grænserne på 5, 10, 15, 20, 25, 50, 90 eller 100 pct. og grænserne på 1/3 eller 2/3 af selskabskapitalens stemmerettigheder eller selskabskapitalen nås eller ikke længere er nået.

*Stk. 2.* Til besiddelse efter stk. 1 medregnes

1) kapitalandele, hvis stemmeret tilkommer en virksomhed, som den pågældende kontrollerer ved at have den forbindelse, som er nævnt i § 7, og

2) kapitalandele, som den pågældende har stillet til sikkerhed, medmindre panthaver råder over stemmeretten og erklærer at have til hensigt at udøve den.

*Stk. 3.* Erhvervsstyrelsen kan fastsætte nærmere regler om besiddelse og om meddelelse om besiddelse af kapitalandele efter stk. 1 og 2. Erhvervsstyrelsen kan endvidere fastsætte regler, som fraviger stk. 1, for så vidt angår aktier i aktieselskaber, som har aktier optaget til handel på et reguleret marked eller en multilateral handelsfacilitet, herunder regler om kortere meddelelsesfrist.

**§ 56.** Meddelelse efter § 55 skal gives til selskabet, senest 2 uger efter at en af grænserne i § 55, stk. 1, nås eller ikke længere er nået. Selskabet indfører oplysningerne i ejerbogen.

*Stk. 2.* Meddelelsen skal indeholde oplysning om dato for erhvervelse eller afhændelse af kapitalandelene, antallet af kapitalandele, og eventuelt hvilken klasse de tilhører, kapitalejerens fulde navn, bopæl og cpr-nummer eller for virksomheders vedkommende navn, cvr-nummer og hjemsted. Har kapitalejeren ikke et cpr-nummer eller et cvr-nummer, skal meddelelsen vedlægges anden dokumentation, der sikrer en entydig identifikation af den pågældende. Erhvervsstyrelsen kan fastsætte nærmere regler herom.

*Stk. 3.* Meddelelsen skal tillige indeholde oplysning om kapitalandelenes størrelse henholdsvis pålydende værdi og de stemmerettigheder, der er knyttet hertil. Meddelelsen til selskabet kan gives i forbindelse med meddelelsen efter § 53, stk. 1.

**§ 57.** Erhvervsstyrelsen fastsætter regler om meddelelse efter § 55 om besiddelse af aktier i statslige aktieselskaber, herunder om,

1) hvad der skal medregnes som besiddelse, og
2) at meddelelse til selskabet skal ske hurtigst muligt.

### Registrering af mindre besiddelser af ihændehaveraktier

**§ 57 a.** [4)]En erhverver af en eller flere ihændehaveraktier, jf. § 48, stk. 2, 3. pkt., som besidder mindre end 5 pct. af selskabskapitalens stemmerettigheder eller mindre end 5 pct. af selskabskapitalen, skal senest 2 uger efter erhvervelsen registreres i Erhvervsstyrelsens it-system, jf. dog stk. 4.

*Stk. 2.* Registreringen i henhold til stk. 1 skal indeholde oplysning om dato for erhvervelse, antallet af ihændehaveraktier og erhververens fulde navn, bopæl og cpr-nummer eller for virksomheders vedkommende navn, cvr-nummer og hjemsted. Har erhververen ikke et cpr-nummer eller et cvr-nummer, skal der registreres andre oplysninger, der sikrer en entydig identifikation af den pågældende.

*Stk. 3.* Ved overdragelse af en eller flere ihændehaveraktier, som er registreret i medfør af stk. 1, skal det senest 2 uger efter overdragelsen registreres i Erhvervsstyrelsens it-system, at overdrageren ikke længere besidder aktierne, og datoen for overdragelsen skal registreres, jf. dog stk. 4.

*Stk. 4.* Stk. 1 og 3 finder ikke anvendelse, hvis der er tale om aktier i et selskab, som har aktier optaget til handel på et reguleret marked.

*Stk. 5.* Oplysninger, som er registreret i medfør af stk. 1 og 3, kan alene videregives til andre offentlige myndigheder. Videregivelsen af oplysningerne kan alene ske, hvis oplysningerne er nødvendige for den offentlige myndigheds varetagelse af tilsyns- eller kontrolopgaver og videregivelsen sker i overensstemmelse med lov om behandling af personoplysninger.

*Stk. 6.* Erhvervsstyrelsen fastsætter nærmere regler om registrering af ejeroplysninger om ihændehaveraktier i styrelsens it-system, herunder hvilke oplysninger erhververen eller overdrageren selv kan eller skal registrere i styrelsens it-system.

### Ejerregister

**§ 58.** [5)]Selskabet skal, hurtigst muligt efter at selskabet har modtaget meddelelse efter § 55, stk. 1, registrere oplysningerne i Erhvervsstyrelsens it-system.

*Stk. 2.* Selskabet skal endvidere hurtigst muligt indberette enhver ændring til de oplysninger, som er indberettet efter stk. 1, såfremt ændringen bevirker, at en af grænserne i § 55, stk. 1, nås eller ikke længere er nået.

*Stk. 3.* Oplysninger modtaget i henhold til stk. 1 og 2 offentliggøres i Erhvervsstyrelsens it-system. Reglerne i kapitel 2 om registrering finder tilsvarende anvendelse.

### Ejerbeviser

**§ 59.** Et ejerbevis kan omfatte en eller flere kapitalandele. Et ejerbevis, der omfatter flere kapitalandele, skal angive de enkelte kapitalandeles størrelse eller eventuelle pålydende værdi. Et ejerbevis, der omfatter en eller flere ihændehaveraktier, skal angive de enkelte ihændehaveraktiers løbenummer.

**§ 60.** Det centrale ledelsesorgan kan beslutte at udstede og annullere ejerbeviser. Der kan alene udstedes ejerbeviser, såfremt det er bestemt i vedtægterne, jf. dog § 64, stk. 1, eller hvor ejerbeviser er omsætningspapirer eller udstedt til ihændehaver, hvorefter der skal udstedes ejerbeviser for samtlige kapitalandele, medmindre ejerbeviser udstedes gennem en værdipapircentral, jf. § 7, stk. 1, nr. 3, i lov om værdipapirhandel m.v.

*Stk. 2.* Hvis der gælder indskrænkninger i aktiernes omsættelighed eller aktionærerne er forpligtede til at lade deres aktier indløse, kan aktiebreve dog ikke udstedes til ihændehaver, ligesom de ikke med virkning i forhold til aktieselskabet kan overdrages til ihændehaver.

*Stk. 3.* Ejerbeviser må ikke udleveres, før kapitaltegningen er registreret i Erhvervsstyrelsens it-system. Kapitalandele noteret på navn må kun udleveres til kapitalejere, der er noteret i ejerbogen.
*Stk. 4.* Ejerbeviser skal angive selskabets navn, hjemsted og registreringsnummer, kapitalandelenes størrelse eller pålydende værdi, og for ihændehaveraktier angives desuden løbenummer. Ejerbeviset skal endvidere angive, om ejerbeviset skal lyde på navn eller kan lyde på ihændehaver, samt ejerbevisets udstedelsesdag eller -måned. Ejerbeviser skal underskrives af det centrale ledelsesorgan. Underskriften kan dog gengives ad mekanisk vej.
*Stk. 5.* Såfremt der efter vedtægterne kan udstedes kapitalandele af forskellige klasser, skal ejerbeviset angive, til hvilken klasse det hører.
*Stk. 6.* Ejerbeviset skal endvidere angive de bestemmelser, vedtægterne måtte indeholde om

1)   at kapitalandelene skal noteres som betingelse for stemmeret,
2)   at der til nogle kapitalandele er knyttet særlige rettigheder,
3)   at kapitalejere skal være forpligtet til at lade deres kapitalandele indløse,
4)   at kapitalandelene ikke skal være omsætningspapirer,
5)   at der skal gælde indskrænkninger i kapitalandelenes omsættelighed, og
6)   at kapitalandele skal kunne mortificeres uden dom.

*Stk. 7.* Ejerbeviser skal indeholde et forbehold om, at der efter deres udstedelse kan være truffet bestemmelse vedrørende de forhold, der er nævnt i stk. 6, nr. 3-5, som ændrer kapitalejerens retsstilling. Foretages sådanne ændringer, skal det centrale ledelsesorgan så vidt muligt drage omsorg for, at ejerbeviserne får påtegning herom eller ombyttes med nye ejerbeviser.

## Aktier udstedt gennem værdipapircentral

**§ 61.** For aktier udstedt gennem en værdipapircentral skal kapitalselskabets centrale ledelsesorgan sikre, at centralen hurtigst muligt får oplysninger om følgende forhold og senere ændringer heri:

1)   Selskabets navn, hjemsted, postadresse og registreringsnummer i registeret for kapitalselskaber.
2)   Selskabets selskabskapital med angivelse af antal aktier og størrelsen af disse og for navneaktiers vedkommende tillige aktionærens navn og adresse. Hvis der er forskellige aktieklasser, gives oplysningerne for hver klasse.
3)   Om der til nogle aktier er knyttet særlige rettigheder eller forpligtelser.
4)   Om aktierne skal noteres som betingelse for stemmeret.

*Stk. 2.* Aktier kan ikke udstedes gennem en værdipapircentral, for selskabet er registreret i Erhvervsstyrelsens it-system.
*Stk. 3.* Ved kapitalforhøjelser skal det centrale ledelsesorgan sikre, at fortegningsrettigheder og rettigheder til fondsaktier registreres med angivelse af, hvor mange rettigheder der kræves til nye aktier. Ved nye aktier skal det angives, hvornår de får rettigheder i selskabet. Er kapitalforhøjelsen ikke registreret i registeret for kapitalselskaber, eller er en aktie endnu ikke fuldt indbetalt, skal det centrale ledelsesorgan foranledige dette registreret i en værdipapircentral.
*Stk. 4.* Det centrale ledelsesorgan skal sikre, at gennemførelsen af en kapitalnedsættelse og nedsættelsesbeløbets størrelse registreres i en værdipapircentral hurtigst muligt efter gennemførelsen.
*Stk. 5.* Erhvervsstyrelsen kan fastsætte nærmere regler om afgivelse af oplysninger efter stk. 1-4.
**§ 62.** Hvis et aktieselskabs aktier skal udstedes gennem en værdipapircentral, skal selskabet hurtigst muligt give en værdipapircentral de oplysninger, som er nævnt i § 61.
*Stk. 2.* Aktieselskabets eventuelle aktier skal indleveres til et kontoførende institut på den måde, der foreskrives i indkaldelsen fra

en værdipapircentral. Aktionæren og selskabet skal give de oplysninger, der foreskrives i indkaldelsen.
*Stk. 3.* Aktieselskabet afholder samtlige omkostninger forbundet med udstedelse af aktier m.v. i en værdipapircentral. Aktieselskabet skal indgå aftale med et eller flere kontoførende institutter om, at aktionærerne på aktieselskabets regning kan

1)   få deres aktier m.v. indskrevet og opbevaret der og
2)   få meddelelse om udbytte m.v. og årlig kontoudskrift.

*Stk. 4.* Aktionærerne har ret til selv at udpege et kontoførende institut, der på selskabets regning udfører de opgaver, som er nævnt i nr. 1 og 2, såfremt instituttet over for aktieselskabet påtager sig opgaverne for samme udgift, som aktieselskabet skulle have afholdt til det institut, selskabet har indgået aftale med.
**§ 63.** Er der forløbet 3 år, efter at selskabets aktier er blevet indkaldt til registrering i en værdipapircentral, uden at alle indkaldte aktier er blevet registreret i centralen, kan det centrale ledelsesorgan ved en bekendtgørelse i Erhvervsstyrelsens it-system opfordre aktionærer til inden for 6 måneder at sikre, at registrering sker. Når fristen er udløbet, uden at registrering er sket, kan det centrale ledelsesorgan for aktionærens regning afhænde aktierne gennem en værdipapirhandler, jf. § 4, stk. 1, i lov om værdipapirhandel m.v. I salgsprovenuet kan aktieselskabet fradrage omkostningerne ved bekendtgørelsen og afhændelsen. Er salgsprovenuet ikke afhentet senest 3 år efter afhændelsen, tilfalder beløbet aktieselskabet.

## Annullering af ejerbeviser

**§ 64.** Er et selskabs kapitalandele optaget til handel på et reguleret marked kan aktionærerne ikke forlange, at der udstedes aktiebreve.
*Stk. 2.* Har kapitalselskabet udstedt ejerbeviser, kan selskabet inddrage disse til annullering med en frist på mindst 3 måneder efter de regler, der i henhold til loven og selskabets vedtægter gælder for indkaldelse til selskabets ordinære generalforsamling, samt ved skriftlig meddelelse til alle kapitalejere, som er noteret i ejerbogen. De rettigheder, der tilkommer en kapitalejer, kan herefter først udøves, når ejerbeviset er afleveret til kapitalselskabet. Dette gælder dog ikke retten til udbytte og andre udbetalinger og retten til nye kapitalandele ved kapitalforhøjelse.
*Stk. 3.* Stk. 1 finder ikke anvendelse på kapitalandele, der er omsætningspapirer eller udstedt til ihændehaver.

## Overdragelse af kapitalandele

**§ 65.** Overdragelse af en kapitalandel, der ikke er udstedt gennem en værdipapircentral, eller for hvilken der ikke er udstedt ejerbevis til eje eller pant, har ikke gyldighed mod overdragerens kreditorer, medmindre kapitalselskabet eller den, der fører ejerbogen, jf. § 50, stk. 3, fra overdrageren eller erhververen har modtaget underretning om overdragelsen.
*Stk. 2.* Har en kapitalejer overdraget samme kapitalandel til flere erhververe, og er en kapitalandels omfattet af stk. 1, går en senere erhverver forud, når kapitalselskabet eller føreren af ejerbogen, jf. § 50, stk. 3, først har modtaget underretning om overdragelsen til den senere erhverver og den senere ejer var i god tro, da underretningen kom frem til kapitalselskabet eller føreren af ejerbogen.
**§ 66.** Overdrages et ejerbevis til eje eller pant, finder bestemmelserne i § 14, stk. 1 og 2, i lov om gældsbreve tilsvarende anvendelse. Dette gælder dog ikke, hvis der i henhold til en bestemmelse i kapitalselskabets vedtægter er taget utvetydigt og klart forbehold i ejerbeviset, f.eks. lydende på, at det ikke er et omsætningspapir. Et aktiebrev, som er udstedt til ihændehaveren, vedbliver, selv om det forsynes med aktieselskabets påtegning om, at ejerens navn er noteret, at være et ihændehaverpapir, dersom navnet ikke er påført aktiebrevet.

Copyright © 2015 Karnov Group Denmark A/S

*Stk. 2.* På udbyttekuponer finder bestemmelserne i §§ 24 og 25 i lov om gældsbreve anvendelse.

*Stk. 3.* Mortifikation af ejerbeviser uden dom kan kun ske, såfremt kapitalselskabets vedtægter og ejerbeviset indeholder bestemmelse herom. Mortifikationsindkaldelse skal indrykkes i Erhvervsstyrelsens it-system med følgende varsel:

1)  Mindst 4 uger ved mortifikation af ejerbeviser, der ikke er omsætningspapirer, og

2)  mindst 6 måneder ved mortifikation af andre ejerbeviser.

*Stk. 4.* Bestemmelserne i stk. 3 finder tilsvarende anvendelse på kuponer og talloner. Kuponark kan mortificeres uden dom sammen med de tilhørende ejerbeviser, såfremt vedtægterne ikke bestemmer andet.

## Kapitel 5. *Omsættelighedsbegrænsninger og indløsning*

### Forkøbsret

**§ 67.** Bestemmer vedtægterne, at der i tilfælde af overgang af kapitalandele skal tilkomme kapitalejere eller andre forkøbsret, skal vedtægterne indeholde nærmere regler herom, herunder om fristen for udøvelse af forkøbsretten. Hvis disse vedtægtsbestemmelser fører til en åbenbart urimelig pris eller åbenbart urimelige vilkår i øvrigt, kan bestemmelserne helt eller delvis tilsidesættes ved dom.

*Stk. 2.* Til brug for hovedforhandlingen, jf. stk. 1, 2. pkt., kan parterne anvende reglerne om udmeldelse af skønsmand i stk. 3 både til vurderingen af, om prisen forekommer åbenbart urimelig, og for at fastlægge prisen.

*Stk. 3.* Hvis vedtægterne ikke indeholder bestemmelser om beregningsgrundlaget for prisen ved udnyttelse af en forkøbsret, skal prisen, hvis der ikke opnås enighed om denne, fastsættes til kapitalandelenes værdi af en skønsmand udmeldt af retten på kapitalselskabets hjemsted. Skønsmandens afgørelse kan indbringes for retten. Sag herom skal være anlagt senest 3 måneder efter modtagelsen af skønsmandens erklæring. Omkostningerne til skønsmanden bæres af den kapitalejer, som ønsker skønsmandsvurdering foretaget, men kan pålægges selskabet, hvis skønsmandens vurdering afviger væsentligt fra prisen og lægges til grund enten helt eller delvis.

*Stk. 4.* Omfatter overdragelsen af kapitalandele flere kapitalandele, kan forkøbsretten ikke udøves for en del af disse, medmindre vedtægterne giver ret hertil.

### Samtykke til salg

**§ 68.** Indeholder vedtægterne bestemmelser om samtykke til overgang af kapitalandele, skal afgørelse herom træffes snarest muligt efter anmodningens modtagelse. Den, som har anmodet om samtykke, skal hurtigst muligt underrettes om afgørelsen. Er underretningen ikke givet, senest 4 uger fra anmodningen modtages, anses samtykke for givet.

*Stk. 2.* Er det i vedtægterne bestemt, at overgang af kapitalandele kun kan ske med samtykke fra kapitalselskabet, træffer selskabets centrale ledelsesorgan afgørelse herom, medmindre afgørelsen er henlagt til generalforsamlingen. Såfremt der ikke gives samtykke, skal begrundelsen herfor fremgå af underretningen, jf. stk. 1.

### Indløsning

**§ 69.** Hvis der i vedtægterne er bestemmelser om indløsning, skal disse bestemmelser oplyse betingelserne for indløsningen, og hvem der har ret til at forlange indløsning. § 67 finder tilsvarende anvendelse. Der skal ske en samlet indløsning af den enkelte kapitalejers kapitalandele, medmindre vedtægterne bestemmer andet.

**§ 70.** Ejer en kapitalejer mere end 9/10 af kapitalandelene i et kapitalselskab, og har ejeren en tilsvarende del af stemmerne, kan den pågældende kapitalejer bestemme, at de øvrige minoritetskapitalejere i kapitalselskabet skal lade deres kapitalandele indløse af den pågældende kapitalejer. I så fald skal de pågældende minoritetskapitalejere efter reglerne for indkaldelse til generalforsamling opfordres til senest 4 uger efter opfordringen at overdrage deres kapitalandele til den indløsende kapitalejer. Minoritetskapitalejerne skal endvidere ved bekendtgørelse i Erhvervsstyrelsens it-system med samme varsel opfordres til at overdrage kapitalandelene til den indløsende kapitalejer.

*Stk. 2.* Vilkårene for indløsningen og vurderingsgrundlaget for indløsningskursen skal oplyses i opfordringen. Desuden skal det oplyses, at indløsningskursen, hvis der ikke kan opnås enighed om denne, fastsættes efter reglerne i § 67, stk. 3, af en skønsmand udmeldt af retten på kapitalselskabets hjemsted. Er der tale om indløsning i forbindelse med et gennemført overtagelsestilbud efter kapitel 8 i lov om værdipapirhandel m.v., finder reglerne heri om prisfastsættelse anvendelse ved indløsningen, medmindre en minoritetskapitalejer over for den indløsende kapitalejer fremsætter anmodning om, at prisen skal fastsættes af en skønsmand, jf. dog stk. 4. Endvidere skal opfordringen indeholde den oplysning, som er omhandlet i stk. 3, 1. pkt. Derudover skal opfordringen indeholde en udtalelse fra kapitalselskabets centrale ledelsesorgan om de samlede betingelser for indløsningen. Endelig skal det meddeles, at kapitalandelene efter udløbet af fristen i stk. 1, 2. pkt., vil blive noteret i den indløsende kapitalejers navn i kapitalselskabets ejerbog i overensstemmelse med § 72, stk. 1 og 2. De tidligere nu indløste minoritetskapitalejere opretholder dog retten til at forlange vurdering ved skønsmand, jf. § 72, stk. 3. De samme oplysninger skal fremgå af bekendtgørelsen i henhold til stk. 1, 3. pkt.

*Stk. 3.* Hvis skønsmandens vurdering eller en afgørelse efter § 67, stk. 3, fører til en højere indløsningskurs end tilbudt af den indløsende kapitalejer, har denne også gyldighed for de minoritetskapitalejere i samme klasse, der ikke har ønsket vurdering. Omkostningerne ved kursfastsættelsen afholdes af den, der har fremsat anmodning om kursfastsættelsen. Medfører en vurdering eller afgørelse en højere indløsningskurs end tilbudt af den indløsende kapitalejer, kan retten, der har udmeldt skønsmanden, pålægge den indløsende kapitalejer helt eller delvis at afholde omkostningerne.

*Stk. 4.* Er der tale om indløsning i forlængelse af et frivilligt tilbud, anses prisen under alle omstændigheder for rimelig, hvis tilbudsgiveren ved accept af tilbuddet har erhvervet mindst 90 pct. af den stemmeberettigede kapital, som var omfattet af tilbuddet. Er der tale om indløsning efter et pligtmæssigt tilbud, betragtes modydelsen i tilbuddet under alle omstændigheder som rimelig.

**§ 71.** Medfører en erhvervelse af aktier i et kapitalselskab, der har en eller flere aktier optaget til handel på et reguleret marked i et EU/EØS-land, indløsning efter § 70, stk. 1, eller tilbudspligt efter § 31, stk. 1, i lov om værdipapirhandel m.v., anvendes reglerne om prisfastsættelse, som er fastsat i medfør af lov om værdipapirhandel m.v., medmindre en minoritetskapitalejer fremsætter anmodning om, at prisen skal fastsættes af en skønsmand, jf. § 67, stk. 3.

*Stk. 2.* Er der tale om indløsning i forbindelse med et gennemført overtagelsestilbud, jf. § 70, stk. 2, 3. pkt., kan modydelsen ved indløsning være i samme form som angivet i tilbudsgiverens oprindelige overtagelsestilbud, eller den kan erlægges kontant. Minoritetskapitalejere kan altid forlange kontantbetaling som modydelse ved indløsning.

*Stk. 3.* Anmodning om indløsning i forbindelse med et gennemført overtagelsestilbud, jf. § 70, stk. 2, 3. pkt., skal fremsættes senest 3

måneder efter udløbet af tilbudsperioden i tilbudsgiverens overtagelsestilbud.

*Stk. 4.* Erhvervsstyrelsen fastsætter regler om tilbudsgiveres indløsning af de øvrige kapitalejere, herunder hvordan aktieerhvervelserne skal opgøres i forbindelse med og gennemført overtagelsestilbud, jf. § 70, stk. 2, 3. pkt.

**§ 72.** Har alle minoritetskapitalejere ikke inden for den frist, som er fastsat i § 70, stk. 1, 2. pkt., overdraget deres kapitalandele til den indløsende kapitalejer, skal den indløsende kapitalejer hurtigst muligt til fordel for de pågældende minoritetskapitalejere uden forbehold deponere indløsningssummen, der modsvarer de ikke overdragne kapitalandele, jf. lov om skyldneres ret til at frigøre sig ved deponering.

*Stk. 2.* Samtidig med deponeringen anses eventuelle ejerbeviser, der er udstedt for indløste kapitalandele, for annullerede. Selskabets centrale ledelsesorgan drager omsorg for, at nye ejerbeviser får påtegning om, at de erstatter annullerede ejerbeviser.

*Stk. 3.* De tidligere nu indløste kapitalejere skal ved ny bekendtgørelse i Erhvervsstyrelsens it-system med et varsel på mindst 3 måneder gøres bekendt med, at retten til at forlange vurdering ved skønsmand, jf. § 67, stk. 1, fortabes ved fristens udløb. Endvidere skal datoen for en eventuel skønsmandsvurdering eller dom efter § 67, stk. 3, oplyses.

**§ 73.** Ejer en kapitalejer mere end 9/10 af kapitalandelene i et selskab, og har kapitalejeren en tilsvarende del af stemmerne, kan hver enkelt af selskabets minoritetskapitalejere fordre sig indløst af kapitalejeren. § 67, stk. 3, samt § 70, stk. 2, 2. pkt., og stk. 3, 2. og 3. pkt., finder tilsvarende anvendelse.

### Amortisation

**§ 74.** I kapitalselskabets vedtægter kan optages bestemmelser om nedsættelse af selskabskapitalen ved indløsning af kapitalandele (amortisation), herunder bestemmelser om amortisationens forløb.
*Stk. 2.* Der kan ske vederlæggelse af kapitalejerne, jf. stk. 1, ved udstedelse af obligationer, såfremt der er optaget bestemmelser herom i vedtægterne.

*Stk. 3.* Det centrale ledelsesorgan kan iværksætte amortisation, for så vidt angår kapitalandele, som er tegnet, efter at bestemmelserne om nedsættelse af selskabskapitalen ved amortisation er optaget i vedtægterne. Vedtægtsændringer som følge af amortisationens gennemførelse kan vedtages af det centrale ledelsesorgan.

*Stk. 4.* Ved kapitalnedsættelse som led i amortisation skal der ikke ske offentliggørelse af opfordring til kapitalselskabets kreditorer om at anmelde deres krav til selskabet i Erhvervsstyrelsens it-system, hvis følgende betingelser er opfyldt:

1) Nedsættelsen sker ved annullation af fuldt indbetalte kapitalandele.

2) Kapitalandelene enten er erhvervet uden vederlag eller for et vederlag, der ikke overstiger det beløb, der kan anvendes til udbytte, herunder ved udstedelse af obligationer.

3) Et beløb svarende til de annullerede kapitalandeles pålydende værdi henlægges til en særlig fond.

**§ 75.** (Ophævet)

# Kapitel 6. *Generalforsamling*

## Kapitalejernes beslutningsret

**§ 76.** Kapitalejernes ret til at træffe beslutninger i kapitalselskabet udøves på generalforsamlingen.
*Stk. 2.* Kapitalejernes beslutninger på generalforsamlingen kan konkret træffes under fravigelse af lovens og vedtægternes form-

og fristkrav, hvis samtlige kapitalejere er enige herom, jf. dog stk. 5.

*Stk. 3.* Kapitalejernes beslutninger på generalforsamlingen kan generelt træffes under fravigelse af lovens regler om form og frist, jf. dog stk. 5. Beslutning herom skal træffes enstemmigt, og regler herom skal optages i vedtægterne. § 106 finder anvendelse på en ændring eller ophævelse af reglerne. Generalforsamlingen skal dog afholdes ved fysisk fremmøde, hvis kapitalejere, der ejer mere end 10 pct. af selskabets kapital, fremsætter krav herom.

*Stk. 4.* Det centrale ledelsesorgan kan bestemme, at andre end de personer, som er opregnet i denne lov, kan overvære generalforsamlingen, medmindre andet er bestemt i vedtægterne.

*Stk. 5.* Kapitalejerne i statslige aktieselskaber og i aktieselskaber, som har aktier optaget til handel på et reguleret marked i et EU-eller EØS-land, kan ikke træffe beslutninger under fravigelse af lovens regler om form og frist, jf. stk. 2 og 3. Det samme gælder for aktieselskaber, hvor det ved lov eller bekendtgørelse er fastsat, at pressen skal have adgang til generalforsamlingen.

*Stk. 6.* Statslige aktieselskabers generalforsamlinger er åbne for pressen.

### Elektronisk generalforsamling

**§ 77.** Medmindre vedtægterne bestemmer andet, kan det centrale ledelsesorgan beslutte, at der som supplement til fysisk fremmøde på generalforsamlingen gives adgang til, at kapitalejerne kan deltage elektronisk i generalforsamlingen, herunder stemme elektronisk, uden at være fysisk til stede på generalforsamlingen, det vil sige, at der afholdes en delvis elektronisk generalforsamling, jf. stk. 3-6.

*Stk. 2.* Generalforsamlingen kan beslutte, at generalforsamlingen alene afholdes elektronisk uden adgang til fysisk fremmøde, dvs. som en fuldstændig elektronisk generalforsamling, jf. stk. 3-6. Beslutningen skal indeholde oplysning om, hvordan elektroniske medier anvendes i forbindelse med deltagelse i generalforsamlingen. Beslutningen skal optages i vedtægterne. § 106 finder anvendelse på beslutningen samt på ændring heri.

*Stk. 3.* Det centrale ledelsesorgan fastsætter de nærmere krav til de elektroniske systemer, som anvendes ved en delvis eller fuldstændig elektronisk generalforsamling. Indkaldelsen til generalforsamling skal indeholde oplysning herom, ligesom det skal fremgå af indkaldelsen, hvordan kapitalejerne tilmelder sig til elektronisk deltagelse, og hvor de kan finde oplysning om fremgangsmåden i forbindelse med elektronisk deltagelse i generalforsamlingen.

*Stk. 4.* Det er en forudsætning for afholdelse af såvel delvis som fuldstændig elektronisk generalforsamling, at kapitalselskabets centrale ledelsesorgan drager omsorg for, at generalforsamlingen afvikles på betryggende vis. Det anvendte system skal være indrettet på en sådan måde, at lovens krav til afholdelse af generalforsamling opfyldes, herunder kapitalejernes adgang til at deltage i samt ytre sig og stemme på generalforsamlingen. Det anvendte system skal tillige på pålidelig måde kunne fastslå, hvilke kapitalejere der deltager i generalforsamlingen, hvilken kapital og stemmeret de repræsenterer, samt resultatet af afstemningerne.

*Stk. 5.* Har et aktieselskab udstedt ihændehaveraktier og ikke indført en registreringsdato, jf. § 84, må det ligeledes angives i indkaldelsen, jf. stk. 3, hvordan ejerne af sådanne aktier skal dokumentere deres adkomst til at kunne deltage elektronisk i generalforsamlingen.

*Stk. 6.* I øvrigt finder lovens bestemmelser om afholdelse af generalforsamling med de fornødne afvigelser tilsvarende anvendelse på delvis og fuldstændig elektronisk generalforsamling.

## Møde- og stemmeret m.v.

**§ 78.** Enhver kapitalejer har ret til at møde på generalforsamlingen og tage ordet der, jf. dog § 84, stk. 1.

**§ 79.** Ejes en kapitalandel af flere i forening, kan de til kapitalandelen knyttede rettigheder over for kapitalselskabet kun udøves gennem en fælles fuldmægtig.

**§ 80.** Kapitalejere har ret til at møde på generalforsamlingen ved fuldmægtig.

*Stk. 2.* Fuldmægtigen skal fremlægge skriftlig og dateret fuldmagt. En fuldmagt skal kunne tilbagekaldes til enhver tid. Tilbagekaldelsen skal ske skriftligt og kan ske ved henvendelse til kapitalselskabet. Kapitalejere kan udpege en fuldmægtig og tilbagekalde fuldmagten ad elektronisk vej.

*Stk. 3.* Har fuldmægtigen modtaget fuldmagter fra flere kapitalejere, kan fuldmægtigen stemme forskelligt på vegne af de forskellige kapitalejere.

*Stk. 4.* Et aktieselskab, som har aktier optaget til handel på et reguleret marked, skal stille en skriftlig eller elektronisk fuldmagtsblanket til rådighed for enhver aktionær, der er berettiget til at stemme på generalforsamlingen, og der skal tilbydes aktionærerne mindst én metode til underretning af aktieselskabet om udpegningen af en fuldmægtig ad elektronisk vej. Udpegningen af en fuldmægtig, underretningen af aktieselskabet om udpegningen og udstedelsen af eventuelle stemmeinstrukser til fuldmægtigen må kun være underlagt de formelle krav, der er nødvendige for at sikre identifikation af aktionæren og fuldmægtigen samt sikre, at indholdet af stemmeinstrukserne verificeres, og kun i et omfang, hvor de står i et rimeligt forhold til disse mål. Tilsvarende gælder for tilbagekaldelse af fuldmagt.

**§ 81.** Kapitalejere eller fuldmægtige kan møde på generalforsamlingen sammen med en rådgiver.

**§ 82.** Ejeraftaler er ikke bindende for kapitalselskabet og de beslutninger, der træffes af generalforsamlingen.

**§ 83.** Har et aktieselskab, som har aktier optaget til handel på et reguleret marked, udpeget en pengeinstitut, hvorigennem aktionærerne kan udøve deres finansielle rettigheder, skal aktionærerne gøres bekendt med dette.

**§ 84.** I aktieselskaber, som har aktier optaget til handel på et reguleret marked, fastsættes en aktionærs ret til at deltage i en generalforsamling og afgive stemme i tilknytning til aktionærens aktier i forhold til de aktier, aktionæren besidder på registreringsdatoen.

*Stk. 2.* En aktionærs aktiebesiddelse og stemmerettighed opgøres på registreringsdatoen på baggrund af notering af de kapitalejerforhold, der er registreret i ejerbogen, samt de meddelelser om ejerforhold, som aktieselskabet har modtaget med henblik på indførsel i ejerbogen.

*Stk. 3.* Registreringsdatoen ligger 1 uge før generalforsamlingens afholdelse.

*Stk. 4.* Vedtægterne kan bestemme, at en aktionærs deltagelse i en generalforsamling senest 3 dage før generalforsamlingens afholdelse skal være anmeldt til aktieselskabet. Anmeldelsen af deltagelse er ikke til hinder for, at aktionæren, efter at anmeldelse har fundet sted, beslutter at lade sig repræsentere ved fuldmægtig.

*Stk. 5.* I aktieselskaber som ikke har aktier optaget til handel på et reguleret marked, og i anpartsselskaber kan vedtægterne bestemme følgende:

1)  Stk. 1-3 finder tilsvarende anvendelse.
2)  Stk. 4 finder tilsvarende anvendelse.

**§ 85.** For kapitalselskabets egne kapitalandele samt for et datterskabs kapitalandele i moderselskabet kan stemmeret ikke udøves. Egne kapitalandele og datterselskabers kapitalandele i moderselska-

bet medregnes ikke ved opgørelse af stemme- og ejerandele. 2. pkt. gælder dog ikke ved opgørelse af kapital- og stemmeandele efter § 55.

**§ 86.** En kapitalejer må ikke selv, ved fuldmægtig eller som fuldmægtig for andre deltage i afstemning på generalforsamlingen om søgsmål mod kapitalejeren selv eller om kapitalejerens eget ansvar over for kapitalselskabet og heller ikke om søgsmål mod andre eller andres ansvar, hvis kapitalejeren har en væsentlig interesse deri, der kan være stridende mod kapitalselskabets.

## Tidspunkt og sted

**§ 87.** Generalforsamling skal afholdes på kapitalselskabets hjemsted, medmindre vedtægterne bestemmer, at den skal eller kan afholdes på andet nærmere angivet sted. Er det under særlige omstændigheder nødvendigt, kan generalforsamling i enkeltstående tilfælde afholdes andetsteds.

**§ 88.** På den ordinære generalforsamling skal der træffes afgørelse om

1)  godkendelse af årsrapporten,
2)  anvendelse af overskud eller dækning af underskud i henhold til den godkendte årsrapport,
3)  eventuel ændring af beslutning om revision af kapitalselskabets kommende årsregnskaber m.v., hvis kapitalselskabet ikke er omfattet af revisionspligten efter årsregnskabsloven eller anden lovgivning, og
4)  andre spørgsmål, som efter kapitalselskabets vedtægter er henlagt til generalforsamlingen.

*Stk. 2.* Ordinær generalforsamling skal afholdes i så god tid, at den godkendte årsrapport kan indsendes til Erhvervsstyrelsen, så den er modtaget i styrelsen inden udløbet af fristen i årsregnskabsloven. På generalforsamlingen skal den udarbejdede årsrapport fremlægges.

## Ekstraordinær generalforsamling

**§ 89.** Ekstraordinær generalforsamling skal afholdes, når det centrale ledelsesorgan, tilsynsrådet eller den generalforsamlingsvalgte revisor har forlangt det.

*Stk. 2.* I anpartsselskaber kan enhver anpartshaver forlange, at der afholdes en ekstraordinær generalforsamling. Ekstraordinær generalforsamling til behandling af et bestemt angivet emne indkaldes, senest 2 uger efter at det er forlangt.

*Stk. 3.* I aktieselskaber kan aktionærer, der ejer 5 pct. af selskabets kapital eller den mindre brøkdel, som vedtægterne måtte bestemme, eller som er tillagt ret hertil i vedtægterne, skriftligt forlange, at der afholdes en ekstraordinær generalforsamling. Ekstraordinær generalforsamling til behandling af et bestemt angivet emne indkaldes, senest 2 uger efter at det er forlangt.

## Dagsorden

**§ 90.** Enhver kapitalejer har ret til at få et bestemt emne optaget på dagsordenen til den ordinære generalforsamling, jf. dog stk. 2.

*Stk. 2.* I aktieselskaber skal aktionærer skriftligt over for det centrale ledelsesorgan fremsætte krav om optagelse af et bestemt emne på dagsordenen til den ordinære generalforsamling. Fremsættes kravet, senest 6 uger før generalforsamlingen skal afholdes, har aktionæren ret til at få emnet optaget på dagsordenen. Modtager et aktieselskab kravet senere end 6 uger før generalforsamlingens afholdelse, afgør det centrale ledelsesorgan, om kravet er fremsat i så god tid, at emnet kan optages på dagsordenen.

*Stk. 3.* Aktieselskaber, som har aktier optaget til handel på et reguleret marked, skal senest 8 uger før dagen for den påtænkte afholdelse af den ordinære generalforsamling offentliggøre datoen for

den påtænkte afholdelse af generalforsamlingen samt datoen for den seneste fremsættelse af krav om optagelse af et bestemt emne på dagsordenen for aktionærerne, medmindre begge tidspunkter fremgår af vedtægterne.

**§ 91.** Sager, der ikke er sat på dagsordenen, kan kun afgøres af generalforsamlingen, hvis samtlige kapitalejere samtykker. Den ordinære generalforsamling kan dog altid træffe afgørelse om sager, jf. § 88, stk. 1, og afgøre sager, som efter vedtægterne skal behandles på en sådan generalforsamling, ligesom det kan besluttes at indkalde en ekstraordinær generalforsamling til behandling af et bestemt emne.

### Elektronisk kommunikation

**§ 92.** Generalforsamlingen kan træffe beslutning om elektronisk kommunikation, dvs. om anvendelse af elektronisk dokumentudveksling samt elektronisk post i kommunikationen mellem kapitalselskabet og kapitalejerne i stedet for fremsendelse eller fremlæggelse af papirbaserede dokumenter i henhold til denne lov, jf. stk. 2 og 3. Elektronisk kommunikation kan således anvendes mellem kapitalselskabet og kapitalejerne uanset eventuelle formkrav, som måtte være anført i bestemmelserne vedrørende de pågældende dokumenter og meddelelser, jf. dog stk. 5 og § 8 c.

*Stk. 2.* Af beslutningen efter stk. 1 skal det fremgå, hvilke meddelelser m.v. der er omfattet af beslutningen, og på hvilken måde elektronisk kommunikation skal eller kan anvendes. Af beslutningen skal det tillige fremgå, hvor kapitalejeren kan finde oplysning om kravene til de anvendte systemer samt om fremgangsmåden i forbindelse med elektronisk kommunikation.

*Stk. 3.* Generalforsamlingens beslutning efter stk. 1 og 2 skal optages i vedtægterne, jf. dog stk. 4. § 106 finder anvendelse på beslutningen samt på ændringer heri.

*Stk. 4.* Selv om generalforsamlingen ikke har besluttet at indføre elektronisk kommunikation mellem kapitalselskabet og kapitalejerne efter stk. 1, kan kommunikationen foregå elektronisk mellem kapitalselskabet og en eller flere kapitalejere, hvis der mellem de pågældende er indgået aftale herom.

*Stk. 5.* Den i stk. 1 nævnte adgang til at anvende elektronisk kommunikation kan ikke træde i stedet for offentlig indkaldelse eller bekendtgørelse i Statstidende eller via Erhvervsstyrelsens it-system, hvor det ved lov er foreskrevet, at kapitalselskabets meddelelser m.v. til kapitalejere skal ske ved offentlig indkaldelse eller bekendtgørelse i Statstidende eller via Erhvervsstyrelsens it-system. Dette gælder ikke i det tilfælde, der er nævnt i § 95, stk. 3, 2. pkt.

*Stk. 6.* I den i stk. 1 og 4 nævnte situation skal kapitalselskaber anmode kapitalejere, der er navnenoteret i ejerbogen, om en elektronisk adresse, hvortil meddelelser m.v. kan sendes. Det er kapitalejerens ansvar at sikre, at kapitalselskabet er i besiddelse af den korrekte elektroniske adresse. Kapitalselskabet afholder sine egne udgifter ved elektronisk kommunikation.

### Indkaldelse til generalforsamling

**§ 93.** Generalforsamlinger indkaldes og tilrettelægges af det centrale ledelsesorgan.

*Stk. 2.* Har kapitalselskabet ikke et centralt ledelsesorgan, eller undlader det centrale ledelsesorgan at indkalde en generalforsamling, som skal afholdes efter loven, vedtægterne eller en generalforsamlingsbeslutning, indkaldes denne af Erhvervsstyrelsen efter anmodning fra et medlem af kapitalselskabets øverste eller centrale ledelsesorgan, kapitalselskabets eventuelle generalforsamlingsvalgte revisor, jf. § 144, stk. 1, eller en kapitalejer. Styrelsen kan fastsætte generalforsamlingens dagsorden.

*Stk. 3.* En generalforsamling, som er indkaldt af Erhvervsstyrelsen, ledes af en person, som styrelsen har bemyndiget dertil, og det

centrale ledelsesorgan skal udlevere denne kapitalselskabets ejerbog, generalforsamlingsprotokol og revisionsprotokol, hvis der i henhold til lov om godkendte revisorer eller anden lovgivning er krav om at føre en sådan, eller hvis revisor i øvrigt efter aftale med kapitalselskabet har ført en revisionsprotokol. Udgifterne ved generalforsamlingen udlægges af Erhvervsstyrelsen, men afholdes endeligt af kapitalselskabet.

*Stk. 4.* Uanset bestemmelserne i § 77 kan Erhvervsstyrelsen beslutte, at en generalforsamling, der er indkaldt af styrelsen i henhold til stk. 2, alene skal afholdes ved fysisk fremmøde eller som delvis eller fuldstændig elektronisk generalforsamling, og uanset bestemmelserne i § 87, at den skal afholdes i styrelsens hjemstedskommune.

**§ 94.** Indkaldelse til generalforsamling skal foretages tidligst 4 uger og, medmindre vedtægterne foreskriver en længere frist, senest 2 uger før generalforsamlingen. Udsættes generalforsamlingen til en dag, som falder mere end 4 uger senere, skal der finde indkaldelse sted til den fortsatte generalforsamling.

*Stk. 2.* For aktieselskaber, som har aktier optaget til handel på et reguleret marked, skal indkaldelse til generalforsamling foretages tidligst 5 uger og, medmindre vedtægterne foreskriver en længere frist, senest 3 uger før generalforsamlingen, jf. dog § 339, stk. 4, og § 343.

**§ 95.** Indkaldelsen skal ske i overensstemmelse med vedtægternes bestemmelser.

*Stk. 2.* Generalforsamlingen kan beslutte, at indkaldelse sker via kapitalselskabets hjemmeside, jf. dog stk. 3. Beslutningen skal optages i vedtægterne. § 106 finder anvendelse på beslutningen samt ændringer heri.

*Stk. 3.* I aktieselskaber skal indkaldelse ske skriftligt til alle i ejerbogen noterede aktionærer, som har fremsat begæring herom. Kan aktieselskabets aktier lyde på ihændehaveren, skal indkaldelsen ske via Erhvervsstyrelsens it-system.

*Stk. 4.* Uanset om der tillige sker indkaldelse på anden måde, skal indkaldelsen i aktieselskaber, som har aktier optaget til handel på et reguleret marked, offentliggøres via aktieselskabets hjemmeside. Omkostningerne hertil afholdes af aktieselskabet.

**§ 96.** I indkaldelsen skal angives tid og sted for generalforsamlingen samt dagsorden, hvoraf det fremgår, hvilke anliggender der skal behandles på generalforsamlingen. Såfremt forslag til vedtægtsændringer skal behandles på generalforsamlingen, skal forslagets væsentligste indhold angives i indkaldelsen.

*Stk. 2.* Indkaldelse til generalforsamlingen, hvor der skal træffes beslutning efter § 77, stk. 2, § 92, stk. 1, eller § 107, stk. 1 eller 2, skal indeholde den fulde ordlyd af forslaget til vedtægtsændringer.

**§ 97.** I aktieselskaber, som har aktier optaget til handel på et reguleret marked, skal indkaldelsen udover oplysningerne i § 96 mindst indeholde:

1)  En beskrivelse af aktiekapitalens størrelse og aktionærernes stemmeret,

2)  en tydelig og nøjagtig beskrivelse af de procedurer, som aktionærerne skal overholde for at kunne deltage i og afgive deres stemme på generalforsamlingen, jf. stk. 2,

3)  registreringsdatoen, jf. § 84, stk. 1, med en tydeliggørelse af, at kun personer, der på denne dato er aktionærer, har ret til at deltage i og stemme på generalforsamlingen,

4)  angivelse af, hvor og hvordan den komplette, uforkortede tekst til de dokumenter, der er nævnt i § 99, stk. 1, nr. 3 og 4, og dagsordenen kan fås og

5)  angivelse af den internetadresse, hvor de oplysninger, der er nævnt i § 99, vil blive gjort tilgængelige.

*Stk. 2.* En tydelig og nøjagtig beskrivelse af de procedurer, som aktionærerne skal overholde for at kunne deltage i og afgive deres stemme på generalforsamlingen, jf. stk. 1, nr. 2, omfatter

1) aktionærernes ret til at stille spørgsmål, herunder en eventuel frist, jf. § 102, stk. 3,
2) proceduren for stemmeafgivelse ved fuldmagt, navnlig de formularer, der skal anvendes ved stemmeafgivelse ved fuldmagt, og en angivelse af, hvilke kommunikationsmidler kapitalselskabet accepterer i forbindelse med elektronisk meddelelse om udpegelse af fuldmægtige og
3) procedurerne for stemmeafgivelse per brev eller ad elektronisk vej.

*Stk. 3.* I statslige aktieselskaber skal indkaldelsen indeholde samtlige forslag, der skal behandles på generalforsamlingen, og i forbindelse med ekstraordinære generalforsamlinger tillige årsagen hertil. Indkaldelsen skal offentliggøres i Erhvervsstyrelsens it-system, senest samtidig med at den bekendtgøres for aktionærerne.

**§ 98.** I aktieselskaber skal dagsordenen og de fuldstændige forslag samt for den ordinære generalforsamlings vedkommende tillige årsrapporten gøres tilgængelige til eftersyn for aktionærerne senest 2 uger før generalforsamlingen, jf. dog § 99.

**§ 99.** Et aktieselskab, som har aktier optaget til handel på et reguleret marked, skal i en sammenhængende periode på 3 uger begyndende senest 3 uger før generalforsamlingen inklusive dagen for dennes afholdelse mindst gøre følgende oplysninger tilgængelige for sine aktionærer på sin hjemmeside:

1) Indkaldelsen.
2) Det samlede antal aktier og stemmerettigheder på datoen for indkaldelsen, herunder det samlede antal for hver aktieklasse, hvis selskabets aktiekapital er opdelt i to eller flere aktieklasser.
3) De dokumenter, der skal fremlægges på generalforsamlingen.
4) Dagsordenen og de fuldstændige forslag.
5) I givet fald de formularer, der skal anvendes ved stemmeafgivelse ved fuldmagt og ved stemmeafgivelse per brev, medmindre disse formularer sendes direkte til aktionærerne. Kan disse formularer af tekniske årsager ikke gøres tilgængelige på internettet, oplyser kapitalselskabet på sin hjemmeside, hvordan formularerne kan fås i papirform. I sådanne tilfælde sender kapitalselskabet formularerne til enhver aktionær, der ønsker det. Omkostningerne hertil afholdes af aktieselskabet.

*Stk. 2.* Udsendes indkaldelsen til generalforsamlingen i medfør af § 339, stk. 4, og § 343 senere end 3 uger før datoen for generalforsamlingen, afkortes fristen i stk. 1 tilsvarende.

## Generalforsamlingens afholdelse

**§ 100.** Generalforsamlingen afholdes på dansk, jf. dog stk. 2-4.
*Stk. 2.* Generalforsamlingen kan med simpelt flertal beslutte, at generalforsamlingen skal afholdes på et andet sprog end dansk, samtidig med at der skal gives mulighed for simultantolkning til og fra dansk for samtlige deltagere. Beslutningen kan optages i vedtægterne, uden at det kræver særskilt vedtagelse på generalforsamlingen.
*Stk. 3.* Generalforsamlingen kan med simpelt flertal beslutte, at generalforsamlingen skal afholdes på svensk, norsk eller engelsk, uden at der samtidig skal gives mulighed for simultantolkning til og fra dansk for samtlige deltagere. Beslutningen kan optages i vedtægterne, uden at det kræver særskilt vedtagelse på generalforsamlingen.
*Stk. 4.* Generalforsamlingen kan beslutte, at generalforsamlingen skal afholdes på et andet sprog end dansk, svensk, norsk eller en-

gelsk, uden at der samtidig skal gives mulighed for simultantolkning til og fra dansk for samtlige deltagere. En beslutning herom skal optages i vedtægterne, og § 107, stk. 2, nr. 6, og § 110 finder anvendelse på beslutningen samt ændringer heri.
*Stk. 5.* Er det besluttet, at generalforsamlingen holdes på et andet sprog end dansk, kan det med simpelt flertal besluttes, at generalforsamlingen fremover skal afholdes på dansk. Beslutning herom kan optages i vedtægterne, uden at det kræver særskilt vedtagelse på generalforsamlingen. Hvis beslutningen om det andet sprog er optaget i vedtægterne, skal det fremgå af beslutningen efter 1. pkt., om denne skal optages i vedtægterne, eller om vedtægterne ikke længere skal indeholde oplysninger om sprog på generalforsamlingen.
*Stk. 6.* Dokumenter udarbejdet til generalforsamlingens interne brug i forbindelse med eller efter generalforsamlingen skal udarbejdes på dansk, jf. dog stk. 7 og 8.
*Stk. 7.* Generalforsamlingen kan med simpelt flertal beslutte, at de i stk. 6 nævnte dokumenter udarbejdes på svensk, norsk eller engelsk. En beslutning herom kan optages i vedtægterne, uden at det kræver særskilt vedtagelse på generalforsamlingen.
*Stk. 8.* Generalforsamlingen kan beslutte, at de i stk. 6 nævnte dokumenter udarbejdes på et andet sprog end dansk, svensk, norsk eller engelsk. En beslutning herom skal optages i vedtægterne, og § 107, stk. 2, nr. 7, og § 110 finder anvendelse på beslutningen samt ændringer heri.

**§ 100 a.** Generalforsamlingen kan med simpelt flertal beslutte, at årsrapporten udarbejdes og aflægges på engelsk. Generalforsamlingens beslutning herom skal optages i vedtægterne. Optagelsen af generalforsamlingens beslutning i vedtægterne kræver ikke særskilt vedtagelse.

**§ 101.** Der vælges en dirigent af generalforsamlingen blandt kapitalejerne eller uden for disses kreds, medmindre vedtægterne bestemmer andet.
*Stk. 2.* Dirigenten skal lede generalforsamlingen og sikre, at generalforsamlingen afholdes på en forsvarlig og hensigtsmæssig måde. Dirigenten råder over de nødvendige beføjelser hertil, herunder retten til at tilrettelægge drøftelser, udforme afstemningstemaer, beslutte, hvornår debatten er afsluttet, afskære indlæg og om nødvendigt bortvise deltagere fra generalforsamlingen.
*Stk. 3.* Over forhandlingerne på generalforsamlingen skal der føres en protokol, der underskrives af dirigenten. Alle beslutninger skal indføres i kapitalselskabets forhandlingsprotokol.
*Stk. 4.* Senest 2 uger efter generalforsamlingens afholdelse skal generalforsamlingsprotokollen eller en bekræftet udskrift af denne være tilgængelig for kapitalejerne.
*Stk. 5.* Aktieselskaber, som har aktier optaget til handel på et reguleret marked, skal for hver beslutning som minimum fastslå,

1) hvor mange aktier der er afgivet gyldige stemmer for,
2) den andel af aktiekapitalen, som disse stemmer repræsenterer,
3) det samlede antal gyldige stemmer,
4) antallet af stemmer for og imod hvert beslutningsforslag og,
5) når det er relevant, antallet af stemmeundladelser.

*Stk. 6.* Ønsker ingen af aktionærerne i aktieselskaber, som har aktier optaget til handel på et reguleret marked, en fuldstændig redegørelse for afstemningen, jf. stk. 5, er det kun nødvendigt at fastslå afstemningsresultatet for at sikre, at det krævede flertal er opnået for hver beslutning.
*Stk. 7.* Et aktieselskab, som har aktier optaget til handel på et reguleret marked, skal senest 2 uger efter generalforsamlingens afholdelse offentliggøre afstemningsresultaterne på sin hjemmeside.

*Stk. 8.* For statslige aktieselskaber skal en bekræftet udskrift, senest samtidig med protokollen gøres tilgængelig for aktionærerne, jf. stk. 4, indsendes til Erhvervsstyrelsen.

**§ 102.** Ledelsen skal, når det forlanges af en kapitalejer og det efter skøn fra det øverste ledelsesorgan kan ske uden væsentlig skade for kapitalselskabet, meddele til rådighed stående oplysninger på generalforsamlingen om alle forhold, som er af betydning for bedømmelsen af årsrapporten og kapitalselskabets stilling i øvrigt eller for spørgsmål, hvorom beslutning skal træffes på generalforsamlingen. Oplysningspligten gælder også kapitalselskabets forhold til andre selskaber i samme koncern.

*Stk. 2.* Hvis besvarelsen kræver oplysninger, som ikke er tilgængelige på generalforsamlingen, skal oplysningerne senest 2 uger derefter gøres tilgængelige for kapitalejerne, ligesom de skal sendes til de kapitalejere, der har fremsat begæring herom.

*Stk. 3.* Det centrale ledelsesorgan kan beslutte, at kapitalejere kan stille spørgsmål til dagsordenen eller til dokumenter m.v. til brug for generalforsamlingen inden udløbet af en frist, som optages i vedtægterne. Det centrale ledelsesorgan kan vedtage de nødvendige vedtægtsændringer.

*Stk. 4.* I aktieselskaber, som har aktier optaget til handel på et reguleret marked, og i statslige aktieselskaber gælder oplysningspligten efter stk. 1 og 2 endvidere for skriftlige spørgsmål stillet af en aktionær inden for de sidste 3 måneder før generalforsamlingen. Besvarelse kan ske skriftligt, og i så fald skal spørgsmålet og besvarelsen fremlægges for aktionærerne ved generalforsamlingens begyndelse. Besvarelse kan undlades, såfremt aktionæren ikke er repræsenteret på generalforsamlingen. Flere spørgsmål med samme indhold kan besvares med ét samlet svar. Spørgsmål anses for besvaret, hvis de pågældende oplysninger er tilgængelige på aktieselskabets hjemmeside i form af en spørgsmål/svar-funktion.

**§ 103.** Kapitalselskabets eventuelle generalforsamlingsvalgte revisor, jf. § 144, stk. 1, har ret til at være til stede på generalforsamlingen. Kapitalselskabets eventuelle generalforsamlingsvalgte revisor, jf. § 144, stk. 1, skal være til stede på generalforsamlingen, hvis et medlem af det øverste eller det centrale ledelsesorgan eller en kapitalejer anmoder herom.

*Stk. 2.* På generalforsamlingen skal kapitalselskabets eventuelle generalforsamlingsvalgte revisor, jf. § 144, stk. 1, besvare spørgsmål om den årsrapport m.v., som behandles på den pågældende generalforsamling.

*Stk. 3.* Kapitalselskabets eventuelle generalforsamlingsvalgte revisor, jf. § 144, stk. 1, har ret til at deltage i det øverste ledelsesorgans møder under behandlingen af årsrapporter m.v. og har pligt til at deltage, hvis blot ét medlem af det øverste ledelsesorgan anmoder herom.

*Stk. 4.* I aktieselskaber, som har værdipapirer optaget til handel på et reguleret marked, og i statslige aktieselskaber skal selskabets generalforsamlingsvalgte revisor være til stede på den ordinære generalforsamling.

## Afstemninger

**§ 104.** En kapitalejer skal stemme samlet på sine kapitalandele, medmindre vedtægterne bestemmer andet, jf. dog stk. 3.

*Stk. 2.* Kapitalejere har mulighed for at brevstemme, dvs. for at stemme skriftligt, inden generalforsamlingen afholdes. I kapitalselskaber, der ikke har værdipapirer optaget til handel på et reguleret marked i et EU/EØS-land, kan denne mulighed fraviges i kapitalselskabets vedtægter. Skriftlig stemmeafgivelse må kun underlægges de krav og begrænsninger, der er nødvendige for at sikre identifikation af kapitalejerne, og kun for så vidt de står i rimeligt forhold til dette mål.

*Stk. 3.* I aktieselskaber har en aktionær, som i erhvervsmæssig sammenhæng handler på vegne af andre fysiske eller juridiske personer (klienter), ret til at udøve sine stemmerettigheder i tilknytning til nogle af aktierne på en måde, der ikke er identisk med udøvelsen af stemmerettighederne i tilknytning til andre aktier.

**§ 105.** Medmindre andet følger af denne lov eller kapitalselskabets vedtægter bestemmer andet, afgøres alle anliggender på generalforsamling ved simpelt stemmeflertal. Står stemmerne lige, er forslaget ikke vedtaget. Personvalg samt anliggender, hvor kapitalejerne skal stemme om flere muligheder ved én afstemning, afgøres ved relativt, simpelt stemmeflertal. Står stemmerne lige ved personvalg, skal valget afgøres ved lodtrækning, medmindre vedtægterne bestemmer andet.

**§ 106.** Beslutning om ændring af vedtægterne er kun gyldig, hvis den tiltrædes af mindst 2/3 såvel af de stemmer, som er afgivet, som af den del af selskabskapitalen, som er repræsenteret på generalforsamlingen, jf. dog stk. 2. Beslutning om ændring af vedtægterne skal i øvrigt opfylde de yderligere forskrifter, som vedtægterne måtte indeholde, og de særlige regler i § 107.

*Stk. 2.* Beslutning om ændring af vedtægterne efter § 74, stk. 3, § 102, stk. 3, § 175, stk. 2, § 176, stk. 2, § 247, stk. 1, § 265, stk. 1, § 282, stk. 1, eller § 302, stk. 1, skal ikke træffes af generalforsamlingen.

**§ 107.** Beslutning om vedtægtsændring, hvorved kapitalejernes forpligtelser over for kapitalselskabet forøges, er kun gyldig, hvis samtlige kapitalejere er enige herom.

*Stk. 2.* Følgende beslutninger om vedtægtsændringer er kun gyldige, hvis de tiltrædes af mindst 9/10 såvel af de afgivne stemmer som af den på generalforsamlingen repræsenterede selskabskapital:

1) Beslutning, hvorved kapitalejernes ret til udbytte eller til udlodning af kapitalselskabets midler, herunder tegning af kapitalandele til favørkurs, formindskes til fordel for andre end kapitalejerne i kapitalselskabet og medarbejderne i kapitalselskabet eller dettes datterselskab.

2) Beslutning, hvorved kapitalandelenes omsættelighed begrænses eller eksisterende begrænsninger skærpes, herunder vedtagelse af bestemmelser om, at kapitalselskabets samtykke kræves til overdragelse af kapitalandele, eller at ingen kapitalejer kan besidde kapitalandele ud over en nærmere fastsat del af selskabskapitalen.

3) Beslutning, hvorved kapitalejerne forpligtes til at lade deres kapitalandele indløse i lige forhold uden for tilfælde af kapitalselskabets opløsning eller tilfælde omhandlet i kapitel 5.

4) Beslutning, hvorved kapitalejernes adgang til at udøve stemmeret for egne eller andres kapitalandele begrænses til en nærmere fastsat del af stemmerne eller af den stemmeberettigede selskabskapital.

5) Beslutning, hvorved kapitalejerne som led i en spaltning ikke modtager stemmer eller kapitalandele i hvert af de modtagende selskaber i samme forhold som i det indskydende selskab.

6) Beslutning, hvorved generalforsamlingen skal afholdes på et andet sprog end dansk, svensk, norsk eller engelsk, uden at der samtidig gives mulighed for simultantolkning til og fra dansk for samtlige deltagere.

7) Beslutning, hvorved der indføres et andet sprog end dansk, svensk, norsk eller engelsk for interne dokumenter, dvs. dokumenter udarbejdet i forbindelse med eller efter generalforsamlingen, der er til selskabets interne brug.

*Stk. 3.* Findes der flere kapitalklasser i kapitalselskabet, er en vedtægtsændring, der medfører en forskydning af retsforholdet mellem disse enten ved en ændring af allerede etablerede eller indførelse af nye forskelle, kun gyldig, hvis den tiltrædes af kapita-

lejere, der ejer mindst 2/3 af den del af den kapitalklasse, hvis retsstilling forringes, som deltager i generalforsamlingen.

### Ugyldige generalforsamlingsbeslutninger

**§ 108.** Der må på generalforsamlingen ikke træffes beslutning, som åbenbart er egnet til at skaffe visse kapitalejere eller andre en utilbørlig fordel på andre kapitalejeres eller kapitalselskabets bekostning.

**§ 109.** En kapitalejer eller et medlem af ledelsen kan anlægge sag vedrørende en generalforsamlingsbeslutning, som ikke er blevet til på lovlig måde, eller som er i strid med denne lov eller kapitalselskabets vedtægter.

*Stk. 2.* Sag skal være anlagt senest 3 måneder efter beslutningen, ellers anses beslutningen for gyldig.

*Stk. 3.* Stk. 2 finder ikke anvendelse, når

1) beslutningen ikke lovligt kunne tages selv med samtlige kapitalejeres samtykke,
2) der ifølge denne lov eller kapitalselskabets vedtægter kræves samtykke til beslutningen af alle eller visse kapitalejere og sådant samtykke ikke er givet,
3) de regler for indkaldelse, som gælder for kapitalselskabet er væsentligt tilsidesat eller
4) den kapitalejer, der har rejst sagen efter udløbet af den i stk. 2 angivne tid, men dog senest 24 måneder efter beslutningen, har haft rimelig grund til forsinkelsen og retten på grund heraf og under hensyntagen til omstændighederne i øvrigt finder, at det ville være åbenbart urimeligt at anvende bestemmelserne i stk. 2.

*Stk. 4.* Finder retten, at beslutningen er omfattet af stk. 1, skal den ved dom kendes ugyldig eller ændres. En ændring af beslutningen kan dog kun ske, såfremt der nedlægges påstand herom og retten er i stand til at fastslå, hvilket indhold beslutningen rettelig skulle have haft. Rettens afgørelse har også gyldighed for de kapitalejere, der ikke har anlagt sagen.

### Indløsningsret

**§ 110.** Kapitalejere, som på generalforsamlingen har modsat sig de i § 107, stk. 2, nr. 1-4, 6 og 7, nævnte vedtægtsændringer, kan kræve, at kapitalselskabet indløser deres kapitalandele, såfremt krav herom fremsættes skriftligt senest 4 uger efter generalforsamlingens afholdelse.

*Stk. 2.* Er kapitalejeren før afstemningen blevet anmodet om at afgive en udtalelse om, hvorvidt denne ønsker at benytte indløsningsretten efter stk. 1, er denne ret dog betinget af, at den pågældende på generalforsamlingen har tilkendegivet dette ønske.

*Stk. 3.* Ved indløsningen køber kapitalselskabet de pågældendes kapitalandele til en pris, der svarer til kapitalandelens værdi, og som i mangel af enighed herom fastsættes af skønsmænd udmeldt af retten på kapitalselskabets hjemsted. Omkostningerne til skønsmændene bæres af den kapitalejer, som ønsker skønsmændenes vurdering foretaget, men kan pålægges selskabet, såfremt skønsmændenes vurdering afviger væsentligt fra den af selskabet foreslåede pris og enten helt eller overvejende lægges til grund. Begge parter kan indbringe skønsmændenes afgørelse for retten. Sag herom skal anlægges senest 3 måneder efter modtagelsen af skønsmændenes erklæring.

## Kapitel 7. *Kapitalselskabets ledelse m.v.*

### Valg af ledelsesstruktur

**§ 111.** Et kapitalselskab kan vælge mellem følgende ledelsesstrukturer:

1) En ledelsesstruktur, hvor kapitalselskabet ledes af en bestyrelse, der varetager den overordnede og strategiske ledelse. Til at forestå den daglige ledelse skal bestyrelsen ansætte en direktion, der enten kan bestå af en eller flere personer blandt bestyrelsens egne medlemmer eller af personer, som ikke er medlem af bestyrelsen. I begge tilfælde betegnes personer, som forestår den daglige ledelse, direktører, og de udgør samlet kapitalselskabets direktion. Flertallet af bestyrelsens medlemmer skal i aktieselskaber være personer, som ikke er direktører i selskabet. En direktør i et aktieselskab kan ikke være formand eller næstformand for bestyrelsen i aktieselskabet.
2) En ledelsesstruktur, hvor kapitalselskabet ledes af en direktion. I aktieselskaber skal direktionen ansættes af et tilsynsråd, der fører tilsyn med direktionen. Et medlem af direktionen kan ikke være medlem af tilsynsrådet.

*Stk. 2.* I aktieselskaber skal bestyrelsen eller tilsynsrådet bestå af mindst 3 personer.

*Stk. 3.* I anpartsselskaber, hvor medarbejderne har valgt at benytte reglerne i § 140 om medarbejdervalgte medlemmer af det øverste ledelsesorgan, skal der være en bestyrelse eller et tilsynsråd. Hvis et anpartsselskab ikke har en bestyrelse eller tilsynsråd, men efter 1. pkt. skal have et af disse organer, skal forslag om at ændre vedtægterne, således at kapitalselskabet skal have en bestyrelse eller et tilsynsråd, anses som gyldigt vedtaget, når blot en anpartshaver har stemt for forslaget.

*Stk. 4.* Lovens bestemmelser om medlemmer af bestyrelse og tilsynsråd finder tilsvarende anvendelse på suppleanter for disse.

### Generelle bestemmelser om ledelses- og tilsynshverv

**§ 112.** Medlemmer af et kapitalselskabs ledelse skal være myndige personer og må ikke være under værgemål efter værgemålslovens § 5 eller under samværgemål efter værgemålslovens § 7.

*Stk. 2.* I rederiaktieselskaber kan et enkeltmandsfirma eller et interessentskab være direktør, forudsat at indehaveren eller interessenterne opfylder betingelserne i stk. 1.

**§ 113.** Medlemmer af bestyrelse og tilsynsråd samt direktører må ikke udføre eller deltage i spekulationsforretninger vedrørende kapitalandele i kapitalselskabet eller i kapitalselskaber inden for samme koncern.

**§ 114.** I kapitalselskaber, som har aktier optaget til handel på et reguleret marked, og i statslige aktieselskaber må formanden for bestyrelsen eller tilsynsrådet ikke udføre hverv for kapitalselskabet, der ikke er en del af hvervet som formand. En bestyrelsesformand kan dog, hvor der er særligt behov herfor, udføre opgaver, som den pågældende bliver anmodet om at udføre af og for bestyrelsen.

### Bestyrelsens opgaver

**§ 115.** I kapitalselskaber, der har en bestyrelse, skal denne ud over at varetage den overordnede og strategiske ledelse og sikre en forsvarlig organisation af kapitalselskabets virksomhed påse, at

1) bogføringen og regnskabsaflæggelsen foregår på en måde, der efter kapitalselskabets forhold er tilfredsstillende,
2) der er etableret de fornødne procedurer for risikostyring og interne kontroller,
3) bestyrelsen løbende modtager den fornødne rapportering om kapitalselskabets finansielle forhold,
4) direktionen udøver sit hverv på en behørig måde og efter bestyrelsens retningslinjer og
5) kapitalselskabets kapitalberedskab til enhver tid er forsvarligt, herunder at der er tilstrækkelig likviditet til at opfylde kapitalselskabets nuværende og fremtidige forpligtelser, efterhån-

den som der forfalder, og bestyrelsen er således til enhver tid forpligtet til at vurdere den økonomiske situation og sikre, at det tilstedeværende kapitalberedskab er forsvarligt.

## Tilsynsrådets opgaver

**§ 116.** I kapitalselskaber, som har et tilsynsråd, skal tilsynsrådet påse, at

1) bogføringen og regnskabsaflæggelsen foregår på en måde, der efter kapitalselskabets forhold er tilfredsstillende,

2) der er etableret de fornødne procedurer for risikostyring og interne kontroller,

3) tilsynsrådet løbende modtager den fornødne rapportering om kapitalselskabets finansielle forhold,

4) direktionen udøver sit hverv på en behørig måde og

5) kapitalselskabets kapitalberedskab til enhver tid er forsvarligt, herunder at der er tilstrækkelig likviditet til at opfylde kapitalselskabets nuværende og fremtidige forpligtelser, efterhånden som de forfalder, og tilsynsrådet er således til enhver tid forpligtet til at vurdere den økonomiske situation og sikre, at det tilstedeværende kapitalberedskab er forsvarligt.

## Direktionens opgaver

**§ 117.** I kapitalselskaber, der ledes efter § 111, stk. 1, nr. 1, varetager direktionen den daglige ledelse af kapitalselskabet. Direktionen skal følge de retningslinjer og anvisninger, som bestyrelsen har givet. Den daglige ledelse omfatter ikke dispositioner, der efter kapitalselskabets forhold er af usædvanlig art eller stor betydning. Sådanne dispositioner kan direktionen kun foretage efter særlig bemyndigelse fra bestyrelsen, medmindre bestyrelsens beslutning ikke kan afventes uden væsentlig ulempe for kapitalselskabets virksomhed. Bestyrelsen skal i så fald snarest muligt underrettes om den trufne disposition.

*Stk. 2.* I kapitalselskaber omfattet af § 111, stk. 1, nr. 2, skal direktionen varetage såvel den overordnede og strategiske ledelse som den daglige ledelse. Direktionen skal desuden sikre en forsvarlig organisation af kapitalselskabets virksomhed.

**§ 118.** Direktionen skal sikre, at kapitalselskabets bogføring sker under iagttagelse af lovgivningens regler herom, og at formueforvaltningen foregår på betryggende måde.

*Stk. 2.* Direktionen skal herudover sikre, at kapitalselskabets kapitalberedskab til enhver tid er forsvarligt, herunder at der er tilstrækkelig likviditet til at opfylde kapitalselskabets nuværende og fremtidige forpligtelser, efterhånden som de forfalder. Direktionen er således til enhver tid forpligtet til at vurdere den økonomiske situation og sikre, at det tilstedeværende kapitalberedskab er forsvarligt.

## Kapitaltab

**§ 119.** Ledelsen i et kapitalselskab skal sikre, at generalforsamling afholdes, senest 6 måneder efter at det konstateres, at selskabets egenkapital udgør mindre end halvdelen af den tegnede kapital. På generalforsamlingen skal det centrale ledelsesorgan redegøre for kapitalselskabets økonomiske stilling og om fornødent stille forslag om foranstaltninger, der bør træffes, herunder om kapitalselskabets opløsning.

## Valg til bestyrelse og tilsynsråd

**§ 120.** I aktieselskaber skal flertallet af medlemmerne af bestyrelsen eller tilsynsrådet vælges af generalforsamlingen.

*Stk. 2.* Vedtægterne kan tillægge offentlige myndigheder eller andre ret til at udpege et eller flere medlemmer af bestyrelsen eller tilsynsrådet.

*Stk. 3.* Forud for valg af medlemmerne af bestyrelsen eller tilsynsrådet på generalforsamlingen skal der i aktieselskaber gives oplysning om de opstillede personers ledelseshverv i andre erhvervsdrivende virksomheder bortset fra aktieselskabets egne 100 pct. ejede datterselskaber. Er den pågældende medlem af ledelsen i såvel et andet moderselskab som et eller flere af dettes 100 pct. ejede datterselskaber, er det uanset 1. pkt. tilstrækkeligt at oplyse navnet på dette moderselskab og antallet af det datterselskaber, hvori den pågældende er ledelsesmedlem. Aktionærerne kan i enighed beslutte at fravige bestemmelsen.

*Stk. 4.* De generalforsamlingsvalgte medlemmer af bestyrelsens eller tilsynsrådets hverv gælder for den tid, der er fastsat i vedtægterne. Valgperioden skal ophøre ved afslutningen af en ordinær generalforsamling senest 4 år efter valget.

## Medlemmer af bestyrelsens og tilsynsrådets udtræden

**§ 121.** Et medlem af bestyrelsen eller tilsynsrådet kan til enhver tid udtræde deraf. Meddelelse herom skal gives til kapitalselskabets bestyrelse eller tilsynsråd og, hvis medlemmet ikke er valgt af generalforsamlingen, tillige til den, som har udpeget den pågældende. Et medlem af bestyrelsen eller tilsynsrådet kan til enhver tid afsættes af den, som har valgt eller udpeget den pågældende.

*Stk. 2.* Er der ingen suppleant til at indtræde i medlemmets sted, påhviler det de øvrige medlemmer af bestyrelsen eller tilsynsrådet at foranledige valg af nyt medlem for det afgående medlems resterende valgperiode. Det samme gælder, hvis et medlem, der er valgt af medarbejderne efter § 140 eller § 141, ikke længere er ansat i kapitalselskabet eller koncernen. Hører valget under generalforsamlingen, kan valg af et nyt medlem dog udskydes til næste ordinære generalforsamling, hvor valg til bestyrelsen eller tilsynsrådet skal finde sted, såfremt bestyrelsen eller tilsynsrådet er beslutningsdygtig med de tilbageværende medlemmer og suppleanter.

## Valg af formand

**§ 122.** Bestyrelsen eller tilsynsrådet i et aktieselskab vælger selv sin formand, medmindre andet er bestemt i vedtægterne. Ved stemmelighed afgøres valg ved lodtrækning.

## Afholdelse af møder i bestyrelse og tilsynsråd

**§ 123.** Formanden for bestyrelsen eller tilsynsrådet i et aktieselskab skal sikre, at det øverste ledelsesorgan holder møde, når dette er nødvendigt, og skal påse, at samtlige medlemmer indkaldes. Et medlem af ledelsen eller selskabets generalforsamlingsvalgte revisor, jf. § 144, kan forlange, at det øverste ledelsesorgan indkaldes. En direktør har, selv om den pågældende ikke er medlem af bestyrelsen eller tilsynsrådet, ret til at være til stede og udtale sig ved bestyrelsens eller tilsynsrådets møder, medmindre bestyrelsen eller tilsynsrådet i de enkelte tilfælde træffer anden bestemmelse.

## Beslutningsdygtighed i bestyrelsen og tilsynsrådet

**§ 124.** Bestyrelsen eller tilsynsrådet er beslutningsdygtig, når over halvdelen af samtlige medlemmer er repræsenteret, for så vidt der ikke efter vedtægterne stilles større krav. Beslutninger må dog ikke træffes, uden at så vidt muligt samtlige medlemmer har haft adgang til at deltage i sagens behandling.

*Stk. 2.* Har et medlem forfald, og er der valgt en suppleant, skal der gives suppleanten adgang til at træde i medlemmets sted, så længe forfaldet varer. Medmindre andet er besluttet af bestyrelsen eller tilsynsrådet eller fastsat i vedtægterne, kan et medlem i enkeltstående tilfælde give fuldmagt til et andet medlem i stedet for at indkalde en suppleant, hvis dette er betryggende henset til emnet for drøftelserne.

*Stk. 3.* De anliggender, der behandles i bestyrelsen eller tilsynsrådet, afgøres, for så vidt der ikke efter vedtægterne kræves særligt stemmeflertal, ved simpelt stemmeflertal. Det kan i vedtægterne bestemmes, at formandens stemme, eller ved formandens forfald næstformandens, er afgørende i tilfælde af stemmelighed.

### Skriftlige og elektroniske møder i bestyrelse og tilsynsråd

**§ 125.** Bestyrelsesmøder og møder i tilsynsrådet kan afholdes skriftligt, i det omfang dette er foreneligt med udførelsen af bestyrelsens eller tilsynsrådets hverv. Et medlem af ledelsen kan dog forlange, at der finder en mundtlig drøftelse sted. Lovens bestemmelser om afholdelse af møder i bestyrelsen eller tilsynsrådet finder med de fornødne afvigelser tilsvarende anvendelse på skriftlige møder.

*Stk. 2.* Bestyrelsesmøder og møder i tilsynsrådet kan afholdes ved anvendelse af elektroniske medier, i det omfang dette er foreneligt med udførelsen af bestyrelsens eller tilsynsrådets hverv. Et medlem af ledelsen kan dog forlange, at der finder en mundtlig drøftelse sted. Aktie- og anpartsselskabslovens bestemmelser om afholdelse af møde i bestyrelsen eller tilsynsrådet og om elektronisk kommunikation finder med de fornødne afvigelser tilsvarende anvendelse på elektroniske møder og på kommunikationen i forbindelse hermed.

### Sproget på møder i bestyrelse og tilsynsråd

**§ 126.** Møder i bestyrelsen eller tilsynsrådet afholdes på dansk, jf. dog stk. 2 og 3.

*Stk. 2.* Møder i bestyrelsen eller tilsynsrådet kan, hvis flertallet beslutter det, afholdes på et andet sprog end dansk, hvis der samtidig gives mulighed for simultantolkning til og fra dansk for samtlige deltagere. Afholdelse af møder på et andet sprog end dansk uden simultantolkning kræver enighed blandt bestyrelsens eller tilsynsrådets medlemmer.

*Stk. 3.* Uanset stk. 2 kan møder i bestyrelsen eller tilsynsrådet dog afholdes på svensk, norsk eller engelsk uden simultantolkning, hvis dette sprog er angivet som koncernsprog i selskabets vedtægter.

*Stk. 4.* Hvis dokumenter udarbejdet til brug for arbejdet i bestyrelsen eller tilsynsrådet ikke er udformet på dansk, kan ethvert medlem af bestyrelsen eller tilsynsrådet kræve en oversættelse til dansk af de pågældende dokumenter. Dette gælder dog ikke, hvis dokumenterne er udformet på svensk, norsk eller engelsk, såfremt det pågældende sprog er angivet som koncernsprog i selskabets vedtægter.

### Utilbørlige dispositioner samt aftaler indgået med enekapitalejer

**§ 127.** Medlemmerne af kapitalselskabets ledelse må ikke disponere således, at dispositionen er åbenbart egnet til at skaffe visse kapitalejere eller andre en utilbørlig fordel på andre kapitalejeres eller kapitalselskabets bekostning. Medlemmerne af kapitalselskabets ledelse må ikke efterkomme generalforsamlingsbeslutninger eller beslutninger truffet af andre selskabsorganer, hvis beslutningen måtte være ugyldig som stridende mod lovgivningen eller kapitalselskabets vedtægter.

*Stk. 2.* Aftaler, som indgås mellem en enekapitalejer og kapitalselskabet, er kun gyldige, hvis de affattes på en måde, som senere kan dokumenteres, medmindre der er tale om aftaler på sædvanlige vilkår som led i et løbende mellemværende.

### Protokol over forhandlingerne i det øverste ledelsesorgan

**§ 128.** Hvis det øverste ledelsesorgan består af flere medlemmer, føres en protokol over forhandlingerne, der underskrives af samtlige tilstedeværende medlemmer.

*Stk. 2.* Et tilstedeværende ledelsesmedlem, der ikke er enig i en beslutning, har ret til at få sin mening indført i protokollen.

### Revisionsprotokol

**§ 129.** Medlemmerne af det øverste ledelsesorgan underskriver den af revisor udarbejdede revisionsprotokol, hvis det i henhold til revisorloven eller anden lovgivning påhviler revisor at føre en sådan, eller hvis revisor i øvrigt efter aftale med kapitalselskabet har ført en revisionsprotokol.

### Bestyrelsens og tilsynsrådets forretningsorden

**§ 130.** Hvis bestyrelsen eller tilsynsrådet i et kapitalselskab består af flere medlemmer, skal der ved en forretningsorden træffes nærmere bestemmelser om udførelsen af bestyrelsens eller tilsynsrådets hverv.

*Stk. 2.* Ved udformningen af forretningsordenen skal der tages udgangspunkt i kapitalselskabets virksomhed og behov. I den forbindelse bør bestyrelsen eller tilsynsrådet særligt overveje, om forretningsordenen skal indeholde bestemmelser om konstitution, arbejdsdeling, tilsyn med direktionens daglige ledelse, føring af bøger, protokoller m.v., skriftlige og elektroniske møder, tavshedspligt, suppleanter, regnskabskontrol, underskrivelse af revisionsprotokol og sikring af tilstedeværelsen af det nødvendige grundlag for revision.

*Stk. 3.* Bestyrelsens eller tilsynsrådets forretningsorden i statslige aktieselskaber skal senest 4 uger efter udfærdigelsen offentliggøres i Erhvervsstyrelsens it-system. Samme frist gælder, når et aktieselskab bliver et statsligt aktieselskab efter kapitel 20 eller der sker ændringer i et statsligt aktieselskabs forretningsorden.

### Inhabilitet

**§ 131.** Et medlem af ledelsen må ikke deltage i behandlingen af spørgsmål om aftaler mellem kapitalselskabet og den pågældende selv eller om søgsmål mod den pågældende selv eller om aftale mellem kapitalselskabet og tredjemand eller søgsmål mod tredjemand, hvis vedkommende heri har en væsentlig interesse deri, der kan være stridende mod kapitalselskabets.

### Tavshedspligt

**§ 132.** Medlemmer af bestyrelsen og tilsynsrådet, direktører, vurderingsmænd og granskningsmænd samt disses medhjælpere og suppleanter må ikke uberettiget videregive, hvad de under udøvelsen af deres hverv har fået kendskab til.

### Afgivelse af oplysninger m.v. til revisor

**§ 133.** Ledelsen i et kapitalselskab skal give enhver revisor eller granskningsmand, der er valgt af generalforsamlingen, og som skal erklære sig om kapitalselskabets forhold, de oplysninger, som må anses af betydning for bedømmelsen af kapitalselskabet og, hvis kapitalselskabet er et moderselskab, dets koncern i henhold til årsregnskabsloven.

*Stk. 2.* Ledelsen i et kapitalselskab skal give enhver revisor eller granskningsmand, der er valgt af generalforsamlingen, og som skal erklære sig om kapitalselskabets forhold, adgang til at foretage de undersøgelser, denne finder nødvendige, og skal sikre, at revisor eller granskningsmand får de oplysninger og den bistand, som den pågældende anser for nødvendig for udførelsen af sit hverv.

*Stk. 3.* Ledelsen i et dansk kapitalselskab, der er datterselskab i en koncern, har tilsvarende forpligtelser over for modervirksomhedens revisor.

### Underretning om koncernforhold

**§ 134.** Det centrale ledelsesorgan i et dansk moderselskab er forpligtet til at underrette det centrale ledelsesorgan for en dattervirksomhed, så snart et koncernforhold er etableret. Det centrale ledelsesorgan i et dansk datterselskab skal give modervirksomheden de oplysninger, som er nødvendige for vurderingen af koncernens stilling og resultatet af koncernens virksomhed.

### Repræsentations- og tegningsret

**§ 135.** Medlemmer af bestyrelsen og af direktionen repræsenterer kapitalselskabet udadtil.

*Stk. 2.* Kapitalselskabet forpligtes ved aftaler, som indgås på kapitalselskabets vegne af det samlede centrale ledelsesorgan, af et medlem af bestyrelsen eller af en direktør. Medlemmerne af tilsynsrådet kan ikke tegne kapitalselskabet.

*Stk. 3.* Den tegningsret, som efter stk. 2 tilkommer det enkelte medlem af bestyrelsen og direktionen, kan i vedtægterne begrænses, således at tegningsretten kun kan udøves af flere medlemmer i forening eller af et eller flere bestemte medlemmer hver for sig eller i forening. Anden begrænsning i tegningsretten kan ikke registreres.

*Stk. 4.* I kapitalselskaber, der har et tilsynsråd, kan tilsynsrådet uanset stk. 1 repræsentere selskabet i situationer, hvor der anlægges sag mod et eller flere medlemmer af selskabets direktion. Tilsvarende kan tilsynsrådet repræsentere selskabet i situationer, hvor der anlægges sag mod selskabet af et medlem af selskabets direktion. Det samme gælder, hvor direktionens medlemmer enten er inhabile eller af andre grunde ikke kan repræsentere selskabet.

*Stk. 5.* Prokura kan kun meddeles af det centrale ledelsesorgan.

**§ 136.** Hvis nogen, der har tegningsret efter § 135, har indgået aftale eller afgivet tilsagn på kapitalselskabets vegne, forpligter dette kapitalselskabet, medmindre

1) de tegningsberettigede har handlet i strid med de begrænsninger i deres beføjelser, som er fastsat i denne lov,

2) aftalen eller tilsagnet falder uden for kapitalselskabets formål og kapitalselskabet godtgør, at tredjemand vidste eller burde vide dette, eller

3) den tegningsberettigede har overskredet sin bemyndigelse eller væsentligt har tilsidesat selskabets interesser og tredjemand vidste eller burde vide dette.

*Stk. 2.* Offentliggørelsen af kapitalselskabets vedtægtsmæssige formålsbestemmelse i Erhvervsstyrelsens it-system er ikke i sig selv tilstrækkeligt bevis efter denne bestemmelses stk. 1, nr. 2.

**§ 137.** Er valg eller udnævnelse af medlemmer af ledelsen i et kapitalselskab bekendtgjort i Erhvervsstyrelsens it-system i overensstemmelse med § 14, kan mangler ved valget eller udnævnelsen ikke påberåbes over for tredjemand, medmindre kapitalselskabet godtgør, at denne kendte mangelen.

### Aflønning af ledelsesmedlemmer

**§ 138.** Medlemmer af et kapitalselskabs ledelse kan lønnes med fast eller variabelt vederlag. Vederlaget må ikke overstige, hvad der anses for sædvanligt efter hvervets art og arbejdets omfang, samt hvad der må anses for forsvarligt i forhold til kapitalselskabets og, i moderselskaber, koncernens økonomiske stilling.

*Stk. 2.* Går et kapitalselskab konkurs, skal medlemmer af ledelsen, selv om de har været i god tro, tilbagebetale, hvad de i de sidste 5 år før fristdagen har oppebåret i variabelt vederlag, forudsat at kapitalselskabet var insolvent, da det variable vederlag blev fastsat.

**§ 139.** Inden et aktieselskab, der har aktier optaget til handel på et reguleret marked eller en multilateral handelsfacilitet, indgår en konkret aftale om incitamentsaflønning af et medlem af selskabets ledelse, skal kapitalselskabets øverste ledelsesorgan have fastsat overordnede retningslinjer for kapitalselskabets incitamentsaflønning af kapitalselskabets ledelse. Retningslinjerne skal være behandlet og godkendt på kapitalselskabets generalforsamling.

*Stk. 2.* Hvis generalforsamlingen har godkendt retningslinjer for kapitalselskabets incitaments-aflønning af kapitalselskabets ledelse, jf. stk. 1, skal der i kapitalselskabets vedtægter optages en bestemmelse, der oplyser, at der er vedtaget sådanne retningslinjer. Bestemmelsens optagelse i vedtægterne kræver ikke særskilt vedtagelse på generalforsamlingen. Retningslinjerne skal efter godkendelsen på generalforsamlingen hurtigst muligt offentliggøres på kapitalselskabets hjemmeside med angivelse af, hvornår generalforsamlingen har godkendt retningslinjerne.

*Stk. 3.* Konkrete aftaler om incitamentsaflønning, jf. stk. 1, kan tidligst indgås, dagen efter at de gældende, godkendte retningslinjer er offentliggjort på kapitalselskabets hjemmeside, jf. stk. 2. Ved indgåelse af konkrete incitamentsaftaler skal de gældende, godkendte retningslinjer overholdes.

*Stk. 4.* Stk. 1-3 finder tilsvarende anvendelse på aftaler om forlængelse af eller ændringer i eksisterende konkrete aftaler om incitamentsaflønning af medlemmer af kapitalselskabets ledelse.

### Måltal og politikker for det underrepræsenterede køn

**§ 139 a.** I statslige aktieselskaber, i selskaber, som har kapitalandele, gældsinstrumenter eller andre værdipapirer optaget til handel på et reguleret marked i EU/EØS-land, og i store kapitalselskaber, jf. stk. 2, skal

1) det øverste ledelsesorgan opstille måltal for andelen af det underrepræsenterede køn i det øverste ledelsesorgan og

2) det centrale ledelsesorgan udarbejde en politik for at øge andelen af det underrepræsenterede køn på kapitalselskabets øvrige ledelsesniveauer, jf. dog stk. 3-6.

*Stk. 2.* Store kapitalselskaber er selskaber, der overskrider to af følgende kriterier i 2 på hinanden følgende regnskabsår:

1) En balancesum på 143 mio. kr.,

2) en nettoomsætning på 286 mio. kr. og

3) et gennemsnitligt antal heltidsbeskæftigede på 250.

*Stk. 3.* For moderselskaber, der udarbejder koncernregnskab, er det tilstrækkeligt, at der opstilles måltal og udarbejdes en politik, jf. stk. 1, for koncernen som helhed.

*Stk. 4.* Et datterselskab, som indgår i en koncern, kan undlade at opstille måltal og udarbejde en politik, jf. stk. 1, hvis moderselskabet opstiller måltal og udarbejder en politik for den samlede koncern.

*Stk. 5.* Ved opstilling af måltal, jf. stk. 1, nr. 1, er statslige aktieselskaber også omfattet af § 11, stk. 2, i lov om ligestilling af kvinder og mænd.

*Stk. 6.* Kapitalselskaber, der i det seneste regnskabsår har beskæftiget færre end 50 medarbejdere, kan undlade at udarbejde en politik for at øge andelen af det underrepræsenterede køn på deres øvrige ledelsesniveauer, jf. stk. 1, nr. 2.

# Kapitel 8. *Medarbejderrepræsentation*

### Selskabsrepræsentation

**§ 140.** I kapitalselskaber, der i de sidste tre år har beskæftiget gennemsnitligt mindst 35 medarbejdere, har selskabets medarbejdere ret til at vælge et antal medlemmer til selskabets øverste ledelsesorgan og suppleanter for disse svarende til halvdelen af de øvrige ledelsesmedlemmer. Medarbejdere i et selskabs udenlandske filial, der er beliggende i et andet EU/EØS-land, betragtes som ansatte i selskabet. Medarbejderne kan dog altid vælge mindst 2 medlemmer og suppleanter for disse. Såfremt det antal medlemmer, der skal

Copyright © 2015 Karnov Group Denmark A/S

vælges af medarbejderne, ikke udgør et helt tal, skal der afrundes opad.

*Stk. 2.* Medarbejderne har ret til at vælge et lavere antal medlemmer og suppleanter, hvis der ikke kan vælges det antal, som medarbejderne har ret til efter stk. 1.

### Koncernrepræsentation

**§ 141.** § 140 finder tilsvarende anvendelse på medarbejderne i et dansk moderselskab, jf. §§ 6 og 7, og dets datterselskaber, som er registrerede i Danmark, samt disses udenlandske filialer, der er beliggende i et EU/EØS-land.

*Stk. 2.* Omfattes moderselskabet af § 140, har medarbejderne i moderselskabet ret til at vælge 2 medlemmer og suppleanter for disse. Det samlede antal medarbejdervalgte medlemmer i moderselskabets øverste ledelsesorgan skal udgøre halvdelen af de øvrige medlemmer, dog skal der mindst være 3 medarbejdervalgte medlemmer. Medarbejderne har ret til at vælge et lavere antal medlemmer og suppleanter, hvis der ikke kan vælges det antal, som medarbejderne har ret til efter 1. pkt.

*Stk. 3.* Generalforsamlingen i moderselskabet kan med respekt for reglerne om grænseoverskridende fusion og spaltning i kapitel 16 og i lov om SE-selskaber beslutte, at medarbejdere i et eller flere udenlandske datterselskaber kan indgå i kredsen af valgbare og stemmeberettigede. Hvis koncernen har medarbejdere i danske datterselskaber, skal disse altid kunne vælge mindst 1 repræsentant. Hvis medarbejderne i de danske datterselskaber udgør mere end 10 pct. af det samlede antal, der kan deltage i valget, skal de kunne vælge mindst 2 repræsentanter. Hvis der ikke opnås flertal, jf. § 142, til ordningen på koncernplan, men flertallet af de danske datterselskaber stemmer for koncernrepræsentation, skal medarbejderrepræsentationsordningen betragtes som vedtaget af medarbejderne i de danske datterselskaber, således at koncernvalget alene skal gennemføres i de danske datterselskaber.

### Valg af medarbejderrepræsentanter

**§ 142.** Beslutning om valg af medlemmer til det øverste ledelsesorgan i henhold til §§ 140 og 141 kræver, at mindst halvdelen af kapitalselskabets henholdsvis datterselskabernes medarbejdere stemmer herfor, medmindre der er enighed mellem ledelse og medarbejdere om ikke at gennemføre en afstemning herom. Beslutningen meddeles det øverste ledelsesorgan på en måde, der kan dokumenteres efterfølgende.

**§ 143.** Erhvervsstyrelsen kan fastsætte regler om,

1) hvem der anses som medarbejder i relation til medarbejderrepræsentation,

2) beregningen af det gennemsnitlige antal medarbejdere i forhold til §§ 140 og 141,

3) den nærmere gennemførelse af valg efter §§ 140-142, herunder regler, der sikrer hemmelig afstemning,

4) muligheden for, at konkrete bestemmelser, der er fastsat i medfør af denne paragraf, kan fraviges i enighed mellem ledelse og medarbejdere, herunder regler om etablering af frivillige ordninger om medarbejderrepræsentation og det centrale ledelsesorgans adgang til at ændre kapitalselskabets vedtægter som følge heraf,

5) hvordan medarbejderne i kapitalselskaber og koncerner, hvor der er valgt bestyrelsesmedlemmer efter §§ 140 og 141, skal orienteres om selskabets forhold,

6) beskyttelse af ansættelsen for de medarbejdervalgte ledelsesmedlemmer, herunder medlemmer, der er valgt ved frivillige ordninger, og om behandling af uoverensstemmelser herom,

7) konsekvenser af overtrædelse af reglerne i lovgivningen og af regler udstedt i medfør heraf,

8) at ejerbogen tillige skal være tilgængelig for en repræsentant for medarbejderne i selskaber og moderselskaber, hvor medarbejderne ikke har valgt bestyrelsesmedlemmer i henhold til §§ 140 og 141, og

9) eventuel meddelelse om indkaldelse til generalforsamling til selskabets henholdsvis koncernens medarbejdere, dersom disse har afgivet meddelelse til bestyrelsen om, at der skal afholdes valg til medarbejderrepræsentation.

# Kapitel 9. *Revision og granskning*

### Revision

**§ 144.** Hvis et kapitalselskab er omfattet af revisionspligt efter årsregnskabsloven eller anden lovgivning, eller hvis generalforsamlingen i øvrigt beslutter, at selskabets årsregnskab skal revideres, skal generalforsamlingen vælge en eller flere godkendte revisorer samt eventuelle suppleanter for disse. Beslutning herom kan træffes med simpelt stemmeflertal efter § 105. Vedtægterne kan endvidere tillægge andre ret til at udpege yderligere en eller flere revisorer.

*Stk. 2.* En kapitalejer kan kræve, at Erhvervsstyrelsen yderligere udnævner en godkendt revisor, der skal deltage i revisionen sammen med den eller de øvrige revisorer frem til næste generalforsamling, hvis

1) kapitalejere, der ejer mindst 1/10 af kapitalen, har stemt for en yderligere revisor på en generalforsamling, hvor valg af revisor var på dagsordenen, og

2) kravet fremsættes, senest 2 uger efter generalforsamlingen er afholdt.

*Stk. 3.* Erhvervsstyrelsen kan udnævne en revisor, hvis et revisionspligtigt kapitalselskab ikke har den påkrævede revisor og et medlem af ledelsen eller en kapitalejer anmoder herom. Udnævnelsen gælder, indtil ny revisor er valgt af generalforsamlingen.

*Stk. 4.* I de tilfælde, der er nævnt i stk. 2 og 3, registreres revisors indtræden uden anmeldelse. Erhvervsstyrelsen fastsætter vederlaget til den udpegede revisor. Omkostninger ved den lovpligtige revision af selskabets årsregnskab m.v. afholdes af statskassen, men dækkes endeligt af kapitalselskabet.

*Stk. 5.* Hvis revisor skal erklære sig om et kapitalselskabs forhold, er revisor underlagt de rettigheder og pligter, som følger af denne lov, medmindre det konkret sondres mellem generalforsamlingsvalgte revisorer, der er valgt til at revidere årsregnskabet, jf. stk. 1, og andre revisorer.

**§ 145.** Et datterselskab i en koncern i henhold til årsregnskabsloven, hvor modervirksomheden er et statsligt aktieselskab eller en virksomhed, hvis værdipapirer er optaget til handel på et reguleret marked, skal så vidt muligt vælge samme revisor, som er valgt af modervirksomhedens generalforsamling. Hvis dette ikke er muligt, skal datterselskabet i stedet så vidt muligt vælge en revisor, som er samarbejdspartner med den revisor, som er valgt af modervirksomhedens generalforsamling.

**§ 146.** Revisor kan afsættes af den, der har valgt revisor. En revisor, der er valgt til at revidere selskabets årsregnskab i henhold til § 144, kan kun afsættes før hvervets udløb, hvis et begrundet forhold giver anledning hertil.

*Stk. 2.* Fratræder en generalforsamlingsvalgt revisor, jf. § 144, stk. 1, eller ophører revisionen på anden måde, inden revisors hverv udløber, skal revisor hurtigst muligt meddele dette til Erhvervsstyrelsen. Meddelelsen skal vedlægges en fyldestgørende forklaring på årsagen til hvervets ophør, hvis fratrædelsen eller ophøret er sket inden hvervets udløb. I selskaber, der har værdipapirer optaget

til handel på et reguleret marked, skal en generalforsamlingsvalgt revisor tillige hurtigst muligt give meddelelse om sin fratræden til markedet efter reglerne i værdipapirhandelsloven.

*Stk. 3.* Fratræder selskabets revisor, der er valgt til at revidere selskabets årsregnskab, jf. § 144, stk. 1, eller ophører funktionen på anden måde, jf. stk. 1, og der ingen suppleant til at indtræde i dennes sted, skal det centrale ledelsesorgan snarest foranledige valg af ny revisor efter § 144, stk. 1. Ekstraordinær generalforsamling skal indkaldes med henblik herpå, senest 2 uger efter at fratrædelsen er meddelt selskabet. I statslige aktieselskaber og i selskaber, hvis værdipapirer er optaget til handel på et reguleret marked, skal indkaldelsen dog ske, senest 8 dage efter at fratrædelsen er meddelt selskabet.

**§ 147.** Selskabets revisor, der er valgt til at revidere selskabets årsregnskab, jf. § 144, stk. 1, skal efterkomme de krav vedrørende revisionen, som generalforsamlingen stiller, for så vidt de ikke strider mod lov, mod selskabets vedtægter eller mod god revisionsskik.

*Stk. 2.* Revisor skal endvidere påse, om selskabets ledelse overholder sine forpligtelser til at udarbejde forretningsorden og til at oprette og føre bøger, fortegnelser og protokoller, samt om reglerne om forelæggelse og underskrivelse af revisionsprotokollen er overholdt.

*Stk. 3.* Konstaterer revisor, at krav i henhold til stk. 2 ikke er opfyldt, skal revisor udfærdige en særskilt erklæring herom til generalforsamlingen, medmindre der på generalforsamlingen skal ske godkendelse af selskabets årsrapport og forholdet er omtalt i revisionspåtegningen på årsrapporten.

**§ 148.** Ændringer vedrørende revisor, der er valgt i henhold til § 144, skal registreres i Erhvervsstyrelsens it-system eller anmeldes til styrelsen, jf. § 9. Hvis revisorskifte sker inden hvervets udløb, gælder bestemmelsen i § 10, stk. 2.

**§ 149.** Revisor kan af medlemmerne af selskabets ledelse kræve de oplysninger, som må anses af betydning for bedømmelsen af selskabet og, hvis selskabet er et moderselskab, dets koncern, jf. § 7. Det samme gælder i forhold til medlemmer af ledelsen i et dansk selskab, der er datterselskab i en koncern i henhold til årsregnskabsloven.

### Granskning

**§ 150.** En kapitalejer kan på den ordinære generalforsamling eller på en generalforsamling, hvor emnet er sat på dagsordenen, fremsætte forslag om en granskning af selskabets stiftelse eller af nærmere angivne forhold vedrørende selskabets forvaltning eller af visse regnskaber. Vedtages forslaget med simpel stemmeflerhed, vælger generalforsamlingen en eller flere granskningsmænd.

*Stk. 2.* Vedtages forslaget ikke, men opnår det dog tilslutning fra kapitalejere, som repræsenterer 25 pct. af selskabskapitalen, kan en kapitalejer senest 4 uger efter generalforsamlingens afholdelse anmode skifteretten på selskabets hjemsted om at udnævne granskningsmænd. Skifteretten skal give selskabets ledelse og eventuelle generalforsamlingsvalgte revisor, der er valgt til at revidere selskabets årsregnskab, jf. § 144, stk. 1, og i givet fald den, hvis forhold anmodningen omfatter, adgang til at udtale sig, før retten træffer sin afgørelse. Anmodningen skal kun tages til følge, såfremt skifteretten finder den tilstrækkelig begrundet. Skifteretten fastsætter antallet af granskningsmænd. Skifterettens afgørelser er genstand for kære.

*Stk. 3.* Bestemmelserne om uafhængighed i revisorlovens § 24 finder tilsvarende anvendelse for granskningsmænd efter stk. 1 og 2.

**§ 151.** Granskningsmanden kan af ledelsen kræve de oplysninger, som må anses af betydning for bedømmelsen af selskabet og, hvis selskabet er et moderselskab, dets koncern i henhold til årsregnskabsloven. Det samme gælder i forhold til ledelsen i et dansk selskab, der er datterselskab i en koncern i henhold til årsregnskabsloven.

**§ 152.** Granskningsmændene skal afgive en skriftlig beretning til generalforsamlingen og er berettiget til at få et vederlag af selskabet. Er granskningsmændene udnævnt af skifteretten, fastsættes vederlaget af denne.

*Stk. 2.* Senest 8 dage før generalforsamlingen skal granskningsmændenes beretning gøres tilgængelig for kapitalejerne til eftersyn.

## Kapitel 10. *Kapitalforhøjelser*

**§ 153.** Forhøjelse af kapitalselskabets kapital kan ske ved
1)   tegning af nye kapitalandele,
2)   overførsel af selskabets reserver til selskabskapital ved fondsforhøjelse eller
3)   udstedelse af konvertible gældsbreve eller warrants.

*Stk. 2.* Nye kapitalandele kan ikke tegnes under forbehold eller til underkurs.

### *Generalforsamlingens beslutning om kapitalforhøjelse*

**§ 154.** Generalforsamlingen træffer beslutning om forhøjelse af selskabskapitalen efter reglerne i dette kapitel.

*Stk. 2.* Beslutning efter stk. 1 træffes med det stemmeflertal, der kræves til vedtægtsændring.

**§ 155.** Generalforsamlingen kan ved bestemmelse i vedtægterne bemyndige det centrale ledelsesorgan til at forhøje selskabskapitalen. Bemyndigelsen kan gives for en eller flere perioder på indtil 5 år ad gangen.

*Stk. 2.* Generalforsamlingen kan endvidere ved bestemmelse i vedtægterne bemyndige det centrale ledelsesorgan til at udstede konvertible gældsbreve eller warrants, jf. § 169, hvis den samtidig bemyndiger det centrale ledelsesorgan til at foretage den dertil hørende kapitalforhøjelse, jf. stk. 1. Bemyndigelsen kan gives for en eller flere perioder på indtil 5 år ad gangen.

*Stk. 3.* Ved bemyndigelse efter stk. 1 og 2 skal vedtægterne angive,
1)   hvilken af forhøjelsesmetoderne, som er angivet i dette kapitel, bemyndigelsen vedrører,
2)   datoen for ophøret af den periode, der er nævnt i stk. 1 eller stk. 2, 2. pkt.,
3)   det højeste beløb, hvormed det centrale ledelsesorgan kan forhøje kapitalen, samt
4)   bestemmelser om de forhold, der er nævnt i § 158, nr. 2, 6, 7 og 10-12.

*Stk. 4.* Hvis forhøjelsen helt eller delvis skal kunne ske på anden måde end ved kontant indbetaling, skal dette angives i vedtægterne. Der skal endvidere gives oplysning om generalforsamlingens beslutning om eventuelle afvigelser fra de hidtidige kapitalejeres fortegningsret, jf. § 162.

### *Procedurekrav ved kapitalforhøjelser*

**§ 156.** Forslag om kapitalforhøjelse skal i aktieselskaber gøres tilgængelige for aktionærerne, jf. §§ 98 og 99, og fremlægges på generalforsamlingen.

*Stk. 2.* Hvis årsrapporten for sidste regnskabsår ikke skal behandles på samme generalforsamling, skal der i et aktieselskab fremlægges følgende dokumenter:
1)   Den seneste godkendte årsrapport,

2) en beretning fra selskabets centrale ledelsesorgan, som i den udstrækning, det ikke på grund af særlige omstændigheder kan skade selskabet, skal oplyse om begivenheder af væsentlig betydning for selskabets stilling, som er indtruffet efter aflæggelse af årsrapporten, og

3) en erklæring fra selskabets revisor om det centrale ledelsesorgans beretning, hvis selskabets årsregnskab m.v. er omfattet af revisionspligt efter årsregnskabsloven eller anden lovgivning.

*Stk. 3.* Hvis beslutningen om kapitalforhøjelsen skal træffes af generalforsamlingen, kan aktionærerne i enighed beslutte at fravige stk. 1 og 2. Hvis beslutningen om kapitalforhøjelsen skal træffes af det centrale ledelsesorgan efter forudgående bemyndigelse fra generalforsamlingen, jf. § 155, finder stk. 2 tilsvarende anvendelse ved det centrale ledelsesorgans udnyttelse af bemyndigelsen. Det centrale ledelsesorgan kan dog træffe beslutning om fravigelse af stk. 2, medmindre generalforsamlingen i forbindelse med meddelelsen af bemyndigelsen til det centrale ledelsesorgan har truffet beslutning om, at procedurekravene i henhold til stk. 2 ikke kan fraviges.

### Krav til indkaldelsen

**§ 157.** Indkaldelsen til generalforsamlingen skal i forbindelse med kapitalforhøjelser i aktieselskaber indeholde oplysning om den fortegningsret, som tilkommer aktionærer eller andre, samt oplysning om, hvordan de tegningsberettigede skal forholde sig, hvis de vil benytte sig af deres tegningsret.

*Stk. 2.* Hvis der gøres afvigelse fra aktionærernes fortegningsret, jf. § 162, skal indkaldelsen oplyse årsagen hertil samt begrundelsen for den foreslåede tegningskurs.

*Stk. 3.* Stk. 1 og 2 kan i enighed fravælges af aktionærerne.

### Beslutningens indhold

**§ 158.** Beslutning om forhøjelse af selskabskapitalen ved tegning af nye kapitalandele skal angive

1) det mindste og højeste beløb, som selskabskapitalen skal kunne forhøjes med,

2) om der kan ske delvis indbetaling,

3) tegningskursen og kapitalandelenes størrelse eller antal,

4) hvornår de nye kapitalandele giver ret til udbytte og andre rettigheder i kapitalselskabet,

5) de anslåede omkostninger ved forhøjelsen, som kapitalselskabet skal betale,

6) den klasse, de nye kapitalandele skal høre til, hvis der er eller skal være forskellige klasser,

7) kapitalejernes eller andres fortegningsret, samt den eventuelle indskrænkning i de nye kapitalejeres fortegningsret ved fremtidige forhøjelser, jf. § 162,

8) tegningsfristen samt en frist på mindst 2 uger fra tidspunktet for afsendelse af underretning til kapitalejerne, inden for hvilken kapitalejerne skal udnytte fortegningsretten,

9) fristen for kapitalandelenes indbetaling samt, i de tilfælde, hvor fordelingen ikke er overladt til det centrale ledelsesorgan, reglerne for fordeling ved overtegning af de kapitalandele, som ikke er tegnet på grundlag af fortegningsret,

10) eventuelle indskrænkninger i de nye kapitalandeles omsættelighed eller pligt for de nye kapitalejere til at lade deres kapitalandele indløse,

11) om de nye kapitalandele er omsætningspapirer, og

12) hvorvidt de nye aktier skal lyde på navn eller ihændehaver.

**§ 159.** Hvis selskabets centrale ledelsesorgan udnytter en bemyndigelse til forhøjelse af kapitalen ved tegning af nye kapitalandele meddelt i henhold til § 155, skal beslutningen angive

1) det mindste og højeste beløb, selskabskapitalen skal kunne forhøjes med,

2) tegningskursen og kapitalandelenes størrelse eller antal,

3) hvornår de nye kapitalandele giver ret til udbytte og andre rettigheder i kapitalselskabet,

4) de anslåede omkostninger ved forhøjelsen, som kapitalselskabet skal betale,

5) tegningsfristen samt en frist på mindst 2 uger fra tidspunktet for afsendelse af underretning til kapitalejerne, inden for hvilken kapitalejerne skal udnytte fortegningsretten,

6) fristen for kapitalandelens indbetaling samt reglerne for fordeling ved overtegning af de kapitalandele, som ikke er tegnet på grundlag af fortegningsret,

7) om de nye kapitalandele kan indbetales i andre værdier end kontanter, jf. § 160, eller

8) om de nye kapitalandele kan indbetales ved konvertering af gæld, jf. § 161.

*Stk. 2.* For det centrale ledelsesorgans beslutning efter stk. 1 finder §§ 163 og 164 tilsvarende anvendelse.

*Stk. 3.* Det centrale ledelsesorgan kan foretage de ændringer af vedtægterne, som er en følge af kapitalforhøjelsen.

### Indbetaling i værdier eller ved konvertering af gæld

**§ 160.** Hvis nye kapitalandele kan indbetales i andre værdier end kontanter, skal forhøjelsesbeslutningen indeholde bestemmelser herom, og der skal udarbejdes en vurderingsberetning, jf. §§ 36 og 37. Hvis det centrale ledelsesorgan udarbejder en erklæring efter reglerne i § 38, stk. 2, er der ikke pligt til at indhente vurderingsberetning ved indskud af aktiver som nævnt i § 38, stk. 1. Det centrale ledelsesorgan skal offentliggøre erklæringen i Erhvervsstyrelsens it-system senest 2 uger efter beslutningen om indskuddet, jf. § 9, stk. 3. Balancen efter § 36, stk. 3, udarbejdes som en overtagelsesbalance for den overtagne virksomhed.

**§ 161.** Hvis nye kapitalandele kan indbetales ved konvertering af gæld, skal forhøjelsesbeslutningen indeholde bestemmelserne herom.

*Stk. 2.* Det centrale ledelsesorgan skal redegøre for årsagen til og tidspunktet for gældsstiftelsen og for grundene til forslaget om konvertering.

*Stk. 3.* I aktieselskaber skal det centrale ledelsesorgans redegørelse og eventuelt yderligere udarbejdede dokumenter gøres tilgængelige for aktionærerne, jf. §§ 98 og 99, samt fremlægges på generalforsamlingen.

*Stk. 4.* Stk. 2 kan i enighed fraviges af kapitalejerne.

*Stk. 5.* Kravet i stk. 3 kan i enighed fravælges af aktionærerne.

### Ret til forholdsmæssig tegning

**§ 162.** Ved enhver kontant forhøjelse af selskabskapitalen har kapitalejerne ret til forholdsmæssig tegning af de nye kapitalandele. Vedtægterne kan bestemme, at fortegningsretten ikke kan overdrages til tredjemand.

*Stk. 2.* Generalforsamlingen kan med samme flertal, som kræves til vedtægtsændring, jf. § 106, beslutte at fravige fortegningsretten, jf. stk. 1, til fordel for andre.

*Stk. 3.* Hvis der er flere klasser af kapitalandele, for hvilke stemmeretten eller retten til udbytte eller udlodning af selskabets midler er forskellig, kan der i vedtægterne tillægges kapitalejerne i disse klasser forlods ret til at tegne kapitalandele inden for deres egen

Copyright © 2015 Karnov Group Denmark A/S

klasse. Kapitalejerne i de øvrige klasser kan i så fald først herefter udøve deres fortegningsret i henhold til stk. 1.

*Stk. 4.* Generalforsamlingen kan med samme flertal, som kræves til vedtægtsændring, jf. § 106, beslutte at fravige fortegningsretten, jf. stk. 1 og 3, til fordel for medarbejderne i selskabet eller dets datterselskab. Med samme flertal kan generalforsamlingen fastsætte en favørkurs for de kapitalandele, der tilbydes medarbejderne.

*Stk. 5.* Generalforsamlingen kan dog kun beslutte større afvigelser fra kapitalejernes fortegningsret end angivet i indkaldelsen, såfremt de kapitalejere, hvis fortegningsret forringes, samtykker heri.

*Stk. 6.* Hvis der er flere kapitalklasser i selskabet, er en beslutning, der medfører en forskydning i retsforholdet mellem klasserne, kun gyldig, hvis den tiltrædes af kapitalejere, der ejer mindst 2/3 af den del af den kapitalklasse, hvis retsstilling forringes, og som deltager på generalforsamlingen.

## Tegning af nye kapitalandele

**§ 163.** Tegning af nye kapitalandele skal ske skriftligt.

*Stk. 2.* Ved tegningen skal vedtægterne og de dokumenter, der er omhandlet i § 156, fremlægges, medmindre det er besluttet, at de ikke skal udarbejdes, jf. § 156, stk. 3. Omfattes kapitaltegningen af bestemmelserne i §§ 160 og 161, skal de dokumenter, der er omhandlet i disse bestemmelser, fremlægges ved tegningen, medmindre det er besluttet, at de ikke skal udarbejdes.

*Stk. 3.* Kapitalejerne skal efter reglerne om indkaldelse til generalforsamling have underretning om mulighenden for tegning samt om fristen for udøvelse af fortegningsretten. I aktieselskaber, hvor samtlige aktionærer er kendt, kan de enkelte aktionærer i stedet underrettes skriftligt.

**§ 164.** Beslutningen om vedtægtsændringer, som forudsætter en kapitalforhøjelse, bortfalder, hvis det fastsatte mindstebeløb for kapitalforhøjelsen ikke er tegnet inden for den frist, som er fastsat i beslutningen. Det, som er indbetalt på kapitalen, skal i så fald hurtigst muligt betales tilbage.

## Udstedelse af fondsandele

**§ 165.** Kapitalselskabet kan udstede fondsandele ved at overføre beløb til selskabskapitalen, som i selskabets senest godkendte årsrapport er opført som

1) overført overskud eller
2) reserver med undtagelse af reserve i henhold til årsregnskabslovens §§ 35 a og 35 b, jf. dog stk. 2.

*Stk. 2.* Til udstedelse af fondsandele kan selskabet desuden anvende

1) overskud i det indeværende regnskabsår, hvis beløbet ikke er uddelt, forbrugt eller bundet, eller
2) frie reserver, der er opstået eller blevet frigjort i det indeværende regnskabsår.

*Stk. 3.* Beslutning i henhold til stk. 1 og 2 skal angive det beløb, selskabskapitalen skal forhøjes med, samt kapitalandelenes størrelse eller antal. § 158, stk. 1, nr. 3, nr. 6 og nr. 9-11, finder tilsvarende anvendelse.

*Stk. 4.* Kapitalforhøjelsen kan ikke gennemføres, før beslutningen er registreret.

*Stk. 5.* Hvis fondsforhøjelsen ikke er registreret eller anmeldt til registrering senest 12 måneder efter beslutningen, er beslutningen om kapitalforhøjelsen og de deraf følgende vedtægtsændringer bortfaldet.

**§ 166.** Hvis der er forløbet 3 år efter registreringen af en fondsforhøjelse, uden at samtlige kapitalandele er overdraget til de berettigede, kan kapitalselskabets centrale ledelsesorgan ved bekendtgørelse i Erhvervsstyrelsens it-system opfordre den eller de pågældende til inden for 6 måneder at afhente andelene.

*Stk. 2.* Når fristen efter stk. 1 er udløbet, uden at henvendelse er sket, kan det centrale ledelsesorgan for kapitalejerens regning afhænde kapitalandelene gennem en værdipapirhandler, jf. § 4, stk. 1, i lov om værdipapirhandel m.v. I salgsprovenuet kan selskabet fradrage omkostningerne ved bekendtgørelsen og afhændelsen. Er salgsprovenuet ikke afhentet senest tre år efter afhændelsen, tilfalder beløbet kapitalselskabet.

## Udstedelse af konvertible gældsbreve og warrants

**§ 167.** Generalforsamlingen kan med det flertal, der kræves til vedtægtsændring, beslutte at udstede konvertible gældsbreve eller warrants, hvis den samtidig træffer beslutning om den kapitalforhøjelse, der hører hertil, jf. § 154.

*Stk. 2.* Generalforsamlingens beslutning skal indeholde de nærmere vilkår for udstedelsen, herunder størstebeløbet af den kapitalforhøjelse, der skal kunne tegnes på baggrund af værdipapiret, og til hvilken klasse de nye kapitalandele skal høre.

*Stk. 3.* Generalforsamlingens beslutning efter stk. 1 skal endvidere tage stilling til modtagerens retsstilling, hvis generalforsamlingen træffer beslutning om en eller flere af følgende forhold, inden modtageren har konverteret gældsbrevet eller udnyttet en tildelt warrant:

1) Kapitalforhøjelse,
2) kapitalnedsættelse,
3) udstedelse af nye warrants,
4) udstedelse af nye konvertible gældsbreve,
5) opløsning,
6) fusion eller
7) spaltning.

*Stk. 4.* Vilkårene i generalforsamlingens beslutning efter stk. 2 og 3 skal oplyses over for modtageren af konvertible gældsbreve eller warrants.

**§ 168.** Generalforsamlingens beslutning i henhold til § 167 skal i sin helhed optages i vedtægterne. Når fristen for udnyttelse af kapitalforhøjelsen er udløbet, kan selskabets centrale ledelsesorgan slette bestemmelsen.

**§ 169.** Det centrale ledelsesorgan kan efter bemyndigelse, jf. § 155, stk. 2, træffe beslutning om udstedelse af konvertible gældsbreve eller warrants.

*Stk. 2.* Det centrale ledelsesorgans beslutning skal indeholde de nærmere vilkår for udstedelsen, herunder

1) størstebeløbet af den kapitalforhøjelse, der skal kunne tegnes på baggrund af værdipapiret,
2) den klasse, de nye kapitalandele skal tilhøre,
3) fristen for tegning af kapitalandele samt en frist på mindst 2 uger fra tidspunktet for afsendelse af underretning til kapitalejerne, inden for hvilken kapitalejerne skal udnytte fortegningsretten,
4) tidspunktet for rettighedernes indtræden,
5) fristen for indbetaling og
6) kapitalandelenes størrelse eller antal og tegningskurs.

*Stk. 3.* Det centrale ledelsesorgan skal i dets beslutning efter stk. 1 endvidere tage stilling til modtagerens retsstilling, hvis følgende forhold gennemføres, inden modtageren har konverteret gældsbrevet eller udnyttet en tildelt warrant:

1) Kapitalforhøjelse,
2) kapitalnedsættelse,
3) udstedelse af nye warrants,
4) udstedelse af nye konvertible gældsbreve,
5) opløsning,
6) fusion eller
7) spaltning.

*Stk. 4.* Vilkårene i det centrale ledelsesorgans beslutning efter stk. 2 og 3 samt det centrale ledelsesorgans bemyndigelse, jf. § 155, stk. 2, skal oplyses over for modtageren af konvertible gældsbreve eller warrants.

*Stk. 5.* Ved det centrale ledelsesorgans beslutning om kapitalforhøjelse som følge af konvertering af konvertible gældsbreve eller udnyttelse af warrants finder § 159 tilsvarende anvendelse.

**§ 170.** Det centrale ledelsesorgans beslutning i henhold til § 169 skal i sin helhed optages i vedtægterne. Det centrale ledelsesorgan kan foretage de ændringer af vedtægterne, som er en følge af beslutningen.

**§ 171.** Hvis det beløb, der er indbetalt for et gældsbrev, er mindre end det modsvarende beløb af den eller de kapitalandele, som gældsbrevet ifølge lånevilkårene kan ombyttes med, skal det resterende beløb indbetales i overensstemmelse med § 33 om delvis indbetaling af kapitalen eller dækkes af den del af selskabets egenkapital, der kan anvendes til udbytte.

### Betingelser for konvertible gældsbreves registrering i en værdipapircentral

**§ 172.** Erhvervsstyrelsen kan fastsætte regler om
1)   betingelser for konvertible gældsbreves registrering i en værdipapircentral,
2)   afgivelse af oplysninger til en værdipapircentral,
3)   at selskabet skal bære samtlige omkostninger ved konvertible gældsbreves udstedelse gennem en værdipapircentral og ved konvertible gældsbreves indskrivning og opbevaring m.v. i et kontoførende institut, og
4)   at § 63 finder tilsvarende anvendelse ved konvertible gældsbreve.

### Anmeldelse af beslutning om kapitalforhøjelse

**§ 173.** Registrering eller anmeldelse til registrering af generalforsamlingens eller det centrale ledelsesorgans beslutning om forhøjelse af kapitalen efter reglerne i dette kapitel skal være modtaget i Erhvervsstyrelsen, senest 2 uger efter at fristen for kapitalandelenes indbetaling er udløbet eller indbetaling er sket.

*Stk. 2.* Registrering eller anmeldelse til registrering af generalforsamlingens eller det centrale ledelsesorgans beslutning om udstedelse af konvertible gældsbreve eller warrants og de tilhørende vedtægtsændringer, jf. §§ 168 og 170, skal være modtaget i Erhvervsstyrelsen, senest 2 uger efter at beslutningen er truffet.

**§ 174.** Registrering eller anmeldelse til registrering af gennemførelse af en kapitalforhøjelse kan ikke registreres, før den selskabskapital og eventuelle overkurs, der skal være indbetalt i henhold til denne lov, jf. § 33, eller vedtægterne, er indbetalt.

*Stk. 2.* De nye kapitalandele giver ret til udbytte og andre rettigheder i kapitalselskabet fra tidspunktet for kapitalforhøjelsens registrering, medmindre andet er bestemt i forhøjelsesbeslutningen. Rettighederne indtræder dog senest 12 måneder efter registreringen.

*Stk. 3.* Når registrering har fundet sted, anses selskabskapitalen forhøjet med den samlede værdi af kapitalforhøjelsen.

**§ 175.** Det centrale ledelsesorgan skal senest 4 uger efter udløbet af hvert regnskabsår registrere eller anmelde, hvor stor en kapitalforhøjelse der er foretaget i året, hvis

1)   tegning af kapitalandele sker på grundlag af konvertible gældsbreve eller warrants,
2)   den frist for tegningen, der er fastsat i beslutningen, er længere end 12 måneder og
3)   det fastsatte mindstebeløb for kapitalforhøjelsen er tegnet og indbetalt, jf. § 33.

*Stk. 2.* Det centrale ledelsesorgan kan foretage de ændringer af vedtægterne, som er en nødvendig følge af kapitalforhøjelsen.

*Stk. 3.* Er registrering eller anmeldelse i henhold til stk. 1 ikke modtaget i Erhvervsstyrelsen senest 4 uger efter tegningsfristens udløb, eller nægtes registrering, skal allerede indbetalte beløb tilbagebetales, jf. § 177, stk. 3.

**§ 176.** Når fristen for konvertering af konvertible gældsbreve eller udnyttelse af warrants er udløbet, skal det centrale ledelsesorgan hurtigst muligt registrere eller anmelde til Erhvervsstyrelsen, hvor stort et beløb af udstedte konvertible gældsbreve eller hvor mange warrants der er blevet ombyttet til kapitalandele. Er udnyttelsestiden længere end 12 måneder, skal det centrale ledelsesorgan foretage registrering eller anmeldelse efter reglerne i § 175.

*Stk. 2.* Det centrale ledelsesorgan kan foretage de ændringer af vedtægterne, som er en nødvendig følge af kapitalforhøjelsen.

### Bortfald af beslutning om kapitalforhøjelse

**§ 177.** Beslutningen om kapitalforhøjelsen bortfalder, hvis registrering nægtes.

*Stk. 2.* Beslutningen bortfalder også, hvis registrering ikke er sket eller anmeldelse ikke er modtaget senest 12 måneder efter beslutningen.

*Stk. 3.* Hvis beslutning om kapitalforhøjelse ikke bliver registreret, skal allerede indbetalte beløb med fradrag af omkostninger hurtigst muligt tilbagebetales, og andre værdier end kontanter skal hurtigst muligt leveres tilbage.

### Udbyttegivende gældsbreve

**§ 178.** Generalforsamlingen kan med simpelt flertal, jf. § 105, træffe beslutning om optagelse af lån mod udstedelse af gældsbreve med det til rente, hvis størrelse helt eller delvis er afhængig af det udbytte, kapitalselskabets kapitalandele afkaster, eller af årets overskud.

*Stk. 2.* Generalforsamlingen kan endvidere bemyndige det centrale ledelsesorgan til at optage lån efter stk. 1. Bemyndigelsen kan gives for en eller flere perioder på indtil 5 år ad gangen.

## Kapitel 11. *Kapitalafgang*

**§ 179.** Uddeling af selskabets midler til kapitalejerne kan kun finde sted

1)   som udbytte på grundlag af det senest godkendte årsregnskab, jf. § 180,
2)   som ekstraordinært udbytte, jf. §§ 182 og 183,
3)   som uddeling i forbindelse med nedsættelse af selskabskapitalen, jf. §§ 185-193, eller
4)   som udlodning i forbindelse med selskabets opløsning, jf. kapitel 14.

*Stk. 2.* Selskabets centrale ledelsesorgan er ansvarligt for, at uddeling ikke overstiger, hvad der er forsvarligt under hensyntagen til selskabets, og i moderselskaber koncernens, økonomiske stilling, og ikke sker til skade for selskabet eller dets kreditorer, jf. § 115, nr. 5, og § 116, nr. 5. Det centrale ledelsesorgan er desuden ansvarligt for, at der efter uddelingen er dækning for selskabskapitalen og de reserver, der er bundne i henhold til lov eller vedtægt.

### Udlodning af ordinært udbytte

**§ 180.** Generalforsamlingen træffer beslutning om fordeling af det beløb, der er til rådighed efter årsregnskabet, ved udlodning af udbytte. Generalforsamlingen må ikke beslutte udlodning af højere udbytte end foreslået eller tiltrådt af selskabets centrale ledelsesorgan.

*Stk. 2.* Som udbytte kan kun anvendes frie reserver, hvorved forstås beløb, som i selskabets senest godkendte årsregnskab er opført som overført overskud og reserver, som ikke er bundet i henhold til lov eller vedtægter, med fradrag af overført underskud.

**§ 181.** Sker en udbytteudbetaling i andre værdier end kontanter, skal der angives i vurderingsberetning, jf. §§ 36 og 37. Det skal i vurderingsmandens erklæring angives, at udbyttebeløbet mindst svarer til den ansatte værdi af de andre værdier end kontanter, der udloddes. Balancen efter § 36, stk. 3, udarbejdes som en overtagelsesbalance for den overdragne virksomhed. Hvis det centrale ledelsesorgan udarbejder og indsender en erklæring efter reglerne i § 38, stk. 2, er der ikke pligt til at indhente vurderingsberetning ved udlodning af aktiver som omtalt i § 38, stk. 1. Det centrale ledelsesorgan skal offentliggøre erklæringen i Erhvervsstyrelsens it-system senest 2 uger efter beslutningen om udlodningen, jf. § 9, stk. 3.

### Udlodning af ekstraordinært udbytte

**§ 182.** Generalforsamlingen kan træffe beslutning om udlodning af ekstraordinært udbytte, når selskabet har aflagt den første årsrapport. Generalforsamlingen må ikke beslutte udlodning af højere ekstraordinært udbytte end foreslået eller tiltrådt af selskabets centrale ledelsesorgan.

*Stk. 2.* Generalforsamlingen kan bemyndige selskabets centrale ledelsesorgan til efter aflæggelsen af det første årsregnskab at træffe beslutning om udlodning af ekstraordinært udbytte. Bemyndigelsen kan indeholde økonomiske og tidsmæssige begrænsninger.

*Stk. 3.* Som ekstraordinært udbytte efter stk. 1 og 2 kan kun anvendes midler, der er omfattet af § 180, stk. 2, samt optjent overskud og frie reserver, der er opstået eller blevet frigjort efter den periode, der senest er aflagt årsrapport for, medmindre beløbet er udloddet, forbrugt eller bundet.

**§ 183.** I aktieselskaber skal en beslutning om udlodning af ekstraordinært udbytte altid vedlægges en balance. Det centrale ledelsesorgan vurderer, om det er forsvarligt at vedlægge balancen fra seneste årsrapport, eller om der skal udarbejdes en mellembalance, der viser, at der er tilstrækkelige midler til rådighed for udlodningen, jf. dog stk. 2.

*Stk. 2.* Uanset stk. 1 skal der i aktieselskaber, hvor beslutningen om udlodning af ekstraordinært udbytte træffes mere end 6 måneder efter balancedagen i selskabets seneste godkendte årsrapport, altid udarbejdes en mellembalance, der viser, at der er tilstrækkelige midler til rådighed for udlodningen.

*Stk. 3.* I anpartsselskaber vurderer det centrale ledelsesorgan, om en beslutning efter stk. 1 skal vedlægges en balance. I anpartsselskaber, hvor beslutningen om udlodning af ekstraordinært udbytte træffes mere end 6 måneder efter balancedagen i selskabets seneste godkendte årsrapport, skal der dog altid udarbejdes en mellembalance, der viser, at der er tilstrækkelige midler til rådighed for udlodningen.

*Stk. 4.* Hvis der udarbejdes mellembalance efter stk. 1-3, skal mellembalancen være gennemgået af revisor, hvis selskabet er underlagt revisionspligt. Mellembalancen skal udarbejdes efter de regler, som kapitalselskabet udarbejder årsrapport efter. Mellembalancen må ikke have balancedag, der ligger mere end 6 måneder forud for beslutningen om udlodning af ekstraordinært udbytte.

*Stk. 5.* Sker en udlodning af ekstraordinært udbytte i andre værdier end kontanter, skal der udarbejdes en vurderingsberetning, jf. §§ 36 og 37. Det skal i vurderingsmandens erklæring angives, at udbyttebeløbet mindst svarer til den ansatte værdi af den eller de andre værdier end kontanter, der udloddes. Hvis det centrale ledelsesorgan udarbejder og indsender en erklæring efter reglerne i § 38, stk. 2, er der ikke pligt til at indhente vurderingsberetning ved udlodning af aktiver som omtalt i § 38, stk. 1. Det centrale ledelsesorgan skal offentliggøre erklæringen i Erhvervsstyrelsens it-system senest 2 uger efter beslutningen om udlodningen, jf. § 9, stk. 3. Balancen efter § 36, stk. 3, udarbejdes som en overtagelsesbalance for den overdragne virksomhed.

*Stk. 6.* Det centrale ledelsesorgans beslutning om udlodning af ekstraordinært udbytte skal optages i protokollen. Mellembalancen eller balancen for det seneste regnskabsår skal indgå i protokollen som bilag til den trufne beslutning.

### Særlige oplysningsforpligtelser ved udbytte

**§ 184.** Et aktieselskab, der er omfattet af regler udstedt i medfør af kapitel 8 i lov om værdipapirhandel m.v., må ikke foretage udlodning af selskabets midler, jf. § 179, til tilbudsgiveren eller dennes nærstående i de første 12 måneder efter gennemførelsen af overtagelsen af selskabet.

*Stk. 2.* Uanset stk. 1 kan der dog ske udlodning, hvis tilbudsgiveren har oplyst om udlodningen og de nærmere vilkår herfor i det tilbudsdokument, der skal udarbejdes i henhold til reglerne herom i lov om værdipapirhandel m.v. Oplysningen skal dog ikke gives, hvis udlodningen ikke overstiger en samlet forbedring af selskabets finansielle stilling efter overtagelsestidspunktet, og hvis udlodningen ikke var påregnelig for tilbudsgiveren ved udarbejdelsen af tilbudsdokumentet.

### Beslutning om kapitalnedsættelse

**§ 185.** Bestemmelserne i § 156 om proceduren ved beslutninger om kapitalforhøjelse finder tilsvarende anvendelse på beslutninger om kapitalnedsættelse i aktieselskaber.

**§ 186.** Beslutning om nedsættelse af selskabskapitalen træffes af generalforsamlingen med den stemmeflerhed, der kræves til vedtægtsændring.

**§ 187.** I anpartsselskaber kan generalforsamlingen ved bestemmelse i vedtægterne bemyndige det centrale ledelsesorgan til at gennemføre en kapitalnedsættelse indtil et vist beløb.

*Stk. 2.* Meddelelse til kreditorerne, jf. § 192, skal offentliggøres, senest 2 uger efter det centrale ledelsesorgan har truffet beslutning om at udnytte bemyndigelsen.

**§ 188.** Beslutningen om kapitalnedsættelse skal angive det beløb, hvormed selskabskapitalen nedsættes, samt til hvilket af følgende formål beløbet skal anvendes:

1) Dækning af underskud,
2) udbetaling til kapitalejere eller
3) henlæggelse til en særlig reserve.

*Stk. 2.* Det skal oplyses i beslutningen med angivelse af en eventuel overkurs, hvis udbetaling af kapitalselskabets midler skal ske med et højere beløb end nedsættelsesbeløbet.

*Stk. 3.* Kun kapitalnedsættelser til udbetaling eller henlæggelse til særlig reserve, jf. stk. 1, nr. 2 og 3, kan ske til underkurs.

**§ 189.** Generalforsamlingen kan kun træffe beslutning om anvendelse af nedsættelsesbeløbet til udbetaling til kapitalejerne eller henlæggelse til en særlig reserve, jf. § 188, stk. 1, nr. 2 og 3, hvis kapitalselskabets centrale ledelse stiller eller godkender forslag herom.

*Stk. 2.* Sker en kapitalnedsættelse efter stk. 1 til en lavere kurs end kapitalandelenes pålydende, overføres det resterende beløb op til kapitalandelenes pålydende til selskabets frie reserver.

**§ 190.** Der skal på beslutningstidspunktet foreligge en vurderingsberetning, jf. §§ 36 og 37, hvis en kapitalnedsættelse sker til udbetaling eller henlæggelse til en særlig reserve af andre værdier end kontanter.

*Stk. 2.* Erklæringen i vurderingsberetningen, jf. § 36, stk. 1, nr. 4, skal angive, at kapitalnedsættelsen med tillæg af eventuel overkurs

på beslutningstidspunktet mindst svarer til den ansatte værdi af den eller de andre værdier end kontanter, der uddeles. Balancen efter § 36, stk. 3, udarbejdes som en overtagelsesbalance for den overdragne virksomhed. Hvis det centrale ledelsesorgan udarbejder og indsender en erklæring efter reglerne i § 38, stk. 2, er der ikke pligt til at indhente vurderingsberetning ved udlodning af aktiver efter § 38, stk. 1. Det centrale ledelsesorgan skal offentliggøre erklæringen i Erhvervsstyrelsens it-system senest 2 uger efter beslutningen om udlodningen, jf. § 9, stk. 3.

### Anmeldelse af kapitalnedsættelse

**§ 191.** En beslutning om kapitalnedsættelse skal registreres eller anmeldes til registrering, jf. § 9, senest 2 uger efter at beslutningen er truffet. Beslutningen mister sin gyldighed, hvis den ikke er registreret eller anmeldt til registrering i Erhvervsstyrelsen inden for denne frist.

### Opfordring til kreditorerne

**§ 192.** Kapitalselskabets kreditorer skal ved kapitalnedsættelse til udbetaling til kapitalejerne eller henlæggelse til særlig reserve, jf. § 188, stk. 1, nr. 2 og 3, opfordres til at anmelde deres krav til selskabet inden for en frist på 4 uger. Dette sker ved Erhvervsstyrelsens registrering og offentliggørelse af det centrale ledelsesorgans beslutning om at nedsætte selskabskapitalen.

*Stk. 2.* Der skal ikke ske opfordring til kreditorerne i henhold til stk. 1, hvis kapitalen samtidig forhøjes ved tegning af mindst samme nominelle beløb med tillæg af overkurs som nedsættelsesbeløbet.

*Stk. 3.* (Ophævet)

### Gennemførelse af kapitalnedsættelsen

**§ 193.** Når kreditorernes frist for anmeldelse af krav til kapitalselskabet er udløbet, jf. § 192, kan det centrale ledelsesorgan træffe beslutning om at gennemføre kapitalnedsættelsen til udbetaling til kapitalejerne eller henlæggelse til særlig reserve, hvis det er forsvarligt at gennemføre kapitalnedsættelsen, jf. § 115, nr. 5, § 116, nr. 5, og § 118, stk. 2, 2. pkt., jf. dog stk. 4.

*Stk. 2.* 4 uger efter at kreditorernes frist for anmeldelse af krav til kapitalselskabet er udløbet, kan Erhvervsstyrelsen uden forudgående varsel registrere, at kapitalnedsættelsen til udbetaling til kapitalejerne eller henlæggelse til særlig reserve er gennemført, medmindre selskabet forinden har registreret eller anmeldt til registrering, at beslutningen om kapitalnedsættelsen skal annulleres, jf. stk. 3, eller at kapitalnedsættelsen først skal gennemføres ved en efterfølgende registrering eller anmeldelse til registrering til Erhvervsstyrelsen, jf. stk. 4 og 5. Erhvervsstyrelsen kan fastsætte bestemmelser om, at visse ændringer vedrørende kapitalselskabet efter registreringen af beslutningen om kapitalnedsættelsen, jf. § 191, medfører, at beslutningen om kapitalnedsættelsen annulleres, eller at kapitalnedsættelsen skal gennemføres ved en efterfølgende registrering eller anmeldelse til registrering til Erhvervsstyrelsen.

*Stk. 3.* Hvis en kapitalnedsættelse til udbetaling til kapitalejerne eller henlæggelse til særlig reserve ikke kan gennemføres i overensstemmelse med det offentliggjorte, jf. § 192, eller det ikke er forsvarligt at gennemføre kapitalnedsættelsen, jf. § 115, nr. 5, § 116, nr. 5, og § 118, stk. 2, 2. pkt., skal det centrale ledelsesorgan inden udløbet af fristen i stk. 2, 1. pkt., registrere eller anmelde til registrering, at beslutningen om kapitalnedsættelse annulleres.

*Stk. 4.* En kapitalnedsættelse til udbetaling til kapitalejerne eller henlæggelse til særlig reserve må ikke gennemføres, hvis anmeldte, forfaldne krav ikke er fyldestgjort og der ikke på forlangende er stillet betryggende sikkerhed for uforfaldne eller omtvistede krav.

Erhvervsstyrelsen afgør på en af parternes begæring, om en tilbudt sikkerhed må anses for betryggende.

*Stk. 5.* En kapitalnedsættelse til udbetaling til kapitalejerne eller henlæggelse til særlig reserve skal registreres eller anmeldes til registrering, jf. § 9, senest ved udløbet af indsendelsesfristen for den årsrapport, hvori tidspunktet for beslutningen om kapitalnedsættelsen indgår, dog senest 1 år efter beslutningen om kapitalnedsættelsen. Overskrides fristen, mister beslutningen om gennemførelse af kapitalnedsættelsen sin gyldighed.

### Tilbagebetaling

**§ 194.** Er der sket udbetaling til kapitalejere i strid med bestemmelserne i denne lov, skal disse tilbagebetale beløbet tillige med en årlig rente af beløbet svarende til den rente, der er fastsat efter § 5, stk. 1 og 2, i lov om renter ved forsinket betaling m.v., med et tillæg af 2 pct. For tilbagebetaling af udbytte gælder dette dog kun, hvis kapitalejeren indså eller burde have indset, at udbetalingen var ulovlig.

*Stk. 2.* Kan beløbet ikke inddrives, eller har kapitalejeren ikke tilbagebetalingspligt, er de, som har medvirket til beslutningen om udbetalingen eller gennemførelsen af denne eller til opstillingen eller godkendelsen af den urigtige regnskabsopgørelse, ansvarlige efter de almindelige erstatningsregler.

### Almennyttige gaver

**§ 195.** Generalforsamlingen kan beslutte, at der af kapitalselskabets midler ydes gaver til almennyttige eller dermed ligestillede formål, for så vidt det under hensyntagen til hensigten med gaven, selskabets økonomiske stilling og omstændighederne i øvrigt må anses for rimeligt. Til de i 1. pkt. nævnte formål kan det centrale ledelsesorgan anvende beløb, som i forhold til selskabets økonomiske stilling er af ringe betydning.

# Kapitel 12. *Egne kapitalandele*

### Erhvervelse af egne kapitalandele til eje eller pant

**§ 196.** Et kapitalselskab kan kun erhverve egne kapitalandele, der er fuldt indbetalt. Dette kan ske såvel til eje som til pant.

### Erhvervelse af egne kapitalandele mod vederlag

**§ 197.** Hvis et kapitalselskab erhverver egne kapitalandele mod vederlag, må selskabet hertil kun anvende beløb, der kan anvendes til udlodning af udbytte, jf. § 180, stk. 2. Selskabets beholdning af egne kapitalandele skal fradrages ved vurderingen af, om kravene til selskabskapital, jf. § 4, er overholdt.

*Stk. 2.* I det tilladte beholdning af egne kapitalandele medregnes kapitalandele, der er erhvervet af tredjemand i eget navn, men for selskabets regning.

**§ 198.** Erhvervelse af egne kapitalandele mod vederlag må kun ske efter bemyndigelse fra generalforsamlingen til kapitalselskabets centrale ledelsesorgan, jf. dog § 199.

*Stk. 2.* Bemyndigelsen kan kun gives for et bestemt tidsrum, der ikke må overstige 5 år.

*Stk. 3.* Bemyndigelsen skal angive

1)    den største værdi, som de egne kapitalandele må have, og
2)    det mindste og højeste beløb, som selskabet må yde som vederlag for kapitalandelene.

**§ 199.** Hvis det er nødvendigt for at undgå betydelig og truende skade for et kapitalselskab, kan det centrale ledelsesorgan på kapitalselskabets vegne erhverve selskabets egne kapitalandele mod vederlag efter §§ 196-198 uden generalforsamlingens bemyndigelse.

Copyright © 2015 Karnov Group Denmark A/S

*Stk. 2.* Det centrale ledelsesorgan skal, hvis kapitalselskabet i medfør af stk. 1 har erhvervet egne kapitalandele, underrette den førstkommende generalforsamling om

1) baggrunden for og formålet med de foretagne erhvervelser,
2) antallet og værdien af de erhvervede kapitalandele,
3) hvor stor en del af selskabskapitalen de erhvervede kapitalandele repræsenterer, og
4) vederlaget for de erhvervede kapitalandele.

**§ 200.** Uanset §§ 196-198 kan et kapitalselskab direkte eller indirekte erhverve egne kapitalandele

1) som led i en nedsættelse af selskabskapitalen efter kapitel 11,
2) som led i overgang af formuegoder ved fusion, spaltning og anden universalsuccession,
3) til opfyldelse af en lovbestemt indløsningspligt, som påhviler selskabet, eller
4) ved køb af fuldt indbetalte kapitalandele på tvangsauktion til fyldestgørelse af en fordring, der tilkommer selskabet.

### Datterselskabers erhvervelse af kapitalandele i moderselskaber

**§ 201.** §§ 196-200 finder tilsvarende anvendelse på et datterselskabs erhvervelse til eje eller pant af kapitalandele i dets moderselskab.

### Afhændelse af erhvervede kapitalandele

**§ 202.** Kapitalandele, som er erhvervet uden vederlag i overensstemmelse med § 196, og kapitalandele, som er erhvervet i overensstemmelse med § 200, nr. 2-4, skal afhændes, så snart det kan ske uden skade for kapitalselskabet, jf. dog stk. 2.
*Stk. 2.* Afhændelsen skal senest ske 3 år efter erhvervelsen, medmindre værdien af selskabets og dets datterselskabers samlede beholdning af kapitalandele i kapitalselskabet ikke overstiger selskabets frie reserver.

**§ 203.** Kapitalandele, der er erhvervet til eje i strid med §§ 196-201, skal afhændes snarest muligt og senest 6 måneder efter erhvervelsen.
*Stk. 2.* Er kapitalandele erhvervet til pant i strid med §§ 196-201, skal pantsætningen bringes til ophør snarest muligt og senest 6 måneder efter erhvervelsen.

**§ 204.** Hvis kapitalandele ikke er afhændet rettidigt efter §§ 202 og 203, skal kapitalselskabets centrale ledelsesorgan foranledige, at selskabskapitalen nedsættes med disse kapitalandeles værdi, jf. kapitel 11.

### Tegning af egne kapitalandele

**§ 205.** Et kapitalselskab må ikke tegne egne kapitalandele.
*Stk. 2.* Kapitalandele, der er tegnet af tredjemand i eget navn, men for selskabets regning, anses som tegnet for tredjemandens egen regning.
*Stk. 3.* Kapitalandele, der er tegnet i selskabets navn i strid med stk. 1, anses som tegnet af stifterne eller, i tilfælde af forhøjelse af selskabskapitalen, af medlemmerne af selskabets ledelse for egen regning og således, at disse hæfter solidarisk for købesummen. Dette gælder dog ikke stiftere eller medlemmer af selskabets ledelse, der godtgør, at de hverken indså eller burde have indset, at tegningen af kapitalandelene var ulovlig.
*Stk. 4.* Stk. 1 finder tilsvarende anvendelse på et selskabs tegning af kapitalandele i dets moderselskab. De pågældende kapitalandele i moderselskabet anses som tegnet af datterselskabets ledelse, jf. stk. 3.

## Kapitel 13. Økonomisk bistand med et kapitalselskabs egne midler

### Selvfinansiering

**§ 206.** Et kapitalselskab må ikke direkte eller indirekte stille midler til rådighed, yde lån eller stille sikkerhed for tredjemands erhvervelse af kapitalandele i selskabet eller i dets moderskab, jf. dog stk. 2 og §§ 213 og 214.
*Stk. 2.* Hvis betingelserne i stk. 3 og §§ 207-209 om generalforsamlingens godkendelse, krav til beslutningens forsvarlighed, det centrale ledelsesorgans redegørelse og sædvanlige markedsvilkår er opfyldt, kan et kapitalselskab dog direkte eller indirekte stille midler til rådighed, yde lån eller stille sikkerhed i forbindelse med tredjemands erhvervelse af kapitalandele i selskabet eller i dets moderselskab.
*Stk. 3.* Kapitalselskabets centrale ledelsesorgan skal sikre sig, at der foretages en kreditvurdering af den kreds, der modtager selskabets økonomiske bistand, jf. stk. 2.

**§ 207.** Generalforsamlingens godkendelse skal foreligge, før der kan ydes økonomisk bistand i medfør af § 206, stk. 2. Til brug for generalforsamlingens beslutning fremlægger selskabets centrale ledelsesorgan en skriftlig redegørelse, der skal indeholde oplysninger om

1) baggrunden for forslaget om økonomisk bistand,
2) selskabets interesse i at gennemføre en sådan disposition,
3) de betingelser, der er knyttet til gennemførelse,
4) en vurdering af de konsekvenser, som dispositionen måtte medføre for selskabets likviditet og solvens, samt
5) den pris, som tredjemand skal betale for kapitalandelene.

*Stk. 2.* Generalforsamlingens afgørelse om godkendelse, jf. stk. 1, træffes med samme majoritet, som kræves til vedtægtsændring, jf. § 106.
*Stk. 3.* Redegørelsen, jf. stk. 1, skal offentliggøres i Erhvervsstyrelsens it-system eller være modtaget i Erhvervsstyrelsen med henblik på offentliggørelse, jf. § 9, senest 2 uger efter generalforsamlingens godkendelse.

**§ 208.** Kapitalselskabets samlede økonomiske bistand til tredjemand efter § 206, stk. 2, må på intet tidspunkt overstige, hvad der er forsvarligt under hensyntagen til selskabets økonomiske stilling. Hvis der er tale om et moderselskab, jf. §§ 6 og 7, må den samlede økonomiske bistand ikke overstige, hvad der er forsvarligt under hensyntagen til koncernens økonomiske stilling. Kapitalselskabet må hertil kun anvende beløb, der kan anvendes til uddeling af udbytte, jf. § 180, stk. 2.

**§ 209.** Hvis tredjemand med økonomisk bistand fra et kapitalselskab, jf. § 206, stk. 2, erhverver kapitalandele i selskabet, skal ydelsen af den økonomiske bistand ske på sædvanlige markedsvilkår. Tilsvarende gælder, hvis tredjemand tegner kapitalandele, jf. § 162, som led i en forhøjelse af den tegnede kapital.

### Økonomisk bistand til moderselskaber, kapitalejere, ledelsesmedlemmer m.v.

**§ 210.** Et kapitalselskab må ikke direkte eller indirekte stille midler til rådighed, yde lån eller stille sikkerhed for kapitalejere eller ledelsen i selskabet, jf. dog §§ 211-214. Tilsvarende gælder i forhold til kapitalejere eller ledelsen i selskabets moderselskab og i andre virksomheder end moderselskaber, der har bestemmende indflydelse over selskabet. 1. pkt. gælder også personer, der er knyttet til en person, som er omfattet af 1. eller 2. pkt. ved ægteskab, ved slægtskab i ret op- eller nedstigende linje, eller som på anden måde står den pågældende særlig nær.

*Stk. 2.* Et kapitalselskab kan dog uanset stk. 1 yde den i stk. 1 nævnte økonomiske bistand, hvis der er tale om selvfinansiering, jf. reglerne i §§ 206-209.

**§ 211.** Et kapitalselskab kan direkte eller indirekte stille midler til rådighed, yde lån eller stille sikkerhed for danske og visse udenlandske moderselskabers forpligtelser.

*Stk. 2.* Erhvervsstyrelsen fastsætter nærmere regler om, hvilke udenlandske moderselskaber der er omfattet af stk. 1.

**§ 212.** Uanset § 210 kan et kapitalselskab som led i en sædvanlig forretningsmæssig disposition direkte eller indirekte stille midler til rådighed, yde lån eller stille sikkerhed for personkredsen, der er nævnt i § 210.

### Undtagelse vedrørende pengeinstitutter m.v.

**§ 213.** §§ 206 og 210 finder ikke anvendelse på pengeinstitutter og på realkreditlån ydet af et realkreditinstitut.

### Undtagelse vedrørende medarbejdere

**§ 214.** §§ 206 og 210 finder ikke anvendelse på dispositioner foretaget med henblik på at erhverve kapitalandele af eller til medarbejderne i selskabet eller i et datterselskab.

*Stk. 2.* Ledelsesprotokollen for det centrale ledelsesorgan skal indeholde bemærkning om enhver disposition omfattet af stk. 1.

*Stk. 3.* Dispositioner omfattet af stk. 1 kan kun ske med midler, der i henhold til § 180 udbetales som udbytte.

### Tilbagebetaling

**§ 215.** Hvis et kapitalselskab har ydet økonomisk bistand i strid med §§ 206 og 210, skal beløbet tilbageføres til selskabet sammen med en årlig rente af beløbet svarende til den rente, der er fastsat i § 5, stk. 1 og 2, i lov om renter ved forsinket betaling m.v., med et tillæg af 2 pct., medmindre højere rente er aftalt.

*Stk. 2.* Kan tilbagebetaling ikke finde sted, eller kan aftaler om anden økonomisk bistand ikke bringes til ophør, indestår de personer, der har truffet aftale om eller opretholdt dispositioner i strid med §§ 206 og 210 for det tab, som kapitalselskabet måtte blive påført.

*Stk. 3.* Sikkerhedsstillelse foretaget i strid med §§ 206 og 210 er bindende for selskabet, hvis aftaleparten ikke havde kendskab til, at sikkerheden var stillet i strid med disse bestemmelser.

## Kapitel 14. *Kapitalselskabers opløsning*

### Opløsning ved erklæring

**§ 216.** I kapitalselskaber, hvor alle kreditorer er betalt, kan opløsning ske, ved at kapitalejerne over for Erhvervsstyrelsen afgiver en erklæring om, at al gæld, forfalden som uforfalden, er betalt, og at det er besluttet at opløse kapitalselskabet. Kapitalejernes navne og adresser skal være angivet i erklæringen.

*Stk. 2.* Erhvervsstyrelsen kan kun registrere opløsningen, hvis erklæringen efter stk. 1 er modtaget i styrelsen senest 2 uger efter underskrivelsen og er vedlagt en erklæring fra told- og skatteforvaltningen om, at der ikke foreligger skatte- og afgiftskrav vedrørende kapitalselskabet.

*Stk. 3.* Selskabet er opløst, når det slettes i Erhvervsstyrelsens register over aktive selskaber.

*Stk. 4.* Kapitalejerne hæfter personligt, solidarisk og ubegrænset for gæld, forfalden som uforfalden eller omtvistet, som bestod på tidspunktet for erklæringens afgivelse. I det omfang der er overskydende midler, fordeles disse til kapitalejerne.

### Beslutning om at træde i likvidation

**§ 217.** Generalforsamlingen træffer beslutning om frivillig opløsning af et kapitalselskab ved likvidation, såfremt andet ikke er fastsat i lovgivningen.

*Stk. 2.* Beslutningen træffes med den stemmeflerhed, der kræves til vedtægtsændringer, jf. § 106. I tilfælde, hvor opløsning ved likvidation er påbudt i lovgivningen eller kapitalselskabets vedtægter eller af Erhvervsstyrelsen efter denne lov, træffes beslutningen med simpelt flertal, jf. § 105.

### Valg af likvidator

**§ 218.** Generalforsamlingen vælger en eller flere likvidatorer til at foretage likvidationen af et selskab. I perioden fra beslutning om frivillig opløsning, jf. § 217, stk. 1, finder § 229, stk. 1, tilsvarende anvendelse på ledelsens dispositioner frem til valg af likvidator.

*Stk. 2.* Kapitalejere, der ejer mindst 25 pct. af selskabskapitalen, har ret til på generalforsamlingen at vælge en likvidator til at foretage likvidationen sammen med de øvrige likvidatorer, der er valgt af generalforsamlingen.

**§ 219.** En eller flere likvidatorer træder i ledelsens sted. Denne lovs bestemmelser om et selskabs ledelse finder med de fornødne tilpasninger anvendelse på en eller flere likvidatorer.

*Stk. 2.* Likvidator kan til enhver tid afsættes af den, som har valgt eller udpeget den pågældende.

*Stk. 3.* Bestemmelserne i denne lov og årsregnskabsloven om regnskabsaflæggelse, revision, generalforsamlinger og om årsrapporters indsendelse til Erhvervsstyrelsen finder tilsvarende anvendelse på selskaber under likvidation med de afvigelser, der følger af dette kapitel.

### Anmeldelse af likvidation

**§ 220.** Likvidator skal sikre, at anmeldelse af en beslutning om at træde i likvidation er modtaget i Erhvervsstyrelsen, senest 2 uger efter at beslutningen er truffet.

*Stk. 2.* Et selskab, der er i likvidation, skal beholde sit navn med tilføjelsen »i likvidation«. § 228, stk. 1, vedrørende registreringer finder anvendelse.

*Stk. 3.* Når der i et kapitalselskab er truffet beslutning om at træde i likvidation, kan der ikke træffes beslutning om ændring af de registrerede forhold vedrørende kapitalselskabet bortset fra følgende:

1)  Ændring af likvidator.
2)  Ændring af selskabets eventuelle revisor, der er valgt til at revidere selskabets årsregnskab m.v.
3)  Kapitalforhøjelser.
4)  Ændring af vedtægterne som følge af generalforsamlingsbeslutning om at ændre en tidligere beslutning om revision af kapitalselskabets kommende årsregnskaber m.v., hvis kapitalselskabet ikke er omfattet af revisionspligten efter årsregnskabsloven eller anden lovgivning, jf. § 88, stk. 1, nr. 3.
5)  Ændring af selskabets hjemstedsadresse til likvidators adresse, hvis det ikke er muligt at komme i kontakt med selskabet på den hidtidige hjemstedsadresse, eller hvis de konkrete omstændigheder undtagelsesvis taler herfor.
6)  Genoptagelse, jf. § 231.
7)  Fusion, jf. dog § 246, stk. 1, og § 247, stk. 1.
8)  Spaltning, jf. dog § 264 og § 265, stk. 1.
9)  Grænseoverskridende fusion, jf. dog § 281 og § 282, stk. 1.
10) Grænseoverskridende spaltning, jf. dog § 301 og § 302, stk. 1.

## Opfordring til kreditorerne

**§ 221.** Ved registrering og offentliggørelse i Erhvervsstyrelsens it-system efter § 220, stk. 1, opfordres kapitalselskabets kreditorer til at anmelde deres krav til likvidator senest 3 måneder fra datoen for offentliggørelsen. Likvidator skal samtidig med anmeldelse af beslutningen om likvidation i henhold til § 220, stk. 1, meddele alle kapitalselskabets kendte kreditorer beslutningen.

*Stk. 2.* Likvidator kan tidligst optage boet til slutning, når 3-måneders-fristen i stk. 1 er udløbet.

*Stk. 3.* Kan en fordring ikke anerkendes som anmeldt, skal der gives kreditor underretning herom ved anbefalet brev eller ved anden meddelelsesform, hvorved modtagelsen kan dokumenteres med samme grad af sikkerhed. Kreditor skal underrettes om, at spørgsmålet skal indbringes for skifteretten senest 4 uger efter brevet m.v.s afsendelse, hvis afgørelsen ønskes anfægtet.

*Stk. 4.* Fordringer, der anmeldes, efter at boet er optaget til slutning, dækkes ved midler, der endnu ikke er udloddet til kapitalejerne.

## Udlodning af udbytte og likvidationsprovenu

**§ 222.** Kapitalejerne kan vedtage at udlodde udbytte i et selskab i likvidation på baggrund af den seneste godkendte årsrapport.

*Stk. 2.* Udlodning af udbytte efter stk. 1 sker efter de almindelige regler om udbytte og ekstraordinært udbytte i §§ 180-183 og 194.

**§ 223.** Udlodning af likvidationsprovenu til kapitalejerne kan først foretages, når den frist, der er fastsat i den offentliggørelse, der er omhandlet i § 221, stk. 1, er udløbet og gælden til kendte kreditorer er betalt, jf. dog stk. 2.

*Stk. 2.* Hvis der stilles betryggende sikkerhed, kan a conto-udlodning foretages, inden likvidationen er afsluttet i tilfælde, hvor proklamafristen, jf. § 221, stk. 1, er udløbet og kreditorernes eventuelle krav er indfriet. A conto-udlodning kan kræves tilbagebetalt efter § 194.

**§ 224.** Når bobehandlingen er afsluttet, kan generalforsamlingen træffe beslutningen om endelig likvidation af selskabet. Bobehandlingen må ikke afsluttes, før eventuelle tvister i henhold til § 221, stk. 3, 2. pkt., er endeligt afgjort. Likvidationsprovenuet kan udloddes før eller efter afslutningen af bobehandlingen, jf. dog § 223.

*Stk. 2.* Senest 2 uger efter at det endelige likvidationsregnskab er godkendt af kapitalejerne, skal likvidatorernes anmeldelse heraf være modtaget i Erhvervsstyrelsen. Likvidationsregnskabet skal følge som bilag til denne anmeldelse. Likvidationsregnskabet skal revideres, hvis selskabet er omfattet af revisionspligt efter årsregnskabsloven eller anden lovgivning. Erhvervsstyrelsen sletter herefter selskabet.

## Tvangsopløsning

**§ 225.** Erhvervsstyrelsen kan anmode skifteretten om at opløse et kapitalselskab, om fornødent efter § 226, hvis

1)  Erhvervsstyrelsen ikke rettidigt har modtaget kapitalselskabets godkendte årsrapport i behørig stand efter årsregnskabsloven,

2)  kapitalselskabet ikke har den ledelse eller det hjemsted, der er foreskrevet i loven eller i selskabets vedtægter,

3)  kapitalselskabet ikke har anmeldt en revisor, selv om det er omfattet af revisionspligt efter årsregnskabsloven eller anden lovgivning,

4)  kapitalselskabet ikke har anmeldt en revisor, selv om generalforsamlingen i øvrigt har besluttet, at selskabets årsregnskab m.v. skal revideres, eller

5)  selskabets ledelse ikke har reageret på fordringer på indkaldt selskabskapital, der har vist sig ikke at kunne opfyldes.

*Stk. 2.* Erhvervsstyrelsen kan fastsætte en frist, inden for hvilken kapitalselskab kan afhjælpe en mangel efter stk. 1. Afhjælpes manglen ikke senest ved udløbet af den af styrelsen fastsatte frist, kan styrelsen træffe beslutning om tvangsopløsning.

**§ 226.** Bliver opløsning ikke vedtaget af selskabet i tilfælde, hvor dette er påbudt i lovgivningen eller kapitalselskabets vedtægter eller af Erhvervsstyrelsen efter regler i denne lov, jf. § 217, stk. 2, 2. pkt., eller bliver likvidator ikke valgt, kan Erhvervsstyrelsen anmode skifteretten på kapitalselskabets hjemsted om at opløse selskabet.

*Stk. 2.* Stk. 1 finder tilsvarende anvendelse, hvis et selskabs tvangsopløsning er besluttet af retten i henhold til § 230.

**§ 227.** Erhvervsstyrelsens beslutning om at oversende et kapitalselskab til tvangsopløsning i skifteretten offentliggøres i Erhvervsstyrelsens it-system.

*Stk. 2.* Kapitalselskabet skal beholde sit navn med tilføjelsen »under tvangsopløsning«.

*Stk. 3.* Skifteretten kan udnævne en eller flere likvidatorer. Skifteretten kan tillige udnævne en revisor. For tvangsopløsningen gælder i øvrigt bestemmelserne om likvidation i dette kapitel dog således, at skifteretten eller den, som retten har bemyndiget hertil, træffer afgørelser i selskabets forhold. Omkostningerne ved opløsningen betales om fornødent af statskassen.

*Stk. 4.* Når bobehandlingen er afsluttet, meddeler skifteretten dette til Erhvervsstyrelsen, som registrerer selskabets opløsning i Erhvervsstyrelsens it-system.

**§ 228.** Når der af Erhvervsstyrelsen er truffet beslutning om, at et kapitalselskab skal tvangsopløses, kan der alene træffes beslutning om ændring af de registrerede forhold vedrørende kapitalselskabet bortset fra følgende:

1)  Indsættelse af en likvidator udnævnt af skifteretten, jf. § 227, stk. 3, 1. pkt.

2)  Ændring af en likvidator udnævnt af skifteretten.

3)  Indsættelse af en revisor udnævnt af skifteretten, jf. § 227, stk. 3, 2. pkt.

4)  Ændring af en revisor udnævnt af skifteretten.

5)  Genoptagelse, jf. § 232.

6)  Fusion, jf. §§ 236-253, jf. dog stk. 2.

7)  Spaltning, jf. §§ 254-270, jf. dog stk. 2.

8)  Grænseoverskridende fusion, jf. §§ 271-290 og 311-317, jf. dog stk. 2.

9)  Grænseoverskridende spaltning, jf. §§ 291-311 og § 318, jf. dog stk. 2.

*Stk. 2.* Beslutning om fusion, spaltning, grænseoverskridende fusion eller grænseoverskridende spaltning kræver, at skifteretten eller den eventuelle skifteretsudnævnte likvidator tiltræder dette.

*Stk. 3.* Hvis det fortsættende selskab i en fusion eller grænseoverskridende fusion eller det modtagende selskab i en spaltning eller grænseoverskridende spaltning er under tvangsopløsning, kan transaktionen kun besluttes, hvis der samtidig træffes beslutning om genoptagelse af selskabet, jf. § 232.

**§ 229.** I perioden fra kapitalselskabets oversendelse til skifteretten og til der enten er udpeget en likvidator, eller selskabet er opløst, må den hidtidige ledelse i kapitalselskabet alene foretage de dispositioner, der er nødvendige, og som kan gennemføres uden skade for selskabet og dets kreditorer.

*Stk. 2.* Den hidtidige ledelse af kapitalselskabet er forpligtet til at bistå skifteretten og en eventuel likvidator udnævnt af skifteretten i fornødent omfang med oplysninger om selskabets hidtidige virke. Tilsvarende gælder selskabets eventuelle hidtidige revisor, hvis skifteretten ikke kan indhente oplysninger fra selskabets hidtidige ledelse. Ledelsen og revisor skal give de oplysninger, som måtte

være nødvendige for skifterettens, herunder en eventuelt udpeget likvidators, vurdering af bestående og fremtidige krav.

*Stk. 3.* I koncerner er ledelsen i dattervirksomheder ligeledes forpligtet til at bistå skifteretten og en eventuel likvidator udnævnt af skifteretten, jf. stk. 2, hvis moderselskabet oversendes til tvangsopløsning

*Stk. 4.* Skifteretten kan indkalde tidligere medlemmer af selskabets ledelse og tidligere hidtidige revisor til møde i skifteretten med henblik på at indhente oplysninger i henhold til stk. 2 og 3.

### Tvangsopløsning ved domstolene

**§ 230.** Har kapitalejere forsætligt medvirket til en generalforsamlingsbeslutning i strid med § 108 eller på anden måde misbrugt deres indflydelse i et kapitalselskab eller medvirket til overtrædelse af denne lov eller kapitalselskabets vedtægter, kan retten, hvis der som følge af misbrugets varighed eller af andre grunde er særlig anledning hertil, efter påstand af kapitalejere, der repræsenterer mindst 1/10 af selskabskapitalen, bestemme, at kapitalselskabet skal tvangsopløses.

### Genoptagelse

**§ 231.** Et kapitalselskab kan af kapitalejerne besluttes genoptaget under iagttagelse af § 106, hvis udlodning efter § 223 ikke er påbegyndt. Det er en betingelse for genoptagelsen, at der vælges ledelse og eventuel revisor, og at der udarbejdes en erklæring af en vurderingsmand, jf. § 37, om, at kapitalen er til stede. Selskabskapitalen skal nedskrives til det beløb, der er i behold. Er selskabskapitalen herefter mindre end kapitalkravet, jf. § 4, stk. 2, skal den bringes op til mindst dette beløb.

*Stk. 2.* Beslutning om genoptagelse skal anmeldes senest 2 uger fra datoen for beslutningen. Anmeldelsen skal vedlægges en erklæring fra en godkendt revisor om, at der ikke er ydet lån m.v. til selskabsdeltagerne i strid med lovens kapitel 13.

**§ 232.** § 231 finder tilsvarende anvendelse, når et selskab, der er under tvangsopløsning ved skifteretten, indgiver anmeldelse til Erhvervsstyrelsen om, at skifteretsbehandlingen skal afbrydes, og at selskabet skal genoptages.

*Stk. 2.* Er anmeldelse i henhold til stk. 1 ikke modtaget, senest 3 måneder efter at Erhvervsstyrelsen har anmodet skifteretten om at tvangsopløse selskabet, eller har selskabet inden for de sidste 5 år tidligere været under tvangsopløsning, kan genoptagelse ikke finde sted. Fristen på 3 måneder suspenderes, hvis selskabet tages under rekonstruktionsbehandling.

*Stk. 3.* Er et kapitalselskab oversendt til tvangsopløsning, er det en betingelse for genoptagelse af selskabet, at de forhold, der begrundede kapitalselskabets oversendelse til tvangsopløsning, er berigtiget. Berigtigelsen skal foretages senest samtidig med beslutningen om genoptagelse, jf. § 231, stk. 1. Dokumentation for de berigtigede forhold skal indsendes senest samtidig med anmeldelsen, jf. stk. 1. Hvis kapitalselskabet på tidspunktet for anmodningen om genoptagelse endnu ikke har afleveret årsrapporter for regnskabsår, hvor indsendelsesfristen er udløbet, er modtagelsen af disse årsrapporter ligeledes en betingelse for genoptagelsen.

*Stk. 4.* Hvis skifteretten har udnævnt en likvidator, skal denne samtykke i genoptagelsen.

*Stk. 5.* Er et selskab besluttet tvangsopløst af retten, jf. § 230, kan genoptagelse ikke finde sted.

### Overgang til rekonstruktionsbehandling eller konkurs

**§ 233.** Begæring om rekonstruktionsbehandling eller konkurs kan kun indgives på selskabets vegne af det centrale ledelsesorgan eller, hvis selskabet er under likvidation, af likvidator.

*Stk. 2.* Hvis likvidatorerne finder, at likvidationen ikke vil give fuld dækning til kreditorerne, skal likvidatorerne indgive begæring om rekonstruktionsbehandling eller konkurs.

*Stk. 3.* Hvis et selskab er under tvangsopløsning i medfør af § 226, indgives begæring om rekonstruktionsbehandling eller konkurs af likvidator. Er ingen likvidator udnævnt, kan skifteretten af egen drift træffe afgørelse om rekonstruktionsbehandling eller konkurs.

*Stk. 4.* Når der er indgivet konkursbegæring, kan der ikke foretages registreringer vedrørende kapitalselskabet bortset fra ændringer vedrørende eventuelt valg af revisor.

*Stk. 5.* Et kapitalselskab under konkurs kan deltage i fusioner og grænseoverskridende fusioner som det ophørende selskab og i spaltninger og grænseoverskridende spaltninger som det indskydende selskab, hvis kurator tiltræder dette.

*Stk. 6.* I et selskab, hvori rekonstruktøren har overtaget ledelsen, kan der ikke foretages registreringer vedrørende selskabet bortset fra ændringer vedrørende eventuel revisor udpeget af rekonstruktøren eller ændringer, som er besluttet af generalforsamlingen med rekonstruktørens samtykke.

**§ 234.** Et selskab, der er under rekonstruktionsbehandling, skal beholde sit navn med tilføjelsen »under rekonstruktionsbehandling«.

*Stk. 2.* Et selskab, der er under konkurs, skal beholde sit navn med tilføjelsen »under konkurs«.

### Reassumption

**§ 235.** Skifteretten kan bestemme, at boet efter et kapitalselskab, der efter opløsning ved betalingserklæring, jf. § 216, eller efter afsluttet likvidation er slettet i Erhvervsstyrelsens it-system over aktive kapitalselskaber, skal reassumeres, hvis der fremkommer yderligere midler til fordeling. Skifteretten kan endvidere bestemme, at reassumption skal finde sted, hvis der i øvrigt måtte være forhold, der giver anledning til at reassumere selskabet.

*Stk. 2.* De tidligere likvidatorer forestår bobehandlingen. Kan dette ikke ske, forestår skifteretten eller en likvidator, der er udpeget af skifteretten, bobehandlingen.

*Stk. 3.* Anmeldelse om reassumption og dens afslutning skal være modtaget i Erhvervsstyrelsen senest 2 uger efter skifterettens bestemmelse herom.

## Kapitel 15. *Fusion og spaltning*

### Fusion af kapitalselskaber

**§ 236.** Et kapitalselskab kan efter bestemmelserne i dette kapitel opløses uden likvidation ved overdragelse af kapitalselskabets aktiver og forpligtelser som helhed til et andet kapitalselskab mod vederlag til de ophørende kapitalselskabers kapitalejere, dvs. uegentlig fusion. Det samme gælder, når to eller flere kapitalselskaber sammensmeltes til et nyt kapitalselskab, dvs. egentlig fusion. Overdragelserne kan gennemføres uden kreditorernes samtykke.

### Fusionsplan

**§ 237.** De centrale ledelsesorganer i de bestående kapitalselskaber, der deltager i fusionen, opretter og underskriver i forening en fusionsplan, jf. dog stk. 2.

*Stk. 2.* Hvis der er tale om en fusion, hvor der alene deltager anpartsselskaber, kan anpartshaverne i enighed beslutte, at der ikke skal udarbejdes en fusionsplan, jf. dog § 248, stk. 2-4.

*Stk. 3.* Ved fusioner, hvor der indgår aktieselskaber, skal fusionsplanen indeholde oplysning og bestemmelser om

1)    kapitalselskabernes navne og eventuelle binavne, herunder om et ophørende kapitalselskabs navn eller binavn skal indgå som binavn for det fortsættende kapitalselskab,

2)    kapitalselskabernes hjemsted,

Copyright © 2015 Karnov Group Denmark A/S

3) vederlaget for kapitalandelene i et ophørende kapitalselskab,
4) tidspunktet, fra hvilket de kapitalandele, der eventuelt ydes som vederlag, giver ret til udbytte,
5) de rettigheder i det fortsættende kapitalselskab, der tillægges eventuelle indehavere af kapitalandele og gældsbreve med særlige rettigheder i et ophørende kapitalselskab,
6) eventuelle andre foranstaltninger til fordel for indehavere af de i nr. 5 omhandlede kapitalandele og gældsbreve,
7) notering af eventuelle kapitalandele, der ydes som vederlag, samt eventuel udlevering af ejerbeviser,
8) tidspunktet, fra hvilket et ophørende kapitalselskabs rettigheder og forpligtelser regnskabsmæssigt skal anses for overgået, jf. stk. 4,
9) enhver særlig fordel, der gives medlemmerne af kapitalselskabernes ledelse, og
10) udkast til vedtægter, jf. §§ 28 og 29, hvis der ved fusion dannes et nyt kapitalselskab.

*Stk. 4.* Fusionsplanen skal for hvert af de bestående kapitalselskaber være underskrevet senest ved udløbet af det regnskabsår, hvori tidspunktet for fusionens regnskabsmæssige virkning, jf. stk. 3, nr. 8, indgår. Overskrides fristen, kan modtagelsen af fusionsplanen ikke offentliggøres og fusionen dermed ikke vedtages.

## Fusionsredegørelse

**§ 238.** Det centrale ledelsesorgan i hvert af de bestående kapitalselskaber, der deltager i fusionen, skal udarbejde en skriftlig redegørelse, i hvilken den påtænkte fusion, herunder en eventuel fusionsplan, forklares og begrundes, jf. dog stk. 2. Redegørelsen skal indeholde oplysning om fastsættelsen af vederlaget for kapitalandelene i de ophørende kapitalselskaber, herunder særlige vanskeligheder forbundet med fastsættelsen, og oplysning om udarbejdelse af vurderingsberetning, hvis denne i henhold til § 240 skal udarbejdes.
*Stk. 2.* Kapitalejerne kan i enighed beslutte, at der ikke skal udarbejdes en fusionsredegørelse.

## Mellembalance

**§ 239.** Hvis fusionsplanen er underskrevet mere end 6 måneder efter udløbet af det regnskabsår, som kapitalselskabets seneste årsrapport vedrører, skal der for det pågældende kapitalselskab, der deltager i fusionen, udarbejdes en mellembalance, jf. dog stk. 4 og 5.
*Stk. 2.* I en fusion, hvor udarbejdelse af en fusionsplan er fravalgt, jf. § 237, stk. 2, skal der for det pågældende kapitalselskab, der deltager i fusionen, udarbejdes en mellembalance, hvis beslutningen om fravalg af fusionsplan er truffet mere end 6 måneder efter udløbet af det regnskabsår, som kapitalselskabets seneste årsrapport vedrører, jf. dog stk. 4 og 5.
*Stk. 3.* Mellembalancen, der skal udarbejdes i overensstemmelse med det regelsæt, som kapitalselskabet udarbejder årsrapport efter, må ikke have en opgørelsesdato, der ligger mere end 3 måneder forud for underskrivelsen af eller beslutningen om fravalg af fusionsplanen. Mellembalancen skal være revideret, hvis kapitalselskabet er omfattet af revisionspligt efter årsregnskabsloven eller anden lovgivning.
*Stk. 4.* Kapitalejerne kan i enighed beslutte, at der ikke skal udarbejdes en mellembalance, uanset at en eventuel fusionsplan er underskrevet mere end 6 måneder efter udløbet af det regnskabsår, som selskabets seneste årsrapport vedrører.
*Stk. 5.* Bestemmelsen i stk. 1 finder ikke anvendelse for kapitalselskaber, som har værdipapirer optaget til handel på et reguleret marked i et EU/EØS-land, og som har offentliggjort en halvårsrapport i henhold til årsregnskabsloven, hvis halvårsrapporten indehol-

der et revideret halvårsregnskab for selskabet og halvårsrapporten gøres tilgængelig for selskabets kapitalejere.

## Vurderingsberetning om apportindskud

**§ 240.** Sker der i forbindelse med fusionen en kapitalforhøjelse i det fortsættende aktieselskab, eller opstår der et nyt aktieselskab som led i fusionen, skal der som led i fusionen indhentes en beretning fra en vurderingsmand, jf. dog stk. 2. Vurderingsmanden udpeges efter § 37, stk. 1. § 37, stk. 2 og 3, finder tilsvarende anvendelse på vurderingsmændenes forhold til samtlige fusionerende kapitalselskaber.
*Stk. 2.* Vurderingsberetningen kan undlades, hvis der i stedet udarbejdes en vurderingsmandsudtalelse om den påtænkte fusion, jf. § 241, eller en vurderingsmandserklæring om kreditorernes stilling, jf. § 242.
*Stk. 3.* Hvis der skal udarbejdes en vurderingsberetning som led i en fusion, skal vurderingsberetningen indeholde
1) en beskrivelse af hvert indskud,
2) oplysning om den anvendte fremgangsmåde ved vurderingen,
3) angivelse af det fastsatte vederlag og
4) erklæring om, at den ansatte værdi mindst svarer til det aftalte vederlag, herunder den eventuelle pålydende værdi af de kapitalandele, der skal udstedes, med tillæg af eventuel overkurs.

*Stk. 4.* Vurderingsberetningen må ikke være udarbejdet mere end 3 måneder før tidspunktet for fusionens eventuelle vedtagelse, jf. § 245. Overskrides fristen, kan fusionen ikke gyldigt vedtages.

## Vurderingsmandsudtalelse om den påtænkte fusion, herunder en eventuel fusionsplan

**§ 241.** I hvert af kapitalselskaberne, der deltager i fusionen, udarbejder en eller flere uvildige, sagkyndige vurderingsmænd en skriftlig udtalelse om fusionsplanen, herunder vederlaget, jf. stk. 4. I en fusion, hvor udarbejdelsen af en fusionsplan er fravalgt, jf. § 237, stk. 2, skal vurderingsmanden afgive en skriftlig udtalelse om den påtænkte fusion, herunder vederlaget, jf. stk. 4. Kapitalejerne kan i enighed beslutte, at der ikke skal udarbejdes en sådan udtalelse fra en vurderingsmand om den påtænkte fusion, jf. 1. og 2. pkt.
*Stk. 2.* Vurderingsmændene udpeges efter § 37, stk. 1. Hvis kapitalselskaberne, der deltager i fusionen, ønsker at benytte en eller flere fælles vurderingsmænd, udpeges disse efter kapitalselskabernes anmodning af skifteretten på det sted, hvor det fortsættende kapitalselskab har sit hjemsted.
*Stk. 3.* § 37, stk. 2 og 3, finder tilsvarende anvendelse på vurderingsmændenes forhold til samtlige fusionerende kapitalselskaber.
*Stk. 4.* Udtalelsen skal indeholde erklæring om, hvorvidt vederlaget for kapitalandelene i et ophørende kapitalselskab er rimeligt og sagligt begrundet. Erklæringen skal angive den eller de fremgangsmåder, der er anvendt ved fastsættelsen af vederlaget, og vurdere hensigtsmæssigheden heraf. Erklæringen skal endvidere angive de værdier, som fremgangsmåderne hver for sig fører til, og den betydning, der må tillægges fremgangsmåderne i forhold til hinanden ved værdiansættelsen. Har der været særlige vanskeligheder forbundet med værdiansættelsen, omtales disse i erklæringen.

## Vurderingsmandserklæring om kreditorernes stilling

**§ 242.** Vurderingsmændene skal ud over den i § 241 nævnte erklæring endvidere afgive erklæring om, hvorvidt kreditorerne i det enkelte kapitalselskab må antages at være tilstrækkeligt sikrede efter fusionen i forhold til selskabets nuværende situation. Kapitalejerne kan dog i enighed beslutte, at der ikke skal udarbejdes en sådan erklæring fra en vurderingsmand om kreditorernes stilling.

## Mulighed for, at kreditorerne kan anmelde deres krav

**§ 243.** Hvis vurderingsmændene i deres erklæring om kreditorernes stilling, jf. § 242, finder, at kreditorerne i det enkelte kapitalselskab ikke er tilstrækkeligt sikrede efter fusionen, eller hvis der ikke er udarbejdet en erklæring fra en vurderingsmand om kreditorernes stilling, kan kreditorer, hvis fordringer er stiftet forud for Erhvervsstyrelsens offentliggørelse i medfør af § 244, senest 4 uger efter offentliggørelsen anmelde deres fordringer til selskabet. Fordringer, for hvilke der er stillet betryggende sikkerhed, kan dog ikke anmeldes.

*Stk. 2.* Anmeldte fordringer, der er forfaldne, kan forlanges indfriet, og for anmeldte fordringer, der er uforfaldne, kan der forlanges betryggende sikkerhed.

*Stk. 3.* Medmindre andet godtgøres, er sikkerhedsstillelse efter stk. 2 ikke fornøden, hvis indfrielse af fordringerne er sikret ved en ordning i henhold til lov.

*Stk. 4.* Er der mellem kapitalselskabet og anmeldte kreditorer uenighed om, hvorvidt der skal stilles sikkerhed, eller om, hvorvidt en tilbudt sikkerhed er tilstrækkelig, kan begge parter, senest 2 uger efter at fordringen er anmeldt, indbringe sagen for skifteretten på kapitalselskabets hjemsted til afgørelse af spørgsmålet.

*Stk. 5.* Kreditor kan ikke med bindende virkning ved den aftale, der ligger til grund for fordringen, frasige sig retten til at forlange sikkerhed efter stk. 2.

*Stk. 6.* (Ophævet)

## Indsendelse af oplysninger om den påtænkte fusion, herunder eventuelt fusionsplan og eventuelt vurderingsmandserklæring om kreditorernes stilling

**§ 244.** Erhvervsstyrelsen skal senest 4 uger efter en eventuel fusionsplans underskrivelse have modtaget en kopi af fusionsplanen, jf. dog stk. 2. Overskrides fristen, kan modtagelsen af fusionsplanen ikke offentliggøres, og fusionen dermed ikke vedtages.

*Stk. 2.* Hvis de deltagende kapitalselskaber har udnyttet muligheden for at fravælge udarbejdelsen af en fusionsplan, jf. § 237, stk. 2, skal dette meddeles Erhvervsstyrelsen med angivelse af de deltagende kapitalselskabers navne og cvr-numre.

*Stk. 3.* Vurderingsmandserklæring om kreditorernes stilling, jf. § 242, 1. pkt., skal indsendes til Erhvervsstyrelsen, jf. dog stk. 4.

*Stk. 4.* Hvis muligheden for at fravælge udarbejdelsen af en vurderingsmandserklæring om kreditorernes stilling, jf. § 242, 2. pkt., er udnyttet, skal dette meddeles Erhvervsstyrelsen med angivelse af navne og cvr-numre på de kapitalselskaber, som deltager i fusionen.

*Stk. 5.* Erhvervsstyrelsens modtagelse af oplysninger og eventuelle dokumenter, jf. stk. 1-4, offentliggøres i Erhvervsstyrelsens it-system. Hvis kreditorerne har ret til at anmelde deres krav, jf. § 243, indeholder Erhvervsstyrelsens offentliggørelse oplysning herom.

*Stk. 6.* Erhvervsstyrelsen kan fastsætte nærmere regler om kapitalselskabers offentliggørelse af eventuel fusionsplan og eventuelle medfølgende dokumenter.

## Beslutning om at gennemføre fusion

**§ 245.** Beslutning om gennemførelse af en fusion må tidligst træffes 4 uger efter Erhvervsstyrelsens offentliggørelse, jf. § 244, stk. 5, af modtagelsen af oplysninger om den påtænkte fusion, jf. dog stk. 2 og 3. Hvis offentliggørelsen vedrørende § 244, stk. 1 eller 2, og vedrørende § 244, stk. 3 eller 4, har fundet sted hver for sig, regnes fristen i 1. pkt. fra det seneste offentliggørelsestidspunkt.

*Stk. 2.* I en fusion, hvor der alene deltager anpartsselskaber, og hvis vurderingsmændene i deres erklæring om kreditorernes stilling, jf. § 242, finder, at kreditorerne i det enkelte anpartsselskab er tilstræk-

keligt sikrede efter fusionen, kan anpartshaverne i enighed efter Erhvervsstyrelsens offentliggørelse, jf. § 244, stk. 5, af modtagelsen af oplysninger om den påtænkte fusion beslutte at fravige fristen efter stk. 1.

*Stk. 3.* I en fusion, hvor fusionsplanen er fravalgt, jf. § 237, stk. 2, er der ikke krav om, at Erhvervsstyrelsen skal have foretaget offentliggørelse, jf. § 244, stk. 5, inden anpartshaverne kan træffe beslutning om gennemførelsen af fusionen, hvis der er udarbejdet en vurderingsmandserklæring om kreditorernes stilling, jf. § 242, og vurderingsmændene i deres erklæring om kreditorernes stilling finder, at kreditorerne i det enkelte anpartsselskab er tilstrækkeligt sikrede efter fusionen.

*Stk. 4.* Hvis det ophørende kapitalselskab har afsluttet et regnskabsår inden det tidspunkt, hvor det ophørende kapitalselskabs rettigheder og forpligtelser regnskabsmæssigt skal anses for overgået til det fortsættende selskab, og generalforsamlingen endnu ikke har godkendt årsrapporten for denne regnskabsperiode, skal generalforsamlingen godkende årsrapporten for denne regnskabsperiode senest samtidig med beslutningen om at gennemføre fusionen.

*Stk. 5.* Kreditorer, der anmoder derom, skal have oplysning om, hvornår der træffes beslutning om fusionens eventuelle gennemførelse.

*Stk. 6.* Fusionens gennemførelse skal være i overensstemmelse med fusionsplanen, hvis der er udarbejdet en fusionsplan. Vedtages fusionen ikke i overensstemmelse med en eventuel offentliggjort fusionsplan, anses forslaget som bortfaldet.

*Stk. 7.* Følgende dokumenter skal, hvis de er udarbejdet, senest 4 uger før der skal træffes beslutning om gennemførelse af en fusion, stilles til rådighed for kapitalejerne på selskabets hjemsted eller hjemmeside, medmindre disse i enighed beslutter, at de pågældende dokumenter ikke skal fremlægges forud for eller på generalforsamlingen, jf. dog stk. 8:

1)  Fusionsplanen.
2)  Hvert af de bestående deltagende kapitalselskabers godkendte årsrapporter for de sidste 3 regnskabsår eller den kortere tid, kapitalselskabet må have bestået.
3)  Fusionsredegørelse.
4)  Mellembalance.
5)  Vurderingsberetning om apportindskud.
6)  Vurderingsmændenes udtalelse om den påtænkte fusion, herunder en eventuel fusionsplan.
7)  Vurderingsmændenes erklæring om kreditorernes stilling.

*Stk. 8.* Kapitalejere, der anmoder herom, skal vederlagsfrit have adgang til de dokumenter, der er nævnt i stk. 7.

**§ 246.** Beslutning om fusion træffes i et ophørende kapitalselskab af generalforsamlingen, jf. dog stk. 2 og § 252. Er kapitalselskabet under likvidation, kan fusion kun besluttes, hvis udlodning til kapitalejerne endnu ikke er påbegyndt, og hvis generalforsamlingen samtidig træffer beslutning om at hæve likvidationen. § 231 om genoptagelse finder herefter ikke anvendelse.

*Stk. 2.* Opløses et kapitalselskab uden likvidation ved overdragelse af kapitalselskabets aktiver og forpligtelser som helhed til et andet kapitalselskab, der ejer mindst 90 pct. af selskabskapitalen i det ophørende kapitalselskab, kan beslutning om fusion i det ophørende kapitalselskab træffes af det centrale ledelsesorgan, jf. dog stk. 3-5.

*Stk. 3.* Beslutningen efter stk. 2 skal dog træffes af generalforsamlingen, hvis kapitalejere, der ejer 5 pct. af selskabskapitalen, skriftligt forlanger det, senest 2 uger efter at modtagelsen af oplysninger om den påtænkte fusion, herunder en eventuel fusionsplan, er offentliggjort. Beslutningen i det ophørende kapitalselskab skal endvidere træffes af generalforsamlingen, hvis de kapitalejere, der

ifølge vedtægterne, jf. § 89, kan forlange generalforsamlingen indkaldt, anmoder derom.

*Stk. 4.* Det centrale ledelsesorgan skal, senest 2 uger efter at der er fremsat anmodning herom, indkalde til en generalforsamling.

*Stk. 5.* Hvis det er generalforsamlingen, der skal træffe beslutningen i det ophørende kapitalselskab, træffes beslutningen med det flertal, der kræves efter § 106, og i overensstemmelse med de yderligere forskrifter, som vedtægterne måtte indeholde om opløsning eller fusion.

**§ 247.** Beslutning om fusion træffes i det fortsættende kapitalselskab af det centrale ledelsesorgan, medmindre der af generalforsamlingen skal foretages vedtægtsændringer, bortset fra optagelse af et ophørende kapitalselskabs navn eller binavn som binavn for det fortsættende kapitalselskab, jf. dog stk. 2-4. Er beslutningen under likvidation, kan fusion kun besluttes, hvis udlodning til kapitalejerne endnu ikke er påbegyndt og generalforsamlingen samtidig træffer beslutning om at genoptage selskabet, jf. § 231.

*Stk. 2.* Kapitalejere, der ejer 5 pct. af selskabskapitalen, eller de kapitalejere, der ifølge vedtægterne, jf. § 89, kan forlange generalforsamlingen indkaldt, kan endvidere senest 2 uger efter Erhvervsstyrelsens offentliggørelse af modtagelsen af oplysninger om den påtænkte fusion, herunder en eventuel fusionsplan, skriftligt stille krav om, at beslutningen i det fortsættende kapitalselskab skal træffes af generalforsamlingen.

*Stk. 3.* Det centrale ledelsesorgan skal, senest 2 uger efter at der er fremsat anmodning herom, indkalde til en generalforsamling.

*Stk. 4.* Hvis det er generalforsamlingen, der skal træffe beslutningen i det fortsættende kapitalselskab, træffes beslutningen med det flertal, der kræves efter § 106.

**§ 248.** Det centrale ledelsesorgan i de bestående kapitalselskaber, der deltager i fusionen, skal på en eventuel generalforsamling, hvor der skal træffes beslutning om gennemførelse af en fusion, oplyse om begivenheder af væsentlig betydning, herunder væsentlige ændringer i aktiver og forpligtelser der er indtruffet i tiden mellem fusionsplanens underskrivelse og generalforsamlingen.

*Stk. 2.* I en fusion, hvor udarbejdelse af en fusionsplan er fravalgt, jf. § 237, stk. 2, skal de centrale ledelsesorganer oplyse om begivenheder af væsentlig betydning, herunder væsentlige ændringer i aktiver og forpligtelser, der er indtruffet i tiden mellem balancedagen i selskabets senest aflagte årsrapport og generalforsamlingen.

*Stk. 3.* I en fusion, hvori der alene deltager anpartsselskaber, kan i forbindelse med vedtagelsen af fusionens gennemførelse tages stilling til følgende forhold, medmindre de pågældende oplysninger fremgår af en eventuel fusionsplan, jf. § 237:

1) Anpartsselskabernes navne og eventuelle binavne, herunder om et ophørende selskabs navn eller binavn skal indgå som binavn for det fortsættende anpartsselskab.

2) Vederlaget for anparterne i et ophørende anpartsselskab.

3) Tidspunktet, fra hvilket de anparter, der eventuelt ydes som vederlag, giver ret til udbytte.

4) Tidspunktet, fra hvilket et ophørende anpartsselskabs rettigheder og forpligtelser regnskabsmæssigt skal anses for overgået.

5) Vedtægter, jf. §§ 28 og 29, hvis der ved fusionens gennemførelse dannes et nyt anpartsselskab.

*Stk. 4.* Hvis der er tale om en fusion, hvor der alene deltager anpartsselskaber, og hvor anpartshaverne i medfør af § 237, stk. 2, i enighed har besluttet, at der ikke skal udarbejdes en fusionsplan, skal der være truffet identiske beslutninger i samtlige de deltagende bestående anpartsselskaber med hensyn til kravene i stk. 3. Hvis dette ikke er tilfældet, anses beslutningen om gennemførelse af en fusion for bortfaldet.

## Mulighed for at kræve godtgørelse

**§ 249.** Kapitalejerne i det eller de ophørende kapitalselskaber kan kræve godtgørelse af kapitalselskabet, hvis vederlaget for kapitalandelene i det eller de ophørende kapitalselskaber ikke er rimeligt og sagligt begrundet, og hvis de har taget forbehold herom på generalforsamlingen, hvor der blev truffet beslutning om fusionens gennemførelse.

*Stk. 2.* Sag i henhold til stk. 1 skal anlægges, senest 2 uger efter at fusionen er registreret i det fusionerende kapitalselskab.

*Stk. 3.* Er der taget forbehold i henhold til stk. 1, kan den vedtagne fusion først registreres efter udløbet af fristen efter stk. 2, medmindre vurderingsmændene i deres udtalelse om den påtænkte fusion, herunder vederlaget, jf. § 241, finder, at vederlaget for kapitalandelene i det eller de ophørende kapitalselskaber er rimeligt og sagligt begrundet.

## Retsvirkninger af en fusion

**§ 250.** Fusionen anses for gennemført, og et ophørende kapitalselskab anses for opløst, og dets rettigheder og forpligtelser anses for overgået som helhed til det fortsættende kapitalselskab, jf. dog stk. 2, når:

1) Fusionen er besluttet i alle de bestående kapitalselskaber, der deltager i fusionen.

2) Kreditorernes krav anmeldt efter § 243 er afgjort.

3) Kapitalejeres krav om godtgørelse efter § 249 er afgjort, eller der er stillet betryggende sikkerhed for kravet. Hvis der er udarbejdet en vurderingsmandsudtalelse om den påtænkte fusion, herunder vederlaget, og det i vurderingsmandsudtalelsen antages, at vederlaget er rimeligt og sagligt begrundet, skal vurderingsmændene endvidere have erklæret, at deres udtalelse om vederlaget ikke anfægtes i væsentlig grad. Vurderingsmændene afgør, om sikkerheden er betryggende.

4) Betingelserne i stk. 6 om valg af medlemmer til det øverste ledelsesorgan og revisor er opfyldt.

5) Der er ansat en direktion, hvis der som led i fusionen opstår et nyt kapitalselskab, der skal have en ledelsesmodel, hvor det øverste ledelsesorgan enten er en bestyrelse eller et tilsynsråd, jf. § 111, stk. 1.

*Stk. 2.* Hvis tidspunktet, hvor det ophørende kapitalselskabs rettigheder og forpligtelser regnskabsmæssigt skal anses for overgået til det fortsættende kapitalselskab, er efter tidspunktet for beslutningerne om at gennemføre fusionen, indtræder fusionens retsvirkninger, jf. 2. og 3. pkt., dog først på det regnskabsmæssige virkningstidspunkt. Tidspunktet for fusionens regnskabsmæssige virkningstidspunkt kan ikke være senere end 2 uger efter beslutningerne om at gennemføre fusionen, dog ikke senere end tidspunktet for fusionens registrering eller anmeldelse til registrering. Det regnskabsmæssige virkningstidspunkt og tidspunktet for beslutningen om at gennemføre fusionen skal endvidere være i samme regnskabsår for de deltagende kapitalselskaber.

*Stk. 3.* Når betingelserne efter stk. 1 og 2 er opfyldt, bliver de kapitalejere i et ophørende kapitalselskab, der vederlægges med kapitalandele, kapitalejere i det fortsættende selskab.

*Stk. 4.* Der kan ikke ydes vederlag for kapitalandele i et ophørende kapitalselskab, der ejes af de fusionerende kapitalselskaber. § 31 og § 153, stk. 2, finder tilsvarende anvendelse ved fusion.

*Stk. 5.* Kapitel 3 om stiftelse, kapitel 10 om kapitalforhøjelse og kapitel 14 om opløsning finder ikke anvendelse ved en fusion, medmindre det fremgår af bestemmelserne om fusion, jf. §§ 236-252.

*Stk. 6.* Dannes der ved fusionens gennemførelse et nyt kapitalselskab, og foretages valg af medlemmer til det øverste ledelsesorgan

og eventuel revisor ikke umiddelbart efter, at generalforsamlingen har vedtaget fusionen, skal der senest 2 uger derefter afholdes generalforsamling i det nye kapitalselskab til valg af medlemmer til det øverste ledelsesorgan og eventuel revisor. Generalforsamlingen skal endvidere træffe beslutning om, hvorvidt kapitalselskabets kommende årsregnskaber skal revidereres, hvis kapitalselskabet ikke er omfattet af revisionspligten efter årsregnskabsloven eller anden lovgivning.

### Anmeldelse om gennemførelse af fusion

**§ 251.** Den vedtagne fusion skal for hvert kapitalselskab registreres eller anmeldes til registrering, jf. § 9, i Erhvervsstyrelsen, senest 2 uger efter at fusionen er besluttet i alle de bestående kapitalselskaber, der deltager i fusionen. Det fortsættende kapitalselskab kan registrere eller anmelde fusionen på de deltagende kapitalselskabers vegne. Registreringen eller anmeldelsen skal vedlægges de dokumenter, som er nævnt i § 245, stk. 7, nr. 3-7, hvis dokumenterne er udarbejdet. Den vedtagne fusion kan først registreres, når fusionens retsvirkninger er indtrådt efter § 250, stk. 1 og 2.

*Stk. 2.* Den vedtagne fusion skal registreres eller anmeldes til registrering, jf. § 9, senest ved udløbet af indsendelsesfristen for årsrapporten for den periode, hvori tidspunktet for fusionens regnskabsmæssige virkning indgår, dog senest 1 år efter Erhvervsstyrelsens offentliggørelse, jf. § 244, stk. 5, af modtagelsen af oplysninger om den påtænkte fusion. Overskrides en af disse frister, mister beslutningen om fusionens gennemførelse sin gyldighed, og en eventuelt udarbejdet fusionsplan i henhold til § 237 anses for bortfaldet.

*Stk. 3.* Hvis et kapitalselskab, der opstår som led i en fusion, indgår en aftale, inden kapitalselskabet er registreret, og er medkontrahenten vidende om, at kapitalselskabet ikke er registreret, kan medkontrahenten, medmindre andet er aftalt, hæve aftalen, såfremt registreringen eller anmeldelse til registrering ikke er modtaget i Erhvervsstyrelsen senest ved udløbet af den i stk. 2 fastsatte frist, eller hvis registrering nægtes. Var medkontrahenten uvidende om, at kapitalselskabet ikke var registreret, kan denne hæve aftalen, så længe kapitalselskabet ikke er registreret. § 41, stk. 1, 2. pkt., finder tilsvarende anvendelse.

*Stk. 4.* §§ 42-44 finder tilsvarende anvendelse, hvis et aktieselskab, der opstår som led i en fusion, erhverver formueværdier fra en kapitalejer, der er selskabet bekendt, i tiden indtil 24 måneder efter at selskabet er registreret.

### Lodrette fusioner mellem moderselskaber og helejede datterselskaber

**§ 252.** Opløses et kapitalselskab uden likvidation ved overdragelse af kapitalselskabets aktiver og forpligtelser som helhed til et andet kapitalselskab, der ejer samtlige kapitalandele i det ophørende kapitalselskab, dvs. en lodret fusion, kan beslutning om fusion i det ophørende kapitalselskab træffes af det centrale ledelsesorgan. I øvrigt finder § 237, stk. 1 og 2, stk. 3, nr. 1, 2, 5, 6 og 8-10, og stk. 4, § 239, §§ 242-245, § 246, stk. 1, 2. og 3. pkt., § 247 og 248 og §§ 250 og 251 tilsvarende anvendelse ved lodrette fusioner.

### Overdragelse af kapitalselskabs aktiver og forpligtelser til den danske stat eller en dansk kommune

**§ 253.** Opløses et kapitalselskab uden likvidation ved overdragelse af kapitalselskabets aktiver og forpligtelser som helhed til den danske stat eller en dansk kommune, finder § 237, stk. 1 og 2, stk. 3, § 238, § 241, § 244, stk. 1, 2 og 5, § 245, stk. 1 og 3-6, §§ 246, 248 og 249, § 250, stk. 1, nr. 1, og § 251, stk. 1, tilsvarende anvendelse.

### Spaltning af kapitalselskaber

**§ 254.** Generalforsamlingen i et kapitalselskab kan træffe beslutning om spaltning af kapitalselskabet. Ved spaltningen overdrages aktiver og forpligtelser som helhed til flere bestående eller nye aktie- eller anpartsselskaber, der dannes ved spaltningens gennemførelse, mod vederlag til det indskydende kapitalselskabs kapitalejere. Generalforsamlingen kan med samme flertal træffe beslutning om en spaltning, hvorved kapitalselskabet overdrager en del af sine aktiver og forpligtelser til et eller flere bestående eller nye kapitalselskaber, der dannes ved spaltningens gennemførelse. Overdragelserne kan gennemføres uden kreditorernes samtykke.

*Stk. 2.* Såfremt en kreditor i et kapitalselskab, der har deltaget i spaltningen, ikke bliver fyldestgjort, hæfter hvert af de øvrige deltagende kapitalselskaber solidarisk for forpligtelser, der bestod på tidspunktet for Erhvervsstyrelsens offentliggørelse, jf. § 262, stk. 5, vedrørende § 262, stk. 1 eller 2, dog højst med et beløb svarende til den tilførte eller resterende nettoværdi i det enkelte kapitalselskab på dette tidspunkt.

*Stk. 3.* Hvis et eller flere af de modtagende kapitalselskaber i en spaltning dannes som led i en anden spaltning eller fusion, der ikke er gennemført, skal dette fremgå af spaltningsplanen, jf. § 255, eller såfremt spaltningsplanen er fravalgt, af beslutningen om vedtagelsen af spaltningen, jf. § 266. En spaltning til nye modtagende kapitalselskaber, der dannes som led i en anden spaltning eller fusion, skal gennemføres i umiddelbar forlængelse af den spaltning eller fusion, som de nye kapitalselskaber dannes som led i, jf. § 269.

### Spaltningsplan

**§ 255.** De centrale ledelsesorganer i de bestående kapitalselskaber, der deltager i spaltningen, opretter og underskriver i forening en spaltningsplan, jf. dog stk. 2.

*Stk. 2.* Hvis der er tale om en spaltning, hvor der alene deltager anpartsselskaber, kan anpartshaverne i enighed beslutte, at der ikke skal udarbejdes en spaltningsplan, jf. dog § 266, stk. 2, 3 og 4.

*Stk. 3.* Ved spaltningen, hvor der indgår aktieselskaber, skal spaltningsplanen indeholde oplysning og bestemmelser om

1)  kapitalselskabernes navne og eventuelle binavne, herunder om det indskydende kapitalselskabs navn eller binavn skal indgå som binavn for et modtagende kapitalselskab,
2)  kapitalselskabernes hjemsted,
3)  en nøjagtig beskrivelse og fordeling af de dele af aktiver og forpligtelser, som skal overføres eller forbliver i hvert af kapitalselskaberne, der deltager i spaltningen,
4)  vederlaget til kapitalejerne i det indskydende kapitalselskab,
5)  fordelingen af vederlaget, herunder kapitalandele i de modtagende kapitalselskaber, til kapitalejerne i det indskydende kapitalselskab og kriterier for denne fordeling,
6)  tidspunktet, fra hvilket de kapitalandele, der eventuelt ydes som vederlag, giver ret til udbytte,
7)  de rettigheder i et modtagende kapitalselskab, der tillægges eventuelle indehavere af kapitalandele og gældsbreve med særlige rettigheder i det indskydende kapitalselskab,
8)  eventuelle andre foranstaltninger til fordel for indehavere af de i nr. 7 omhandlede kapitalandele og gældsbreve,
9)  notering af de eventuelle kapitalandele, der ydes som vederlag, samt eventuel udlevering af ejerbeviser,
10) tidspunktet, fra hvilket det indskydende kapitalselskabs rettigheder og forpligtelser regnskabsmæssigt skal anses for overgået, jf. stk. 4,
11) enhver særlig fordel, der gives medlemmerne af kapitalselskabernes ledelse og

12) udkast til vedtægter, jf. §§ 28 og 29, hvis der ved spaltningen dannes et eller flere nye kapitalselskaber.

*Stk. 4.* Spaltningsplanen skal for hvert af de bestående kapitalselskaber være underskrevet senest ved udløbet af det regnskabsår, hvori tidspunktet for spaltningens regnskabsmæssige virkning, jf. stk. 3, nr. 10, indgår. Overskrides fristen, kan modtagelsen af spaltningsplanen i Erhvervsstyrelsen ikke offentliggøres og spaltningen dermed ikke vedtages.

*Stk. 5.* Hvis en del af aktiverne ikke er fordelt ved spaltningsplanen, jf. stk. 3, nr. 3, eller § 266, stk. 3, og fortolkningen af denne ikke gør det muligt at afgøre fordelingen, fordeles denne del eller værdien deraf mellem hvert af de deltagende kapitalselskaber proportionalt med de nettoaktiver, som er tilført eller resterer i det enkelte kapitalselskab efter spaltningsplanen.

*Stk. 6.* Hvis en del af forpligtelserne ikke er fordelt ved spaltningsplanen, jf. stk. 3, nr. 3, eller § 266, stk. 3, og fortolkningen af denne ikke gør det muligt at afgøre fordelingen, er hvert af de deltagende kapitalselskaber solidarisk ansvarligt, dog højst med et beløb svarende til den tilførte eller resterende nettoværdi i det enkelte kapitalselskab. I det indbyrdes forhold mellem de deltagende kapitalselskaber fordeles sådanne forpligtelser proportionalt med de nettoaktiver, som er tilført eller resterer i det enkelte kapitalselskaber efter spaltningsplanen.

### Spaltningsredegørelse

**§ 256.** Det centrale ledelsesorgan i hvert af de bestående kapitalselskaber, der deltager i spaltningen, skal udarbejde en skriftlig redegørelse, i hvilken den påtænkte spaltning, herunder en eventuel spaltningsplan, forklares og begrundes, jf. dog stk. 2. Redegørelsen skal indeholde oplysning om fastsættelsen af vederlaget for kapitalandelene i det indskydende kapitalselskab, herunder særlige vanskeligheder forbundet med fastsættelsen, og oplysning om udarbejdelse af vurderingsberetning, hvis denne i henhold til § 258 skal udarbejdes.

*Stk. 2.* Kapitalejerne kan i enighed beslutte, at der ikke skal udarbejdes en spaltningsredegørelse.

### Mellembalance

**§ 257.** Hvis spaltningsplanen er underskrevet mere end 6 måneder efter udløbet af det regnskabsår, som kapitalselskabets seneste årsrapport vedrører, skal der for det pågældende kapitalselskab, der deltager i spaltningen, udarbejdes en mellembalance, jf. dog stk. 4 og 5.

*Stk. 2.* I en spaltning, hvor udarbejdelse af en spaltningsplan er fravalgt, jf. § 255, stk. 2, skal der for det pågældende kapitalselskab, der deltager i spaltningen, udarbejdes en mellembalance, hvis beslutningen om fravalg af spaltningsplan er sket mere end 6 måneder efter udløbet af det regnskabsår, som kapitalselskabets seneste årsrapport vedrører, jf. dog stk. 4 og 5.

*Stk. 3.* Mellembalancen, der skal udarbejdes i overensstemmelse med det regelsæt, som selskabet udarbejder årsrapport efter, må ikke have en opgørelsesdato, der ligger mere end 3 måneder forud for underskrivelsen eller beslutningen om fravalg af spaltningsplanen. Mellembalancen skal være revideret, hvis kapitalselskabet er omfattet af revisionspligt efter årsregnskabsloven eller anden lovgivning.

*Stk. 4.* Kapitalejerne kan i enighed beslutte, at der ikke skal udarbejdes en mellembalance, uanset at en eventuel spaltningsplan er underskrevet mere end 6 måneder efter udløbet af det regnskabsår, som kapitalselskabets seneste årsrapport vedrører.

*Stk. 5.* Bestemmelsen i stk. 1 finder ikke anvendelse for kapitalselskaber, som har værdipapirer optaget til handel på et reguleret marked i et EU/EØS-land, og som har offentliggjort en halvårsrapport i henhold til årsregnskabsloven, hvis halvårsrapporten indeholder et revideret halvårsregnskab for selskabet og halvårsrapporten gøres tilgængelig for selskabets kapitalejere.

### Vurderingsberetning om apportindskud

**§ 258.** Sker der i forbindelse med spaltningen kapitalforhøjelser i et eller flere modtagende aktieselskaber, eller opstår der et eller flere nye aktieselskaber som led i spaltningen, skal der som led i spaltningen indhentes en beretning fra en vurderingsmand, jf. dog stk. 2. Vurderingsmanden udpeges efter § 37, stk. 1. § 37, stk. 2 og 3, finder tilsvarende anvendelse på vurderingsmændenes forhold til samtlige kapitalselskaber, der deltager i spaltningen.

*Stk. 2.* Vurderingsberetningen kan undlades, hvis der i stedet udarbejdes en vurderingsmandsudtalelse om den påtænkte spaltning, jf. § 259, eller en vurderingsmandserklæring om kreditorernes stilling, jf. § 260.

*Stk. 3.* Hvis der skal udarbejdes en vurderingsberetning som led i spaltningen, skal vurderingsberetningen indeholde

1) en beskrivelse af hvert indskud,
2) oplysning om den anvendte fremgangsmåde ved vurderingen,
3) angivelse af det fastsatte vederlag og
4) erklæring om, at den ansatte værdi mindst svarer til det aftalte vederlag, herunder den pålydende værdi af de kapitalandele, der skal udstedes, med tillæg af eventuel overkurs.

*Stk. 4.* Vurderingsberetningen må ikke være udarbejdet mere end 3 måneder før tidspunktet for spaltningens eventuelle vedtagelse, jf. § 263. Overskrides fristen, kan spaltningen ikke gyldigt vedtages.

### Vurderingsmandsudtalelse om den påtænkte spaltning, herunder en eventuel spaltningsplan

**§ 259.** I hvert af kapitalselskaberne, der deltager i spaltningen, udarbejder en eller flere uvildige, sagkyndige vurderingsmænd en skriftlig udtalelse om spaltningsplanen, herunder vederlaget, jf. stk. 4. I en spaltning, hvor udarbejdelse af en spaltningsplan er fravalgt, jf. § 255, stk. 2, skal vurderingsmanden afgive en skriftlig udtalelse om den påtænkte spaltning, herunder vederlaget, jf. stk. 4. Kapitalejerne kan i enighed beslutte, at der ikke skal udarbejdes en sådan udtalelse fra en vurderingsmand om den påtænkte spaltning.

*Stk. 2.* Vurderingsmændene udpeges efter § 37, stk. 1. Hvis kapitalselskaberne, der deltager i spaltningen, ønsker at benytte en eller flere fælles vurderingsmænd, udpeges disse efter kapitalselskabernes anmodning af skifteretten på det sted, hvor et af de modtagende kapitalselskaber har sit hjemsted.

*Stk. 3.* § 37, stk. 2 og 3, finder tilsvarende anvendelse på vurderingsmændenes forhold til samtlige kapitalselskaber, der deltager i spaltningen.

*Stk. 4.* Udtalelsen skal indeholde en erklæring om, hvorvidt vederlaget til kapitalejerne i det indskydende kapitalselskab er rimeligt og sagligt begrundet. Erklæringen skal angive den eller de fremgangsmåder, der er anvendt ved fastsættelsen af vederlaget, samt vurdere hensigtsmæssigheden heraf. Erklæringen skal endvidere angive de værdier, som fremgangsmåderne hver for sig fører til, samt den betydning, der må tillægges fremgangsmåderne i forhold til hinanden ved værdiansættelsen. Har der været særlige vanskeligheder forbundet med værdiansættelsen, omtales disse i erklæringen.

### Vurderingsmandserklæring om kreditorernes stilling

**§ 260.** Vurderingsmændene skal ud over den i § 259 nævnte erklæring endvidere afgive erklæring om, hvorvidt kreditorerne i det enkelte kapitalselskab må antages at være tilstrækkeligt sikrede efter spaltningen i forhold til selskabets nuværende situation. Kapi-

Copyright © 2015 Karnov Group Denmark A/S

talejerne kan dog i enighed beslutte, at der ikke skal udarbejdes en sådan erklæring fra en vurderingsmand om kreditorernes stilling.

## Mulighed for, at kreditorerne kan anmelde deres krav

**§ 261.** Hvis vurderingsmændene i deres erklæring om kreditorernes stilling, jf. § 260, finder, at kreditorerne i det enkelte kapitalselskab ikke er tilstrækkeligt sikrede efter spaltningen, eller hvis der ikke er udarbejdet en erklæring fra en vurderingsmand om kreditorernes stilling, kan kreditorer, hvis fordringer er stiftet forud for Erhvervsstyrelsens offentliggørelse i medfør af § 262, senest 4 uger efter offentliggørelsen anmelde deres fordringer til selskabet. Fordringer, for hvilke der er stillet betryggende sikkerhed, kan dog ikke anmeldes.

*Stk. 2.* Anmeldte fordringer, der er forfaldne, kan forlanges indfriet, og for anmeldte fordringer, der er uforfaldne, kan forlanges betryggende sikkerhed.

*Stk. 3.* Medmindre andet godtgøres, er sikkerhedsstillelse efter stk. 2 ikke fornøden, hvis indfrielse af fordringerne er sikret ved en ordning i henhold til lov.

*Stk. 4.* Er der mellem kapitalselskabet og anmeldte kreditorer uenighed om, hvorvidt der skal stilles sikkerhed, eller om, hvorvidt en tilbudt sikkerhed er tilstrækkelig, kan begge parter, senest 2 uger efter at fordringen er anmeldt, indbringe sagen for skifteretten på kapitalselskabets hjemsted til afgørelse af spørgsmålet.

*Stk. 5.* Kreditor kan ikke med bindende virkning ved den aftale, der ligger til grund for fordringen, frasige sig retten til at forlange sikkerhed efter stk. 2.

*Stk. 6.* (Ophævet)

## Indsendelse af oplysninger om den påtænkte spaltning, herunder eventuelt spaltningsplan og eventuelt vurderingsmandserklæring om kreditorernes stilling

**§ 262.** Erhvervsstyrelsen skal senest 4 uger efter en eventuel spaltningsplans underskrivelse have modtaget en kopi af spaltningsplanen, jf. dog stk. 2. Overskrides fristen, kan modtagelsen af spaltningsplanen ikke offentliggøres, og spaltningen dermed ikke vedtages.

*Stk. 2.* Hvis de deltagende kapitalselskaber har udnyttet muligheden for at fravælge udarbejdelse af en spaltningsplan, jf. § 255, stk. 2, skal dette meddeles Erhvervsstyrelsen med angivelse af de deltagende kapitalselskabers navne og cvr-numre.

*Stk. 3.* Vurderingsmandserklæring om kreditorernes stilling, jf. § 260, 1. pkt., skal indsendes til Erhvervsstyrelsen, jf. dog stk. 4.

*Stk. 4.* Hvis muligheden for at fravælge vurderingsmandserklæring om kreditorernes stilling, jf. § 260, 2. pkt., er udnyttet, skal dette meddeles Erhvervsstyrelsen med angivelse af navne og cvr-numre på de kapitalselskaber, som deltager i spaltningen.

*Stk. 5.* Erhvervsstyrelsens modtagelse af oplysninger og eventuelle dokumenter, jf. stk. 1-4, offentliggøres i Erhvervsstyrelsens it-system. Hvis kreditorerne har ret til at anmelde deres krav, jf. § 261, indeholder Erhvervsstyrelsens offentliggørelse oplysning herom.

*Stk. 6.* Erhvervsstyrelsen kan fastsætte nærmere regler om kapitalselskabers offentliggørelse af en eventuel spaltningsplan og eventuelt medfølgende dokumenter.

## Beslutning om at gennemføre spaltning

**§ 263.** Beslutning om gennemførelse af en spaltning må tidligst træffes 4 uger efter Erhvervsstyrelsens offentliggørelse, jf. § 262, stk. 5, af modtagelsen af oplysninger om den påtænkte spaltning, jf. dog stk. 2 og 3. Hvis offentliggørelsen vedrørende § 262, stk. 1 eller 2, og vedrørende § 262, stk. 3 eller 4, har fundet sted hver for sig, regnes fristen i 1. pkt. fra det seneste offentliggørelsestidspunkt.

*Stk. 2.* I en spaltning, hvor der alene deltager anpartsselskaber, og hvis vurderingsmændene i deres erklæring om kreditorernes stilling, jf. § 260, finder, at kreditorerne i det enkelte kapitalselskab er tilstrækkeligt sikrede efter spaltningen, kan anpartshaverne i enighed efter Erhvervsstyrelsens offentliggørelse, jf. § 262, stk. 5, af modtagelsen af oplysninger om den påtænkte spaltning beslutte at fravige fristen efter stk. 1.

*Stk. 3.* I en spaltning, hvor spaltningsplanen er fravalgt, jf. § 255, stk. 2, er der ikke krav om, at Erhvervsstyrelsen skal have foretaget offentliggørelse, jf. § 262, stk. 5, inden anpartshaverne kan træffe beslutning om gennemførelsen af spaltningen, hvis der er udarbejdet en vurderingsmandserklæring om kreditorernes stilling, jf. § 260, og hvis vurderingsmændene i deres erklæring om kreditorernes stilling finder, at kreditorerne i det enkelte anpartsselskab er tilstrækkeligt sikrede efter spaltningen.

*Stk. 4.* Hvis det indskydende kapitalselskab ophører som led i spaltningen og har afsluttet et regnskabsår inden tidspunktet, hvor det indskydende kapitalselskabs rettigheder og forpligtelser regnskabsmæssigt skal anses for overgået til de modtagende selskaber, og generalforsamlingen endnu ikke har godkendt årsrapporten for denne regnskabsperiode, skal generalforsamlingen godkende årsrapporten for denne regnskabsperiode senest samtidig med beslutningen om gennemførelsen af spaltningen.

*Stk. 5.* Kreditorer, der anmoder derom, skal have oplysning om, hvornår der træffes beslutning om spaltningens eventuelle gennemførelse.

*Stk. 6.* Spaltningens gennemførelse skal være i overensstemmelse med spaltningsplanen, hvis der er udarbejdet en spaltningsplan. Vedtages spaltningen ikke i overensstemmelse med en eventuel offentliggjort spaltningsplan, anses forslaget som bortfaldet.

*Stk. 7.* Følgende dokumenter skal, hvis de er udarbejdet, senest 4 uger før der skal træffes beslutning om gennemførelse af en spaltning, stilles til rådighed for kapitalejerne på selskabets hjemsted eller hjemmeside, medmindre kapitalejerne i enighed beslutter, at de pågældende dokumenter ikke skal fremlægges for kapitalejerne forud for eller på generalforsamlingen, jf. dog stk. 8:

1) Spaltningsplanen.
2) Hvert af de bestående deltagende kapitalselskabers godkendte årsrapporter for de sidste 3 regnskabsår eller den kortere tid, kapitalselskabet måtte have bestået.
3) Spaltningsredegørelse.
4) Mellembalance.
5) Vurderingsberetning om apportindskud.
6) Vurderingsmændenes udtalelser om den påtænkte spaltning, herunder en eventuel spaltningsplan.
7) Vurderingsmændenes erklæring om kreditorernes stilling.

*Stk. 8.* Kapitalejere, der anmoder herom, skal vederlagsfrit have adgang til de dokumenter, der er nævnt i stk. 7.

**§ 264.** Beslutning om spaltning træffes i det indskydende kapitalselskab af generalforsamlingen med det flertal, der kræves efter §§ 106 og 107, og i overensstemmelse med de yderligere forskrifter, som vedtægterne måtte indeholde om opløsning eller spaltning, jf. dog § 270. Er kapitalselskabet under likvidation, kan spaltning kun besluttes, hvis udlodning til kapitalejerne endnu ikke er påbegyndt og generalforsamlingen samtidig træffer beslutning om at hæve likvidationen. § 231 om genoptagelse finder herefter ikke anvendelse.

**§ 265.** Beslutning om spaltning træffes i bestående modtagende kapitalselskaber af det centrale ledelsesorgan, medmindre der af generalforsamlingen skal foretages vedtægtsændringer, bortset fra optagelse af det indskydende kapitalselskabs navn eller binavn som binavn for det modtagende kapitalselskab, jf. dog stk. 2. Er kapital-

selskabet under likvidation, kan spaltning kun besluttes, hvis udlodning til kapitalejerne endnu ikke er påbegyndt og generalforsamlingen samtidig træffer beslutning om at genoptage selskabet, jf. § 231.

*Stk. 2.* Kapitalejere, der ejer 5 pct. af selskabskapitalen, eller de kapitalejere, der ifølge vedtægterne, jf. § 89, kan forlange generalforsamlingen indkaldt, kan endvidere senest 2 uger efter Erhvervsstyrelsens offentliggørelse af modtagelsen af oplysninger om den påtænkte spaltning, herunder en eventuel spaltningsplan, skriftligt stille krav om, at beslutningen i bestående modtagende kapitalselskaber skal træffes af generalforsamlingen.

*Stk. 3.* Det centrale ledelsesorgan skal, senest 2 uger efter at der er fremsat anmodning herom, indkalde til en generalforsamling.

*Stk. 4.* Hvis der er generalforsamlingen, der skal træffe beslutningen i et bestående modtagende kapitalselskab, træffes beslutningen med det flertal, der kræves efter § 106.

**§ 266.** Det centrale ledelsesorgan i de bestående kapitalselskaber, der deltager i spaltningen, skal på en eventuel generalforsamling, hvor der skal træffes beslutning om gennemførelse af en spaltning, oplyse om begivenheder af væsentlig betydning, herunder væsentlige ændringer i aktiver og forpligtelser, der er indtruffet i tiden mellem spaltningsplanens underskrivelse og generalforsamlingen.

*Stk. 2.* I en spaltning, hvor udarbejdelse af en spaltningsplan er fravalgt, jf. § 255, stk. 2, skal de centrale ledelsesorganer oplyse om begivenheder af væsentlig betydning, herunder væsentlige ændringer i aktiver og forpligtelser, der er indtruffet i tiden mellem balancedagen i selskabets seneste aflagte årsrapport og generalforsamlingen.

*Stk. 3.* I en spaltning, hvori der alene deltager anpartsselskaber, skal der i forbindelse med vedtagelsen af spaltningens gennemførelse tages stilling til følgende forhold, medmindre de pågældende oplysninger fremgår af en eventuel spaltningsplan, jf. § 255:

1) Anpartsselskabernes navne og eventuelle binavne, herunder om det indskydende selskabs navn eller binavn skal indgå som binavn for et modtagende selskab.

2) Fordeling af de dele af aktiver og forpligtelser, som overføres eller forbliver i hvert af anpartsselskaberne, der deltager i spaltningen.

3) Vederlaget for anparterne i det indskydende selskab, herunder fordelingen heraf.

4) Tidspunktet, fra hvilket de anparter, der eventuelt ydes som vederlag, giver ret til udbytte.

5) Tidspunktet, fra hvilket det indskydende anpartsselskabs rettigheder og forpligtelser regnskabsmæssigt skal anses for overgået.

6) Vedtægter, jf. §§ 28 og 29, hvis der ved spaltningens gennemførelse dannes et nyt anpartsselskab.

*Stk. 4.* Hvis der er tale om en spaltning, hvor der alene deltager anpartsselskaber, og hvor anpartshaverne i medfør af § 255, stk. 2, i enighed har besluttet, at der ikke skal udarbejdes en spaltningsplan, skal der være truffet identiske beslutninger i samtlige de deltagende bestående anpartsselskaber med hensyn til kravene i stk. 3. Hvis dette ikke er tilfældet, anses beslutningen om gennemførelse af en spaltning for bortfaldet.

### Mulighed for at kræve godtgørelse

**§ 267.** Kapitalejerne i det indskydende kapitalselskab kan kræve godtgørelse af kapitalselskabet, hvis vederlaget for kapitalandelene i det indskydende kapitalselskab ikke er rimeligt og sagligt begrundet, og hvis de har taget forbehold herom på generalforsamlingen, hvor der blev truffet beslutning om spaltningens gennemførelse.

*Stk. 2.* Sag i henhold til stk. 1 skal anlægges, senest 2 uger efter at spaltningen er besluttet i alle de bestående kapitalselskaber, der deltager i spaltningen.

*Stk. 3.* Er der taget forbehold i henhold til stk. 1, kan den vedtagne spaltning først registreres efter udløbet af fristen efter stk. 2, medmindre vurderingsmændene i deres udtalelse om den påtænkte spaltning, herunder vederlaget, jf. § 259, finder, at vederlaget for kapitalandelene i det indskydende kapitalselskab er rimeligt og sagligt begrundet.

### Retsvirkninger af en spaltning

**§ 268.** Spaltningen anses for gennemført, og det indskydende kapitalselskabs rettigheder og forpligtelser anses for overgået til de modtagende kapitalselskaber, jf. dog stk. 2, når:

1) Spaltningen er besluttet i alle de bestående kapitalselskaber, der deltager i spaltningen.

2) Kreditorernes krav anmeldt efter § 261 er afgjort.

3) Kapitalejernes krav om godtgørelse efter § 267 er afgjort, eller der er stillet betryggende sikkerhed for kravet. Hvis der er udarbejdet en vurderingsmandsudtalelse om planen, herunder vederlaget, og det i vurderingsmandsudtalelsen antages, at vederlaget er rimeligt og sagligt begrundet, skal vurderingsmændene endvidere have erklæret, at deres udtalelse om vederlaget ikke anfægtes i væsentlig grad. Vurderingsmændene afgør, om sikkerheden er betryggende.

4) Betingelserne i stk. 6 om valg af medlemmer til det øverste ledelsesorgan og revisor er opfyldt.

5) Der er ansat en direktion, hvis der ved spaltningens gennemførelse dannes et eller flere nye kapitalselskaber, der skal have en ledelsesmodel, hvor det øverste ledelsesorgan enten er en bestyrelse eller et tilsynsråd, jf. § 111, stk. 1.

*Stk. 2.* Hvis tidspunktet, hvor det indskydende kapitalselskabs rettigheder og forpligtelser regnskabsmæssigt skal anses for overgået til de modtagende kapitalselskaber, er efter tidspunktet for beslutningerne om at gennemføre spaltningen, indtræder spaltningens retsvirkninger, jf. 2. og 3. pkt., dog først på det regnskabsmæssige virkningstidspunkt. Tidspunktet for spaltningens regnskabsmæssige virkningstidspunkt kan ikke være senere end 2 uger efter beslutningerne om at gennemføre spaltningen, dog ikke senere end tidspunktet for spaltningens registrering eller anmeldelse til registrering. Det regnskabsmæssige virkningstidspunkt og tidspunktet for beslutningen om at gennemføre spaltningen skal endvidere være i samme regnskabsår for de deltagende kapitalselskaber.

*Stk. 3.* Når betingelserne efter stk. 1 og 2 er opfyldt, bliver de kapitalejere i det indskydende kapitalselskab, der vederlægges med kapitalandele, kapitalejere i et eller flere af de modtagende kapitalselskaber.

*Stk. 4.* Der kan ikke ydes vederlag for kapitalandele i det indskydende kapitalselskab, som ejes af kapitalselskaberne, der deltager i spaltningen. § 31 og § 153, stk. 2, finder tilsvarende anvendelse ved spaltning.

*Stk. 5.* Kapitel 3 om stiftelse, kapitel 10 om kapitalforhøjelse, kapitel 11 om kapitalafgang og kapitel 14 om opløsning finder ikke anvendelse ved en spaltning, medmindre det fremgår af bestemmelserne om spaltning, jf. §§ 254-270.

*Stk. 6.* Dannes der ved spaltningens gennemførelse et nyt kapitalselskab, og foretages valg af medlemmer til det øverste ledelsesorgan og eventuel revisor ikke, umiddelbart efter at generalforsamlingen har vedtaget spaltningen, skal der senest 2 uger derefter afholdes generalforsamling i det nye kapitalselskab til valg af medlemmer til det øverste ledelsesorgan og eventuel revisor. Generalforsamlingen skal endvidere træffe beslutning om, hvorvidt kapitalselskabets kommende årsregnskaber skal revideres, hvis kapitalselska-

Copyright © 2015 Karnov Group Denmark A/S

bet ikke er omfattet af revisionspligten efter årsregnskabsloven eller anden lovgivning.

### Registrering af gennemførelse af en spaltning

**§ 269.** Den vedtagne spaltning skal for hvert kapitalselskab registreres eller anmeldes til registrering, jf. § 9, i Erhvervsstyrelsen, senest 2 uger efter at spaltningen er besluttet i alle de bestående kapitalselskaber, der deltager i spaltningen. Ethvert af de modtagende kapitalselskaber kan registrere eller anmelde spaltningen på de deltagende kapitalselskabers vegne. Registreringen eller anmeldelsen skal vedlægges dokumenterne, som er nævnt i § 263, stk. 7, nr. 3-7, hvis de er udarbejdet. Den vedtagne spaltning kan først registreres, når spaltningens retsvirkninger er indtrådt efter § 268, stk. 1 og 2.

*Stk. 2.* Den vedtagne spaltning skal registreres eller anmeldes til registrering, jf. § 9, senest ved udløbet af indsendelsesfristen for årsrapporten for den periode, hvori tidspunktet for spaltningens regnskabsmæssige virkning indgår, dog senest 1 år efter Erhvervsstyrelsens offentliggørelse, jf. § 262, stk. 5, af modtagelsen af oplysninger om den påtænkte spaltning. Overskrides en af disse to frister, mister beslutningen om spaltningens gennemførelse sin gyldighed, og en eventuelt udarbejdet spaltningsplan i henhold til § 255 anses for bortfaldet.

*Stk. 3.* Hvis et kapitalselskab, der opstår som led i en spaltning, indgår en aftale, inden kapitalselskabet er registreret, og er medkontrahenten vidende om, at kapitalselskabet ikke var registreret, kan medkontrahenten, medmindre andet er aftalt, hæve aftalen, hvis registrering eller anmeldelse til registrering ikke er modtaget i Erhvervsstyrelsen senest ved udløbet af den i stk. 2 fastsatte frist, eller hvis registrering nægtes. Var medkontrahenten uvidende om, at kapitalselskabet ikke var registreret, kan denne hæve aftalen, så længe kapitalselskabet ikke er registreret. § 41, stk. 1, 2. pkt., finder tilsvarende anvendelse.

*Stk. 4.* §§ 42-44 finder tilsvarende anvendelse, hvis et aktieselskab, der opstår som led i en spaltning, erhverver formueværdier fra en kapitalejer, der er selskabet bekendt, i tiden indtil 24 måneder efter at selskabet er registreret.

### Forenklede procedurer for lodrette spaltninger m.v.

**§ 270.** Ejes samtlige aktier i det indskydende kapitalselskab af de modtagende kapitalselskaber, dvs. lodret spaltning, kan beslutning om spaltning i det indskydende kapitalselskab træffes af det centrale ledelsesorgan. I øvrigt finder bestemmelserne i § 255, stk. 1 og 2 og stk. 3, nr. 1-3, 7, 8 og 10-12, og stk. 4, §§ 256, 257 og 260-263, § 264, 2. og 3. pkt., og §§ 265, 266, 268 og 269 tilsvarende anvendelse ved lodrette spaltninger.

*Stk. 2.* Hvis der ved en spaltning opstår et eller flere nye kapitalselskaber og kapitalandelene i disse selskaber tildeles kapitalejerne i det indskydende selskab proportionalt med deres kapitalandele eller stemmer i det indskydende selskab, finder bestemmelserne i §§ 256, 257 og 259 og § 266, stk. 1, ikke anvendelse.

## Kapitel 16. *Grænseoverskridende fusion og spaltning*

### Grænseoverskridende fusion

**§ 271.** Kapitalselskaber omfattet af denne lov kan deltage i grænseoverskridende fusioner, hvor de øvrige deltagende selskaber er tilsvarende kapitalselskaber, der hører under EU/EØS-landes lovgivning. Den grænseoverskridende fusion kan gennemføres uden kreditorernes samtykke.

### Fusionsplan

**§ 272.** De centrale ledelsesorganer i de bestående kapitalselskaber, der deltager i fusionen, opretter og underskriver i forening en fusionsplan, der skal indeholde oplysning og bestemmelser om

1) kapitalselskabernes selskabsform, navne og eventuelle binavne, herunder om et ophørende kapitalselskabs navn eller binavn skal indgå som binavn for det fortsættende kapitalselskab,
2) kapitalselskabernes hjemsted,
3) vederlaget for kapitalandelene i det ophørende kapitalselskab,
4) fordelingen af vederlaget, herunder kapitalandele i det fortsættende kapitalselskab, til kapitalejerne i de ophørende kapitalselskaber og kriteriet for denne tildeling,
5) den grænseoverskridende fusions sandsynlige følger for beskæftigelsen i de deltagende kapitalselskaber,
6) tidspunktet, fra hvilket de kapitalandele, der ydes som vederlag, giver ret til udbytte, og angivelse af eventuelle særlige forhold, der er knyttet til denne ret,
7) notering af eventuelle kapitalandele, der ydes som vederlag, samt eventuel udlevering af ejerbeviser,
8) tidspunktet, fra hvilket de ophørende kapitalselskabers rettigheder og forpligtelser regnskabsmæssigt skal anses for overgået,
9) de rettigheder i det fortsættende kapitalselskab, der tillægges eventuelle indehavere af kapitalandele med særlige rettigheder og eventuelle indehavere af andre værdipapirer end kapitalandele, eller de foranstaltninger, der foreslås til fordel for disse personer,
10) de særlige fordele, der indrømmes de vurderingsmænd, der udtaler sig om fusionsplanen, jf. § 276, og medlemmerne af kapitalselskabernes ledelse,
11) vedtægterne for det fortsættende kapitalselskab i den affattelse, som de vil have efter fusionens gennemførelse,
12) oplysning om de procedurer, hvorefter der i henhold til §§ 311-317 er fastsat nærmere regler om medarbejdernes inddragelse i fastlæggelsen af deres rettigheder med hensyn til medbestemmelse i det fortsættende kapitalselskab, hvis det er hensigtsmæssigt,
13) vurderingen af de aktiver og forpligtelser, der er overført til det fortsættende selskab, og
14) datoerne for de fusionerende kapitalselskabers regnskaber, som har været anvendt som grundlag for betingelserne for den grænseoverskridende fusion.

*Stk. 2.* Fusionsplanen skal for hvert af de bestående kapitalselskaber være underskrevet senest ved udløbet af det regnskabsår, hvori tidspunktet for fusionens regnskabsmæssige virkning, jf. stk. 1, nr. 6, indgår. Overskrides fristen, kan modtagelsen af fusionsplanen i Erhvervsstyrelsen ikke offentliggøres og fusionen dermed ikke vedtages.

### Fusionsredegørelse

**§ 273.** Det centrale ledelsesorgan i hvert af de bestående kapitalselskaber, der deltager i fusionen, skal udarbejde en skriftlig redegørelse, i hvilken fusionsplanen forklares og begrundes. Redegørelsen skal indeholde oplysning om fastsættelsen af vederlaget for kapitalandelene i de ophørende kapitalselskaber, herunder særlige vanskeligheder forbundet med fastsættelsen, og oplysning om udarbejdelse af vurderingsberetning, hvis denne i henhold til § 275 skal udarbejdes. Redegørelsen skal tillige indeholde en redegørelse for følgerne af den grænseoverskridende fusion for kapitalejerne, kreditorerne og medarbejderne.

## Mellembalance

**§ 274.** Hvis fusionsplanen er underskrevet mere end 6 måneder efter udløbet af det regnskabsår, som kapitalselskabets seneste årsrapport vedrører, skal der for det pågældende kapitalselskab, der deltager i fusionen, udarbejdes en mellembalance, jf. dog stk. 3 og 4.

*Stk. 2.* Mellembalancen, der skal udarbejdes i overensstemmelse med det regelsæt, som kapitalselskabet udarbejder årsrapport efter, må ikke have en opgørelsesdato, der ligger mere end 3 måneder forud for underskrivelsen af fusionsplanen. Mellembalancen skal være revideret, hvis kapitalselskabet er omfattet af revisionspligt efter årsregnskabsloven eller anden lovgivning.

*Stk. 3.* Kapitalejerne kan i enighed beslutte, at der ikke skal udarbejdes en mellembalance, uanset at en fusionsplan er underskrevet mere end 6 måneder efter udløbet af det regnskabsår, som selskabets seneste årsrapport vedrører.

*Stk. 4.* Bestemmelsen i stk. 1 finder ikke anvendelse for kapitalselskaber, som har værdipapirer optaget til handel på et reguleret marked i et EU/EØS-land, og som har offentliggjort en halvårsrapport i henhold til årsregnskabsloven, hvis halvårsrapporten indeholder et revideret halvårsregnskab for selskabet og halvårsrapporten gøres tilgængelig for selskabets kapitalejere.

## Vurderingsberetning om apportindskud

**§ 275.** Sker der i forbindelse med fusionen en kapitalforhøjelse i det fortsættende aktieselskab, eller opstår der et nyt aktieselskab som led i fusionen, skal der som led i fusionen indhentes en beretning fra en vurderingsmand, jf. dog stk. 2. Vurderingsmanden udpeges efter § 37, stk. 1. § 37, stk. 2 og 3, finder tilsvarende anvendelse på vurderingsmændenes forhold til samtlige fusionerende kapitalselskaber.

*Stk. 2.* Vurderingsberetningen kan undlades, hvis der i stedet udarbejdes en vurderingsmandsudtalelse om fusionsplanen, jf. § 276, eller en vurderingsmandserklæring om kreditorernes stilling, jf. § 277.

*Stk. 3.* Hvis der skal udarbejdes en vurderingsberetning som led i en fusion, skal vurderingsberetningen indeholde

1) en beskrivelse af hvert indskud,
2) oplysning om den anvendte fremgangsmåde ved vurderingen,
3) angivelse af det fastsatte vederlag og
4) erklæring om, at den ansatte værdi mindst svarer til det aftalte vederlag, herunder den eventuelle pålydende værdi af de kapitalandele, der skal udstedes, med tillæg af eventuel overkurs.

*Stk. 4.* Vurderingsberetningen må ikke være udarbejdet mere end 3 måneder før tidspunktet for fusionens eventuelle vedtagelse, jf. § 280. Overskrides fristen, kan fusionen ikke gyldigt vedtages.

## Vurderingsmandsudtalelse om fusionsplanen

**§ 276.** I hvert af kapitalselskaberne, der deltager i fusionen, udarbejder en eller flere uvildige, sagkyndige vurderingsmænd en skriftlig udtalelse om fusionsplanen, herunder vederlaget, jf. stk. 4. Kapitalejerne kan i enighed beslutte, at der ikke skal udarbejdes en sådan udtalelse fra en vurderingsmand om fusionsplanen.

*Stk. 2.* Vurderingsmændene udpeges efter § 37, stk. 1. Hvis kapitalselskaberne, der deltager i fusionen, ønsker at benytte en eller flere fælles vurderingsmænd, udpeges disse efter kapitalselskabernes anmodning af skifteretten på det sted, hvor det fortsættende kapitalselskab har sit hjemsted.

*Stk. 3.* § 37, stk. 2 og 3, finder tilsvarende anvendelse på vurderingsmændenes forhold til samtlige fusionerende kapitalselskaber.

*Stk. 4.* Udtalelsen skal indeholde erklæring om, hvorvidt vederlaget for kapitalandelene i et ophørende kapitalselskab er rimeligt og sagligt begrundet. Erklæringen skal angive den rækt af fremgangsmåder, der er anvendt ved fastsættelsen af vederlaget, samt vurdere hensigtsmæssigheden heraf. Erklæringen skal endvidere angive de værdier, som fremgangsmåderne hver for sig fører til, samt den betydning, der må tillægges fremgangsmåderne i forhold til hinanden ved værdiansættelsen. Har der været særlige vanskeligheder forbundet med værdiansættelsen, omtales disse i erklæringen.

## Vurderingsmandserklæring om kreditorernes stilling

**§ 277.** Vurderingsmændene skal udover den i § 276 nævnte erklæring endvidere afgive erklæring om, hvorvidt kreditorerne i det enkelte kapitalselskab må antages at være tilstrækkeligt sikrede efter fusionen i forhold til selskabets nuværende situation. Kapitalejerne kan dog i enighed beslutte, at der ikke skal udarbejdes en sådan erklæring fra en vurderingsmand om kreditorernes stilling.

## Mulighed for, at kreditorerne kan anmelde deres krav

**§ 278.** Hvis vurderingsmændene i deres erklæring om kreditorernes stilling, jf. § 277, finder, at kreditorerne i det enkelte kapitalselskab ikke er tilstrækkeligt sikrede efter fusionen, eller hvis der ikke er udarbejdet en erklæring fra en vurderingsmand om kreditorernes stilling, kan kreditorer, hvis fordringer er stiftet forud for Erhvervsstyrelsens offentliggørelse i medfør af § 279, senest 4 uger efter offentliggørelsen anmelde deres fordringer til selskabet. Fordringer, for hvilke der er stillet betryggende sikkerhed, kan dog ikke anmeldes.

*Stk. 2.* Anmeldte fordringer, der er forfaldne, kan forlanges indfriet, og for anmeldte fordringer, der er uforfaldne, kan forlanges betryggende sikkerhed.

*Stk. 3.* Medmindre andet godtgøres, er sikkerhedsstillelse efter stk. 2 ikke fornøden, hvis indfrielse af fordringerne er sikret ved en ordning i henhold til lov.

*Stk. 4.* Er der mellem kapitalselskabet og anmeldte kreditorer uenighed om, hvorvidt der skal stilles sikkerhed, eller om, hvorvidt en tilbudt sikkerhed er tilstrækkelig, kan begge parter, senest 2 uger efter at fordringen er anmeldt, indbringe sagen for skifteretten på kapitalselskabets hjemsted til afgørelse af spørgsmålet.

*Stk. 5.* Kreditor kan ikke med bindende virkning ved den aftale, der ligger til grund for fordringen, frasige sig retten til at forlange sikkerhed efter stk. 2.

*Stk. 6.* (Ophævet)

## Indsendelse af oplysninger om den påtænkte grænseoverskridende fusion, herunder fusionsplan og eventuel vurderingsmandserklæring om kreditorernes stilling

**§ 279.** Erhvervsstyrelsen skal senest 4 uger efter en fusionsplans underskrivelse have modtaget en kopi af fusionsplanen.

*Stk. 2.* Vurderingsmandserklæring om kreditorernes stilling, jf. § 277, 1. pkt., skal indsendes til Erhvervsstyrelsen, jf. dog stk. 3.

*Stk. 3.* Hvis muligheden for at fravælge vurderingsmandserklæring om kreditorernes stilling, jf. § 277, 2. pkt., er udnyttet, skal dette meddeles Erhvervsstyrelsen med angivelse af navne og eventuelt cvr-numre på de kapitalselskaber, som deltager i fusionen.

*Stk. 4.* Erhvervsstyrelsens modtagelse af fusionsplanen samt oplysninger og eventuelt vurderingsmandserklæring om kreditorernes stilling, jf. stk. 1-3, offentliggøres i Erhvervsstyrelsens it-system. Hvis kreditorerne har ret til at anmelde deres krav, jf. § 278, indeholder Erhvervsstyrelsens offentliggørelse oplysning herom.

*Stk. 5.* Erhvervsstyrelsen kan fastsætte nærmere regler om kapitalselskabers offentliggørelse af fusionsplan og eventuelt medfølgende dokumenter.

### Beslutning om at gennemføre en grænseoverskridende fusion

**§ 280.** Beslutning om gennemførelse af en fusion må tidligst træffes 4 uger efter Erhvervsstyrelsens offentliggørelse, jf. § 279, stk. 4, af modtagelsen af fusionsplanen og af vurderingsmandserklæring om kreditorernes stilling. Hvis offentliggørelsen vedrørende § 279, stk. 1, og vedrørende § 279, stk. 2 eller 3, har fundet sted hver for sig, regnes fristen i 1. pkt. fra det seneste offentliggørelsestidspunkt.
*Stk. 2.* Hvis det ophørende kapitalselskab har afsluttet et regnskabsår inden tidspunktet, hvor det ophørende kapitalselskabs rettigheder og forpligtelser regnskabsmæssigt skal anses for overgået til det fortsættende selskab, og generalforsamlingen endnu ikke har godkendt årsrapporten for denne regnskabsperiode, skal generalforsamlingen godkende årsrapporten for denne regnskabsperiode senest samtidig med beslutningen om gennemførelsen af fusionen.
*Stk. 3.* Kreditorer, der anmoder derom, skal have oplysning om, hvornår der træffes beslutning om fusionens eventuelle gennemførelse.
*Stk. 4.* Fusionens gennemførelse skal være i overensstemmelse med fusionsplanen. Vedtages fusionen ikke i overensstemmelse med den offentliggjorte fusionsplan, anses forslaget som bortfaldet.
*Stk. 5.* Følgende dokumenter skal, hvis de er udarbejdet, senest 4 uger før der skal træffes beslutning om gennemførelse af en fusion, stilles til rådighed for kapitalejerne på selskabets hjemsted eller hjemmeside, medmindre disse i enighed beslutter, at de pågældende dokumenter ikke skal fremlægges for kapitalejerne forud for eller på generalforsamlingen, jf. dog stk. 6:
1)  Fusionsplanen.
2)  Hvert af de bestående deltagende kapitalselskabers godkendte årsrapporter for de sidste 3 regnskabsår eller den kortere tid, kapitalselskabet måtte have bestået.
3)  Fusionsredegørelse.
4)  Mellembalance.
5)  Vurderingsberetning om apportindskud.
6)  Vurderingsmændenes udtalelser om fusionsplanen, herunder vederlaget.
7)  Vurderingsmændenes erklæring om kreditorernes stilling.
*Stk. 6.* Kapitalejere, der anmoder herom, skal vederlagsfrit have adgang til de dokumenter, der er nævnt i stk. 5.
*Stk. 7.* Fusionsredegørelse, jf. § 273, skal ved en grænseoverskridende fusion ligeledes senest 4 uger før en beslutning om gennemførelse af fusionen fremlægges på kapitalselskabets kontor til eftersyn for medarbejderrepræsentanterne, eller hvis der ikke er medarbejderrepræsentanter i det konkrete kapitalselskab, for medarbejderne selv.

**§ 281.** Beslutning om fusion træffes i et ophørende kapitalselskab af generalforsamlingen med det flertal, der kræves efter § 106, samt i overensstemmelse med de yderligere forskrifter, som vedtægterne måtte indeholde om opløsning eller fusion, jf. dog § 290. Er kapitalselskabet under likvidation, kan fusion kun besluttes, hvis udlodning til kapitalejerne endnu ikke er påbegyndt, og hvis generalforsamlingen samtidig træffer beslutning om at hæve likvidationen. § 231 om genoptagelse finder herefter ikke anvendelse.
**§ 282.** Beslutning om fusion træffes i det fortsættende kapitalselskab af det centrale ledelsesorgan, medmindre der af generalforsamlingen skal foretages vedtægtsændringer, bortset fra optagelse af et ophørende kapitalselskabs navn eller binavn som binavn for det fortsættende kapitalselskab, jf. dog stk. 2-4. Er kapitalselskabet under likvidation, kan fusion kun besluttes, hvis udlodning til kapitalejerne endnu ikke er påbegyndt og generalforsamlingen samtidig træffer beslutning om at genoptage selskabet, jf. § 231.

*Stk. 2.* Kapitalejere, der ejer 5 procent af selskabskapitalen, eller de kapitalejere, der ifølge vedtægterne, jf. § 89, kan forlange generalforsamlingen indkaldt, kan endvidere senest 2 uger efter Erhvervsstyrelsens offentliggørelse af modtagelsen af fusionsplanen skriftligt stille krav om, at beslutningen i det fortsættende kapitalselskab skal træffes af generalforsamlingen.
*Stk. 3.* Det centrale ledelsesorgan skal, senest 2 uger efter at der er fremsat anmodning herom, indkalde til en generalforsamling.
*Stk. 4.* Hvis det er generalforsamlingen, der skal træffe beslutning i det fortsættende kapitalselskab, træffes beslutningen med det flertal, der kræves efter § 106.
**§ 283.** Det centrale ledelsesorgan i de bestående kapitalselskaber, der deltager i fusionen, skal på en eventuel generalforsamling, hvor der skal træffes beslutning om gennemførelse af en fusion, oplyse om begivenheder af væsentlig betydning, herunder væsentlige ændringer i aktiver og forpligtelser, der er indtruffet i tiden mellem fusionsplanens underskrivelse og generalforsamlingen.
**§ 284.** Hvis det er generalforsamlingen, der skal træffe beslutning om gennemførelse af en grænseoverskridende fusion, kan generalforsamlingen gøre vedtagelsen af en grænseoverskridende fusion betinget af, at generalforsamlingen efterfølgende godkender de fastlagte retningslinjer for medarbejdernes medbestemmelse.

### Mulighed for at kræve godtgørelse

**§ 285.** Kapitalejerne i det eller de ophørende kapitalselskaber kan kræve godtgørelse af kapitalselskabet, hvis vederlaget for kapitalandelene i det eller de ophørende kapitalselskaber ikke er rimeligt og sagligt begrundet, og hvis de har taget forbehold herom på generalforsamlingen, hvor der blev truffet beslutning om fusionens gennemførelse.
*Stk. 2.* Sag i henhold til stk. 1 skal anlægges, senest 2 uger efter at fusionen er besluttet i alle de i fusionen deltagende kapitalselskaber.
*Stk. 3.* Er der taget forbehold i henhold til stk. 1, kan den vedtagne fusion først registreres efter udløbet af 2-ugers-fristen, jf. stk. 2, medmindre vurderingsmændene i deres udtalelse om planen, jf. § 276, finder, at vederlaget for kapitalandelene i det eller de ophørende kapitalselskaber er rimeligt og sagligt begrundet.

### Mulighed for at kræve indløsning

**§ 286.** Ved en grænseoverskridende fusion kan kapitalejerne i de ophørende kapitalselskaber, der på generalforsamlingen har modsat sig fusionen, endvidere kræve, at kapitalselskabet indløser deres kapitalandele, hvis krav herom fremsættes skriftligt senest 4 uger efter generalforsamlingens afholdelse. § 110 finder i øvrigt tilsvarende anvendelse.
*Stk. 2.* Den attest, der skal udstedes i henhold til § 289, kan først udstedes, når der er stillet betryggende sikkerhed for kapitalandelenes værdi. Skønsmænd udmeldt af retten på kapitalselskabets hjemsted afgør, om sikkerheden er betryggende. Indbringes skønsmændenes afgørelse for retten, har dette ikke opsættende virkning for Erhvervsstyrelsens mulighed for at udfærdige attesten, medmindre retten bestemmer andet.

### Stiftelse, kapitalforhøjelser og opløsning ved en grænseoverskridende fusion

**§ 287.** Der kan ikke ydes vederlag for kapitalandele i et ophørende kapitalselskab, der ejes af de fusionerende kapitalselskaber. § 31 og § 153, stk. 2, finder tilsvarende anvendelse ved grænseoverskridende fusion.
*Stk. 2.* Kapitel 3 om stiftelse, kapitel 10 om kapitalforhøjelse og kapitel 14 om opløsning finder ikke anvendelse ved en grænseoverskridende fusion, medmindre det fremgår af bestemmelserne om grænseoverskridende fusion, jf. §§ 271-290.

*Stk. 3.* Dannes der ved fusionens gennemførelse et nyt kapitalsel-skab, der skal høre under dansk ret, og foretages valg af medlemmer til det øverste ledelsesorgan og eventuel revisor ikke, umiddelbart efter at generalforsamlingen har vedtaget fusionen, skal der senest 2 uger derefter afholdes generalforsamling i det nye kapitalselskab til valg af medlemmer til det øverste ledelsesorgan og eventuel re-visor. Generalforsamlingen skal endvidere træffe beslutning om, hvorvidt kapitalselskabets kommende årsregnskaber skal revideres, hvis selskabet ikke er omfattet af revisionspligt efter årsregnskabs-loven eller anden lovgivning.

### Anmeldelse om gennemførelse af en grænseoverskriden-de fusion

**§ 288.** Den vedtagne fusion skal for hvert kapitalselskab registreres eller anmeldes til registrering, jf. § 9, i Erhvervsstyrelsen, senest 2 uger efter at fusionen er besluttet i alle de bestående kapitalselska-ber, der deltager i fusionen. Det fortsættende selskab kan registrere eller anmelde fusionen på de deltagende kapitalselskabers vegne. Registreringen eller anmeldelsen skal vedlægges dokumenterne, som er nævnt i § 280, stk. 5, nr. 3-7, hvis de er udarbejdet.
*Stk. 2.* Anmeldelse af den vedtagne fusion skal være modtaget i Erhvervsstyrelsen senest ved udløbet af indsendelsesfristen for årsrapporten for den periode, hvori tidspunktet for fusionens regn-skabsmæssige virkning, jf. § 272, stk. 1, nr. 6, indgår, dog senest 1 år efter styrelsens offentliggørelse af modtagelse af fusionsplanen i henhold til § 279. Overskrides en af disse to frister, mister beslut-ningen om fusionens gennemførelse sin gyldighed, og den udarbej-dede fusionsplan i henhold til § 272 anses for bortfaldet.
*Stk. 3.* Hvis et kapitalselskab, der opstår som led i en fusion, indgår en aftale, inden kapitalselskabet er registreret, og er medkontrahen-ten vidende om, at kapitalselskabet ikke er registreret, kan medkon-trahenten, medmindre andet er aftalt, hæve aftalen, såfremt anmel-delse til registrering ikke er modtaget i styrelsen senest ved udløbet af den i stk. 2 fastsatte frist, eller hvis registrering nægtes. Var medkontrahenten uvidende om, at kapitalselskabet ikke var regi-streret, kan denne hæve aftalen, så længe kapitalselskabet ikke er registreret. § 41, stk. 1, 2. pkt., finder tilsvarende anvendelse.
*Stk. 4.* §§ 42-44 finder tilsvarende anvendelse, hvis et aktieselskab, der opstår som led i en fusion, erhverver formueværdier fra en ka-pitalejer, der er selskabet bekendt, i tiden indtil 24 måneder efter at selskabet er registreret.

### Attestudstedelse

**§ 289.** Når anmeldelse om gennemførelse af en grænseoverskriden-de fusion er modtaget, påser Erhvervsstyrelsen, om alle de handlin-ger og formaliteter, der skal opfyldes forud for fusionen, er afsluttet. Erhvervsstyrelsen udsteder hurtigst muligt en attest herom til det eller de deltagende kapitalselskaber, som hører under dansk ret, når følgende betingelser er opfyldt, jf. dog stk. 2:

1) Fusionen er besluttet i alle de bestående kapitalselskaber, der deltager i fusionen, og som hører under dansk ret.
2) Kreditorernes krav anmeldt efter § 278 er afgjort.
3) Kapitalejernes krav om godtgørelse efter § 285 er afgjort, eller der er stillet betryggende sikkerhed for kravet. Hvis der er udarbejdet en vurderingsmandsudtalelse om planen, her-under vederlaget, og det i vurderingsmandsudtalelsen antages, at vederlaget er rimeligt og sagligt begrundet, skal vurderings-mændene endvidere have erklæret, at deres udtalelse om vederlaget ikke anfægtes i væsentlig grad. Vurderingsmæn-dene afgør, om sikkerheden er betryggende.
4) Kapitalejernes krav om indløsning efter § 286 er afgjort.
5) Betingelserne i § 287, stk. 3, om valg af medlemmer til det øverste ledelsesorgan og revisor er opfyldt.

6) § 316 om medbestemmelse er opfyldt.
7) Der er ansat en direktion, hvis der som led i fusionen opstår et nyt kapitalselskab, der skal høre under dansk ret, og som skal have en ledelsesmodel, hvor det øverste ledelsesorgan enten er en bestyrelse eller et tilsynsråd, jf. § 111, stk. 1.
*Stk. 2.* Hvis tidspunktet, hvor det ophørende kapitalselskabs rettig-heder og forpligtelser regnskabsmæssigt skal anses for overgået til det fortsættende kapitalselskab, er efter tidspunktet for beslutnin-gerne om at gennemføre fusionen, kan attesten dog først udstedes på det regnskabsmæssige virkningstidspunkt. Tidspunktet for fusio-nens regnskabsmæssige virkningstidspunkt kan ikke være senere end 2 uger efter beslutningerne om at gennemføre fusionen, dog ikke senere end tidspunktet for fusionens anmeldelse, jf. § 288, stk. 1. Det regnskabsmæssige virkningstidspunkt og tidspunktet for beslutningen om at gennemføre fusionen skal endvidere være i samme regnskabsår for de deltagende kapitalselskaber.
*Stk. 3.* Hvis det fortsættende kapitalselskab i en grænseoverskriden-de fusion skal høre under dansk ret, skal der med henblik på regi-strering af fusionen indsendes en attest til Erhvervsstyrelsen fra de udenlandske kapitalselskabers registreringsmyndigheder for hvert af de deltagende kapitalselskaber. Attesten skal være et endeligt bevis for, at alle de handlinger og formaliteter, der skal opfyldes i det pågældende land forud for fusionen, er afsluttet, og at den udenlandske registreringsmyndighed vil registrere fusionen i forhold til det ophørende kapitalselskab efter modtagelsen af underretningen fra Erhvervsstyrelsen. Attesten skal være modtaget i Erhvervssty-relsen senest 6 måneder efter udstedelsen, ellers mister attesten sin gyldighed. Efter modtagelsen af attester for samtlige de kapitalsel-skaber, der deltager i fusionen, registrerer Erhvervsstyrelsen gen-nemførelsen af den grænseoverskridende fusion for det fortsættende kapitalselskab og underretter hurtigst muligt de registre, hvor de øvrige deltagende kapitalselskaber er registreret.
*Stk. 4.* En grænseoverskridende fusion, hvor det fortsættende kapi-talselskab skal høre under dansk ret, har virkning fra den dag, hvor Erhvervsstyrelsen registrerer fusionen.
*Stk. 5.* Hvis det fortsættende kapitalselskab i en grænseoverskriden-de fusion ikke skal høre under dansk ret, registrerer Erhvervsstyrel-sen gennemførelsen af den grænseoverskridende fusion for de op-hørende kapitalselskaber, der hører under dansk ret, når Erhvervs-styrelsen har modtaget en underretning svarende til den i stk. 3 nævnte fra den kompetente registreringsmyndighed for det fortsæt-tende kapitalselskab.

### Lodret grænseoverskridende fusion mellem et modersel-skab og dets helejede datterselskab

**§ 290.** Opløses et selskab uden likvidation ved overdragelse af ka-pitalselskabets aktiver og forpligtelser som helhed til et andet kapi-talselskab, der ejer samtlige kapitalandele i det ophørende kapital-selskab, dvs. lodret grænseoverskridende fusion, kan beslutning om fusion i det ophørende kapitalselskab træffes af det centrale ledelsesorgan. I øvrigt finder § 272, stk. 1, nr. 1, 2, 5 og 8-14, og stk. 2, §§ 273, 274 og 277-280, § 281, stk. 1, 2. og 3. pkt., §§ 282-284 og 287-289 tilsvarende anvendelse på lodrette grænseoverskri-dende fusioner.

### Grænseoverskridende spaltning

**§ 291.** Kapitalselskaber omfattet af denne lov kan deltage i græn-seoverskridende spaltninger, hvor de øvrige deltagende selskaber er tilsvarende kapitalselskaber, der hører under et eller flere andre EU/EØS-landes lovgivning. Den grænseoverskridende spaltning kan gennemføres uden kreditorernes samtykke.
*Stk. 2.* En grænseoverskridende spaltning er betinget af, at lovgiv-ningen, som de øvrige deltagende kapitalselskaber hører under,

tillader grænseoverskridende spaltninger. Det er endvidere et krav, at der er en beskyttelse af et dansk indskydende selskabs medarbejderes eventuelle ret til medbestemmelse i den lovgivning, som det eller de modtagende kapitalselskaber hører under efter spaltningen. Hvis disse betingelser ikke er opfyldt, kan et dansk kapitalselskab ikke deltage i en grænseoverskridende spaltning.

*Stk. 3.* Såfremt en kreditor i et kapitalselskab, der har deltaget i spaltningen, ikke bliver fyldestgjort, hæfter hvert af de deltagende øvrige kapitalselskaber solidarisk for forpligtelser, der bestod på tidspunktet for spaltningsplanens offentliggørelse, dog højst med et beløb svarende til den tilførte eller resterende nettoværdi i det enkelte kapitalselskab på dette tidspunkt.

*Stk. 4.* Hvis et eller flere af de modtagende kapitalselskaber i en spaltning opstår som led i anden spaltning eller fusion, der ikke er gennemført, skal dette fremgå af spaltningsplanen, jf. § 292. En spaltning til nye modtagende kapitalselskaber, der opstår som led i en anden spaltning eller fusion, skal gennemføres i umiddelbar forlængelse af den spaltning eller fusion, som de nye kapitalselskaber opstår som led i, jf. § 308.

### Spaltningsplan

**§ 292.** De centrale ledelsesorganer i de bestående kapitalselskaber, der deltager i spaltningen, opretter og underskriver i forening en spaltningsplan, der skal indeholde oplysning og bestemmelser om

1) kapitalselskabernes selskabsform, navne og eventuelle binavne, herunder en ophørende kapitalselskabs navn eller binavn skal indgå som binavn for det fortsættende kapitalselskab,
2) kapitalselskabernes hjemsted,
3) en nøjagtig beskrivelse og fordeling af de dele af aktiver og forpligtelser, som skal overføres eller forbliver i hvert af kapitalselskaberne, der deltager i spaltningen,
4) vederlaget til kapitalejerne i det indskydende kapitalselskab,
5) fordelingen af vederlaget, herunder kapitalandele i de modtagende kapitalselskaber, til kapitalejerne i det indskydende kapitalselskab samt kriteriet for denne fordeling,
6) den grænseoverskridende spaltnings sandsynlige følger for beskæftigelsen i de deltagende kapitalselskaber,
7) notering af eventuelle kapitalandele, der ydes som vederlag, samt eventuel udlevering af ejerbeviser,
8) tidspunktet, fra hvilket de kapitalandele, der ydes som vederlag, giver ret til udbytte, og angivelse af eventuelle særlige forhold, der er knyttet til denne ret,
9) tidspunktet, fra hvilket det indskydende selskabs rettigheder og forpligtelser regnskabsmæssigt skal anses for overgået,
10) de rettigheder i et modtagende kapitalselskab, der tillægges eventuelle indehavere af kapitalandele med særlige rettigheder og eventuelle indehavere af andre værdipapirer end kapitalandele, eller de foranstaltninger, der foreslås til fordel for disse personer,
11) de særlige forhold, der indrømmes vurderingsmændene, der skal udtale sig om spaltningsplanen, jf. § 296, og medlemmerne af selskabernes ledelse,
12) vedtægterne for det fortsættende kapitalselskab i den affattelse, som de vil have efter spaltningens gennemførelse,
13) oplysning om de procedurer, hvorefter der i henhold til § 318 er fastsat nærmere regler om medarbejdernes inddragelse i fastlæggelsen af deres rettigheder med hensyn til medbestemmelse i det fortsættende kapitalselskab, hvis det er hensigtsmæssigt,
14) vurderingen af de aktiver og forpligtelser, der er overført til de modtagende kapitalselskaber, og

15) datoerne for deltagende kapitalselskabers regnskaber, som har været anvendt som grundlag for betingelserne for den grænseoverskridende spaltning.

*Stk. 2.* Spaltningsplanen skal for hvert af de bestående kapitalselskaber være underskrevet senest ved udløbet af det regnskabsår, hvori tidspunktet for spaltningens regnskabsmæssige virkning, jf. stk. 1, nr. 7, indgår. Overskrides fristen, kan modtagelsen af spaltningsplanen i Erhvervsstyrelsen ikke offentliggøres og spaltningen dermed ikke vedtages.

*Stk. 3.* Såfremt en del af aktiverne ikke er fordelt ved spaltningsplanen, jf. stk. 1, nr. 2, og fortolkningen af denne ikke gør det muligt at afgøre fordelingen, fordeles denne eller værdien deraf mellem hvert af de deltagende kapitalselskaber proportionalt med de nettoaktiver, som er tilført eller resterer i det enkelte kapitalselskab efter spaltningsplanen.

*Stk. 4.* Såfremt en del af forpligtelserne ikke er fordelt ved spaltningsplanen, jf. stk. 1, nr. 2, og fortolkningen af denne ikke gør det muligt at afgøre fordelingen, er hvert af de deltagende kapitalselskaber solidarisk ansvarligt, dog højst med et beløb svarende til den tilførte eller resterende nettoværdi i det enkelte kapitalselskab. I det indbyrdes forhold mellem de deltagende kapitalselskaber fordeles sådanne forpligtelser proportionalt med de nettoaktiver, som er tilført eller resterer i de enkelte kapitalselskaber efter spaltningsplanen.

### Spaltningsredegørelse

**§ 293.** Det centrale ledelsesorgan i hvert af de bestående kapitalselskaber, der deltager i spaltningen, skal udarbejde en skriftlig redegørelse, i hvilken spaltningsplanen forklares og begrundes. Redegørelsen skal indeholde oplysning om fastsættelsen af vederlaget for kapitalandelene i det indskydende kapitalselskab, herunder særlige vanskeligheder forbundet med fastsættelsen og oplysning om udarbejdelse af vurderingsberetning, hvis denne i henhold til § 295 skal udarbejdes. Redegørelsen skal tillige indeholde en redegørelse for følgerne af den grænseoverskridende spaltning for kapitalejerne, kreditorerne og medarbejderne.

### Mellembalance

**§ 294.** Hvis spaltningsplanen er underskrevet mere end 6 måneder efter udløbet af det regnskabsår, som kapitalselskabets seneste årsrapport vedrører, skal der for det pågældende kapitalselskab, der deltager i spaltningen, udarbejdes en mellembalance, jf. dog stk. 3 og 4.

*Stk. 2.* Mellembalancen, der skal udarbejdes i overensstemmelse med det regelsæt, som kapitalselskabet udarbejder årsrapport efter, må ikke have en opgørelsesdato, der ligger mere end 3 måneder forud for underskrivelsen af spaltningsplanen. Mellembalancen skal være revideret, hvis kapitalselskabet er omfattet af revisionspligt efter årsregnskabsloven eller anden lovgivning.

*Stk. 3.* Kapitalejerne kan i enighed beslutte, at der ikke skal udarbejdes en mellembalance, uanset at en spaltningsplan er underskrevet mere end 6 måneder efter udløbet af det regnskabsår, som kapitalselskabets seneste årsrapport vedrører.

*Stk. 4.* Bestemmelsen i stk. 1 finder ikke anvendelse for kapitalselskaber, som har værdipapirer optaget til handel på et reguleret marked i et EU/EØS-land, og som har offentliggjort en halvårsrapport i henhold til årsregnskabsloven, hvis halvårsrapporten indeholder et revideret halvårsregnskab for selskabet og halvårsrapporten gøres tilgængelig for selskabets kapitalejere.

### Vurderingsberetning om apportindskud

**§ 295.** Sker der i forbindelse med spaltningen en kapitalforhøjelse i et eller flere modtagende aktieselskaber, eller opstår der et eller

Copyright © 2015 Karnov Group Denmark A/S

LBKG

flere nye aktieselskaber som led i spaltningen, skal der som led i spaltningen indhentes en beretning fra en vurderingsmand, jf. dog stk. 2. Vurderingsmanden udpeges efter § 37, stk. 1. § 37, stk. 2 og 3, finder tilsvarende anvendelse på vurderingsmændenes forhold til samtlige kapitalselskaber, der deltager i spaltningen.

*Stk. 2.* Vurderingsberetningen kan undlades, hvis der i stedet udarbejdes en vurderingsmandsudtalelse om spaltningsplanen, jf. § 296, eller en vurderingsmandserklæring om kreditorernes stilling, jf. § 297.

*Stk. 3.* Hvis der skal udarbejdes en vurderingsberetning som led i en spaltning, skal vurderingsberetningen indeholde

1)   en beskrivelse af hvert indskud,
2)   oplysning om den anvendte fremgangsmåde ved vurderingen,
3)   angivelse af det fastsatte vederlag og
4)   erklæring om, at den ansatte værdi mindst svarer til det aftalte vederlag, herunder den eventuelle pålydende værdi af de kapitalandele, der skal udstedes, med tillæg af eventuel overkurs.

*Stk. 4.* Vurderingsberetningen må ikke være udarbejdet mere end 3 måneder før tidspunktet for spaltningens eventuelle vedtagelse, jf. § 300. Overskrides fristen, kan spaltningen ikke gyldigt vedtages.

### Vurderingsmandsudtalelse om spaltningsplanen

**§ 296.** I hvert af kapitalselskaberne, der deltager i spaltningen, udarbejder en eller flere uvildige, sagkyndige vurderingsmænd en skriftlig udtalelse om spaltningsplanen, herunder vederlaget, jf. stk. 4. Kapitalejerne kan dog i enighed beslutte, at der ikke skal udarbejdes en sådan udtalelse fra en vurderingsmand om spaltningsplanen.

*Stk. 2.* Vurderingsmændene udpeges efter § 37, stk. 1. Hvis kapitalselskaberne, der deltager i spaltningen, ønsker at benytte en eller flere fælles vurderingsmænd, udpeges disse efter kapitalselskabernes anmodning af skifteretten på det sted, hvor det fortsættende kapitalselskab har sit hjemsted.

*Stk. 3.* § 37, stk. 2 og 3, finder tilsvarende anvendelse på vurderingsmændenes forhold til samtlige af de deltagende kapitalselskaber i spaltningen.

*Stk. 4.* Udtalelsen skal indeholde erklæring om, hvorvidt vederlaget for kapitalandelene i det indskydende kapitalselskab er rimeligt og sagligt begrundet. Erklæringen skal angive den eller de fremgangsmåder, der er anvendt ved fastsættelsen af vederlaget, samt vurdere hensigtsmæssigheden heraf. Erklæringen skal endvidere angive de værdier, som fremgangsmåderne hver for sig fører til, samt den betydning, der må tillægges fremgangsmåderne i forhold til hinanden ved værdiansættelsen. Har der været særlige vanskeligheder forbundet med værdiansættelsen, omtales disse i erklæringen.

### Vurderingsmandserklæring om kreditorernes stilling

**§ 297.** Vurderingsmændene skal ud over den i § 296 nævnte erklæring endvidere afgive erklæring om, hvorvidt kreditorerne i det enkelte kapitalselskab må antages at være tilstrækkeligt sikrede efter spaltningen i forhold til selskabets nuværende situation. Kapitalejerne kan dog i enighed beslutte, at der ikke skal udarbejdes en sådan erklæring fra en vurderingsmand om kreditorernes stilling.

### Mulighed for kreditorerne for at anmelde deres krav

**§ 298.** Hvis vurderingsmændene i deres erklæring om kreditorernes stilling, jf. § 297, finder, at kreditorerne i det enkelte kapitalselskab ikke er tilstrækkeligt sikrede efter spaltningen, eller hvis der ikke er udarbejdet en erklæring fra en vurderingsmand om kreditorernes stilling, kan kreditorer, hvis fordringer er stiftet forud for Erhvervsstyrelsens offentliggørelse i medfør af § 299, senest 4 uger efter offentliggørelsen anmelde deres fordringer til selskabet. Fordringer,

for hvilke der er stillet betryggende sikkerhed, kan dog ikke anmeldes.

*Stk. 2.* Anmeldte fordringer, der er forfaldne, kan forlanges indfriet, og for anmeldte fordringer, der er uforfaldne, kan forlanges betryggende sikkerhed.

*Stk. 3.* Medmindre andet godtgøres, er sikkerhedsstillelse efter stk. 2 ikke fornøden, hvis indfrielse af fordringerne er sikret ved en ordning i henhold til lov.

*Stk. 4.* Er der mellem kapitalselskabet og anmeldte kreditorer uenighed om, hvorvidt der skal stilles sikkerhed, eller om, hvorvidt en tilbudt sikkerhed er tilstrækkelig, kan begge parter, senest 2 uger efter at fordringen er anmeldt, indbringe sagen for skifteretten på kapitalselskabets hjemsted til afgørelse af spørgsmålet.

*Stk. 5.* Kreditor kan ikke ved bindende virkning ved den aftale, der ligger til grund for fordringen, frasige sig retten til at forlange sikkerhed efter stk. 3.

*Stk. 6.* (Ophævet)

### Indsendelse af oplysninger om den påtænkte grænseoverskridende spaltning, herunder spaltningsplan og eventuel vurderingsmandserklæring om kreditorernes stilling

**§ 299.** Erhvervsstyrelsen skal senest 4 uger efter en spaltningsplans underskrivelse have modtaget en kopi af spaltningsplanen.

*Stk. 2.* Vurderingsmandserklæring om kreditorernes stilling, jf. § 297, 1. pkt., skal indsendes til Erhvervsstyrelsen, jf. dog stk. 3.

*Stk. 3.* Hvis muligheden for at fravælge vurderingsmandserklæring om kreditorernes stilling, jf. § 297, 2. pkt., er udnyttet, skal dette meddeles Erhvervsstyrelsen med angivelse af navne og eventuelt cvr-numre på de kapitalselskaber, som deltager i spaltningen.

*Stk. 4.* Erhvervsstyrelsens modtagelse af spaltningsplanen samt oplysninger og eventuelt vurderingsmandserklæring om kreditorernes stilling, jf. stk. 1-3, offentliggøres i Erhvervsstyrelsens it-system. Hvis kreditorerne har ret til at anmelde deres krav, jf. § 298, indeholder Erhvervsstyrelsens offentliggørelse oplysning herom.

*Stk. 5.* Erhvervsstyrelsen kan fastsætte nærmere regler om kapitalselskabers offentliggørelse af spaltningsplan og eventuelt medfølgende dokumenter.

### Beslutning om at gennemføre en grænseoverskridende spaltning

**§ 300.** Beslutning om gennemførelse af en spaltning må tidligst træffes 4 uger efter Erhvervsstyrelsens offentliggørelse, jf. § 299, stk. 4, af modtagelsen af spaltningsplanen og af vurderingsmandserklæring om kreditorernes stilling. Hvis offentliggørelse vedrørende § 299, stk. 1, og vedrørende § 299, stk. 2 eller 3, har fundet sted hver for sig, regnes fristen i 1. pkt. fra det seneste offentliggørelsestidspunkt.

*Stk. 2.* Hvis det indskydende kapitalselskab ophører som led i spaltningen og har afsluttet et regnskabsår inden tidspunktet, hvor det indskydende kapitalselskabs rettigheder og forpligtelser regnskabsmæssigt skal anses for overgået til de modtagende selskaber, og generalforsamlingen endnu ikke har godkendt årsrapporten for denne regnskabsperiode, skal generalforsamlingen godkende årsrapporten senest samtidig med beslutningen om gennemførelsen af spaltningen.

*Stk. 3.* Kreditorer, der anmoder derom, skal have oplysning om, hvornår der træffes beslutning om spaltningens eventuelle gennemførelse.

*Stk. 4.* Spaltningens gennemførelse skal være i overensstemmelse med spaltningsplanen. Vedtages spaltningen ikke i overensstemmelse med spaltningsplanen, anses forslaget som bortfaldet.

Copyright © 2015 Karnov Group Denmark A/S

*Stk. 5.* Følgende dokumenter skal, hvis de er udarbejdet, senest 4 uger før der skal træffes beslutning om gennemførelse af en spaltning, stilles til rådighed for kapitalejerne på selskabets hjemsted eller hjemmeside, medmindre disse i enighed beslutter, at de pågældende dokumenter ikke skal fremlægges for kapitalejerne forud for eller på generalforsamlingen, jf. dog stk. 7:

1) Spaltningsplanen.
2) Hvert af de bestående deltagende kapitalselskabers godkendte årsrapporter for de sidste 3 regnskabsår eller den kortere tid, kapitalselskabet måtte have bestået.
3) Spaltningsredegørelse.
4) Mellembalance.
5) Vurderingsberetning om apportindskud.
6) Vurderingsmændenes udtalelser om spaltningsplanen, herunder vederlaget.
7) Vurderingsmændenes erklæring om kreditorernes stilling.

*Stk. 6.* Kapitalejere, der anmoder herom, skal vederlagsfrit have adgang til de dokumenter, der er nævnt i stk. 5.

*Stk. 7.* Spaltningsredegørelsen, jf. § 293, skal ved en grænseoverskridende spaltning ligeledes senest 4 uger før en beslutning om gennemførelse af spaltningen fremlægges på kapitalselskabets kontor til eftersyn for medarbejderrepræsentanterne eller, hvis der ikke er medarbejderrepræsentanter i det konkrete kapitalselskab, for medarbejderne selv.

**§ 301.** Beslutning om spaltning træffes i det indskydende kapitalselskab af generalforsamlingen med det flertal, der kræves efter §§ 106 og 107, samt i overensstemmelse med de yderligere forskrifter, som vedtægterne måtte indeholde om opløsning eller spaltning, jf. dog § 310. Er kapitalselskabet under likvidation, kan spaltning kun besluttes, hvis udlodning til kapitalejerne endnu ikke er påbegyndt og generalforsamlingen samtidig træffer beslutning om at hæve likvidationen. § 231 om genoptagelse finder herefter ikke anvendelse.

**§ 302.** Beslutning om spaltning træffes i bestående modtagende kapitalselskaber af det centrale ledelsesorgan, medmindre der af generalforsamlingen skal foretages vedtægtsændringer, bortset fra optagelse af det indskydende kapitalselskabs navn eller binavn som binavn for det modtagende kapitalselskab, jf. dog stk. 2-4. Er kapitalselskabet under likvidation, kan spaltning kun besluttes, hvis udlodning til kapitalejerne endnu ikke er påbegyndt, og hvis generalforsamlingen samtidig træffer beslutning om at genoptage selskabet, jf. § 231.

*Stk. 2.* Kapitalejere, der ejer 5 pct. af selskabskapitalen, eller de kapitalejere, der ifølge vedtægterne, jf. § 89, kan forlange generalforsamlingen indkaldt, kan endvidere senest 2 uger efter Erhvervsstyrelsens offentliggørelse af modtagelsen af spaltningsplanen skriftligt stille krav om, at beslutningen i bestående modtagende kapitalselskaber skal træffes af generalforsamlingen.

*Stk. 3.* Det centrale ledelsesorgan skal, senest 2 uger efter at der er fremsat anmodning herom, indkalde til en generalforsamling.

*Stk. 4.* Hvis der i generalforsamlingen, der skal træffe beslutning i det bestående modtagende kapitalselskab, træffes beslutningen med det flertal, der kræves efter § 106.

**§ 303.** Det centrale ledelsesorgan i de bestående kapitalselskaber, der deltager i spaltningen, skal på en eventuel generalforsamling, hvor der skal træffes beslutning om gennemførelse af en spaltning, oplyse om begivenheder af væsentlig betydning, herunder væsentlige ændringer i aktiver og forpligtelser, der er indtruffet i tiden mellem spaltningsplanens underskrivelse og generalforsamlingen.

**§ 304.** Hvis der på generalforsamlingen, der skal træffe beslutning om gennemførelse af en grænseoverskridende spaltning, kan generalforsamlingen gøre vedtagelsen af en grænseoverskridende

spaltning betinget af, at generalforsamlingen efterfølgende godkender de fastlagte retningslinjer for medarbejdernes medbestemmelse.

### Mulighed for at kræve godtgørelse

**§ 305.** Kapitalejerne i det indskydende kapitalselskab kan kræve godtgørelse af selskabet, hvis vederlaget for kapitalandelene i det indskydende kapitalselskab ikke er rimeligt og sagligt begrundet, og hvis de har taget forbehold herom på generalforsamlingen, hvor der blev truffet beslutning om spaltningens gennemførelse.

*Stk. 2.* Sag i henhold til stk. 1 skal anlægges, senest 2 uger efter at spaltningen er besluttet i alle de bestående kapitalselskaber, der deltager i spaltningen.

*Stk. 3.* Er der taget forbehold i henhold til stk. 1, kan den vedtagne spaltning først registreres efter udløbet af 2-ugers-fristen, jf. stk. 2, medmindre vurderingsmændene i deres udtalelse om planen, herunder vederlaget, jf. § 296, finder, at vederlaget for kapitalandelene i det indskydende kapitalselskab er rimeligt og sagligt begrundet.

### Mulighed for at kræve indløsning

**§ 306.** Ved en grænseoverskridende spaltning kan kapitalejerne i det indskydende kapitalselskab, der på generalforsamlingen har modsat sig spaltningen, endvidere kræve, at kapitalselskabet indløser deres kapitalandele, hvis krav herom fremsættes skriftligt senest 4 uger efter generalforsamlingens afholdelse. § 110 finder i øvrigt tilsvarende anvendelse.

*Stk. 2.* Den attest, der skal udstedes i henhold til § 309, kan først udstedes, når der er stillet betryggende sikkerhed for kapitalandelenes værdi. Skønsmænd udmeldt af retten på kapitalselskabets hjemsted afgør, om sikkerheden er betryggende. Indbringes skønsmændenes afgørelse for retten, har dette ikke opsættende virkning for Erhvervsstyrelsens mulighed for at udfærdige attesten, medmindre retten bestemmer andet.

### Stiftelse, kapitalforhøjelser og kapitalnedsættelse ved en grænseoverskridende spaltning

**§ 307.** Der kan ikke ydes vederlag for kapitalandele i det indskydende kapitalselskab, der ejes af kapitalselskaberne, der deltager i spaltningen. § 31 og § 153, stk. 2, finder tilsvarende anvendelse ved grænseoverskridende spaltning.

*Stk. 2.* Kapitel 3 om stiftelse, kapitel 10 om kapitalforhøjelse, kapitel 11 om kapitalafgang og kapitel 14 om opløsning finder ikke anvendelse ved en grænseoverskridende spaltning, medmindre det fremgår af bestemmelserne om grænseoverskridende spaltning, jf. §§ 291-310.

*Stk. 3.* Dannes der ved spaltningens gennemførelse et nyt kapitalselskab, der skal høre under dansk ret, og foretages valg af medlemmer til det øverste ledelsesorgan og eventuel revisor ikke, umiddelbart efter at generalforsamlingen har vedtaget spaltningen, skal der senest 2 uger derefter afholdes generalforsamling i det nye kapitalselskab til valg af medlemmerne til det øverste ledelsesorgan og eventuel revisor. Generalforsamlingen skal endvidere træffe beslutning om, hvorvidt kapitalselskabets kommende årsregnskaber skal revideres, hvis kapitalselskabet ikke er omfattet af revisionspligten efter årsregnskabsloven eller anden lovgivning.

### Anmeldelse om gennemførelse af en grænseoverskridende spaltning

**§ 308.** Den vedtagne spaltning skal for hvert kapitalselskab registreres eller anmeldes til registrering, jf. § 9, i Erhvervsstyrelsen, senest 2 uger efter at spaltningen er besluttet i alle de bestående kapitalselskaber, der deltager i spaltningen. Ethvert af de modtagende kapitalselskaber kan registrere eller anmelde spaltningen på de delta-

gende kapitalselskabers vegne. Registreringen eller anmeldelsen skal vedlægges dokumenterne, som er nævnt i § 300, stk. 5, nr. 3-7, hvis de er udarbejdet.

*Stk. 2.* Anmeldelse af den vedtagne spaltning skal være modtaget i Erhvervsstyrelsen senest ved udløbet af indsendelsesfristen for årsrapporten for den periode, hvori tidspunktet for spaltningens regnskabsmæssige virkning, jf. § 292, stk. 1, nr. 7, indgår, dog senest 1 år efter styrelsens bekendtgørelse af modtagelse af spaltningsplanen i henhold til § 299. Overskrides en af disse to frister, mister beslutningen om spaltningens gennemførelse sin gyldighed, og den udarbejdede spaltningsplan i henhold til § 292 anses for bortfaldet.

*Stk. 3.* Hvis et kapitalselskab, der opstår som led i en spaltning, træffer en aftale, inden kapitalselskabet er registreret, og er medkontrahenten vidende om, at selskabet ikke er registreret, kan medkontrahenten, medmindre andet er aftalt, hæve aftalen, såfremt anmeldelse til registrering ikke er modtaget i styrelsen senest ved udløbet af den i stk. 2 fastsatte frist, eller hvis registrering nægtes. Var medkontrahenten uvidende om, at kapitalselskabet ikke var registreret, kan denne hæve aftalen, så længe kapitalselskabet ikke er registreret. § 41, stk. 1, 2. pkt., finder tilsvarende anvendelse ved spaltning.

*Stk. 4.* §§ 42-44 finder tilsvarende anvendelse, hvis et kapitalselskab, der opstår som led i en spaltning, erhverver formueværdier fra en kapitalejer, der er selskabet bekendt, i tiden indtil 24 måneder efter at selskabet er registreret.

### Attestudstedelse

**§ 309.** Når anmeldelse om gennemførelse af en grænseoverskridende spaltning er modtaget, påser Erhvervsstyrelsen, om alle de handlinger og formaliteter, der skal opfyldes forud for spaltningen, er afsluttet. Erhvervsstyrelsen udsteder hurtigst muligt en attest herom til det eller de deltagende kapitalselskaber, som hører under dansk ret, når følgende betingelser er opfyldt, jf. dog stk. 2:

1) Spaltningen er besluttet i alle de bestående kapitalselskaber, der deltager i spaltningen, og som hører under dansk ret.
2) Kreditorernes krav anmeldt efter § 298 er afgjort.
3) Kapitalejernes krav om godtgørelse efter § 305 er afgjort, eller er er stillet betryggende sikkerhed for kravet. Hvis der er udarbejdet en vurderingsmandsudtalelse om planen, herunder vederlaget, og det i vurderingsmandsudtalelsen antages, at vederlaget er rimeligt og sagligt begrundet, skal vurderingsmændene endvidere have erklæret, at deres udtalelse om vederlaget ikke anfægtes i væsentlig grad. Vurderingsmændene afgør, om sikkerheden er betryggende.
4) Kapitalejernes krav om indløsning efter § 306 er afgjort.
5) Betingelserne i § 307, stk. 3, om valg af medlemmer til det øverste ledelsesorgan er opfyldt.
6) § 316, stk. 1, jf. § 318, om medbestemmelse er opfyldt.
7) Der er ansat en direktion, hvis der som led i spaltningen opstår et nyt kapitalselskab, der skal høre under dansk ret, og som skal have en ledelsesmodel, hvor det øverste ledelsesorgan enten er en bestyrelse eller et tilsynsråd, jf. § 111, stk. 1.

*Stk. 2.* Hvis tidspunktet, hvor det indskydende kapitalselskabs rettigheder og forpligtelser regnskabsmæssigt skal anses for overgået til de modtagende kapitalselskaber, er efter tidspunktet for beslutningerne om at gennemføre spaltningen, kan attesten dog først udstedes på det regnskabsmæssige virkningstidspunkt. Tidspunktet for spaltningens regnskabsmæssige virkningstidspunkt kan ikke være senere end 2 uger efter beslutningerne om at gennemføre spaltningen, dog ikke senere end tidspunktet for spaltningens anmeldelse, jf. § 308, stk. 1. Det regnskabsmæssige virkningstidspunkt

og tidspunktet for beslutningen om at gennemføre spaltningen skal endvidere være i samme regnskabsår for de deltagende kapitalselskaber.

*Stk. 3.* Hvis et eller flere af de modtagende kapitalselskaber i en grænseoverskridende spaltning skal høre under dansk ret, skal der med henblik på registrering af spaltningen indsendes en attest til Erhvervsstyrelsen fra de udenlandske kapitalselskabers registreringsmyndigheder for hvert af de øvrige deltagende kapitalselskaber. Attesten skal være et endeligt bevis for, at alle de handlinger og formaliteter, der skal opfyldes i det pågældende land forud for spaltningen, er afsluttet, og at den udenlandske registreringsmyndighed vil registrere spaltningen i forhold til de øvrige deltagende kapitalselskaber efter modtagelsen af underretningen fra Erhvervsstyrelsen. Attesten skal være modtaget i Erhvervsstyrelsen senest 6 måneder efter udstedelsen, ellers mister attesten sin gyldighed. Efter modtagelsen af attester for samtlige de øvrige kapitalselskaber, der deltager i spaltningen, registrerer Erhvervsstyrelsen gennemførelsen af den grænseoverskridende spaltning for de modtagende kapitalselskaber, der skal høre under dansk ret, og underretter hurtigst muligt de registre, hvor øvrige deltagende kapitalselskaber er registreret.

*Stk. 4.* En grænseoverskridende spaltning, hvor et eller flere af de modtagende kapitalselskaber skal høre under dansk ret, har i relation til disse kapitalselskaber virkning fra den dag, hvor Erhvervsstyrelsen registrerer spaltningen.

*Stk. 5.* Hvis de modtagende kapitalselskaber i en grænseoverskridende spaltning ikke skal høre under dansk ret, registrerer Erhvervsstyrelsen gennemførelsen af den grænseoverskridende spaltning for det indskydende kapitalselskab, hvis dette hører under dansk ret, når Erhvervsstyrelsen har modtaget en underretning svarende til den i stk. 3 nævnte fra de kompetente registreringsmyndigheder for de modtagende kapitalselskaber.

### Lodret grænseoverskridende spaltning

**§ 310.** Ejes samtlige kapitalandele i det indskydende kapitalselskab af de modtagende kapitalselskaber, dvs. lodret grænseoverskridende spaltning, kan beslutning om spaltning i det indskydende kapitalselskab træffes af det centrale ledelsesorgan. I øvrigt finder,§ 292, stk. 1, nr. 1-3, 6 og 9-15 og stk. 2-4, §§ 293, 294 og 297-300, § 301, 2. og 3. pkt., og §§ 302-304 og 307-309 tilsvarende anvendelse på lodrette grænseoverskridende spaltninger.

### Medarbejdernes medbestemmelse ved grænseoverskridende fusion

**§ 311.** Ved en grænseoverskridende fusion, jf. § 271, hvor det fortsættende kapitalselskab skal høre under dansk ret, finder § 140 anvendelse, medmindre

1) anvendelsen ikke medfører mindst samme niveau for medbestemmelse som det, der gælder i de relevante fusionerende kapitalselskaber, målt i forhold til andelen af medarbejderrepræsentanter blandt medlemmerne i de administrations- eller tilsynsorganer, udvalg eller ledelsesgrupper, herunder i kapitalselskabets profitcentre, der er omfattet af medbestemmelse,
2) anvendelsen ikke giver medarbejderne i de i andre medlemsstater beliggende bedrifter i det kapitalselskab, der er resultatet af den grænseoverskridende fusion, den samme ret til at udøve medbestemmelse, som den giver de medarbejdere, der er beskæftiget i Danmark, eller
3) mindst ét af de fusionerende kapitalselskaber i de 6 måneder, der går forud for offentliggørelsen af planen om den grænseoverskridende fusion, jf. § 137, stk. 1, har et gennemsnitligt antal medarbejdere på over 500, der er omfattet af en medbestemmelsesordning.

Copyright © 2015 Karnov Group Denmark A/S